UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LEON D. BLACK,

                                        Plaintiff,                        **Civil Action No.:**
                                                                          **1:21-cv-08824-PAE**

-against-

GUZEL GANIEVA, WIGDOR LLP,
AND JOHN DOES 1-3,

                                        Defendants.
------------------------------------------------------------------X

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WIGDOR LLP'S MOTION
FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

_____

                              Respectfully submitted,

                              RIVKIN RADLER LLP
                              Attorneys for Defendant, Wigdor LLP
                              926 RXR Plaza
                              Uniondale, New York 11556
                              (516) 357-3000

On the brief:

Janice J. DiGennaro, Esq.
Max Gershenoff, Esq.
Yonatan Bernstein, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF RELEVANT FACTS ..............................................................................2

     I.     The Parties ............................................................................................2

     II.    Ms. Ganieva's First-Filed State Court Action Against Black ...........................3

     III.   Black's Contrived and Retaliatory Claims Against Wigdor
          and Ms. Ganieva in the Present Case ..........................................................4

     IV.   Wigdor's Compliance with Fed. R. Civ. P.11(c) ...........................................6

ARGUMENT ....................................................................................................................6

     I.     The Relevant Standards.............................................................................6

     II.    Black's Claims Against Wigdor Violate Rule 11(b)(3) ...................................8

     III.   Black's Claims Against Wigdor Violate Rule 11(b)(2) ...................................12

           A.     The Civil RICO Claims Violate Rule 11(b)(2) ...................................13

           B.     The Defamation Per Se Claim Violates Rule 11(b)(2) .........................27

     IV.   Black's Claims Against Wigdor Violate Rule 11(b)(1).....................................28

CONCLUSION...................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abdelhamid v. Altria Group, Inc,
    515 F. Supp. 2d 384 (S.D.N.Y. 2007).......................................................................7

Assoun v. Assoun,
    2014 U.S. Dist. LEXIS 179762 (S.D.N.Y. 2014)...................................................27

Azrielli v. Cohen Law Offices,
    21 F.3d 512 (2d Cir. 1994)......................................................................................16

Bletas v. Deluca,,
    2011 U.S. Dist. LEXIS 133132 (S.D.N.Y. 2011)...................................................12

Boyle v. United States,
    129 S. Ct. 2237 (2009) ............................................................................................14

Butcher v. Wendt,
    975 F.3d 236 (2d Cir. 2020)................................................................................20,25

Caro Capital, LLC v. Koch,
    2021 U.S. Dist. LEXIS 78641 (S.D.N.Y. 2021).....................................................27

Charles v. Levitt,
    2016 U.S. Dist. LEXIS 95725 (S.D.N.Y. 2016).......................................................7

Chien v. Skystar Bio Pharm. Co.,
    256 F.R.D. 67 (D. Conn. 2009)...............................................................................12

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
    187 F.3d 229 (2d Cir. 1999)....................................................................................22

Cont'l Fin. Co. v. Ledwith,
    2009 U.S. Dist. LEXIS 52618 (S.D.N.Y. 2009).....................................................14

Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,
    758 F. Supp. 2d 153 (E.D.N.Y. 2010), aff'd, 443 Fed. Appx. 582 (2d Cir. 2011) ...................20

Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    2003 U.S. Dist. LEXIS 16908 (S.D.N.Y. 2003).......................................................8

De Falco v. Bernas,
    244 F.3d 286 (2d Cir. 2001) ...................................................................................15

Dekom v. Fannie Mae,
    846 F. App'x 14 (2d Cir. 2021) ...........................................................................19, 20

iii

Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP,
    2021 U.S. Dist. LEXIS 126819 (S.D.N.Y. 2021) ...................................................14

FindTheBest.com v. Lumen View Tech. LLC,
    20 F. Supp.3d 451 (S.D.N.Y. 2014), aff'd, 811 F.3d 479 (2016) .............................19

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004) ..............................................................................14, 21

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) .....................................................................................23

Flemming v. Port Auth. of N.Y. & N.J.,
    2021 U.S. Dist. LEXIS 44411 (E.D.N.Y. 2021) .......................................................7

Flomenhaft v. Finkelstein,
    127 A.D.3d 634 (N.Y. A.D. 1st Dep't 2015) ..........................................................27

Foster v. 2001 Real Estate.,
    2015 U.S. Dist. LEXIS 159489 (S.D.N.Y. 2015) ...................................................19

Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.,
    2009 U.S. Dist. LEXIS 82403 (E.D.N.Y. 2009) ......................................................7

GICC Capital Corp. v. Tech. Fin. Grp., Inc.,
    67 F.3d 463 (2d Cir.1995) ......................................................................................22

Ginx, Inc. v. Soho Alliance,
    2010 U.S. Dist. LEXIS 64313 (S.D.N.Y. 2010) ....................................................26

Gold v. Fields,
    1993 U.S. Dist. LEXIS 8094 (S.D.N.Y. 1993) ......................................................29

Greene v. Donovan,
    2007 U.S. Dist. LEXIS 49932 (S.D.N.Y. 2007) .......................................................7

Greenberg v. Blake,
    2010 U.S. Dist. LEXIS 57617 (E.D.N.Y. 2010) ....................................................14

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) ...........................................................................................21,22

Jus Punjabi, LLC v. Get Punjabi, Inc.,
    2015 U.S. Dist. LEXIS 66006 (S.D.N.Y. 2015) ....................................................23

Kim v. Kimm,
    884 F.3d 98 (2d Cir. 2018) .....................................................................................20

Kumaran v. Nat'l Futures Ass'n,
    2021 U.S. Dist. LEXIS 177784 (S.D.N.Y. 2021) ................................................15

Lacher v. Engel,
    33 A.D.3d 10 (N.Y. A.D. 1st Dep't 2006) ..........................................................28

Lakonia Mgmt., Ltd. v. Meriwether,
    106 F. Supp. 2d 540 (S.D.N.Y. 2000) ................................................................18

LCS Grp., LLC v. Shire LLC,
    2019 U.S. Dist. LEXIS 43255 (S.D.N.Y. 2019) ...................................................8

Madanes v. Madanes,
    981 F. Supp. 241 (S.D.N.Y. 1997) .....................................................................16

Malvar Egerique v. Chowaiki,
    2020 U.S. Dist. LEXIS 73060 (S.D.N.Y. 2020) ...................................................8

Mann v. Abel,
    10 N.Y.3d 271 (N.Y. 2008) ................................................................................28

Matsushita Electronics Corp. v. Loral Corp.,
    974 F. Supp. 345 ((S.D.N.Y. 1997) ...................................................................26

O'Brien v. Alexander,
    101 F.3d 1479 (2d Cir.1996)...............................................................................12

Moss v. Morgan Stanley, Inc.,
    719 F.2d 5 (2d Cir.1983).....................................................................................13

Panabroker Protecting & Indem. Assoc. v. Vneshprombank,
    2017 U.S. Dist. LEXIS 159393 (S.D.N.Y. 2017)................................................24

Primetime 24 Joint Venture v. National Broadcasting Company,
    219 F.3d 92 (2d Cir. 2000)..................................................................................26

Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F. Higgins,
    Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008) ........................................19

Reich v. Lopez,
    858 F.3d 55 (2d Cir. 2017)..................................................................................21

Reves v. Ernst & Young,
    507 U.S. 170 (1993) ...........................................................................................15

Ritchie v. N. Leasing Sys.,
    2016 U.S. Dist. LEXIS 40537 (S.D.N.Y. 2016)..................................................18

Ritter v. Klisivitch,
    2008 U.S. Dist. LEXIS 58818 (E.D.N.Y. 2008) ....................................................................23

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
    30 F.3d 339 (2d Cir 1994) ..........................................................................................................15

Rosner v. Bank of China,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007) .......................................................................................25

Sanchez v. ASA Coll., Inc.,
    2015 U.S. Dist. LEXIS 73222 (S.D.N.Y. 2015) ......................................................................18

Santana v. Adler,
    2018 U.S. Dist. LEXIS 51401 (S.D.N.Y. 2018) ......................................................................16

S.A.R.L. v. Cantamessa USA, Inc.,
    2013 U.S. Dist. LEXIS 107552 (S.D.N.Y. 2013) ....................................................................24

Sehgal v. Aggarwal,
    2021 U.S. Dist. LEXIS 154043 (E.D.N.Y. 2021) ....................................................................22

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008) .............................................................................................21,22,23

Steele v. Polymer Rsch. Corp. of Am.,
    1987 WL 12819 (S.D.N.Y. 1987) ...............................................................................................7

Szabo Food Serv., Inc. v. Canteen Corp.,
    823 F.2d 1073 (7th Cir. 1987)....................................................................................................7

Tech. in P'ship v. Rudin,
    2011 U.S. Dist. LEXIS 114127 (S.D.N.Y. 2011).....................................................................16

Tuosto v. Philip Morris USA Inc.,
    2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. 2007) ......................................................................26

United States v. Daidone,
    471 F.3d 371 (2d Cir. 2006) .......................................................................................................21

United States v. Turkette,
    452 U.S. 576 (1981).....................................................................................................................14

United States v. Viola,
    35 F.3d 37 (2d Cir.1994) .............................................................................................................25

United States v. Yanotti,
    23 N.Y.2d 592 (2d Cir. 2008) ...............................................................................................13,25

Wexler v. Allegion (UK) Ltd.,
    374 F. Supp. 3d 302 (S.D.N.Y. 2019)........................................................................27

Williams v. Williams,
    541 F.3d 112 (N.Y. 1969)......................................................................................27

## PRELIMINARY STATEMENT

Defendant Wigdor LLP ("Wigdor" or "Defendant") respectfully submits this memorandum of law in support of its motion for sanctions, pursuant to Fed. R. Civ. P. 11, against Plaintiff Leon Black ("Black") and his counsel, John B. Quinn, Michael B. Carlinsky, Jennifer J. Barrett, and Ryan A. Rakower of Quinn Emanuel Urquhart & Sullivan, LLP, and Susan Estrich of Estrich Goldin LLP.

Wigdor is a law firm that represents sexual assault victims, <u>and currently represents Guzel Ganieva ("Ms. Ganieva") -- the only other named Defendant in this action -- in a first-filed, sexual assault and defamation lawsuit against Black that is currently pending in New York State Supreme Court</u>. It is obvious from the face of his Complaint in <u>this</u> action that Black commenced this lawsuit in an improper attempt to interfere with Wigdor's ability to represent Ms. Ganieva in her first-filed state court case, and to retaliate against Wigdor for representing Ms. Ganieva in that case.

As discussed more fully herein, and in Wigdor's pending motion to dismiss, Black and his counsel know that there is no evidentiary support or good-faith basis for their contrived and defective "RICO" and "defamation" claims against Wigdor, and that the claims are frivolous as a matter of law. Indeed, the lack of legal or evidentiary support for Black's claims against Wigdor is clear from the face of Black's Complaint. It is also clear that Black and his counsel commenced this action for an improper purpose, considering the obvious retaliatory nature of Black's claims against <u>his adversary's counsel</u> in a first-filed case, and considering that Black's "factual" allegations against Wigdor in this action are, at once, outrageously scandalous, totally conclusory, and alleged in all material respects "upon information and belief" -- except without any actual "information" to support his supposed "belief".

Black and his counsel are well-aware that Wigdor is not -- as they allege -- a constituent of any purported racketeering enterprise. Quite to the contrary, over the course of the past nine years,

1

Mr. Carlinsky himself has referred numerous clients to Wigdor, including his own relatives, and has repeatedly sought the advice and assistance of the Firm's named partner, Douglas Wigdor, on various matters. Mr. Carlinsky referred one such client to Wigdor just this past June, only four months before he and his colleagues lent their names to a federal Complaint alleging Wigdor to be part of a racketeering enterprise. Nor is there any basis for Black or his counsel to allege that Wigdor acted improperly in any manner in connection with its representation of Ms. Ganieva in her first-filed state court action. Indeed, Wigdor understands that Quinn Emanuel partner Alex Spiro himself sought to represent Ms. Ganieva in connection with her state court case against Black, before she decided to retain Wigdor.

It is no surprise that a billionaire faced with allegations of sexual assault would want to use his fortune to change the subject by retaliating against his accuser and her representatives in a very public manner. However, zealous representation does not equate to or excuse the filing of frivolous, harassing or retaliatory litigation, or "undignified or discourteous conduct" "[i]n appearing as a lawyer" before the Court.  See Fed. R. Civ. P. 11; New York Rule of Professional Conduct 3.2 ("RPC"); RPC 3.3(f)(ii). Even so, Black's counsel presented a pleading to the Court containing RICO and defamation claims against Wigdor that they know have no legal or factual basis.  Courts have repeatedly said such conduct has no place in the practice of law, and is sanctionable.

Accordingly, and as set forth below, Rule 11 sanctions are warranted.

## STATEMENT OF RELEVANT FACTS

### I.      The Parties

Plaintiff Black is the co-founder and former chairman of the private equity firm Apollo Global Management, has a net worth in excess of $10,000,000,000, and himself alleges that he

engaged in an extramarital relationship with Ms. Ganieva that lasted at least six years. See Complaint, Docket No. 1, at ¶ 1. He describes their relationship as "regrettable" in the first sentence of his pleading, and admits to having paid Ms. Ganieva millions of dollars after it ended, allegedly in exchange for her agreement "not to make good on her threat to destroy him". Id., at ¶ 1 and 2.

Defendant Wigdor is a well-known law firm that, among other things, specializes in cases of sexual harassment and sexual misconduct, and is currently representing Ms. Ganieva in connection with her first-filed New York State Supreme Court lawsuit against Black for defamation, defamation per se, intentional infliction of emotional distress, and gender-motivated violence, which was filed on June 1, 2021 under Index No. 155262/2021 (the "State Court Action").

## II.    Ms. Ganieva's First-Filed State Court Action Against Black

In Ms. Ganieva's State Court Action[1] she alleges that, beginning in 2008, Black sexually assaulted her for years, and used his immense wealth and power to intimidate and force her into silence. Ms. Ganieva further alleges in the State Court Action that in 2015, after these repeated sexual assaults, she signed -- under duress and without being afforded the right to obtain the advice of independent counsel -- a purported non-disclosure agreement (the "NDA") with Black. The general terms of the NDA were that Black would pay Ms. Ganieva a monthly stipend and forgive his previous loans to her in exchange for Ms. Ganieva's silence. See State Court Complaint, Gershenoff Decl., Exhibit "1", at ¶¶ 198-215. Thereafter, Black paid Ms. Ganieva a monthly stipend from late 2015 through March 2021, at which point the payments stopped. Id. at ¶¶ 216-218. The payments stopped in March 2021 because, on March 17, 2021, Ms. Ganieva broke her silence

---

[1] Ms. Ganieva's first amended complaint in her State Court Action is attached to the accompanying Declaration of Max Gershenoff, Esq. ("Gershenoff Decl.") as Exhibit "1".

regarding Black, and posted on Twitter that he had sexually abused her for years. <u>Id.</u> at ¶¶ 222-226.

The State Court Action goes on to detail how, on April 8, 2021, Bloomberg published an article containing a statement by Black in which he falsely contended that his "affair" with Ms. Ganieva was "consensual", and that "any allegation of harassment or any other inappropriate behavior is fabricated". Black also falsely stated to Bloomberg that he supposedly had been "extorted by Ms. Ganieva for many years and [that he] made substantial monetary payments to her, based on her threats to go public" about their relationship. Gershenoff Decl., Exhibit "1", at ¶¶ 227-229.

On June 1, 2021, as the result of these false and defamatory statements, Ms. Ganieva -- through her counsel, Wigdor -- commenced the State Court Action. That action is at the very beginning of discovery, and Black and his counsel know that the claims there have not yet been adjudicated. Not only is this case objectively premature as a result, but it is also without basis in fact or law. Their sole purpose in bringing it was to provide cover to publicly smear Wigdor and Ms. Ganieva in the media with false and malicious accusations of RICO violations in an effort to deflect attention from Black.

### III.  <u>Black's Contrived and Retaliatory Claims Against Wigdor and Ms. Ganieva in the Present Case</u>

In obvious retaliation for Ms. Ganieva's first-filed State Court Action, Black commenced the present action on October 28, 2021, with Ms. Ganieva and Wigdor as the only specifically-identified Defendants. <u>See</u> Complaint, Docket No. 1, <u>passim</u>. Though Black's Complaint is suffused in conclusory recrimination, Black's only "factual" allegations against Wigdor in this case amount to the following:

(i)    Wigdor represents Ms. Ganieva in her State Court Action, and has filed pleadings on her behalf in the State Court Action that supposedly contain false allegations of

sexual abuse, sexual intimidation, and sexual assault. <u>See</u> Complaint at ¶¶ 91, 92, and <u>passim</u>.

(ii) Upon "information and belief", Wigdor supposedly conspired with Ms. Ganieva, a completely unidentified litigation funder (the "Funder"), and completely unidentified public relations operatives (the "Flacks"), in order to extort money from Black. <u>See</u> Complaint, <u>passim</u>. In this context, Black's only "support" for the conclusory allegation that Wigdor conspired with Ms. Ganieva, the unidentified "Flacks", and the similarly unnamed "Funder", boils down to the following:

(a) Wigdor filed the State Court Action on behalf of Ms. Ganieva, in its capacity as her counsel. <u>See</u> Complaint at ¶¶ 91, 92, and <u>passim</u>.

(b) Wigdor "assisted" Ms. Ganieva -- in some totally unspecified way -- in her efforts to file a report of Black's misconduct with the Manhattan District Attorney's office. <u>See</u> Complaint at ¶¶ 78-81, 92(i), 93(d), 97(d).

(c) "[O]n information and belief", Wigdor somehow "caused" -- in some totally unspecified way -- the unidentified "Flacks" to disseminate Ms. Ganieva's complaint in the State Court Action, and somehow "caus[ed]" the unidentified Flacks -- again, in some totally unspecified way -- to tell the press that the Manhattan District Attorney's office had opened an investigation into Black. <u>See</u> Complaint at ¶¶ 91(k), 92(h), 96(d), 97(d).

(d) "[O]n information and belief", Wigdor accepted some totally unquantified payment from the completely unidentified "Funder" in consideration for Wigdor's representation of Ms. Ganieva. <u>See</u> Complaint at ¶¶ 10, 92(j), 93(e), 94(f), 97(f).

(iii) At some unspecified times, in some unspecified places, Jeanne Christensen ("Ms. Christensen") -- a partner at Wigdor -- supposedly made statements to mostly unspecified persons:

(a) "branding" Black as a "sexual predator";

(b) "inviting prosecutors to 'go after' him"; and

(c) "accusing Black of 'heinous conduct' towards Ms. Ganieva and of "intimidating" her. <u>See</u> Complaint at ¶ 122.

(iv) On the Wigdor firm website, Ms. Christensen stated -- in reference to Ms. Ganieva's State Court Action against Black -- that "[t]his case is the epitome of why #MeToo exists." <u>See</u> Complaint at ¶¶ 52, 122.

Based on these thinly-pleaded allegations, Black asserts causes of action against Wigdor for substantive civil RICO violations under 18 U.S.C. § 1962(c), for conspiracy to commit substantive RICO violations under 18 U.S.C. § 1962(d), and for defamation per se. Complaint at ¶¶ 87-127.

## IV.    **Wigdor's Compliance with Fed. R. Civ. P. 11(c)**

On December 14, 2021, Wigdor's counsel served Black and his counsel with this motion as required by Fed. R. Civ. P. 11(c), together with a "safe harbor" letter advising them that -- unless the claims against Wigdor were withdrawn within 21 days -- Wigdor would proceed to move for sanctions. However, Black's counsel advised Wigdor's counsel that they will not withdraw their frivolous complaint against the Defendants, and did not withdraw or correct their claims within the safe harbor period.

## **ARGUMENT**

## I.    **The Relevant Standards**

Rule 11(b) provides, in relevant part, that an attorney presenting a pleading to a court must "certify that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

(1)    the pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

See Fed. R. Civ. P. 11(b)(1)-(3).

Thus, a pleading, motion, or other paper will violate Rule 11 "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-

grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." <u>Abdelhamid v. Altria Group, Inc.</u>, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (internal quotations omitted); <u>see also</u> <u>Steele v. Polymer Rsch. Corp. of Am.</u>, 1987 WL 12819 at *2 (S.D.N.Y. 1987) ("Rule 11, then, imposes upon attorneys an affirmative duty of prefiling inquiry into the facts and the law."). Rule 11(c) provides for sanctions based upon violations of Rule 11(b). "Sanctions shall be imposed against an attorney, his client, or both" when a pleading violates Rule 11. <u>Greene v. Donovan</u>, 2007 U.S. Dist. LEXIS 49932 at * 5 (S.D.N.Y. 2007).

As is particularly relevant in this case, "[i]t is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details but you must have the outline of a claim at the beginning." <u>Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.</u>, 2009 U.S. Dist. LEXIS 82403, *13 n.5 (E.D.N.Y. 2009), <u>quoting</u> <u>Szabo Food Serv., Inc. v. Canteen Corp.</u>, 823 F.2d 1073, 1083 (7th Cir. 1987); <u>see also</u> <u>Flemming v. Port Auth. of N.Y. & N.J.</u>, 2021 U.S. Dist. LEXIS 44411 at * 4 (E.D.N.Y. 2021)(under Rule 11, "a party cannot allege facts to make out the substance of a claim when it has an insufficient basis to make those allegations in the hope that discovery may fortuitously give it a good faith basis, unless it has reason to believe that will in fact occur.")(Internal quotations and citation omitted).

Rule 11 sanctions are especially appropriate in cases, like this one, in which plaintiffs allege unsubstantiated racketeering conspiracies. As this Court has noted when granting Rule 11 sanctions in a RICO action, "Rule 11 is particularly important in [RICO] cases because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants." <u>Charles v. Levitt</u>, 2016 U.S. Dist. LEXIS 95725 at * 24 (S.D.N.Y.

2016)(internal quotations and citation omitted)(Engelmayer, J.); see also Malvar Egerique v. Chowaiki, 2020 U.S. Dist. LEXIS 73060 at * 82 (S.D.N.Y. 2020) (same, and collecting cases).

In fact, "improper RICO claims are *even more egregious when levied against a law firm*: '[t]he consequences to a law firm, in particular, are nothing short of disastrous.... [E]thical lawyers have no business bringing RICO allegations against another lawyer as a tool to force settlement negotiations, or as a litigation strategy in a contested business matter.'" LCS Grp., LLC v. Shire LLC, 2019 U.S. Dist. LEXIS 43255 at * 43 - * 44 (S.D.N.Y. 2019)(emphasis added)(internal quotations and citation omitted). Accordingly, "[c]ourts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to have been frivolous." Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2003 U.S. Dist. LEXIS 16908 at * 13 (S.D.N.Y. 2003).

## II.   Black's Claims Against Wigdor Violate Rule 11(b)(3)

It is clear that neither Black nor his counsel conducted any reasonable pre-filing inquiry into the "factual" contentions regarding Wigdor in this case, and that their conclusory allegations against Wigdor lack any evidentiary support. Accordingly, the claims violate Rule 11(b)(3).

For example, the supposed factual basis for Black's RICO claims against Wigdor is that Wigdor conspired with Ms. Ganieva, a completely unidentified (and fictitious) "Funder", and completely unidentified (and equally fictional) "Flacks", in order to extort money from Black. However, Black obviously has no evidence to demonstrate that the purported "Funder" and "Flacks" even exist, much less any evidence to support his baseless conspiracy allegations. To the contrary, even the most fundamental "fact" regarding the completely unidentified Funder and Flacks -- i.e., their existence -- is pleaded "upon information and belief". However, and in keeping with the fact that Black and his counsel failed to conduct any reasonable pre-filing inquiry here,

there is no "information" alleged to support the "belief" that that the hypothetical "Funder" and "Flacks" actually exist. Instead, Black and his counsel simply pile untethered conclusion upon conclusion in an attempt to hypothesize the so-called "Funder" and "Flacks" into existence. This is totally insufficient, as any legitimate pre-suit inquiry would have shown.

Nor, for that matter, have Black and his counsel pleaded any facts to plausibly suggest that Wigdor knew about any Funder, communicated with a Funder, received money from a Funder, or otherwise had anything whatsoever to do with any Funder. Not a single transaction or communication between Wigdor and the completely unidentified Funder is alleged, much less with any plausibility. The absence of any substantive factual allegations to support Black's baseless conspiracy claims underscores the extent to which: (i) he and his counsel failed to make reasonable inquiry; yet nonetheless (ii) proceeded to assert scandalous and conclusory claims against Wigdor -- their adversary's counsel -- in violation of Rule 11.

In keeping with the fact that they have no evidentiary support and conducted no legitimate pre-suit inquiry before asserting scandalous and conclusory "RICO" claims against their adversary's counsel, Black and his lawyers -- after filing this case -- unsuccessfully tried to persuade the Court to schedule an initial conference, and to allow discovery to proceed, before Wigdor was even due to respond to Black's claims. See Docket No. 16. Their obvious goal was to try and conduct a post-hoc, frantic search for some "evidence" to support their baseless claims, before Wigdor could file a motion to dismiss that would reveal the claims to be meritless. The Court properly denied their request. See Docket No. 17 ("The Court shares counsel's commitment to expeditiously litigating this case. However, it is generally not the Court's practice to hold an initial conference, and permit discovery to proceed, before receiving a response to the complaint.")

In fact, no amount of investigation could possibly have led Black or his counsel to a good-faith belief that Wigdor had any knowledge of, or involvement with, any purported "Funder". Instead -- as they were well-aware when they commenced this suit, and as has been confirmed from discovery produced in Ms. Ganieva's first-filed State Court Action -- Wigdor is representing Ms. Ganieva pursuant to a contingency fee agreement. No one has paid or reimbursed Wigdor for anything in connection with its representation of Ms. Ganieva. Copies of the relevant discovery materials from the State Court Action are attached to the Gershenoff Decl. as Exhibit "2".

Along similar lines, and contrary to the conclusory speculation masquerading as "facts" in Black's Complaint, Wigdor has not worked with any public relations or social media professionals, or "Flacks", in connection with its representation of Ms. Ganieva in the State Court Action. Further, Wigdor knows of no public relations or social media professionals who have been retained by Ms. Ganieva or on her behalf. A careful review of Black's Complaint in this case reveals only six unfounded assertions -- not facts, but baseless conclusions -- to support the false claim that Wigdor has been working on Ms. Ganieva's case with any supposed "Flacks": specifically, that Ms. Ganieva and Wigdor supposedly needed the Flacks to: (i) "draft … Tweets with the right hashtags[2]; and then to make sure that (ii) the lies were then sold to the media; (iii) the right reporters were recruited; (iv) the right interviews were set up; (v) the right calls were made; and (vi) the right materials were distributed to inflict the maximum amount of damage and extort the maximum amount of money from Black."

Not a single actual fact is alleged to support these speculative and conclusory assertions, and -- indeed -- these claims are implausible on their face. It is frivolous for Black to allege -- as

---

[2] This, despite the fact that the only hashtags alleged in Black's Complaint are "#MeToo" and "#LeonBlack". See Complaint, ¶ 46.

he does, with the imprimatur of his counsel -- that Ms. Ganieva needed the assistance of a "Flack" to use the hashtags "#MeToo" or "#LeonBlack", while simultaneously alleging that she is a Columbia University graduate who fully understood the implications of a purported written contract that Black coerced her to sign. It likewise is frivolous to allege that Wigdor engaged in a criminal conspiracy with completely unidentified Flacks based on Ms. Ganieva's use of these hashtags on Tweets that were sent in March 2021 -- **before** Ms. Ganieva ever retained Wigdor. See Gershenoff Decl., Exhibit "2". In short, and as would have been clear from any legitimate pre-suit inquiry, **Wigdor did not even represent Ms. Ganieva at the time of the Tweets.** [3]

The baseless and conclusory allegations that Wigdor conspired with a (completely unidentified) Funder or Flacks are independently sufficient to render sanctionable each of Black's claims against Wigdor. However, there are various other allegations in Black's Complaint related to Wigdor that were proffered despite Black and his counsel's actual knowledge that they are false. Among these additional frivolous allegations is that Wigdor "decline[d] the opportunity to review the transcripts, to listen to the tapes", to find out if Ms. Ganieva's claims are bogus. See Complaint, ¶ 73.

The truth of the matter, which both Black and his counsel know, is that Wigdor repeatedly requested these documents and audio recordings, as well as the purported written agreement

_____

[3] In this context, it is worthwhile to note that -- in the context of Ms. Ganieva's State Court Action -- Black and his counsel seem to have baselessly speculated that the Rubinstein Public Relations Firm was a purported "Flack". However, and as they know, the Rubinstein Public Relations Firm has flatly denied any involvement with Ms. Ganieva in response to their subpoena in the State Court Action. Others that Black and his counsel seem to believe to be a "Funder" or "Flacks" likewise have categorically denied any involvement. For example, and as Black and his counsel know, Michael Rubin, Paul Holmes, and Josh Harris, along with the Rubinstein Public Relations Firm, have all denied any involvement with Ms. Ganieva or her dispute with Mr. Black. This underscores the extent to which Black's "Funder" and "Flack" claims -- pleaded on unspecified "information and belief", with zero identification of the purported "Funder" or "Flacks" -- lack any good faith basis.

between Black and Ms. Ganieva that forms the true basis of this case. It was Black's counsel that refused to produce any of these documents for over five months, feigning confidentiality concerns and the need for a protective order, but failing to move for any such relief. What is more, and as Black and his counsel know or should know, there is ample evidence to demonstrate that Black's "extortion" claims against Wigdor are contrived and false. These materials include the purported written agreement between Black and Ms. Ganieva, as well as purported transcripts and audio recordings of their discussions -- including materials which, to this day, Black refuses to produce. In fact, there is not a single allegation to suggest that Wigdor ever made any pre-filing demand for money from Black in exchange for silence or confidentiality. The mere filing of a lawsuit without any pre-litigation contact with the defendant, which is all that happened here, is not and cannot constitute extortion.

Because there is an utter lack of evidentiary support for Black's claims against Wigdor, the claims are materially false, and the claims clearly were not properly investigated, the claims violate Rule 11(b)(3). See, e.g., O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996) (court may impose sanction if a particular allegation is utterly lacking in support); Chien v. Skystar Bio Pharm. Co., 256 F.R.D. 67, 74 (D. Conn. 2009), aff'd, 378 F. App'x 109 (2d Cir. 2010) (Rule 11(b)(3) violated where complaint contained material falsehoods); see also Bletas v. Deluca, 2011 U.S. Dist. LEXIS 133132 at * 41 (S.D.N.Y. 2011) (factual contentions regarding defendants' alleged criminal activity sanctionable where -- as in the present case -- they rested on "gross speculation").

## III.   Black's Claims Against Wigdor Violate Rule 11(b)(2)

Furthermore, the claims against Wigdor are unwarranted by existing law, or any nonfrivolous argument to extend, modify, or reverse existing law or establish new law. As a result,

the claims against Wigdor also violate Rule 11(b)(2). Indeed, there is ample Second Circuit precedent readily available to any lawyer conducting pre-litigation research that RICO claims against lawyers for filing suit on behalf of clients are not permitted.

**A.      The Civil RICO Claims Violate Rule 11(b)(2)**

In this case, Black attempts to state claims against Wigdor for substantive RICO violations under 18 U.S.C. § 1962(c), and for conspiracy to commit substantive RICO violations under 18 U.S.C. § 1962(d). To state a claim under Section 1962(c), Black was required to plausibly and sufficiently allege that: (i) Wigdor; (ii) through a pattern of racketeering activity; (iii) directly or indirectly conducted or participated in; (iv) an enterprise; (v) the activities of which affect interstate or foreign commerce. See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983). In addition, Black was required to allege that he was injured in his business or property by reason of the conduct constituting the RICO violation. See Moss, supra, 719 F.2d at 17. To state a claim under Section 1962(d), Black was required to sufficiently allege that Wigdor "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." United States v. Yanotti, 541 F.3d 112, 121-22 (2d Cir. 2008).

However, and as discussed below (and in Wigdor's pending motion to dismiss), Black's civil RICO claims against Wigdor are completely defective for multiple, independent reasons. As his attorneys, his counsel either knew or should have known of these irremediable defects, but they nonetheless proceeded to assert the claims on Black's behalf.

First, Black has failed to properly allege a legally-cognizable racketeering enterprise in support of his purported RICO claims. In this context, although a RICO enterprise can include legal entities such as corporations, it may also constitute "any union or group of individuals associated in fact" such as "a group of persons associated together for a common purpose of engaging in a course of

conduct." United States v. Turkette, 452 U.S. 576, 580-581 (1981). The alleged RICO enterprise must, however, be distinct from the person or persons purportedly conducting the affairs of the enterprise. See, e.g., First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004). Additionally, an association-in-fact enterprise -- such as the one Black and his lawyers attempt to allege in the present case -- "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). Moreover, to sufficiently plead an association-in-fact enterprise, a RICO plaintiff must allege facts to plausibly demonstrate that the association-in-fact enterprise, as a whole, was in some way different from and had some existence beyond the sum of its parts and the underlying pattern of racketeering activity. See, e.g., Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, 2021 U.S. Dist. LEXIS 126819 at * 34 - * 36 (S.D.N.Y. 2021) (recommending dismissal of civil RICO claims where -- as in the present case -- the complaint did not provide any factual information regarding "John Doe" members of association-in-fact enterprise, failed to allege the nature and extent of the relationships between and among the members of the supposed enterprise, and also failed to allege that the purported enterprise had any existence independent of the alleged racketeering activity of mail and wire fraud); Cont'l Fin. Co. v. Ledwith, 2009 U.S. Dist. LEXIS 52618 at *17 (S.D.N.Y. 2009) (pleading insufficient where plaintiffs only alleged that together defendants engaged in predicate acts); Greenberg v. Blake, 2010 U.S. Dist. LEXIS 57617 at *18-*21 (E.D.N.Y. 2010) (complaint alleging association-in-fact enterprise must provide "solid information" to demonstrate actual existence of enterprise beyond the individual defendants, acting together, and "[c]onclusory allegations that there was an enterprise are wholly insufficient.").

In the present case, Black and his counsel rely <u>solely</u> on conclusory statements -- often pleaded "upon information and belief" -- in an attempt to conjure up an association-in-fact racketeering enterprise consisting of none other than Wigdor, Ms. Ganieva, the purported "Funder", and the purported "Flacks". However, there are no allegations to plausibly suggest that the purported association-in-fact enterprise was distinct from Wigdor, Ms. Ganieva, the purported "Funder", and the purported "Flacks", who are the persons named as defendants on the RICO claim and who supposedly conducted the affairs of the "enterprise". Nor are any facts alleged to demonstrate, or even suggest, that the supposed "enterprise" had any existence beyond the vaguely-alleged pattern of racketeering activity. Nor are there any facts alleged to plausibly suggest that two main constituent parts of the contrived "enterprise" -- <u>i.e.</u>, the "Funder" and the "Flacks" -- ever existed in the first place. Nor, by extension, are there any facts alleged to plausibly suggest that there was ever any common purpose between and among the members of the enterprise, or any relationships, other than the attorney-client relationship between Wigdor and Ms. Ganieva, among those associated with the supposed enterprise. Pursuant to the standards set forth above, these allegations are totally insufficient to plausibly allege a racketeering enterprise.

    <u>Second</u>, a RICO plaintiff must plead facts establishing that the defendant "participated in the affairs" of the RICO enterprise. <u>See</u> <u>Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.</u>, 30 F.3d 339, 344 (2d Cir 1994). Participation in the RICO context means "participation in the operation or management of the enterprise." <u>De Falco v. Bernas</u>, 244 F.3d 286, 309 (2d Cir. 2001), <u>citing</u> <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179-85 (1993). Under the Supreme Court's "operation and management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." <u>Id.</u>  In the Second Circuit, the "operation and management" test is extremely rigorous. <u>See</u>, <u>e.g.</u>, <u>Kumaran v. Nat'l Futures</u>

Ass'n, 2021 U.S. Dist. LEXIS 177784 at fn. 35 (S.D.N.Y. 2021) (noting that the "'operation and management' test is an extremely rigorous test, and it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise" nor "simply provide goods and services that ultimately benefit the enterprise.") Conclusory "operation and management" allegations are insufficient. See, e.g., Tech. in P'ship v. Rudin, 2011 U.S. Dist. LEXIS 114127, at *11-*13 (S.D.N.Y. Oct. 3, 2011).

In his Complaint, however, Black does not plead any facts sufficient to plausibly demonstrate that Wigdor participated in the operation and management of the theoretical "enterprise", the existence of which is itself largely alleged "upon information and belief". To the contrary, all of the substantive allegations against Wigdor boil down to vague and conclusory claims to the effect that Wigdor acted improperly while representing Ms. Ganieva in her lawsuit against Black. However, these kinds of conclusory allegations do not establish the "participation" element of Black's obviously malicious RICO claims against Wigdor, his adversary's lawyers. See, e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) (dismissing RICO claims against attorneys because provision of legal services to enterprise in relation to fraudulent transaction did not amount to management or direction of the enterprise); Santana v. Adler, 2018 U.S. Dist. LEXIS 51401 at fn 6. (S.D.N.Y. 2018), adopted by 2018 U.S. Dist. LEXIS 79279 (dismissing RICO claims against attorney, and holding that attorney's provision of professional services to alleged RICO enterprise was not enough to establish his participation in the operation and management of the enterprise); Madanes v. Madanes, 981 F. Supp. 241 (S.D.N.Y. 1997) (recognizing the provision of important legal services to a racketeering enterprise is not the same as directing the affairs of an enterprise even where attorney allegedly recommended certain courses of fraudulent behavior or had substantial persuasive power to induce management of the enterprise to take certain actions).

Furthermore, and as discussed above, Black's inchoate allegations to the effect that Wigdor worked in tandem with the unnamed "Funder" and mystery "Flacks" are totally insufficient to demonstrate, or even suggest, that Wigdor directed the affairs of any racketeering enterprise.

Third, Black has failed to allege any facts to demonstrate, or even suggest, that Wigdor engaged in any predicate acts of racketeering activity. In particular, Black -- with the endorsement of his counsel -- contends that Wigdor engaged in Hobbs Act violations by: (i) filing state court complaints on behalf of Ms. Ganieva; (ii) "causing" the completely unidentified "Flacks", through some unspecified means, to disseminate the complaints to the media; (iii) "assisting" Ms. Ganieva, in some unspecified way, in making a false report about Black to the Manhattan District Attorney's Office; and (iv) "causing" the unidentified Flacks -- again, through some unspecified means -- to tell the media that the District Attorney's Office had opened a criminal investigation into Black. Black -- again, with his counsel's imprimatur -- goes on to allege that these acts somehow "attempt[ed] to induce Black into providing additional payments under" completely unspecified "fraudulent pretenses through interstate mails and/or wires", which somehow supposedly amounts to "mail and wire fraud".

The implausibility of these conclusory allegations is highlighted by the fact that Wigdor is not alleged to have made any pre-filing demand for money from Black under threat of going public or proceeding with Ms. Ganieva's state court action. In fact, when Ms. Ganieva retained Wigdor, she had already gone public with her Tweets. See Gershenoff Decl., Exhibit "2". Instead, all Wigdor did was file suit on behalf of its client, Ms. Ganieva. In order for Wigdor to secure any monetary recovery in connection with Ms. Ganieva's claims against Black, she will have to prevail in the state court action. That is not extortion, it is litigation, and every lawyer knows it.

Whatever else can be said about the claims in Black's Complaint, they are not sufficient to allege that Wigdor engaged in any predicate acts of racketeering activity. Litigation activity, and even

the filing of frivolous or malicious complaints, does not constitute extortion. See, e.g., Ritchie v. N. Leasing Sys., 2016 U.S. Dist. LEXIS 40537 at *38 (S.D.N.Y. 2016)(collecting cases). Nor would it be a Hobbs Act violation even if, as Black contends, Wigdor "caused" the "Flacks" to publicize the complaints or the District Attorney's investigation to the media. Hobbs Act violations require -- among other things -- the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. See 18 U.S.C. § 1951(b). Here, however, Black's allegations regarding the dissemination of Ms. Ganieva's complaints, or information regarding a District Attorney investigation, are not sufficient to suggest that Wigdor did any of these things.

Black's allegations likewise are insufficient to demonstrate that Wigdor engaged in any mail or wire fraud. While a plaintiff alleging that the mails or wires were used "in furtherance of" a fraudulent scheme need not plead each individual mailing or wire with particularity, it nonetheless must plead the underlying fraudulent misrepresentations and omissions with the requisite particularity, including the who, what, when, where, and why of the fraudulent misrepresentations or omissions. See, e.g., Sanchez v. ASA Coll., Inc., 2015 U.S. Dist. LEXIS 73222 at * 16 - * 17 (S.D.N.Y. 2015) (where RICO plaintiff alleges that mailings did not themselves contain false or misleading information, but instead were used in furtherance of a fraudulent scheme, it must still delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme); Lakonia Mgmt., Ltd. v. Meriwether, 106 F. Supp. 2d 540, fn. 31 (S.D.N.Y. 2000)(dismissing RICO claim where plaintiff failed to sufficiently plead an underlying scheme to defraud and, thus, "even if defendants' communications were simply 'in furtherance of a master plan', plaintiff's allegations of fraud would still violate Rule 9(b).").

Here, however, Black never gets around to explaining how Wigdor used the mails or wires in furtherance of any fraudulent scheme. What was the supposed fraud? Who relied on any fraudulent misrepresentations? When were the misrepresentations made? To whom? How was Black damaged as a result? Black and his counsel do not say, which underscores the conclusory and improper nature and purpose of the retaliatory "RICO" claims they have asserted against opposing counsel.[4]

Furthermore, where more than one defendant is charged with fraud in the context of a RICO claim, the plaintiff must "particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F. Higgins, Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008); see also Foster v. 2001 Real Estate, 2015 U.S. Dist. LEXIS 159489 at * 20, fn. 1 (S.D.N.Y. 2015) (dismissing civil RICO claims where the complaint did not explain how defendants were "alleged to have engaged in the required two predicate acts, a showing that is required"). Despite this requirement, none of the allegations in Black's Complaint plausibly ascribe any particular misrepresentation or omission to Wigdor.

What is more, courts in the Second Circuit and elsewhere have consistently refused to recognize litigation activity on behalf of a client as wire or mail fraud simply because the mails or wires were used in connection with the litigation. See Dekom v. Fannie Mae, 846 F. App'x 14 (2d Cir. 2021)("allegations of frivolous, fraudulent, or baseless litigation activities -- without more -- cannot constitute a RICO predicate act")(internal citations omitted); FindTheBest.com v. Lumen View Tech. LLC, 20 F. Supp.3d 451 (S.D.N.Y. 2014), aff'd, 811 F.3d 479 (2016) (dismissing

---

[4] It is unclear how there could even be RICO fraud here.  Wigdor caused an action to be filed against Black in state court.  Black has denied liability.  That matter will now be adjudicated, and a decision ultimately reached on the merits.  None of that is fraud.  It is litigation.

RICO claim against lawyer because mail or wire transmission of litigation documents such as pleadings did not constitute predicate acts of mail or wire fraud); see also Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010), aff'd, 443 Fed. Appx. 582 (2d Cir. 2011)("persuasive authority in this and other jurisdictions suggests that the litigation activities alleged in this [c]omplaint cannot properly form the basis for RICO predicate acts").

The recent Second Circuit decision in Kim v. Kimm, 884 F.3d 98 (2d Cir. 2018), which Black's counsel should have reviewed during pre-litigation research, highlights this point. In Kim, much as in the present case, the defendant alleged that attorneys committed mail and wire fraud by preparing, signing, and filing various declarations with the district court, but the district court held that these were litigation activities and therefore could not constitute predicate acts of mail or wire fraud. The Second Circuit affirmed the district court's decision, and held that "allegations of frivolous, fraudulent, or baseless litigation activities -- without more -- cannot constitute a RICO predicate act". See also Dekom v. Fannie Mae, 846 F. App'x 14 (2d Cir. 2021)(same); Butcher v. Wendt, 975 F.3d 236, 241 (2d Cir. 2020)(same). Put another way, "where, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act". Kim, supra at * 105.

As the Kim court observed:

"If litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action," which "would inundate the federal courts with procedurally complex RICO pleadings." Dist. Ct. Op. at 10-11, Appellant App'x at 266-67; see also Nora F. Engstrom, Retaliatory RICO and the Puzzle of Fraudulent Claiming, 115 MICH. L. REV. 639, 696 (2017) (permitting RICO suits based on prior litigation activities would "engender wasteful satellite litigation"). … see also Gabovitch, 1995 U.S. App. LEXIS 32856, at *7-8, 1995 WL 697319, at *3 ("In essence, simply by alleging that defendants' litigation stance in the state court case was 'fraudulent,' plaintiff is insisting upon a right to relitigate that entire case in federal court . . . . The RICO statute obviously was not meant to endorse any such occurrence."). Moreover, endorsing this

interpretation of RICO "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" because "any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." Dist. Ct. Op. at 11, Appellant App'x at 267 (quoting Curtis & Assocs., 758 F. Supp. 2d at 173); see also Engel v. CBS, Inc., 182 F.3d 124, 129 (2d Cir. 1999) (noting the "strong public policy of open access to the courts for all parties and [the need] to avoid ad infinitum [litigation] with each party claiming that the opponent's previous action was malicious and meritless" (internal quotation marks and citations omitted) (second brackets in original)

The principles set forth in Kim are even more compelling here, because the State Court Action has not been resolved in Black's favor, and instead is still ongoing.

Fourth, Black and his counsel do not -- and cannot -- allege any pattern of racketeering activity. Isolated acts of racketeering activity are insufficient to support RICO liability. Rather, the acts of racketeering activity must be sufficient to "constitute a pattern". See, e.g., United States v. Daidone, 471 F.3d 371, 375-376 (2d Cir. 2006). To establish a pattern sufficient to satisfy the statute, a plaintiff not only must allege at least two acts of racketeering activity within 10 years, but also must allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern -- a series of related predicate acts extending over a substantial period of time -- or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

In terms of closed-ended continuity, the time span associated with the allegations made in Black's Complaint falls well short of the mark. Since the Supreme Court's decision in H.J. Inc., the Second Circuit generally has not held a period of fewer than two years to constitute a substantial period of time. See, e.g., First Capital Asset Mgmt, 385 F.3d at 181; see also Reich v.

Lopez, 858 F.3d 55, 60 (2d Cir. 2017)("closed-ended continuity is 'primarily a temporal concept,' Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008), and it requires that the predicate crimes extend 'over a substantial period of time.' H.J., 492 U.S. at 242. Predicate acts separated by only a few months will not do, id.; this Circuit generally requires that the crimes extend over at least two years.") However, to the extent that the basis for Black's conclusory allegations can be deciphered at all, it is clear that all "predicate acts" that are attributed to Wigdor occurred within just the past year.

Black and his counsel are similarly deficient in pleading an open-ended pattern, which requires facts establishing a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999); GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir.1995) (describing open-ended continuity as "past criminal conduct coupled with a threat of future criminal conduct").  To determine the existence of a continuing threat, a court looks at the nature of the enterprise and of the predicate acts. See Cofacredit, 187 F.3d at 242. The Second Circuit has made clear that "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Spool, 520 F.3d at 185. Black's Complaint in this case simply does not contain any facts that would allow a court to draw such a conclusion with respect to Wigdor.

Furthermore, courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern. See, e.g., Sehgal v. Aggarwal, 2021 U.S. Dist. LEXIS 154043 at * 11 (E.D.N.Y. 2021) ("[C]ourts have uniformly and consistently held that schemes involving a single, narrow

purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.")(Internal quotations and citation omitted). This is because a single narrow scheme with one victim and limited participants does "not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO". Ritter v. Klisivitch, 2008 U.S. Dist. LEXIS 58818 at * 32 (E.D.N.Y. 2008); see also Spool, 520 F.3d at 186 (holding that "inherently terminable" scheme does not pose threat of continued criminal activity thereby precluding Plaintiff from alleging open-ended continuity); Jus Punjabi, LLC v. Get Punjabi, Inc., 2015 U.S. Dist. LEXIS 66006 at * 27 (S.D.N.Y. 2015) (serious, but discrete and relatively short-lived scheme to defraud a handful of victims held insufficient to establish open-ended pattern).

In the present case, even assuming -- for argument's sake -- that Black had sufficiently alleged some predicate acts of racketeering activity (and he has not), there is not a single well-pleaded fact to suggest that anyone other than himself was targeted or affected by the alleged conduct. Nor has he pleaded anything to suggest that the Defendants' conduct amounted to anything other than a single, narrow, inherently terminable scheme aimed at obtaining money from him. Considering that Black has, at most, alleged a single, narrow scheme with one victim and limited participants, he does not and cannot allege the existence of any open- or closed-ended pattern of racketeering activity.

Fifth, Black's RICO claims are defective because he has not alleged a cognizable RICO injury. To allege that he was "injured in its business or property by reason of the conduct constituting the RICO violation", Black was obligated to plead facts demonstrating: (i) a clear, definite, and provable amount of damages; (ii) that the damages were proximately caused by Wigdor's alleged racketeering activity; and (iii) that he exhausted his legal and contractual remedies before bringing suit. See, e.g., First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768-770 (2d Cir. 1994); see also

Panabroker Protecting & Indem. Assoc. v. Vneshprombank, 2017 U.S. Dist. LEXIS 159393 at *
10 - * 11 (S.D.N.Y. 2017).

Black's RICO claims against Wigdor do not meet these standards. Though Black and his
counsel allege that he suffered damages in the form of various payments to Ms. Ganieva, and when he
forgave two loans to Ms. Ganieva, they do not, and cannot, allege any facts to demonstrate that these
purported damages are attributable to anything done by Wigdor, much less any "racketeering activity".
To the contrary, any legitimate pre-suit investigation would have revealed that Black sustained all these
purported damages before Ms. Ganieva retained Wigdor to represent her. See Gershenoff Decl.,
Exhibit "2". Moreover, it appears as if Black has failed to exhaust his legal and contractual remedies
before bringing suit, considering that -- as discussed below -- Black's scandalous and conclusory
"RICO" claims are really just dressed up claims for breach of contract.

Sixth, and in particular, despite the efforts by Black and his counsel to conjure the
appearance of a racketeering scheme, it is clear from the Complaint that Black's RICO claims are
merely dressed up claims for purported breach of contract against Ms. Ganieva (a claim that itself
lacks merit). Compare Complaint ¶¶ 87-102, with ¶¶ 128-138. In this context, courts will not hear
putative "RICO" claims, such as those contained in this case, that are really just dressed-up claims
for breach of contract. See, e.g., S.A.R.L. v. Cantamessa USA, Inc., 2013 U.S. Dist. LEXIS
107552, at * 9 (S.D.N.Y. July 27, 2013) ("[T]he allegations in the Complaint that purport to plead
predicate criminal acts sufficient to establish a cause of action under RICO amount merely to a
breach of contract claim [and common business torts], which cannot be transmogrified into a RICO
claim by the facile device of charging that the breach was fraudulent, indeed criminal.")

Seventh, the Complaint in this case fails to plausibly allege that Wigdor engaged in any
racketeering conspiracy. Where, as in the present case, a plaintiff's substantive RICO claims are

subject to dismissal, its RICO conspiracy claims likewise should be dismissed. See, e.g., Rosner v. Bank of China, 528 F. Supp. 2d 419 (S.D.N.Y. 2007)("[b]ecause the Court finds that Rosner does not sufficiently allege a violation of § 1962(a) or § 1962(c), the Court need not consider § 1962(d), as a complaint must adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d).")

In any case, to state a claim under Section 1962(d), a plaintiff must allege that the defendant "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." United States v. Yanotti, 541 F.3d 112, 121-22 (2d Cir. 2008). As set forth above, Black has not sufficiently pleaded any predicate acts by Wigdor, much less a pattern of racketeering activity. Nor has Black pleaded any facts to demonstrate that Wigdor agreed to participate in any predicate acts, or even knew about any predicate acts. See United States v. Viola, 35 F.3d 37, 44-45 (2d Cir.1994)(to establish a RICO conspirator's knowledge, it is sufficient that the alleged conspirator knew what other conspirators "were up to" or that the situation "logically would lead him to suspect he was part of a larger enterprise"). Indeed, Black has not even managed to plead facts to demonstrate the existence of the "Funder" or "Flacks", let alone any facts to show that Wigdor ever conspired with them.

While it may be that a conspiracy is rarely proven by direct evidence, and is often established by circumstantial evidence and the reasonable inferences to be drawn therefrom, conclusory allegations of a conspiracy that "rest on rank speculation" are insufficient to support a claim under RICO. Wendt, supra, 975 F.3d at 241 (finding that the plaintiff's "allegations in support of his conspiracy claims ... [were] uniformly conclusory, speculative, and implausible ... [and therefore were] inadequate to support his conspiracy claims" under RICO). In the present case, Black's conclusory conspiracy claims are clear examples of "rank speculation", considering that he does not

even name the purported "Funder" or "Flacks", and alleges even their existence on "information and belief", except without any actual "information" to support his supposed "belief".

Accordingly, because Black has not pleaded any substantive RICO claims, or that that Wigdor agreed to participate in any predicate acts, his Section 1962(d) claims lack any merit.

<u>Eighth</u>, and more generally, Black's RICO claims against Wigdor are barred by the <u>Noerr-Pennington</u> doctrine, inasmuch as they are obviously based on Wigdor's representation of Ms. Ganieva in connection with her first-filed State Court Action. Under the <u>Noerr-Pennington</u> doctrine, federal Courts recognize that, generally, claims stemming from a party's petition to the government are immune from liability. <u>See</u>, <u>e.g.</u>, <u>Tuosto v. Philip Morris USA Inc.</u>, 2007 U.S. Dist. LEXIS 61669, *15 (S.D.N.Y. 2007); <u>Matsushita Electronics Corp. v. Loral Corp.</u>, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). Petitioning activity includes complaints filed in civil actions. <u>See</u>, <u>e.g.</u>, <u>Ginx, Inc. v. Soho Alliance</u>, 2010 U.S. Dist. LEXIS 64313, *55-57 (S.D.N.Y. 2010).

Though there is a "sham litigation" exception to the <u>Noerr-Pennington</u> doctrine, the burden is on the plaintiff to allege facts showing the applicability of the sham exception. <u>See</u>, <u>e.g.</u>, <u>Primetime 24 Joint Venture v. National Broadcasting Company</u>, 219 F.3d 92, 100-101 (2d Cir. 2000)("Plaintiff must show" that the litigation in question falls within the exception). The burden to demonstrate sham litigation is a heavy one. Here, however, Black alleges no facts (as opposed to conclusions) to plausibly suggest that Ms. Ganieva's state court lawsuit is objectively baseless, that Wigdor had any reason to believe it was objectively baseless, or that the lawsuit was intended to cause harm to Black through the use of the governmental process, as opposed to the outcome of that process, as required to establish the sham litigation exception.

**B.      The Defamation <u>Per</u> <u>Se</u> Claim Violates Rule 11(b)(2)**

Black's defamation <u>per</u> <u>se</u> claim against Wigdor likewise is frivolous and sanctionable. To the extent that it is predicated on the state court pleadings Wigdor filed in its capacity as Ms. Ganieva's counsel, the claim is foreclosed by the New York litigation privilege. In particular, "[i]t is a well-established principle of New York law that statements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy." <u>Marek v. Old Navy (Apparel) Inc.</u>, 348 F. Supp. 2d 275, 281 (S.D.N.Y. 2004); <u>see also</u> <u>Assoun v. Assoun</u>, 2014 U.S. Dist. LEXIS 179762 at * 15 (S.D.N.Y. 2014) (same). The test of "pertinency" is "extremely broad and embraces anything that may possibly or plausibly be relevant or pertinent with the barest rationality, divorced from any palpable or pragmatic degree of probability." <u>Caro Capital, LLC v. Koch</u>, 2021 U.S. Dist. LEXIS 78641 at * 32 (S.D.N.Y. 2021)(Internal quotations and citation omitted).

Black and his counsel clearly are aware that the litigation privilege forecloses Black's defamation claim against Wigdor, and so they try to plead around this issue by characterizing Ms. Ganieva's state court lawsuit against Black as "sham litigation". Under this doctrine, a party that "maliciously institute[s] a judicial proceeding alleging false and defamatory charges" only to "circulate a press release or other communication based thereon" cannot escape liability for defamation by invoking the fair report privilege for judicial proceeding. <u>See</u> <u>Williams v. Williams</u>, 23 N.Y.2d 592, 599, 298 N.Y.S.2d 473 (N.Y. 1969).

However, it is well settled that the <u>Williams</u> exception is "narrow" and does not apply in the absence of factual allegations tending to show that the underlying action "was brought maliciously and solely" for the purpose of later defaming the defendant. <u>See</u>, <u>e.g.</u>, <u>Wexler v. Allegion (UK) Ltd.</u>, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019); <u>Flomenhaft v. Finkelstein</u>, 127

A.D.3d 634, 638 (N.Y. A.D. 1st Dep't 2015). Additionally, the "sham litigation" doctrine is inapplicable where the underlying case has been extensively litigated. <u>See</u> <u>Lacher v. Engel</u>, 33 A.D.3d 10, 17 (N.Y. A.D. 1st Dep't 2006).

In the present matter, Black fails to allege any <u>facts</u> -- as opposed to conclusions -- to suggest that Wigdor filed the state court action on behalf of Ms. Ganieva "solely to defame" him. Rather, it is quite the opposite: Black affirmatively alleges that Ms. Ganieva -- represented by Wigdor -- commenced and prosecuted the State Court Action in order to obtain money from him. Moreover, Wigdor, on behalf of Ms. Ganieva, has -- as alleged by Black, himself -- been vigorously litigating the underlying State Court Action against Black, further underscoring why Black cannot plausibly contend that it is a "sham litigation". <u>See</u> Complaint, ¶ 5, and <u>passim</u>.[5]

Nor can Black credibly allege that any public statements by Wigdor regarding Ms. Ganieva's state court action constitute actionable defamation. All of the alleged statements, to the extent that they can be identified from Black's Complaint, either constitute fair and true reports of a judicial proceeding (<u>see</u> N.Y. Civil Rights Law § 74), or else constitute non-actionable opinion. <u>See</u> <u>Mann v. Abel</u>, 10 N.Y.3d 271, 276 (N.Y. 2008)("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation.")

## IV.   <u>Black's Claims Against Wigdor Violate Rule 11(b)(1)</u>

Against this backdrop, Black -- with the assistance and ratification of his counsel -- clearly filed this action for an improper purpose, in violation of Rule 12(b)(1). In particular, it was filed

---

[5] As noted above, and in keeping with the fact that Ms. Ganieva's first-filed State Court Action is anything but a sham, Wigdor understands that Quinn Emanuel partner Alex Spiro himself sought to represent Ms. Ganieva in connection with her claims in the State Court Action, before she decided to retain Wigdor.

in an attempt to interfere with Wigdor's ability to represent Ms. Ganieva in her first-filed State Court Action, by naming Wigdor and Ms. Ganieva as co-defendants on a series of factually and legally baseless claims.  Nothing other than a desire to forum shop prevented Black from pursuing his claims, if any, in the State Court Action by way of counterclaim.

Black -- with his billions of dollars -- may believe that he can levy baseless and legally defective "RICO" and "defamation" claims against opposing counsel with impunity, in an attempt to interfere with Wigdor's ability to represent Ms. Ganieva and gain an advantage in her first-filed State Court Action. However, his lawyers should have stepped in refused to go along with that wrongful approach. See, e.g., Gold v. Fields, 1993 U.S. Dist. LEXIS 8094 at * 6 (S.D.N.Y. 1993)(noting that "Rule 11 imposes an affirmative duty on the signer of a pleading to inquire into its legal and factual validity before signing it", and imposing Rule 11 sanctions based on filing of legally defective RICO claims). They failed to do so and -- to the contrary -- signed onto Black's defective, baseless, retaliatory, and palpably improper "RICO" and "defamation" claims.

## CONCLUSION

Accordingly, the Court should impose an appropriate sanction on Black and his counsel, pursuant to Rule 11.

Dated: Uniondale, New York
       January 10, 2022                    Respectfully submitted,

                                           RIVKIN RADLER LLP
                                           Attorneys for Wigdor LLP

                                           /s/ Max Gershenoff    /s/ Janice DiGennaro
                                           Max Gershenoff       Janice J. DiGennaro
                                           Yonatan Bernstein
                                           926 RXR Plaza
                                           Uniondale, New York 11556
                                           (516) 357-3000