UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LEON D. BLACK,

                              Plaintiff,

-against-

GUZEL GANIEVA, WIGDOR LLP,
AND JOHN DOES 1-3,

                            Defendants.
------------------------------------------------------------------X

**Case No.:
1:21-cv-08824-PAE**

---

## DEFENDANT WIGDOR LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

---

Respectfully submitted,

RIVKIN RADLER LLP
Attorneys for Defendant, Wigdor LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

On the brief:

Max Gershenoff, Esq.
Janice J. DiGennaro, Esq.
Yonatan Bernstein, Esq.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...........................................................................................iii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................3

    I.     The Parties ...................................................................................................3

    II.    Ms. Ganieva's First-Filed State Court Action Against Black ..........................4

    III.   Black's Contrived and Retaliatory Claims Against Wigdor
          and Ms. Ganieva in the Present Action ........................................................5

ARGUMENT ..............................................................................................................14

    I.     The Standards on This Motion......................................................................6

    II.    Dismissal is Warranted Because Black Has Failed to Sufficiently Plead
          the Requisite Elements of His RICO Claims...................................................7

          A.    Black Does Not Sufficiently Allege Any Racketeering Enterprise .......8

          B.    Black Does Not Sufficiently Allege That Wigdor Participated in
                the Operation or Management of any Racketeering Enterprise ............. 11

          C.    Black Has Failed to Sufficiently Allege that Wigdor Engaged
                in any Racketeering Activity ................................................................ 13

          D.    Black Has Failed to Sufficiently Allege that Wigdor Engaged
                in any Pattern of Racketeering Activity ............................................... 18

           E.    Black Has Failed to Sufficiently Allege any Cognizable
                RICO Injury. ...................................................................................... 20

          F.    Black's Putative "RICO" Claims are Just Dressed-Up
                Claims for Breach of Contract............................................................. 21

           G.    Black Has Failed to Sufficiently Allege That Wigdor Engaged in any
                Racketeering Conspiracy ..................................................................... 22

    III.   Black's RICO Claims are Barred by the Noerr-Pennington Doctrine............... 23

IV.     The Court Should Decline to Exercise Supplemental Jurisdiction Over Black's Defamation Claim ............................................................ 25

V.      Black's Defamation Claim is Otherwise Defective and Should be Dismissed to the Extent That the Court Does Exercise Supplemental Jurisdiction Over It ...................................................... 25

VI.     In the Alternative, the Court Can Abstain Under the Colorado River Doctrine.......................................................................... 33

CONCLUSION .................................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Amodei v. N.Y. State Chiropractic Ass'n</u>,
  160 A.D.2d 279  (N.Y. A.D. 1st Dep't 1990) ..................................................................... 29,30

<u>Ashcroft v. Iqbal</u>,
  129 S. Ct. 1937 (2009) ........................................................................................................ 7

<u>Assoun v. Assoun</u>,
  2014 U.S. Dist. LEXIS 179762 (S.D.N.Y. 2014) ..................................................... 26

<u>Azrielli v. Cohen Law Offices</u>,
  21 F.3d 512 (2d Cir. 1994) ..................................................................................... 12

<u>Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.</u>,
  229 F.3d 1135 (2d Cir. 2000) ................................................................................. 23

<u>Biofeedtrac v. Kolinor Optical Enterprises & Consultants, S.R.L.</u>,
  832 F. Supp. 585 (E.D.N.Y. 1993) ......................................................................... 12

<u>Boyle v. United States</u>,
  129 S. Ct. 2237 (2009) .............................................................................................. 9

<u>Butcher v. Wendt</u>,
  975 F.3d 236 (2d Cir. 2020) .............................................................................. 17, 23

<u>Caro Capital, LLC v. Koch</u>,
  2021 U.S. Dist. LEXIS 78641 (S.D.N.Y. 2021) .................................................... 26

<u>Cofacredit, S.A. v. Windsor Plumbing Supply Co.</u>,
  187 F.3d 229 (2d Cir. 1999) ................................................................................... 19

<u>Colorado River Water Conservation District v. United States</u>,
  424 U.S. 800 (1976) ............................................................................................ 31,32

<u>Conte v. Newsday, Inc.</u>,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) .................................................................... 13

<u>Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.</u>,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) .................................................................... 17

<u>Davis v. Boeheim</u>,
  24 N.Y.3d 262 (N.Y. 2014) .................................................................................... 28

De Falco v. Bernas,
    244 F.3d 286 (2d Cir. 2001) ............................................................................ 11

Dekom v. Fannie Mae,
    846 F. App'x 14 (2d Cir. 2021) ................................................................. 16,17

Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP,
    2021 U.S. Dist. LEXIS 126819 (S.D.N.Y. 2021) ..................................... 9,32

FindTheBest.com v. Lumen View Tech. LLC,
    20 F. Supp.3d 451 (S.D.N.Y. 2014) ................................................................ 16

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004) ........................................................................ 8,18

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ............................................................................. 20

Flomenhaft v. Finkelstein,
    127 A.D.3d 634 (N.Y. A.D. 1st Dep't 2015) ................................................. 27

Foster v. 2001 Real Estate.,
    2015 U.S. Dist. LEXIS 159489 (S.D.N.Y. 2015) ......................................... 16

Freeman v. Lasky, Haas & Cohler,
    410 F.3d 1180 (9th Cir. 2005) ........................................................................ 24

GICC Capital Corp. v. Tech. Fin. Grp., Inc.,
    67 F.3d 463 (2d Cir.1995) .............................................................................. 19

Ginx, Inc. v. Soho Alliance,
    2010 U.S. Dist. LEXIS 64313 (S.D.N.Y. 2010) ........................................... 23

Greenberg v. Blake,
    2010 U.S. Dist. LEXIS 57617 (E.D.N.Y. 2010) ............................................. 9

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) .................................................................................. 18,19

Hollander v. Cayton,
    145 A.D.2d 605 ((N.Y. A.D. 2d Dep't 1988) ............................................... 30

Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.,
    424 N.Y.S.2d 165 (N.Y. 1979) .................................................................. 27,28

In Touch Concepts, Inc. v. Cellco P'ship,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013) ........................................................... 26

iv

Johnson v. Riverhead Cent. Sch. Dist.,
    2018 WL 4344957 (E.D.N.Y. 2018)...................................................................... 30

Kashelkar v. Rubin & Rothman,
    97 F. Supp. 2d 383 (S.D.N.Y. 2000)...................................................................... 12

Katzman v. Victoria's Secret Catalogue.,
    167 F.R.D. 649 (S.D.N.Y. 1996) ............................................................................ 7

Kim v. Kimm,
    884 F.3d 98 (2d Cir. 2018)................................................................................. 17,18

Knoll v. Schectman,
    275 Fed. Appx. 50 (2d Cir. 2008) .......................................................................... 15

Kumaran v. Nat'l Futures Ass'n,
    2021 U.S. Dist. LEXIS 177784 (S.D.N.Y. 2021) .................................................. 11

Lacher v. Engel,
    33 A.D.3d 10 (N.Y. A.D. 1st Dep't 2006) ......................................................... 27,28

Lakonia Mgmt., Ltd. v. Meriwether,
    106 F. Supp. 2d 540 (S.D.N.Y. 2000) .................................................................... 15

La Suisse, Societe D'Assurances Sur La Vie v. Kraus,
    2014 U.S. Dist. LEXIS 99847 (S.D.N.Y. 2014).................................................... 14

Long v. Marubeni Am. Corp.,
    406 F. Supp. 2d 285 (S.D.N.Y. 2005) .................................................................... 27

Marek v. Old Navy (Apparel) Inc.,
    348 F. Supp. 2d 275 (S.D.N.Y. 2004) .................................................................... 26

Matsushita Electronics Corp. v. Loral Corp.,
    974 F. Supp. 345 ((S.D.N.Y. 1997) ....................................................................... 23

McCoy v. Goldberg,
    748 F. Supp. 146 (S.D.N.Y. 1990) ......................................................................... 16

Morin v. Trupin,
    832 F. Supp. 93 (S.D.N.Y. 1993)........................................................................... 12

Moss v. Morgan Stanley, Inc.,
    719 F.2d 5 (2d Cir.1983) ......................................................................................... 8

Panabroker Protecting & Indem. Assoc. v. Vneshprombank,
    2017 U.S. Dist. LEXIS 159393 (S.D.N.Y. 2017)................................................. 20

Panix Promotions, Ltd. v. Lewis,
      2002 U.S. Dist. LEXIS 784 (S.D.N.Y. 2002) ............................................................. 22

Pelt v. City of N.Y.,
      2013 U.S. Dist. LEXIS 122848 (E.D.N.Y. 2013) ...................................................... 25

Primetime 24 Joint Venture v. National Broadcasting Company,
      219 F.3d 92 (2d Cir. 2000) ........................................................................................ 24

Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F.
      Higgins, Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008) ................................ 16

Quirino v. New Jewish Home,
      2021 U.S. Dist. LEXIS 55005 (S.D.N.Y. 2021) ...................................................... 6,7

Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.,
      178 F. Supp. 3d 118 (S.D.N.Y. 2016) ....................................................................... 30

Reich v. Lopez,
      858 F.3d 55 (2d Cir. 2017) .................................................................................... 18,19

Reves v. Ernst & Young,
      507 U.S. 170 (1993) ............................................................................................... 11,13

Ritchie v. N. Leasing Sys.,
      2016 U.S. Dist. LEXIS 40537 (S.D.N.Y. 2016) ..................................................... 14,16

Ritter v. Klisivitch,
      2008 U.S. Dist. LEXIS 58818 (E.D.N.Y. 2008) ........................................................ 20

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
      30 F.3d 339 (2d Cir 1994) .......................................................................................... 11

Rosner v. Bank of China,
      528 F. Supp. 2d 419 (S.D.N.Y. 2007) ....................................................................... 22

Sanchez v. ASA Coll., Inc.,
      2015 U.S. Dist. LEXIS 73222 (S.D.N.Y. 2015) ......................................................... 15

Santana v. Adler,
      2018 U.S. Dist. LEXIS 51401 (S.D.N.Y. 2018) ......................................................... 12

S.A.R.L. v. Cantamessa USA, Inc.,
      2013 U.S. Dist. LEXIS 107552 (S.D.N.Y. 2013) ....................................................... 22

Sehgal v. Aggarwal,
      2021 U.S. Dist. LEXIS 154043 (E.D.N.Y. 2021) ....................................................... 19

Singh v. NYCTL 2009-A Trust,
    683 Fed. Appx. 76 (2d Cir. 2017) ................................................................... 23

Sparrow Fund Mgmt. LP v. Mimedx Grp., Inc.,
    2020 U.S. Dist. LEXIS 49813 (S.D.N.Y. 2020) ...................................... 28,31

Spiteri v. Russo.,
    2013 U.S. Dist. LEXIS 128379 (S.D.N.Y. 2008) ....................................... 7

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008) ............................................................. 18,19,20

Starr v. Sony BMG Music Entm't.,
    592 F.3d 314 (2d Cir. 2010) ................................................................... 7

Tasso v. Platinum Guild Int'l,
    1998 WL 841489 (S.D.N.Y 1998) ............................................................ 31

Tech. in P'ship v. Rudin,
    2011 U.S. Dist. LEXIS 114127 (S.D.N.Y. 2011) .................................... 11

Tuosto v. Philip Morris USA Inc.,
    2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. 2007) ..................................... 23

United States v. Daidone,
    471 F.3d 371 (2d Cir. 2006) ..................................................................... 18

United States v. Turkette,
    452 U.S. 576 (1981) ............................................................................... 8

United States v. Viola,
    35 F.3d 37 (2d Cir.1994) ......................................................................... 23

United States v. Yanotti,
    23 N.Y.2d 592 (2d Cir. 2008) ........................................................... 8,22

Varughese v. Mount Sinai Med. Ctr.,
    2015 WL 1499618 (S.D.N.Y. 2015) ....................................................... 30

Villa v Heller,
    885 F Supp 2d 1042 (S.D. Cal. 2012) ................................................... 24

Weeden v. Lukezic, 2022 N.Y. App. Div. LEXIS 24 (N.Y. App. Div. 2022) ......................... 32,33

Wexler v. Allegion (UK) Ltd.,
    374 F. Supp. 3d 302 (S.D.N.Y. 2019) ............................................... 26,27

Wexler v. Dorsey & Whitney, LLP,
    2019 WL 5485265 (E.D.N.Y. 2019), aff'd, 815 F. App'x 618 (2d Cir. 2020) ........................... 29

Williams v. Williams,
    541 F.3d 112 (N.Y. 1969) ............................................................................................................. 26

## PRELIMINARY STATEMENT

Defendant Wigdor LLP ("Wigdor" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Leon Black's ("Black" or "Plaintiff") First, Second, and Third Causes of Action pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

Wigdor is a law firm that represents sexual assault victims, <u>and currently represents Guzel Ganieva ("Ms. Ganieva") -- the only other named Defendant in this action -- in a first-filed, sexual assault and defamation lawsuit against Black that is pending in New York State Supreme Court</u>. It is transparently obvious from the face of his Complaint that Black -- a billionaire unused to any limits to his power -- commenced this lawsuit in a misguided attempt to interfere with Wigdor's ability to represent Ms. Ganieva in her already-pending state court case, and to retaliate against Wigdor for representing Ms. Ganieva in that case.

Stripped of their inflammatory rhetoric and baseless allegations "upon information and belief", Black's claims against Wigdor, at bottom, are that Wigdor's representation of Ms. Ganieva in her first-filed state court action somehow amounts to "racketeering" and "defamation". However, the Second Circuit consistently has rejected RICO claims which seek to criminalize a lawyer's litigation activity on behalf of a client. Courts in this Circuit, and New York state courts, likewise look with justified skepticism on claims, like Black's, to the effect that a lawyer committed defamation by filing pleadings on behalf of a client, or by expressing fair comment and opinion in connection with an ongoing lawsuit. To hold otherwise would invite wasteful, retaliatory, satellite litigation in federal court each time a defendant felt aggrieved by a first-filed state court action. It also would tend to chill litigants and lawyers, and frustrate the public policy goal of open access to the courts, because any litigant's or attorney's pleading or correspondence could lead to baseless RICO and defamation claims upon the mere filing of a state court case.

In the present action, wasteful, retaliatory, satellite litigation clearly is at the top of multi-billionaire Black's agenda, as Ms. Ganieva's parallel, first-filed state court action <u>is currently pending</u>. In keeping with his improper purpose, Black's "factual" allegations against Wigdor in this action are, at once, outrageously scandalous, totally conclusory, and alleged in all material respects "upon information and belief" -- except without any actual "information" to support his supposed "belief".

For example, the purported "factual" basis for Black's RICO claims against Wigdor is that Wigdor conspired with Ms. Ganieva, a <u>completely unidentified</u> (and fictitious) "Funder", and <u>completely unidentified</u> (and equally fictional) "Flacks", in order to extort money from Black by the mere filing of Ms. Ganieva's state court case. However, Black does not even manage to identify the purported Funder or Flacks, and offers nothing other than pure speculation to support his baseless conspiracy allegations. Indeed, Black pleads even the most fundamental "fact" regarding the completely unidentified Funder and Flacks -- <u>i.e.</u>, their existence -- "upon information and belief," meaning he has no idea whether or not such people even exist. In this respect, and as the Court may note, there is simply no "information" alleged to support Black's supposed "belief" regarding the existence of the purported Funder and Flacks. Instead, Black simply piles untethered conclusion upon conclusion in an attempt to hypothesize the so-called "Funder" and "Flacks" into existence.

<u>Simply put, there are no "Funders" or "Flacks"</u>, and Black's conclusory speculation regarding their purported existence is totally insufficient to make his scandalous RICO claims plausible or legally sufficient. Especially where, as here, the lawsuit obviously was filed for an improper purpose, and the contrived "RICO" and "defamation" claims are otherwise defective for multiple, independent, and irremediable reasons.

It bears emphasizing that the <u>only</u> activities Black specifically attributes to Wigdor amount to commonplace attorney tasks (<u>e.g.</u>, filing complaints on behalf of a client) or alleged comments regarding pending litigation. If the Court were to permit Black's contrived and retaliatory claims to stand, it would chill every lawyer's ability to represent sexual assault and harassment victims, especially where the alleged perpetrator is a billionaire with virtually unlimited resources to pursue trumped-up retaliatory claims against his alleged victim <u>and her lawyers</u>. Wigdor respectfully submits that the Court should put a stop to Black's improper and recriminatory tactics against his adversary's lawyers, and dismiss his defective claims with prejudice.

## <u>STATEMENT OF RELEVANT FACTS</u>

## I.    <u>The Parties</u>

Plaintiff Black is the co-founder and former chairman of the private equity firm Apollo Global Management, has a net worth in excess of $10,000,000,000, and himself alleges that he engaged in an extramarital relationship with Ms. Ganieva that lasted at least six years. <u>See</u> Complaint at ¶ 1.

Defendant Wigdor is a well-known law firm that, among other things, specializes in cases of sexual harassment and sexual misconduct, and is currently representing Ms. Ganieva in connection with her first-filed New York State Supreme Court lawsuit against Black for defamation, defamation <u>per se</u>, intentional infliction of emotional distress, and gender-motivated violence, which was filed on June 1, 2021 under Index No. 155262/2021 (the "State Court Action").

II.     **Ms. Ganieva's First-Filed State Court Action Against Black**

In Ms. Ganieva's State Court Action[1] she alleges that, beginning in 2008, Black sexually assaulted her for years, and used his immense wealth and power to intimidate and force her into silence. Ms. Ganieva further alleges in the State Court Action that in 2015, after these repeated sexual assaults, she signed -- under duress and without being afforded the right to obtain the advice of independent counsel -- a purported non-disclosure agreement (the "NDA") with Black. The general terms of the NDA were that Black would pay Ms. Ganieva a monthly stipend and forgive his previous loans to her in exchange for Ms. Ganieva's silence. See State Court Complaint, Gershenoff Decl., Exhibit "1", at ¶¶ 198-215. Thereafter, Black paid Ms. Ganieva a monthly stipend from late 2015 through March 2021, at which point the payments stopped. Id. at ¶¶ 216-218. The payments stopped in March 2021 because, on March 17, 2021, Ms. Ganieva broke her silence regarding Black, and posted on Twitter that he had sexually abused her for years. Id. at ¶¶ 222-226.

The State Court Action goes on to detail how, on April 8, 2021, Bloomberg published an article containing a statement by Black in which he falsely contended that his "affair" with Ms. Ganieva was "consensual", and that "any allegation of harassment or any other inappropriate behavior is fabricated". Black also falsely stated to Bloomberg that he supposedly had been "extorted by Ms. Ganieva for many years and [that he] made substantial monetary payments to her, based on her threats to go public" about their relationship. Gershenoff Decl., Exhibit "1",  at ¶¶ 227-229.

---

[1] In the State Court Action, Ms. Ganieva filed an original complaint, a first amended complaint, and has a pending motion for leave to file a proposed second amended complaint. This summary of allegations in the State Court Action is derived from Ms. Ganieva's currently-operative first amended complaint, which is attached to the accompanying Declaration of Max Gershenoff, Esq. ("Gershenoff Decl.") as Exhibit "1".

On June 1, 2021, as the result of these false and defamatory statements, Ms. Ganieva -- through her counsel, Wigdor -- commenced the State Court Action.[2]

### III.   Black's Contrived and Retaliatory Claims Against Wigdor and Ms. Ganieva in the Present Case

In obvious retaliation for Ms. Ganieva's first-filed State Court Action, Black commenced the present action on October 28, 2021, with Ms. Ganieva and Wigdor as the only specifically-identified Defendants. See Complaint, Docket No. 1, passim. Distilled to their essence from pages of conclusory recrimination, Black's only "factual" allegations against Wigdor in this case amount to the following:

(i) Wigdor represents Ms. Ganieva in her State Court Action, and has filed pleadings on her behalf in the State Court Action that supposedly contain false allegations of sexual abuse, sexual intimidation, and sexual assault. See Complaint at ¶¶ 91, 92, and passim.

(ii) Upon "information and belief", Wigdor supposedly conspired with Ms. Ganieva, a completely unidentified litigation funder (the "Funder"), and completely unidentified public relations operatives (the "Flacks"), in order to extort money from Black. See Complaint, passim. In this context, Black's only "support" for the conclusory allegation that Wigdor conspired with Ms. Ganieva, the unidentified "Flacks", and the similarly unnamed "Funder", boils down to the following:

(a) Wigdor filed the State Court Action on behalf of Ms. Ganieva, in its capacity as her counsel. See Complaint at ¶¶ 91, 92, and passim.

(b) Wigdor "assisted" Ms. Ganieva -- in some totally unspecified way -- in her efforts to file a report of Black's misconduct with the Manhattan District Attorney's office. See Complaint at ¶¶ 78-81, 92(i), 93(d), 97(d).

---

[2] In keeping with the fact that Black could have asserted, in the State Court Action, the same claims he asserts herein, Black initially asserted counterclaims against Ms. Ganieva for breach of contract and defamation in the State Court Action based on the same facts he alleges in this case. See Black's initial counterclaims in the State Court Action, annexed to the Gershenoff Decl. as Exhibit "2". However, after Ms. Ganieva filed a motion to dismiss the counterclaims and thereafter filed her first amended complaint in the State Court Action, Black dropped his counterclaims. Then, within just a few months, he commenced the present, obviously parallel case, in this Court in a transparent attempt to interfere with the State Court Action, and undermine Wigdor's ability to represent Ms. Ganieva in that first-filed case.

(c)   "[O]n information and belief", Wigdor somehow "caused" -- in some totally unspecified way -- the unidentified "Flacks" to disseminate Ms. Ganieva's complaint in the State Court Action, and somehow "caus[ed]" the unidentified Flacks -- again, in some totally unspecified way -- to tell the press that the Manhattan District Attorney's office had opened an investigation into Black. <u>See</u> Complaint at ¶¶ 91(k), 92(h), 96(d), 97(d).

(d)   "[O]n information and belief", Wigdor accepted some totally unquantified payment from the completely unidentified "Funder" in consideration for Wigdor's representation of Ms. Ganieva. <u>See</u> Complaint at ¶¶ 10, 92(j), 93(e), 94(f), 97(f).

(iii)   At some unspecified times, in some unspecified places, Jeanne Christensen ("Ms. Christensen") -- a partner at Wigdor -- supposedly made statements to mostly unspecified persons:

(a)   "branding" Black as a "sexual predator";

(b)   "inviting prosecutors to 'go after' him"; and

(c)   "accusing Black of 'heinous conduct' towards Ms. Ganieva and of 'intimidating' her. <u>See</u> Complaint at ¶ 122.

(iv)   On the Wigdor firm website, Ms. Christensen stated -- in reference to Ms. Ganieva's State Court Action against Black -- that "[t]his case is the epitome of why #MeToo exists." <u>See</u> Complaint at ¶¶ 52, 122.

Based on these thinly-pleaded allegations, Black asserts causes of action against Wigdor for substantive civil RICO violations under 18 U.S.C. § 1962(c), for conspiracy to commit substantive RICO violations under 18 U.S.C. § 1962(d), and for defamation <u>per se</u>. Complaint at ¶¶ 87-127.

## <u>ARGUMENT</u>

## I.   <u>The Standards on This Motion</u>

Pursuant to Rule 12(b)(6), a complaint may be dismissed where it fails to state a claim upon which relief can be granted. "In deciding a motion to dismiss, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." <u>Quirino v. New Jewish Home</u>, 2021 U.S. Dist. LEXIS 55005 at * 26 (S.D.N.Y.

2021)(internal quotations and citations omitted), <u>adopted</u> <u>by</u> 2021 U.S. Dist. LEXIS 53494 (Engelmayer, J.)

 In this context, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." <u>Quirino</u>, <u>supra</u>. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010) (internal alteration omitted), <u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678.

**II.**   <u>**Dismissal is Warranted Because Black Has Failed to Sufficiently Plead the Requisite Elements of His RICO Claims**</u>

 Based on the conclusory allegations described above, Black attempts to state claims against Wigdor for substantive RICO violations under 18 U.S.C. § 1962(c), and for conspiracy to commit substantive RICO violations under 18 U.S.C. § 1962(d).

 It is well-settled that "Courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." <u>Spiteri v. Russo</u>, 2013 U.S. Dist. LEXIS 128379 at * 173 (E.D.N.Y. 2013)(dismissing civil RICO claims against attorneys); <u>see</u> also <u>Katzman v. Victoria's Secret Catalogue</u>, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), <u>aff'd</u>, 113 F.3d 1229 (2d Cir. 1997) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.")

To state a claim under Section 1962(c), Black was required to sufficiently allege: (i) that Wigdor; (ii) through a pattern of racketeering activity; (iii) directly or indirectly conducted or participated in; (iv) an enterprise; (v) the activities of which affected interstate or foreign commerce. See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983). In addition, Black was required to allege that he was injured in his business or property by reason of the conduct constituting the RICO violation. See Moss, supra, 719 F.2d at 17.

To state a claim under Section 1962(d), Black was required to sufficiently allege that Wigdor "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." United States v. Yanotti, 541 F.3d 112, 121-22 (2d Cir. 2008).

However, and as set forth below, Black's civil RICO claims against Wigdor are completely defective for multiple, independent reasons.

## A.   Black Does Not Sufficiently Allege any Racketeering Enterprise

First, Black has failed to properly allege a legally-cognizable "association-in-fact" racketeering enterprise in support of his purported RICO claims.

Although a RICO enterprise can include legal entities such as corporations, it may also constitute "any union or group of individuals associated in fact" such as "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 580-581 (1981). The alleged RICO enterprise must, however, be distinct from the person or persons purportedly conducting the affairs of the enterprise (e.g., the defendants on the RICO claims). See, e.g., First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).

Additionally, an association-in-fact enterprise, such as the one Black attempts to allege in the present case, "must have at least three structural features: a purpose, relationships among those

associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009).

Moreover, to sufficiently plead an association-in-fact enterprise, a RICO plaintiff must allege facts to plausibly demonstrate that the association-in-fact enterprise, as a whole, was in some way different from, and had some existence beyond, the sum of its parts and the underlying pattern of racketeering activity. See, e.g., Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, 2021 U.S. Dist. LEXIS 126819 at * 34 - * 36 (S.D.N.Y. 2021) (recommending dismissal of civil RICO claims where, as here, the complaint did not provide any factual information regarding "John Doe" members of association-in-fact enterprise, failed to allege the nature and extent of the relationships between and among the members of the supposed enterprise, and also failed to allege that the purported enterprise had any existence independent of the alleged racketeering activity of mail and wire fraud); Greenberg v. Blake, 2010 U.S. Dist. LEXIS 57617 at *18-*21 (E.D.N.Y. 2010) (complaint alleging association-in-fact enterprise must provide "solid information" to demonstrate actual existence of enterprise beyond the individual defendants, acting together, and "[c]onclusory allegations that there was an enterprise are wholly insufficient.").

In the present case, Black relies solely on conclusory statements, often only pleaded "upon information and belief," in an attempt to conjure up an association-in-fact racketeering enterprise consisting of none other than Wigdor, Ms. Ganieva, the purported "Funder", and the purported "Flacks". For example, the only allegations in the Complaint regarding the purported "enterprise", consisting of Wigdor, Ms. Ganieva, the unidentified "Funder", and the equally unidentified "Flacks", are that:

(i)     "[O]n information and belief", Wigdor somehow "caused" -- in some totally unspecified way -- the unidentified "Flacks" to disseminate Ms. Ganieva's complaint in the State Court Action, and in some other totally unspecified way, somehow "caus[ed]" the unnamed Flacks to tell the press that the Manhattan District Attorney's office opened an investigation into Black. See Complaint at ¶¶ 91(k), 92(h), 96(d), 97(d); and

(ii)     "[O]n information and belief", at some unspecified time, Wigdor accepted a totally unquantified payment from the completely unidentified "Funder" in consideration for Wigdor's representation of Ms. Ganieva. See Complaint at ¶¶ 10, 92(j), 93(e), 94(f), 97(f).

However, there are no allegations to plausibly suggest that the purported association-in-fact enterprise was distinct from Wigdor, Ms. Ganieva, the purported "Funder", and the purported "Flacks", who are the same persons named as defendants on the RICO claim and who supposedly conducted the affairs of the "enterprise". Nor are any facts alleged to even suggest that the supposed "enterprise" had any existence beyond the vaguely-alleged pattern of racketeering activity. Nor are there any facts alleged to plausibly suggest that two main constituent parts of this fantastical "enterprise" -- i.e., the "Funder" and the "Flacks" -- ever existed in the first place.[3] The reason Black cannot muster any facts to plausibly allege the existence of the purported "Funder" and "Flacks" is because they do not exist.

Nor, by extension, are there any facts alleged to plausibly suggest that there was ever any common purpose between and among the members of the enterprise, or any relationships, other than the attorney-client relationship between Wigdor and Ms. Ganieva, among those associated with the supposed enterprise.

---

[3] The only "specific" allegation relating to the unidentified "Flacks" is Black's unfounded assertion that Wigdor supposedly "needed" the "Flacks" to draft Ms. Ganieva's March 17, 2021 Twitter postings. See Complaint at ¶ 10. This assertion is not only unsupported and conclusory, but also is demonstrably false as Ms. Ganieva did not even retain Wigdor as her counsel until after these March 17, 2021 Twitter posts. More generally, it is frivolous and implausible for Black to allege -- as he does -- that Ms. Ganieva needed the assistance of "Flacks" to use the hashtags "#MeToo" or "#LeonBlack", while simultaneously alleging that she is a Columbia University graduate who fully understood the implications of a purported NDA that Black coerced her to sign without the benefit of independent counsel. See id., ¶¶ 10, 46, 128-138, and fn. 2. It likewise is frivolous and implausible to allege that Wigdor engaged in a criminal conspiracy with completely unidentified "Flacks" based on Ms. Ganieva's use of these hashtags on Tweets that were sent before Ms. Ganieva ever retained Wigdor. In this context, it is worthwhile to note that in Ms. Ganieva's first-filed State Court Action, Black has issued numerous nonparty subpoenas to individuals he seems to "suspect" could be Funders and Flacks. Every single response from these individuals is that they have not communicated, much less worked with, Ms. Ganieva or Wigdor.

Pursuant to the standards set forth above, these allegations are totally insufficient to plausibly allege a racketeering enterprise. Black's "RICO" claims therefore should be dismissed.

**B.  Black Does Not Sufficiently Allege That Wigdor Participated in the Operation or Management of any Racketeering Enterprise**

Second, a RICO plaintiff must plead facts establishing that the defendant "participated in the affairs" of the RICO enterprise. See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir 1994). Participation in the RICO context means "participation in the operation or management of the enterprise." De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001), citing Reves v. Ernst & Young, 507 U.S. 170, 179-85 (1993). Under the Supreme Court's "operation and management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." Id.  In the Second Circuit, the "operation and management" test is extremely rigorous. See, e.g., Kumaran v. Nat'l Futures Ass'n, 2021 U.S. Dist. LEXIS 177784 at fn. 35 (S.D.N.Y. 2021) (noting that the "'operation and management' test is an extremely rigorous test, and it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise" nor "simply provide goods and services that ultimately benefit the enterprise.") Conclusory "operation and management" allegations are insufficient. See, e.g., Tech. in P'ship v. Rudin, 2011 U.S. Dist. LEXIS 114127, at *11-*13 (S.D.N.Y. Oct. 3, 2011).

In the present case, however, Black does not plead any facts sufficient to plausibly demonstrate that Wigdor participated in the operation and management of the imaginary "enterprise", the existence of which is itself alleged "upon information and belief". To the contrary, all of the substantive allegations against Wigdor boil down to vague and conclusory claims to the effect that Wigdor acted improperly while representing Ms. Ganieva in her lawsuit against Black. If that was enough for a RICO claim, then every defendant in a civil case could assert one by claiming he or she has been falsely accused.

These kinds of conclusory allegations do not establish the "participation" element of Black's obviously malicious and retaliatory RICO claims against Wigdor. Courts are particularly skeptical of RICO claims which allege -- as Black does here -- that attorneys participated in the operation of a racketeering enterprise by providing legal services. See, e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) (dismissing RICO claims against attorneys because provision of legal services to enterprise in relation to fraudulent transaction did not amount to management or direction of the enterprise); Santana v. Adler, 2018 U.S. Dist. LEXIS 51401 at fn 6. (S.D.N.Y. 2018), adopted by 2018 U.S. Dist. LEXIS 79279 (dismissing RICO claims against attorney, and holding that attorney's provision of professional services to alleged RICO enterprise was not enough to establish his participation in the operation and management of the enterprise); Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 394 (S.D.N.Y. 2000)(holding that when an attorney is held to have done nothing more than provide legal services, that is insufficient to meet the "operation and management" test); Morin v. Trupin, 832 F. Supp. 93, 98 (S.D.N.Y. 1993) (holding RICO claims against attorneys under § 1962(c) should be dismissed where there was no evidence the attorney "defendants ever directed anyone to do anything" and that the mere provision of legal services was not sufficient to support liability under the statute); Biofeedtrac v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F. Supp. 585 (E.D.N.Y. 1993) (holding RICO claim against attorney who provided legal advice and services to clients to advance the client's fraud scheme was inadequate to constitute "operation or management" of the enterprise as his role was confined to providing legal advice and services).[4]

Furthermore, and as discussed above, Black's inchoate allegations to the effect that Wigdor worked in tandem with the unnamed "Funder" and mystery "Flacks" are totally insufficient to even

---

[4] In this context, it is worthwhile to note that claims asserted in a pleading by any lawyer are those of the client. The lawyer's role is to gather facts, and based on those facts, plead legally cognizable claims. An attorney/client relationship is not an enterprise.

suggest that Wigdor LLP directed the affairs of any racketeering enterprise. Again, Black evidently cannot even muster up a name for the purported Funder or any of the purported Flacks, which underscores the extent to which he has filed a defective Complaint based entirely on labels and conclusions.[5] See, e.g., Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 136 (E.D.N.Y. 2010) (dismissing RICO claim and noting that general allegations of a scheme without showing "specific involvement in" managing the affairs of the enterprise was not enough to demonstrate "operation or management" of a RICO enterprise).

In short, Black's RICO claims against Wigdor do not satisfy the "operation or management" test under Reves, and therefore should be dismissed.

## C. Black Has Failed to Sufficiently Allege that Wigdor Engaged in any Racketeering Activity

Third, Black has failed to allege any facts to suggest, let alone demonstrate, that Wigdor engaged in any predicate acts of racketeering activity. In particular, Black contends that Wigdor engaged in Hobbs Act violations by: (i) filing state court complaints in the State Court Action, and representing Ms. Ganieva in the State Court Action; (ii) "causing" the completely unidentified "Flacks", through some unspecified means, to disseminate the complaints to unidentified media; (iii) "assisting" Ms. Ganieva, again in some totally unspecified way, in making a false report about Black to the Manhattan District Attorney's Office; and (iv) "causing" the unidentified Flacks -- again, through some unspecified means -- to tell unidentified media that the District Attorney's Office had opened a criminal investigation into

---

[5] In fact, to the extent that the activities of the purported enterprise can be discerned at all from Black's vaguely-pleaded Complaint, they occurred long before Ms. Ganieva retained Wigdor to represent her. For example, Ms. Ganieva's purported threat to go public with her relationship with Black, her purported monetary demands, and the signing of an NDA all occurred on or before October 2015. Ms. Ganieva posted about Black on Twitter on March 17, 2021. All of these events pre-date the June 1, 2021 filing of the State Court Action, as does all other conduct that Black attributes to Wigdor in conclusory fashion. See Docket No. 1, ¶¶ 1-3, 36-50, and passim.

Black. See Complaint, ¶ 92. Black's Complaint goes on to allege that these acts somehow "attempt[ed] to induce Black into providing additional payments under" completely unspecified "fraudulent pretenses through interstate mails and/or wires", which somehow supposedly amounts to "mail and wire fraud". Id.

Whatever else can be said about these contentions, they are not sufficient to allege that Wigdor engaged in any predicate acts of racketeering activity, much less any Hobbs Act violations, mail fraud, or wire fraud. Litigation activity, and even the filing of frivolous or malicious complaints -- which Ms. Ganieva's State Court Action complaints are not -- does not constitute extortion. See, e.g., Ritchie v. N. Leasing Sys., 2016 U.S. Dist. LEXIS 40537 at *38 (S.D.N.Y. 2016)(collecting cases); La Suisse, Societe D'Assurances Sur La Vie v. Kraus, 2014 U.S. Dist. LEXIS 99847 at *25 (S.D.N.Y.2014)("[W]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951").

Nor would it be a Hobbs Act violation even if, as Black contends, Wigdor "caused" the "Flacks" to publicize the complaints or the District Attorney's investigation to the media. Hobbs Act violations require, among other things, the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. See 18 U.S.C. § 1951(b). Here, however, Black's allegations regarding the dissemination of Ms. Ganieva's complaints, or information regarding a District Attorney investigation, are not sufficient to plausibly suggest that Wigdor did any of these things.

The implausibility of Black's conclusory "extortion" allegations against Wigdor is underscored by the fact that Wigdor is not alleged to have made any pre-filing demand for money from Black under threat of going public or proceeding with Ms. Ganieva's State Court Action. In fact, when Ms. Ganieva retained Wigdor, she had already gone public with her Twitter posts about

Black. Instead, all Wigdor did was file suit on behalf of its client, Ms. Ganieva. In order for Wigdor to secure any monetary recovery in connection with Ms. Ganieva's claims against Black, she will have to prevail in the State Court Action. That is not extortion. That is litigation.

Black's allegations likewise are insufficient to demonstrate that Wigdor engaged in any mail or wire fraud. The particularity requirements of pleading Fed. R. Civ. P. 9(b) are applicable to RICO claims based on mail and wire fraud under 18 U.S.C. § 1341 and § 1343. See, e.g., Knoll v. Schectman, 275 Fed. Appx. 50, 51 (2d Cir. 2008)(noting that where civil RICO claims are predicated on mail and wire fraud, the fraud allegations must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b)).

While a plaintiff alleging that the mails or wires simply were used "in furtherance of" a fraudulent scheme need not plead each individual mailing or wire with particularity, it nonetheless must plead the underlying fraudulent misrepresentations and omissions with the requisite particularity -- including the who, what, when, where, and why of the fraudulent misrepresentations or omissions. See, e.g., Sanchez v. ASA Coll., Inc., 2015 U.S. Dist. LEXIS 73222 at * 16 - * 17 (S.D.N.Y. 2015) (where RICO plaintiff alleges that mailings did not themselves contain false or misleading information, but instead were used in furtherance of a fraudulent scheme, it must still delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme); Lakonia Mgmt., Ltd. v. Meriwether, 106 F. Supp. 2d 540, fn. 31 (S.D.N.Y. 2000)(dismissing RICO claim where plaintiff failed to sufficiently plead an underlying scheme to defraud and, thus, "even if defendants' communications were simply 'in furtherance of a master plan', plaintiff's allegations of fraud would still violate Rule 9(b).").

Here, however, Black never gets around to explaining how Wigdor LLP used the mails or wires in furtherance of any fraudulent scheme. What was the supposed fraud? Who, if anyone, relied on

any fraudulent misrepresentations? When were the misrepresentations made? To whom? How was Black damaged as a result? Black does not say, which underscores the lack of merit to his retaliatory "RICO" claims against Wigdor.[6]

Furthermore, where more than one defendant is charged with fraud in the context of a RICO claim, the plaintiff must "particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F. Higgins, Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008); see also Foster v. 2001 Real Estate, 2015 U.S. Dist. LEXIS 159489 at * 20, fn. 1 (S.D.N.Y. 2015) (dismissing civil RICO claims where the complaint did not explain how defendants were "alleged to have engaged in the required two predicate acts, a showing that is required"). Despite this requirement, none of the allegations in Black's Complaint plausibly ascribes any particular misrepresentation or omission to Wigdor.

What is more, courts in the Second Circuit and elsewhere have consistently refused to recognize litigation activity on behalf of a client as wire or mail fraud simply because the mails or wires were used in connection with the litigation. See Dekom v. Fannie Mae, 846 F. App'x 14 (2d Cir. 2021)("allegations of frivolous, fraudulent, or baseless litigation activities -- without more -- cannot constitute a RICO predicate act")(internal citations omitted); FindTheBest.com v. Lumen View Tech. LLC, 20 F. Supp.3d 451 (S.D.N.Y. 2014), aff'd, 811 F.3d 479 (2016) (dismissing RICO claim against lawyer because mail or wire transmission of litigation documents such as pleadings

---

[6] It is worthwhile to note that the federal wire fraud statute does not cover telephone calls, etc., between individuals in the same state. See McCoy v. Goldberg, 748 F. Supp. 146, 154 (S.D.N.Y. 1990); see also Ritchie, supra, 180 A.D.2d at 787. Because Black's Complaint does not even specify the location from which the purportedly fraudulent statements emanated, or the location of the recipients of the unidentified fraudulent statements, it is impossible to determine whether the wire fraud statute applies. This illustrates the general lack of specificity in Black's conclusory pleading.

did not constitute predicate acts of mail or wire fraud); see also Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq., 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010), aff'd, 443 Fed. Appx. 582 (2d Cir. 2011)("persuasive authority in this and other jurisdictions suggests that the litigation activities alleged in this [c]omplaint cannot properly form the basis for RICO predicate acts").

The recent Second Circuit decision in Kim v. Kimm, supra, highlights this point. In Kim, much as in the present case, the defendant alleged that attorneys committed mail and wire fraud by preparing, signing, and filing various declarations with the district court, but the district court held that these were litigation activities and therefore could not constitute predicate acts of mail or wire fraud. The Second Circuit affirmed the district court's decision, and held that "allegations of frivolous, fraudulent, or baseless litigation activities -- without more -- cannot constitute a RICO predicate act". See also Dekom v. Fannie Mae, 846 F. App'x 14 (2d Cir. 2021)(same); Butcher v. Wendt, 975 F.3d 236, 241 (2d Cir. 2020)(same). Put another way, "where, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act". Kim, supra at * 105.

As the Kim court observed:

"If litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action," which "would inundate the federal courts with procedurally complex RICO pleadings." Dist. Ct. Op. at 10-11, Appellant App'x at 266-67; see also Nora F. Engstrom, Retaliatory RICO and the Puzzle of Fraudulent Claiming, 115 MICH. L. REV. 639, 696 (2017) (permitting RICO suits based on prior litigation activities would "engender wasteful satellite litigation"). … see also Gabovitch, 1995 U.S. App. LEXIS 32856, at *7-8, 1995 WL 697319, at *3 ("In essence, simply by alleging that defendants' litigation stance in the state court case was 'fraudulent,' plaintiff is insisting upon a right to relitigate that entire case in federal court . . . . The RICO statute obviously was not meant to endorse any such occurrence."). Moreover, endorsing this interpretation of RICO "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" because "any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." Dist. Ct. Op. at 11, Appellant App'x at 267 (quoting Curtis & Assocs., 758 F. Supp. 2d at 173); see also Engel v. CBS, Inc., 182 F.3d 124, 129 (2d Cir. 1999) (noting the "strong public policy of open access to the courts for all parties and [the need] to avoid

ad infinitum [litigation] with each party claiming that the opponent's previous action was malicious and meritless" (internal quotation marks and citations omitted) (second brackets in original)

The principles set forth in <u>Kim</u> are even more compelling here, because the State Court Action has not been resolved in Black's favor, and instead is still ongoing.

Because Black has failed to sufficiently allege that Wigdor engaged in any racketeering activity, his RICO claims against Wigdor should be dismissed.

## D.   **Black Has Failed to Sufficiently Allege that Wigdor Engaged in any Pattern of Racketeering Activity**

Fourth, and relatedly, Black does not and cannot allege any pattern of racketeering activity. In this respect, isolated acts of racketeering activity are insufficient to support RICO liability. Rather, the acts of racketeering activity must be sufficient to "constitute a pattern". <u>See</u>, <u>e.g.</u>, <u>United States v. Daidone</u>, 471 F.3d 371, 375-376 (2d Cir. 2006). To establish a pattern sufficient to satisfy the statute, a plaintiff not only must allege at least two acts of racketeering activity within 10 years, but also must allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." <u>See</u> <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern -- a series of related predicate acts extending over a substantial period of time -- or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." <u>Spool v. World Child Int'l Adoption Agency</u>, 520 F.3d 178, 183 (2d Cir. 2008).

In terms of closed-ended continuity, the time span associated with the allegations made in this action falls well short of the mark. Since the Supreme Court's decision in <u>H.J. Inc.</u>, the Second Circuit generally has not held a period of fewer than two years to constitute a substantial period of time. <u>See</u>, <u>e.g.</u>, <u>First Capital Asset Mgmt</u>, 385 F.3d at 181; <u>see also</u> <u>Reich v. Lopez</u>, 858 F.3d 55, 60

(2d Cir. 2017)("closed-ended continuity is 'primarily a temporal concept,' <u>Spool v. World Child</u> <u>Int'l Adoption Agency</u>, 520 F.3d 178, 184 (2d Cir. 2008), and it requires that the predicate crimes extend 'over a substantial period of time.' <u>H.J.</u>, 492 U.S. at 242. Predicate acts separated by only a few months will not do, <u>Id.</u>; this Circuit generally requires that the crimes extend over at least two years.") However, to the extent that the basis for Black's conclusory allegations can be deciphered at all, it appears as if all "predicate acts" that are attributed to Wigdor occurred within just the past year, when Wigdor filed and prosecuted the State Court Action on behalf of Ms. Ganieva.

Black is similarly deficient in pleading an open-ended pattern of racketeering activity, which requires facts establishing a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." <u>Cofacredit, S.A. v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229, 242 (2d Cir. 1999); <u>GICC Capital Corp. v. Tech. Fin. Grp., Inc.</u>, 67 F.3d 463, 466 (2d Cir.1995) (describing open-ended continuity as "past criminal conduct coupled with a threat of future criminal conduct"). To determine the existence of a continuing threat, a court looks at the nature of the enterprise and the predicate acts. <u>See</u> <u>Cofacredit</u>, 187 F.3d at 242. The Second Circuit has made clear that "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." <u>Spool</u>, 520 F.3d at 185. Black's Complaint simply does not contain any facts that would allow a court to draw such a conclusion with respect to Wigdor.

Furthermore, Courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended <u>or</u> open-ended pattern. <u>See</u>, <u>e.g.</u>, <u>Sehgal v. Aggarwal</u>, 2021 U.S. Dist. LEXIS 154043 at * 11 (E.D.N.Y. 2021) ("[C]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of

a closed or open pattern of continuity.")(Internal quotations and citation omitted). This is because a single narrow scheme with one victim and limited participants does "not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO". <u>Ritter v. Klisivitch</u>, 2008 U.S. Dist. LEXIS 58818 at * 32 (E.D.N.Y. 2008); <u>Spool</u>, 520 F.3d at 186 (holding that "inherently terminable" scheme does not pose threat of continued criminal activity , thereby precluding the plaintiff from alleging open-ended continuity).

In the present case, even assuming -- <u>arguendo</u> -- that Black had sufficiently alleged some predicate acts of racketeering activity, he has not alleged a single, well-pleaded fact to suggest that anyone other than himself was targeted or affected by the alleged conduct. Nor has he adduced anything to suggest that the Defendants' purported conduct amounted to anything other than a single, narrow, inherently terminable scheme aimed at obtaining money from him by the pursuit of the State Court Action. Considering that Black has, at most, alleged a single, narrow scheme (a state court lawsuit) with one victim (him as a named defendant) and limited participants, he has not pleaded the existence of any open- or closed-ended pattern of racketeering activity, and his RICO claims should be dismissed.

**E.     Black Has Failed to Sufficiently Allege any Cognizable RICO Injury**

Fifth, Black's RICO claims also are defective because he has not alleged a cognizable RICO injury. To allege that he was "injured in its business or property by reason of the conduct constituting the RICO violation", Black was obligated to plead facts demonstrating: (i) a clear, definite, and provable amount of damages; (ii) that the damages were proximately caused by Wigdor's alleged racketeering activity; and (iii) that he exhausted his legal and contractual remedies before bringing suit. <u>See</u>, <u>e.g.</u>, <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 768-770 (2d Cir. 1994); <u>see also</u> <u>Panabroker Protecting & Indem. Assoc. v. Vneshprombank</u>, 2017 U.S. Dist. LEXIS 159393 at * 10 - * 11 (S.D.N.Y. 2017).

Black's RICO claims against Wigdor do not meet these standards. Though Black alleges that he suffered damages in the form of various payments and forgiven loans to Ms. Ganieva, he does not -- and cannot -- allege any facts to demonstrate that these purported damages are attributable to anything done by Wigdor, much less any "racketeering activity". To the contrary, it is clear from the Complaint that Black alleges he sustained all these purported damages not only before Ms. Ganieva retained Wigdor to represent her, but years ago when he tried to silence her with the inducement of millions of dollars. Complaint, ¶ 2. Those damages have nothing to do with the RICO enterprise Black conjures (they arose long before Wigdor represented Ms. Ganieva in connection with the State Court Action, before any dissemination of the State Court Action complaint by any "Flacks", etc.) See Complaint, ¶¶ 1-3, 36-50, and passim.

Moreover, Black obviously failed to exhaust his legal and contractual remedies before bringing suit, considering that, as discussed below, Black's scandalous and conclusory "RICO" claims are really just dressed up (albeit defective) claims for breach of contract against Ms. Ganieva. Had he not been primarily interested in forum shopping, Black would not have withdrawn the breach of contract counterclaim he asserted in the State Court Action, and would have allowed it and his defamation claim to be tested by a motion to dismiss before the Justice there hearing the case, including under the New York anti-SLAPP statute. See Gershenoff Decl., Exhibit "2".

## F.    Black's Putative "RICO" Claims are Just Dressed-Up Claims for Breach of Contract

Sixth, and despite Black's efforts to manufacture the appearance of a racketeering scheme, his "RICO" claims are merely dressed up claims for breach of contract against Ms. Ganieva -- i.e., that Ms. Ganieva supposedly breached the NDA, a purported, October 19, 2015 Release and Confidentiality Agreement. Indeed, Black asserts a contract claim against Ms. Ganieva in tandem with his outrageous and unsupported "RICO" claims. See Complaint ¶¶ 128-138.

It is quite clear that Black's contract claim is based on the same facts as the RICO claims, and seeks substantially the same damages as the RICO claims. Compare Complaint ¶¶ 87-102, with ¶¶ 128-138.[7] In this context, courts in this District will not hear putative "RICO" claims where, as in the present case, the RICO claims are really just dressed-up claims for breach of contract. See, e.g., S.A.R.L. v. Cantamessa USA, Inc., 2013 U.S. Dist. LEXIS 107552, at * 9 (S.D.N.Y. 2013) ("[T]he allegations in the Complaint that purport to plead predicate criminal acts sufficient to establish a cause of action under RICO amount merely to a breach of contract claim [and common business torts], which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.")

## G. Black Has Failed to Sufficiently Allege That Wigdor Engaged in any Racketeering Conspiracy

Seventh, Black fails to plausibly allege that Wigdor engaged in any racketeering conspiracy. Where, as in the present case, a plaintiff's substantive RICO claims are subject to dismissal, its RICO conspiracy claims likewise should be dismissed. See, e.g., Rosner v. Bank of China, 528 F. Supp. 2d 419 (S.D.N.Y. 2007)("[b]ecause the Court finds that Rosner does not sufficiently allege a violation of § 1962(a) or § 1962(c), the Court need not consider § 1962(d), as a complaint must adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d).").

In any case, to state a claim under Section 1962(d), a plaintiff must allege that the defendant "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." Yanotti, 541 F.3d at 121-22. As set forth above, Black has not sufficiently pleaded any predicate acts by Wigdor,

---

[7] This is not to suggest that there is any merit whatsoever to Black's breach of contract claim against Ms. Ganieva. Rather, it simply illustrates the extent to which Black "wrongly seeks to mask an action that sounds in breach of contract in the more potent garb of a RICO claim." Panix Promotions, Ltd. v. Lewis, 2002 U.S. Dist. LEXIS 784 at * 30 (S.D.N.Y. 2002).

much less any pattern of racketeering activity. Nor has Black pleaded any facts to plausibly demonstrate that Wigdor agreed to participate in any predicate acts of racketeering activity, or even knew about any predicate acts. See United States v. Viola, 35 F.3d 37, 44-45 (2d Cir.1994)(to establish a RICO conspirator's knowledge, it is sufficient that the alleged conspirator knew what other conspirators "were up to" or that the situation "logically would lead him to suspect he was part of a larger enterprise"). Indeed, Black has not even managed to plead facts to plausibly suggest the existence of the "Funder" or "Flacks", let alone any facts to show that Wigdor ever conspired with them to do anything. While it may be that a conspiracy is rarely proven by direct evidence, and is often established by circumstantial evidence and the reasonable inferences to be drawn therefrom, conclusory allegations of a conspiracy that "rest on rank speculation" are insufficient to support a claim under RICO. Wendt, supra, 975 F.3d at 241 (finding that the plaintiff's "allegations in support of his conspiracy claims ... [were] uniformly conclusory, speculative, and implausible ... [and therefore were] inadequate to support his conspiracy claims" under RICO). In the present case, Black's conclusory conspiracy claims are clear examples of "rank speculation", considering that he does not even name the purported "Funder" or "Flacks", and alleges even their existence on "information and belief", except without any actual "information" to support his supposed "belief".

Accordingly, because Black has not pleaded any substantive RICO claims, or that that Wigdor agreed to participate in the affairs of any enterprise through any pattern of racketeering activity, his Section 1962(d) claims should be dismissed.

**III.    Black's RICO Claims are Barred by the Noerr-Pennington Doctrine**

More generally, Black's RICO claims against Wigdor are barred by the Noerr-Pennington doctrine, inasmuch as they are clearly based on Wigdor's representation of Ms. Ganieva in connection with the State Court Action. Under the Noerr-Pennington doctrine, federal courts recognize that,

generally, claims stemming from a party's petition to the government are immune from liability. See, e.g., Tuosto v. Philip Morris USA Inc., 2007 U.S. Dist. LEXIS 61669, *15 (S.D.N.Y. 2007); Matsushita Electronics Corp. v. Loral Corp., 974 F. Supp. 345, 359 (S.D.N.Y. 1997). Petitioning activity includes complaints filed in civil actions. See, e.g., Ginx, Inc. v. Soho Alliance, 2010 U.S. Dist. LEXIS 64313, *55-57 (S.D.N.Y. 2010).

Additionally, Noerr-Pennington immunity has been extended to RICO actions where, as here, such claims are premised on litigation or litigation-related activity. See Bath Petroleum Storage Inc. v. Market Hub Partners LP, 2000 U.S. App. LEXIS 25440 (2d Cir. 2000) (applying doctrine to RICO claims); Singh v. NYCTL 2009-A Trust, 683 Fed. Appx. 76, 78 (2d Cir. 2017) (summary order) (holding Noerr-Pennington barred RICO claims based upon state court foreclosure action). Moreover, the Noerr-Pennington doctrine is applicable to immunize the attorneys of the petitioning party as their agents. See Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1186 (9th Cir. 2005) (explaining that if the protection applies to the petitioning party, as principal, it must extend to the petitioning party's attorneys, as agents).

Though there is a "sham litigation" exception to the Noerr-Pennington doctrine, the burden is on the plaintiff to allege facts showing the applicability of the sham exception. See, e.g., Primetime 24 Joint Venture v. National Broadcasting Company, 219 F.3d 92, 100-101 (2d Cir. 2000). The burden to demonstrate sham litigation is a heavy one. Here, however, Black alleges no facts (as opposed to conclusions) to plausibly suggest that Ms. Ganieva's State Court Action is objectively baseless, that Wigdor had any reason to believe it was objectively baseless, or that the lawsuit was intended to cause harm to Black through the use of the governmental process, as opposed to the outcome of that process, as required to establish the sham litigation exception. Accordingly, Black's RICO claims, the crux of which hinge on Wigdor's representation of Ms. Ganieva in the State Court

Action,[8] must be dismissed as Wigdor is immune from the claims under the Noerr-Pennington doctrine.

## IV.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Black's Defamation Claim

The only alleged grounds for federal jurisdiction in this action are Black's factually and legally baseless RICO claim, which should be dismissed for the reasons discussed above. Therefore, the Court should decline to exercise supplemental jurisdiction over Black's state law claims, including his defamation claim against Wigdor. See Pelt v. City of N.Y., 2013 U.S. Dist. LEXIS 122848 at * 67 (E.D.N.Y. 2013)("A federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's early stages")(internal citations omitted).[9]

## V.    Black's Defamation Claim is Otherwise Defective and Should be Dismissed to the Extent That the Court Does Exercise Supplemental Jurisdiction Over It.

Even if the Court chooses to exercise supplemental jurisdiction over the defamation claim, the Court should dismiss it. In particular, Black's defamation per se claim against Wigdor alleges

---

[8] Black's other fabricated allegations, to the effect that Wigdor "on information and belief" "caused" the unnamed "Flacks" to disseminate the publicly filed State Court Action complaint, and accepted payment from the unnamed "Funder" in consideration for Wigdor's representation of Ms. Ganieva, even if they were true (which they are not), are all part and parcel of the protected activity of filing Ms. Ganieva's complaint. In addition, Black's allegation that Wigdor "assisted" Ms. Ganieva to file a report of Black's conduct with the Manhattan District Attorney's office -- besides the fact that it is a vague and implausible allegation in that Black never explains how this purported "assist[ance]" occurred or why it was criminal -- is also protected by the Noerr-Pennington doctrine. See Villa v Heller, 885 F Supp 2d 1042 (S.D. Cal. 2012)(holding that Noerr-Pennington applies to citizen communication with "any department of the government").

[9] Had Black brought the same defamation claim in New York state court by way of counterclaim in the State Court Action, or in a plenary action, it would be subject to dismissal with costs and attorney's fees pursuant to the New York Anti-SLAPP statute, N.Y. Civil Rights Law §70-a.

that the complaint filed by Wigdor on behalf of Ms. Ganieva in the State Court Action contained false allegations, and that Ms. Christensen purportedly made various false comments about Black. As a matter of law, however, Black's defamation claims should be dismissed because any statements made in the state court pleadings are protected by the New York litigation privilege, and the statements Ms. Christensen allegedly made, to the extent that they can even be identified from Black's Complaint, either constitute fair and true reports of a judicial proceeding (see N.Y. Civil Rights Law § 74), or else constitute non-actionable opinion.

Under New York law, a prima facie claim of defamation requires a showing of (1) a defamatory statement of fact; (2) of and concerning the plaintiff; (3) publication to a third party; (4) falsity; (5) made with the applicable level of fault; (6) causing injury to the plaintiff; and (7) the statement is not protected by privilege. See In Touch Concepts, Inc. v. Cellco P'ship, 949 F. Supp. 2d 447, 484 (S.D.N.Y. 2013).

However, "it is a well-established principle of New York law that statements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy." Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 281 (S.D.N.Y. 2004); see also Assoun v. Assoun, 2014 U.S. Dist. LEXIS 179762 at * 15 (S.D.N.Y. 2014) (same). The test of "pertinency" is "extremely broad and embraces anything that may possibly or plausibly be relevant or pertinent with the barest rationality, divorced from any palpable or pragmatic degree of probability." Caro Capital, LLC v. Koch, 2021 U.S. Dist. LEXIS 78641 at * 32 (S.D.N.Y. 2021)(internal quotations and citation omitted). With that in mind, any statements made by Wigdor in the State Court Action are privileged, and not subject to a defamation claim.

Black clearly is aware that the litigation privilege forecloses his defamation claim against Wigdor so he tries to plead around this issue by characterizing Ms. Ganieva's State Court Action as

"sham litigation". Under this doctrine, a party that "maliciously institute[s] a judicial proceeding alleging false and defamatory charges" only to "circulate a press release or other communication based thereon" cannot escape liability for defamation by invoking the fair report privilege for judicial proceeding. See Williams v. Williams, 23 N.Y.2d 592, 599, 298 N.Y.S.2d 473 (N.Y. 1969).

However, it is well settled that the Williams exception is "narrow" and does not apply in the absence of factual allegations tending to show that the underlying action "was brought maliciously and solely" for the purpose of later defaming the defendant. See, e.g., Wexler v. Allegion (UK) Ltd., 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019); Flomenhaft v. Finkelstein, 127 A.D.3d 634, 638 (N.Y. A.D. 1st Dep't 2015). Additionally, the "sham litigation" doctrine is inapplicable where the underlying case has been extensively litigated. See Lacher v. Engel, 33 A.D.3d 10, 17 (N.Y. A.D. 1st Dep't 2006).

In the present matter, Black fails to allege any facts -- as opposed to conclusions -- to suggest that Wigdor filed the state court action on behalf of Ms. Ganieva "solely to defame" him. Rather, it is quite the opposite: Black affirmatively alleges that Ms. Ganieva -- represented by Wigdor -- commenced and prosecuted the State Court Action in order to obtain money from him. Moreover, Wigdor, on behalf of Ms. Ganieva, has -- as alleged by Black, himself -- been vigorously litigating the underlying State Court Action against Black, further underscoring why Black cannot plausibly contend that it is a "sham litigation". See Complaint, ¶ 5, and passim.

Pursuant to Section 74 of the New York Civil Rights Law, statements made outside of judicial proceedings are subject to a qualified privilege to the extent that they constitute fair and true reporting on such proceedings. See N.Y. Civ. Rts. Law § 74. This statute "confers an absolute immunity, regardless of proof of malice or negligence, upon any person who publishes a 'fair and true report' of a judicial [proceeding]." Wexler v. Allegion (UK) Ltd., 374 F. Supp. 3d 302, 311

(S.D.N.Y. 2019). This statutory privilege has been held to apply to out-of-court statements published

in press releases (see Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005)), and

also "includes statements published not only by the media, but also by parties or their counsel."

Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005).

In order for a report to be considered fair and true, "it is enough that the substance of the

[statement] be [a] substantially accurate" description of the allegations in a complaint. See Holy

Spirit Ass'n for Unification of World Christianity v. New York Times Co., 424 N.Y.S.2d 165, 167

(N.Y. 1979). For example, "[c]omments that essentially summarize or restate the allegations of a

pleading filed in an action are the type of statements that fall within section 74's privilege." see also

Lacher, supra (same).

Moreover, "expressions of opinion, as opposed to assertions of fact, are deemed privileged

and, no matter how offensive, cannot be the subject of an action for defamation". See Davis v.

Boeheim, 24 N.Y.3d 262, 269 (N.Y. 2014).

Against this backdrop, and as noted above, Black loosely references[10] the following three

supposed statements in support of his claim that Wigdor[11] defamed Black in the press:

(i)     Statements from Ms. Christensen supposedly "branding" Black as a "sexual
        predator", "inviting prosecutors to go after him", and a comment invoking the
        #MeToo movement;

(ii)    Ms. Christensen's statement to Forbes "accusing Black of 'heinous conduct' and of
        'intimidating' Ganieva'"; and

(iii)   Allegations that Black raped a Jane Doe 20 years ago.

---

[10] Black does not identify when any of the statements were made, and -- other than the second group
of statements which only generally identifies Forbes magazine -- also does not indicate to whom the
statements supposedly were made.

[11] All of the other statements cited by Black in support of his baseless defamation claims were
purportedly made by Ms. Ganieva, not Wigdor. See Complaint, at ¶ 122.

<u>See</u> Docket No. 1, ¶¶ 110-127.

As an initial matter, Black does not sufficiently identify when the first and third of these communications were made nor to whom they were made, and this by itself warrants dismissal of the defamation claim to the extent it is predicated on these "statements". <u>See</u> <u>Sparrow Fund Mgmt.</u> <u>LP v. Mimedx Grp., Inc.</u>, 2020 U.S. Dist. LEXIS 49813 at *19  (S.D.N.Y. 2020)(defamation claim is only sufficient if it adequately identifies the purported communication, and indicates who made the communication, when it was made, and to whom it was communicated)(internal quotations and citations omitted).

While Black's Complaint does not provide sufficient information regarding the provenance of these alleged statements, it does appear as if some of them may have been taken from the Wigdor website, where Ms. Christensen made the following statement:

> This case [e.g., Ms. Ganieva's State Court Action] is the epitome of why #MeToo exists.  In textbook fashion, men with wealth, power and an army of elite lawyers continue to escape accountability for their heinous acts by twisting the legal system to penalize their victims for speaking up.  Sadly, until prosecutors consistently go after sexual predators that wrongly accuse sexual assault victims of extortion, it is clear that *#MeToo* has many miles to go.

If, in fact, Black's defamation claim is based on these statements on the Wigdor website, his Complaint mischaracterizes the statements. The comments make no reference to Black, and amount to nothing but Ms. Christensen's general opinion on the #MeToo movement and the criminal justice system.

Moreover, courts have held that statements that appear on private law firm websites, as is the case here, commenting on matters of public concern are comparable to a newspaper's Op Ed section, and therefore the "common expectation" is that the comments published "will represent the viewpoints of their authors, and, as such, contain considerable hyperbole, speculation, diversified

forms of expression and opinion". See Wexler v. Dorsey & Whitney, LLP, 2019 WL 5485265 at *8 (E.D.N.Y. 2019), aff'd, 815 F. App'x 618 (2d Cir. 2020).

In any case, to the extent that this statement can even be interpreted as Ms. Christensen "branding" Black a "sexual predator", it would simply amount to a summary of facts detailed in Ms. Ganieva's lawsuit, where Ms. Ganieva accuses Black of sexually assaulting and raping her. As a result, it is protected under Section 74 of the New York Civil Rights Law, and is also non-actionable opinion. See Amodei v. N.Y. State Chiropractic Ass'n, 160 A.D.2d 279, 281 (N.Y. A.D. 1st Dep't 1990) (accusation that chiropractor engaged in "unprofessional conduct" was opinion as it described the nature of complaints lodged against him), aff'd, 77 N.Y.2d 890 (1991); Hollander v. Cayton, 145 A.D.2d 605, 606 (N.Y. A.D. 2d Dep't 1988) (statements that employee was "immoral" and "unethical" were non-actionable opinion as they were too "indefinite, ambiguous and incapable of being objectively characterized as true or false"); Varughese v. Mount Sinai Med. Ctr., 2015 WL 1499618 (S.D.N.Y. 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017)(holding that statements that a plaintiffs' work was "unsatisfactory", "unprofessional" and "substandard" were non-actionable opinion).

What is more, none of the comments included in Ms. Christensen's statement on the Wigdor website implies that Ms. Christensen's opinion is based on facts known only her. To the contrary, to the extent that these statements can be read to apply to Black in the first instance, they are based on the allegations made against Black in a publicly-filed lawsuit. In this setting, courts have repeatedly held that a statement criticizing individuals constitutes pure opinion when it is based on publicly disclosed facts -- as is the case here. See  Johnson v. Riverhead Cent. Sch. Dist., 2018 WL 4344957 at *12 (E.D.N.Y. 2018) (commenting that a person presented a threat to "safety and security" was non-actionable opinion as it was a conclusion based on publicly disclosed facts); Ratajack v.

Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist., 178 F. Supp. 3d 118, 158 (S.D.N.Y. 2016) ("A statement of 'pure opinion' is one which is either 'accompanied by a recitation of the facts upon which it is based' or 'does not imply that it is based upon undisclosed facts.'")

It appears as though the second of Ms. Christensen's statements referenced by Black -- "accusing Black of heinous conduct" -- comes from an online Forbes article dated July 19, 2021, which is annexed as Exhibit "3" to the Gershenoff Decl. In this statement to Forbes, Ms. Christensen purportedly stated that "Black's counter-claims are an obvious effort at intimidating Ms. Ganieva who will continue to aggressively litigate her claims and hold Black accountable for his heinous conduct".

As with Ms. Christensen's first group of statements, the comment that Black's counterclaims are meant to "intimidate" Ganieva is Ms. Christensen's opinion on the matter and is not actionable under New York law.[12]

Likewise, Ms. Christensen's comment that the actions Ms. Ganieva accuses Black of in the State Court Action are "heinous" is also an opinion, and is also otherwise subject to protection under Section 74 as it is merely a way of summarizing Black's actions. See Tasso v. Platinum Guild Int'l, 1998 WL 841489, at *5 (S.D.N.Y 1998) (finding statements that plaintiff was "unethical, untrustworthy, unprofessional" and "incompetent" to be non-actionable opinion).

Finally, it is entirely unclear from Black's Complaint when, where, or to whom the allegation that "Black raped a Jane Doe twenty years ago" was made -- which by itself warrants dismissal of this allegation of defamation. See Sparrow Fund Mgmt. LP, Inc, supra.

---

[12] Indeed, Ms. Ganieva amended her complaint in the State Court Action to allege that Black's counterclaims constituted an independent act of retaliation.

However, to the extent Black is referring to the allegation made in Ms. Ganieva's second amended complaint in the State Court Action, where it is alleged that Black raped a Jane Doe around December 2001, this allegation is protected by the New York litigation privilege. See State Court Action second amended complaint at ¶¶60-85, annexed as Exhibit "3" to the Gershenoff Decl.

A very recent decision from the New York Appellate Division, Weeden v. Lukezic, 2022 N.Y. App. Div. LEXIS 24 (N.Y. App. Div. 2022), illustrates these principles, is on-point, and demonstrates why Black's contrived and retaliatory "defamation" claims against his adversary's counsel must be dismissed. In Weeden, the plaintiff had previously sued her former employer, alleging -- in substance -- that he sexually harassed her and abused her during a business trip, and then fired her when she reported the incident to the police. Id. at * 1. Then, the employer filed his own lawsuit, alleging that his former employee was a prostitute, was under investigation by the financial authorities, and -- for the purposes of extortion -- had fabricated criminal and embarrassing allegations against him to the police, leading to his arrest and to the publication of those false allegations in the media. Id. at * 2 - * 3.

Then, the former employee filed another lawsuit against her former employer, and his attorneys, alleging that the prostitution, extortion, and other allegations in the preceding lawsuit were defamatory, and that the lawyers had initiated the lawsuit "solely for purposes of harassment, intimidation, and disparagement." Weeden, at * 3 - * 4. In addition, the former employee alleged that the lawyers for her former employer had disseminated the prostitution, extortion, and other allegations to the media. Id. at * 4 - * 5.

The lawyers moved to dismiss, arguing that even if their client made false allegations against his former employee, "no claim could validly be asserted against them based merely on their including such allegations in the … complaint or in their responding to press inquiries about that

complaint. Defendant attorneys contended that under the common law absolute privilege, they were absolutely immune from liability for statements pertinent to judicial proceedings, and that their fair reporting of that judicial proceeding to the press was protected by Civil Rights Law § 74." <u>Weeden</u>, at * 5.

In opposition to the lawyers' motion to dismiss, the former employee contended "that her complaint sufficiently asserted the claims against defendant attorneys, despite their claims of privilege, based on her allegations that defendant attorneys had filed a 'sham action' containing false and irrelevant defamatory statements for the purpose of having those statements published in the media to injure her, and acted … to announce in the press the imminent filing of the sham action, and that by sufficiently pleading the sham action exception, the litigation and fair report privileges did not apply." <u>Id.</u> at * 6.

The trial court granted the attorneys' motion to dismiss and, on appeal, the Appellate Division affirmed, holding that the former employee's "sham litigation" claims were conclusory; that preparing and filing the complaint, and advising a reporter that it had been filed, were "merely the providing of information which could be obtained by any individual perusing the NYSCEF system"; and that "defendant attorneys are protected by Civil Rights Law § 74, which protects the immunity of a litigant's attorney", "even assuming the truth of plaintiff's allegations". <u>Weeden</u>, at * 7 - * 9.

All of this is true in the present case, as well. Accordingly, Wigdor respectfully submits that Black's retaliatory and defective "defamation" claims against his adversary's attorneys should be dismissed.

## VI.     <u>In the Alternative, the Court Can Abstain Under the Colorado River Doctrine</u>

As detailed above, Black's contrived and defective claims should be dismissed in their entirety. Alternatively, the Court has discretion to abstain from exercising jurisdiction over this

purely vexatious and reactive action pursuant to the abstention doctrine set forth in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 813, 817 (1976) and its progeny. In the State Court Action, Black previously alleged the <u>same facts</u> as here against Ms. Ganieva, only to withdraw his counterclaims after she filed a motion to dismiss. <u>See</u> Gershenoff Decl., Exhibit "2". Black then converted his prior counterclaims into hollow RICO claims simply by adding Wigdor LLP and non-existent John Does as defendants. <u>See</u> <u>Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP</u>, 2021 U.S. Dist. LEXIS 126819 (S.D.N.Y. 2021) (holding that <u>Colorado River</u> abstention applied where a party "dresse[d] up [a] case under the moniker of RICO" when the actual objective was to interfere with a state court proceeding).

In short, this case is clearly parallel to Ms. Ganieva's first-filed State Court Action, and the factors courts consider in connection with <u>Colorado River</u> abstention would support abstention here. For instance, dismissal of this action would avoid piecemeal litigation; Ms. Ganieva filed her State Court Action first, and it has proceeded into the discovery phase, whereas this case is in its infancy; state law provides most of the rules of decision, and -- but for Black's contrived and meritless "RICO" claims -- would provide <u>all</u> of the rules of decision; and Black's rights can be adequately protected in state court, considering that New York courts are obviously familiar with Black's defamation and contract claims, and have concurrent jurisdiction over Black's baseless RICO claims.

## CONCLUSION

For the reasons set forth herein, Wigdor LLP's motion to dismiss should be granted, and Black's improper and retaliatory claims against Wigdor should be dismissed with prejudice, together with such other and further relief as the Court deems proper.

Dated: Uniondale, New York
      January 7, 2022

Respectfully submitted,

RIVKIN RADLER LLP
Attorneys for Wigdor LLP

*/s/ Max Gershenoff*    */s/ Janice DiGennaro*

Max Gershenoff    Janice J. DiGennaro
Yonatan Bernstein
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000