UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEON D. BLACK,

            Plaintiff,

    v.

GUZEL GANIEVA, WIGDOR LLP, AND JOHN DOES 1-3,

            Defendants.

Case No. 21-cv-08824 (PAE)

**LEON BLACK'S MEMORANDUM OF LAW IN OPPOSITION TO WIGDOR LLP'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Dated: January 24, 2022

**ESTRICH GOLDIN LLP**

Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
Tel: (213) 399-2132
susan@estrichgoldin.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

John B. Quinn
8565 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3200
johnquinn@quinnemanuel.com

Michael B. Carlinsky
Jennifer J. Barrett
Ryan A. Rakower
Jacqueline M. Stykes
51 Madison Ave., 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
ryanrakower@quinnemanuel.com
jacquelinestykes@quinnemanuel.com

*Attorneys for Plaintiff Leon Black*

## **TABLE OF CONTENTS**

**Page**

Preliminary Statement ........................................................................................................1

Statement Of Relevant Facts .............................................................................................2

    A.    Ms. Ganieva's Extortion of Mr. Black ...............................................................2

    B.    The Enterprise's Continued Abuse .....................................................................3

Legal Standard ...................................................................................................................5

Argument ...........................................................................................................................6

I.    The Complaint Complies With Rule 11(b)(2) ...........................................................6

    A.    Wigdor's Legal Arguments Should Be Addressed In Its Rule 12(b)(6) Motion .................................................................................................................7

    B.    The Civil RICO Claims Are Not Frivolous .......................................................8

        1.    The complaint sufficiently alleges a racketeering enterprise ...................9

        2.    The complaint sufficiently alleges Wigdor "participated in the affairs" of the enterprise ........................................................................10

        3.    The complaint sufficiently alleges Wigdor engaged in predicate acts ........................................................................................................11

        4.    The complaint sufficiently alleges a pattern of racketeering activity ........13

        5.    The complaint sufficiently alleges a cognizable RICO injury .................14

        6.    The RICO claims are distinct from the contract claim ............................15

        7.    The complaint sufficiently alleges Wigdor engaged in a racketeering conspiracy .........................................................................16

        8.    The RICO claims are not barred by the *Noerr-Pennington* doctrine .........16

    C.    The Defamation *Per Se* Claims Are Not Frivolous .............................................17

II.    The Complaint Complies With Rule 11(b)(3) .........................................................18

    A.    Plaintiff And His Counsel Made A Reasonable Pre-Filing Investigation ...........18

    B.    The "Funder" And "Flacks" Allegations Are Amply Supported ..........................20

        1.    "John Doe" And "Information And Belief" Pleadings Do Not Violate Rule 11 .......................................................................................20

        2.    The Funder Allegations Have Sufficient Support .....................................21

        3.    The "Flacks" Allegations Have Sufficient Support ..................................22

III.    The Complaint Complies With Rule 11(b)(1) .........................................................24

IV.    The Court Should Award Plaintiff Attorneys' Fees .................................................25

Conclusion ........................................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Cases*

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014)...................................................................................... 15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  579 F.3d 143 (2d Cir. 2009)................................................................................................. 18

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
  712 F. Supp. 2d 255 (S.D.N.Y. 2010).................................................................................. 19

*Baisch v. Gallina*,
  346 F.3d 366 (2d Cir. 2003)................................................................................................... 9

*Bank v. CreditGuard of Am., Inc.*,
  2020 WL 1516107 (E.D.N.Y. Mar. 30, 2020) ...................................................................... 7

*Bankers Tr. Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988)............................................................................................... 15

*Bletas v. Deluca*,
  2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011) ..................................................................... 8

*Blue v. United States Dep't of the Army*,
  914 F.2d 525 (4th Cir. 1990) ................................................................................................. 7

*Boyle v. United States*,
  556 U.S. 938 (2009)............................................................................................................... 9

*Caribbean Wholesales & Serv. Corp. v. USA JVC Corp.*,
  101 F. Supp. 2d 236 (S.D.N.Y 2000).............................................................................. 6, 25

*Carlton Grp., Ltd. v. Tobin*,
  2003 WL 21782650 (S.D.N.Y. July 31, 2003) .................................................................... 18

*Chevron Corp. v. Donziger*,
  871 F. Supp. 2d 229 (S.D.N.Y. 2012).................................................................................. 13

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016) ..................... 12, 13

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)............................................................................................................... 5

*Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*,
  113 F.3d 308 (2d Cir. 1997)................................................................................................. 10

*Cruz v. FXDirectDealer, LLC,*
   720 F.3d 115 (2d Cir. 2013)................................................................................. 8

*D'Addario v. D'Addario,*
   901 F.3d 80 (2d Cir. 2018)........................................................................... 11, 15

*Davis v. Kelly,*
   160 F.3d 917 (2d Cir. 1998)............................................................................... 20

*E. Gluck Corp. v. Rothenhaus,*
   252 F.R.D. 175 (S.D.N.Y. 2008) ..................................................................... 7, 18

*Eagle One Roofing Contractors, Inc. v. Acquafredda,*
   2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) ..................................................... 10

*Elsevier, Inc. v. Grossman,*
   2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) ....................................................... 16

*Fazio v. Ranestorm Ent., LLC,*
   2016 WL 750965 (S.D.N.Y. Feb. 16, 2016) ....................................................... 16

*Feinberg v. Katz,*
   2002 WL 1751135 (S.D.N.Y. July 26, 2002) ..................................................... 10

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
   385 F.3d 159 (2d Cir. 2004).................................................................... 9, 10, 11

*Fishoff v. Coty Inc.,*
   634 F.3d 647 (2d Cir. 2011).................................................................................. 7

*Flemming v. Port Auth. of New York & New Jersey,*
   2021 WL 878558 (E.D.N.Y. Mar. 9, 2021) .......................................................... 8

*Flomenhaft v. Finkelstein,*
   127 A.D.3d 634 (1st Dep't 2015) ....................................................................... 17

*Galerie Furstenberg v. Coffaro,*
   697 F. Supp. 1282 (S.D.N.Y. 1988)...................................................................... 9

*G-I Holdings, Inc. v. Baron & Budd,*
   238 F. Supp. 2d 521 (S.D.N.Y. 2002).......................................................... 11, 14

*G-I Holdings, Inc. v. Baron & Budd,*
   2002 WL 1934004 (S.D.N.Y. Aug. 21, 2002) ........................................ 19, 20, 22

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.,*
   67 F.3d 463 (2d Cir. 1995)................................................................................. 13

iii

*Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*,
  2011 WL 5507426 (E.D.N.Y. Nov. 9, 2011) ................................................................ 20

*Greene v. Donovan*,
  2007 WL 2005558 (S.D.N.Y. July 10, 2007) ................................................................ 8

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
  698 F.3d 58 (2d Cir. 2012) .......................................................................................... 5

*Jacobson v. Cooper*,
  882 F.2d 717 (2d Cir. 1989) ........................................................................................ 14

*Jeffreys v. Rossi*,
  275 F. Supp. 2d 463 (S.D.N.Y. 2003) .......................................................................... 6

*JGB Properties, LLC v. Ironwood, LLC*,
  2015 WL 1399997 (N.D.N.Y. Mar. 26, 2015) ............................................................ 25

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
  61 F.3d 123 (2d Cir. 1995) .......................................................................................... 6

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) .......................................................................................... 12

*Lacher v. Engel*,
  33 A.D.3d 10 (1st Dep't 2006) .................................................................................... 17

*LCS Grp., LLC v. Shire LLC*,
  2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ................................................................ 8

*Madanes v. Madanes*,
  981 F. Supp. 241 (S.D.N.Y. 1997) .............................................................................. 9

*Mayfield v. Asta Funding, Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015) ............................................................................ 11

*Morrow v. Black*,
  742 F. Supp. 1199 (E.D.N.Y. 1990) ............................................................................ 14

*O'Brien v. Alexander*,
  101 F.3d 1479 (2d Cir. 1996) ...................................................................................... 8

*Oygard v. Town of Coventry*,
  166 F.3d 1201 (2d Cir. 1998) ...................................................................................... 15

*Park v. Seoul Broad. Sys. Co.*,
  2008 WL 619034 (S.D.N.Y. 2008) .............................................................................. 6

iv

*Pavlov v. Bank of New York Co., Inc.*,
  25 F. App'x 70 (2d Cir. 2002) ........................................................................... 10

*Primetime 24 Joint Venture v. Nat'l Broad., Co.*,
  219 F.3d 92 (2d Cir. 2000) ................................................................................ 16

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................................ 10

*Rodick v. City of Schenectady*,
  1 F.3d 1341 (2d Cir. 1993) ................................................................................... 5

*Safe-Strap Co. v. Koala Corp.*,
  270 F. Supp. 2d 407 (S.D.N.Y. 2003) .......................................................... 7, 18, 19

*Sehgal v. Aggarwal*,
  2021 WL 3617479 (E.D.N.Y. Aug. 16, 2021) ...................................................... 14

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
  2017 WL 4640149 (S.D.N.Y. July 26, 2017) ......................................................... 7

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) ................................................................................. 6

*Sorenson v. Wolfson*,
  170 F. Supp. 3d 622 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017) ............ 6, 8

*Spithogianis v. Haj-Darwish*,
  2008 WL 82188 (S.D.N.Y. 2008) ......................................................................... 24

*State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*,
  909 F. Supp. 137 (S.D.N.Y. 1995) ....................................................................... 14

*Storey v. Cello Holdings, L.L.C.*,
  347 F.3d 370 (2d Cir. 2003) ................................................................................. 25

*Sussman v. Bank of Israel*,
  56 F.3d 450 (2d Cir. 1995) ................................................................................... 25

*Sykes v. Mel Harris & Associates, LLC*,
  757 F. Supp. 2d 413 (S.D.N.Y. 2010) .................................................................. 12

*Traynor v. Hereafter, Inc.*,
  2019 WL 3940128 (S.D.N.Y. July 31, 2019) ......................................................... 6

*Tuscano v. Tuscano*,
  403 F. Supp. 2d 214 (E.D.N.Y. 2005) ................................................................... 9

*U.S. v. Indelicato,*
  865 F.2d 1370 (2d Cir. 1989)..................................................................... 13

*United States v. Allen,*
  155 F.3d 35 (2d Cir. 1998)........................................................................ 11

*United States v. Applins,*
  637 F.3d 59 (2d Cir. 2011)........................................................................ 16

*United States v. Eisen,*
  974 F.2d 246 (2d Cir. 1992)....................................................................... 12

*United States v. Turkette,*
  452 U.S. 576 (1981)..................................................................................... 9

*Upstate Shredding, LLC v. Ne. Ferrous, Inc.,*
  2016 WL 865299 (N.D.N.Y. 2016) ........................................................ 25

**Statutory Authorities**

18 U.S.C. § 1951(b)(2) .................................................................................. 12

**Rules and Regulations**

Fed. R. Civ. P. 11 ................................................................. 1, 2, 5, 6, 7, 8, 19, 25

Fed. R. Civ. P. 11(b)(1)................................................................................. 24

Fed. R. Civ. P. 11(b)(2)................................................................................... 7

Fed. R. Civ. P. 11(b)(3)............................................................................ 18, 20

Fed. R. Civ. P. 11(b)-(c) ................................................................................. 5

Fed. R. Civ. P. 11(c)(2)......................................................................... 2, 7, 25

Fed. R. Civ. P. 12 ......................................................................................... 18

Fed. R. Civ. P. 12(b)(6)............................................................................... 1, 7

**Additional Authorities**

Estrich Decl. Ex. 1, Josh Kosman and Priscilla DeGregory, *Leon Black defamed accuser*
  *by claiming she extorted him, suit alleges*, NEW YORK POST, June 1, 2021............................. 22

Estrich Decl. Ex. 2 Gabriel Sherman, *Billionaire Leon Black Allegedly Raped a Woman*
  *in Epstein's New York Mansion, New Legal Documents Claim*, VANITY FAIR, Sept.
  20, 2021................................................................................................................. 22

Estrich Decl. Ex. 3 Gabriel Sherman, *Billionaire Leon Black is Being Investigated by the Manhattan D.A., Sources Say*, VANITY FAIR, Oct. 25, 2021 .................................................... 23

Estrich Decl. Ex. 4, Josh Kosman, *Leon Black Seen Out on the Town with Wife Debra Amid Sex Assault Allegations*, NEW YORK POST, Oct. 27, 2021................................................ 23

Plaintiff Leon Black respectfully submits this memorandum of law in opposition to Defendant Wigdor LLP's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11.

## PRELIMINARY STATEMENT

Wigdor's motion for sanctions—which it acknowledges is premised on "substantially the same arguments" as its contemporaneously filed Rule 12(b)(6) motion (ECF No. 37 at 2)—wrongly seeks to deflect attention from its own egregious misconduct.  Wigdor filed multiple sham complaints in New York state court filled with salacious and false allegations designed to extort and defame Mr. Black.  And Wigdor worked on its own and with others to foment toxic press coverage in order to breathe life into its client's lies.  Faced with these outrageous allegations in both the courts and the media, Plaintiff rightfully sought to defend himself and to reclaim his good name by filing this action.  Filing the complaint was not an act of retaliation; it was a reasonable response to extortion and defamation.  Yet, having utilized the New York court system as a springboard for its malicious campaign against Mr. Black, Wigdor now pursues a baseless sanctions motion in this Court, with the clear aim of trying to further tar not just him but his lawyers as well, while bullying them into dropping this action and ultimately capitulating in the state court action.  This Court should reject Wigdor's attempt to interfere with Mr. Black's good-faith efforts to defend himself.

Every allegation asserted in support of the complaint was made in good faith and based upon an objectively reasonable body of evidence.  And every legal theory underlying Plaintiff's claims has an objectively reasonable basis in the law.  Are some allegations based on circumstantial evidence?  Perhaps, but that is perfectly allowed when it is plausible that more direct evidence will be obtained.  And are some legal claims subject to differences of opinion in the case law?  Again, perhaps, but those are issues to be raised in a motion to dismiss or later, not a basis for sanctions.

Finally, Plaintiff has dropped the RICO claims against Wigdor in his Amended Complaint (ECF No. 46), which should resolve most of the concerns raised in Wigdor's motion.  Plaintiff maintains that Wigdor's conduct has been improper, and stands by the propriety of his decision to assert RICO claims against Wigdor in the original complaint.  However, in light of the recent motion practice and the complexity associated with asserting RICO claims against law firm defendants, Plaintiff believes his grievances against Wigdor can be addressed more directly through his defamation cause of action.  The Amended Complaint maintains the RICO causes of action against Ms. Ganieva and the now-identified John Doe Defendants, but does not name Wigdor as a defendant on those counts.  Wigdor has informed Plaintiff that it will maintain its request for sanctions even should Plaintiff withdraw his RICO claims against it.

Rule 11 sanctions are reserved for extraordinary circumstances.  Wigdor's motion does not come close to meeting that high bar.  The Court should deny the motion and award Plaintiff the costs he incurs opposing this motion pursuant to Rule 11(c)(2).

## STATEMENT OF RELEVANT FACTS[1]

### A.    Ms. Ganieva's Extortion of Mr. Black

Plaintiff Leon Black is one of the most successful financiers in the world and founder of Apollo Global Management.  *See* Compl. (ECF No. 1) ¶¶ 29–30.  Plaintiff had a consensual sexual relationship with Defendant Guzel Ganieva that began in 2008 and ended in 2014, when Ms. Ganieva told him she was leaving the country for immigration-related reasons.  *Id.* ¶ 36.  When Ms. Ganieva returned to the U.S. in 2015, she met with Mr. Black and threatened that she would go public with their affair if he did not pay her $100 million.  *Id.* ¶¶ 38–39.  Plaintiff recorded

---

[1]   For the purposes of responding Wigdor's motion for sanctions, the facts below are recited from the original complaint (ECF No. 1), which is the pleading that Wigdor claims violated Rule 11. That complaint has since been amended (ECF No. 46).

these conversations. *Id.* ¶ 39.  Ms. Ganieva never claimed physical or sexual assault while making her extortionate demands. *Id.*  But if Mr. Black did not pay, she warned, she would disclose and distort their relationship to his wife, the Apollo board, and the press. *Id.* ¶¶ 1, 38–39, 58.  Mr. Black gave in to her threats and agreed to forgive a million dollars in loans he had made to her, advance her millions more, and pay her $100,000 a month for the next 15 years. *Id.* ¶ 40.

For nearly six years, Ms. Ganieva accepted extorted monthly payments. *Id.* ¶ 41.  She changed her tack in March 2021, seeing a window of even more opportunity for extortion when Plaintiff was scrutinized for his business relationship with Jeffrey Epstein. *Id.* ¶¶ 44–46.  To increase pressure on Mr. Black and extort him for even greater sums, on March 17, 2021, Ms. Ganieva tweeted, falsely, that: (i) she had been "sexually harassed and abused" by Plaintiff "for years"; (ii) that Mr. Black "could not understand me when I refused his sexual advances"; (iii) she had been "bullied, manipulated, threatened, and coerced" by Mr. Black; (iv) "under duress, [she] was forced to sign an NDA in 2015"; and (v) she did "not want this type of predatory behavior to continue happening to other women." *Id.* ¶ 46.  This time, Mr. Black did not take the bait—he rejected Ms. Ganieva's extortion and ceased making the monthly $100,000 payments. *Id.* ¶¶ 2, 41, 44, 96(b).

### B.     The Enterprise's Continued Abuse

Ms. Ganieva's decision to emerge on Twitter in March 2021 (for her first and last foray on that social media platform) was not made spontaneously or alone. *Id.* ¶¶ 3, 10, 17, 47, 93(a), 96(e), 97(e).  It was a calculated and coordinated effort by an Enterprise comprised of Ms. Ganieva, Defendant Wigdor LLP (her attorneys), John Does 1 and 2 (public relations professionals), and John Doe 3 (the Enterprise's mastermind and puppeteer). *Id.*  Although Ms. Ganieva had just three Twitter followers, they were all reporters who the Enterprise recruited to follow Ms. Ganieva in

advance of her tweets.  *Id.* ¶¶ 47–48.  Following the tweets, the Enterprise arranged an interview with the New York Post to give Ms. Ganieva an even broader platform for her corrosive lies.  *Id.*

Then came the lawsuits.  In June 2021, Ms. Ganieva and Wigdor filed the first of three escalating salacious complaints in New York Supreme Court designed to humiliate Mr. Black and extort him into paying even more shakedown money.  *Id.* ¶¶ 50, 52.  The complaint's allegations were directly contradicted by recorded conversations between Mr. Black and Ms. Ganieva, which Mr. Black quoted and described at length in his answer.  *Id.* ¶¶ 54–58.  Notwithstanding this clear evidence, Ms. Ganieva and Wigdor doubled down on their extortionate and defamatory campaign by filing an amended complaint introducing new, false allegations regarding Jeffrey Epstein that were entirely irrelevant to any of Ms. Ganieva's claims.  *Id.* ¶¶ 61–65.

These allegations were once again directly contradicted by evidence, including Ms. Ganieva's own statements, which Wigdor knew or should have known prior to filing the complaint, and which Mr. Black quoted and described in his amended answer.  *Id.* ¶¶ 64–66.  In September 2021, Wigdor and Ms. Ganieva sought to amend the complaint yet again, and publicly filed a Proposed Second Amended Complaint that repeated the falsehoods in the first two complaints and introduced new false and even more salacious allegations against Mr. Black that had no connection to Ms. Ganieva's claims.  *Id.* ¶¶ 68–71.

Wigdor's behavior following the filing of these three sham complaints demonstrates its real purpose was not legitimate litigation, but instead to engulf Mr. Black in a firestorm of ruinous publicity designed to destroy his reputation and pressure him into rolling over to Ms. Ganieva's extortionate demands.  *Id.* ¶¶ 72–74.  Wigdor stonewalled discovery, including by refusing to agree to a basic confidentiality stipulation, preferring to be willfully blind to facts that would directly and explicitly contradict the claims included in their complaints.  *Id.*  Wigdor also refused to

consent to the entry of even the most basic form confidentiality order, thereby effectively blocking Mr. Black from obtaining any exculpatory evidence from third parties who understandably expected standard confidentiality protection.  While Ms. Ganieva and Wigdor were taking great pains to ensure the state court case did not move forward in discovery, they undertook equal efforts to ensure the case continued to be the subject of media attention. *Id.* ¶¶ 6, 10, 12, 72, 91(g) & (k), 92(h), 93(c).  Virtually every filing by Ms. Ganieva and Wigdor was shared with the press (sometimes in advance) and given maximum coverage liberally punctuated with inflammatory quotes from Wigdor attorneys. *Id.* ¶¶ 72, 91(k), 92(h), 93(c).

Ms. Ganieva and Wigdor even made false reports of criminal conduct by Mr. Black to government prosecutors, and their Enterprise coopted members of the press to exaggerate and publicize a frivolous criminal investigation that they alone fomented. *Id.* ¶¶ 76–78.  They also are continuing to work their trusted reporters to distort the connection between Mr. Black and Epstein as well as Mr. Black's relationship with Ms. Ganieva. *Id.* ¶¶ 77–78, 82.

## <u>LEGAL STANDARD</u>

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  A court filing violates Rule 11 if it is "used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)-(c)).  Rule 11 "is targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify[,] or reverse the law as it stands." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (quotation marks and citations omitted). "Rule 11 motions . . . should not be employed . . . to test the sufficiency or efficacy of allegations

in the pleadings; other motions are available for those purposes"—such as a motion to dismiss. *See* Fed. R. Civ. P. 11 advisory committee's note (1993 amendments). "With respect to factual contentions, sanctions [pursuant to Rule 11] may not be imposed unless a particular allegation is utterly lacking in support." *Traynor v. Hereafter, Inc.*, 2019 WL 3940128, at *1 (S.D.N.Y. July 31, 2019) (quotation marks and citation omitted).

For the purpose of a Rule 11 motion, an attorney's litigation conduct "should be determined without the benefit of hindsight, based on what was objectively reasonable to believe at the time the pleading, motion[,] or other paper was submitted." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 479-80 (S.D.N.Y. 2003). In making these determinations, "all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995). Courts are "cautious" with the imposition of Rule 11 sanctions to avoid chilling counsel's enthusiasm and stifling creativity in pursuing novel factual or legal theories. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 529 (5th Cir. 2016).

Even where a court finds a Rule 11 violation, the imposition of sanctions is reserved for "extreme cases." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017); *Park v. Seoul Broad. Sys. Co.*, 2008 WL 619034, at *1 (S.D.N.Y. 2008) (reserving Rule 11 sanctions for "extraordinary circumstances"). Rule 11(c)(2) also allows a court to award reasonable expenses, including attorney fees, to the prevailing party on the motion for sanctions. Fed. R. Civ. P 11(c)(2); *see Caribbean Wholesales & Serv. Corp. v. USA JVC Corp.*, 101 F. Supp. 2d 236, 242 (S.D.N.Y. 2000) (attorneys' fees awarded to non-movant).

## ARGUMENT

## I.   THE COMPLAINT COMPLIES WITH RULE 11(B)(2)

Rule 11(b)(2) permits sanctions only where a party "advanced claims and contentions that were not warranted either by existing law or by a nonfrivolous argument for the extension,

6

modification, or reversal of existing law or the establishment of new law." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 411 (S.D.N.Y. 2003).  Wigdor has not come close to demonstrating that Plaintiff's legal allegations meet this demanding standard.

### A.     Wigdor's Legal Arguments Should Be Addressed In Its Rule 12(b)(6) Motion

Wigdor's Rule 11 motion is in actuality a dressed-up motion to dismiss.  Wigdor acknowledges that its motion for sanctions asserts "substantially the same arguments" as its contemporaneously-filed motion to dismiss.  ECF No. 37 at 2.  Indeed, much of Wigdor's sanctions motion merely addresses the sufficiency of Plaintiff's pleading rather than alleged Rule 11 violations, rendering it fatally deficient.  Wigdor's motion to dismiss, moreover, was mooted by Plaintiff's Amended Complaint.  Wigdor should not be permitted to use a sanctions motion to litigate the sufficiency of an obsolete pleading.

Such abuse of Rule 11 is both disallowed and "especially detrimental to the parties and to judicial economy." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 183 (S.D.N.Y. 2008); *see Bank v. CreditGuard of Am., Inc.*, 2020 WL 1516107, at *3 (E.D.N.Y. Mar. 30, 2020) (an unsuccessful "long-shot" legal argument does not necessarily "rise to the level of sanctionable conduct"); *Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, 2017 WL 4640149, at *8 (S.D.N.Y. July 26, 2017) (failure to state a claim did not mean "the claims were clearly frivolous or were alleged in bad faith"); *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable").  "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss." *Safe-Strap Co.*, 270 F. Supp. 2d at 416; *Blue v. United States Dep't of the Army*, 914 F.2d 525, 535 (4th Cir. 1990) ("dismissal . . . on the merits should be a first option," and imposition of sanctions "a matter of last resort").

The vast majority of cases Wigdor cites are district court cases, which are not precedent, do not foreclose different judges from reaching different conclusions, and thus cannot be the basis for holding a legal argument frivolous.  Further, in many of these cases, the courts did not ultimately find a Rule 11 violation, precisely because the imposition of sanctions is reserved for "extreme cases."  *Sorenson*, 170 F. Supp. 3d at 626; *see Greene v. Donovan*, 2007 WL 2005558, at *3 (S.D.N.Y. July 10, 2007) (declining to impose sanctions on counsel or his client because "there was an objectively reasonable basis for defense counsel to rely on his clients statements"); *Flemming v. Port Auth. of New York & New Jersey*, 2021 WL 878558, at *2 (E.D.N.Y. Mar. 9, 2021) (denying sanctions motion).  And in the cases Wigdor cites where a Rule 11 violation ultimately was found, it was only after the plaintiff had an opportunity to amend and cure defects or where evidence known to the plaintiff directly contradicted its factual allegations at the time it made them.  *See LCS Grp., LLC v. Shire LLC,* 2019 WL 1234848, at *16 (S.D.N.Y. Mar. 8, 2019) (finding a Rule 11 violation only after plaintiff failed to address or justify its RICO claim in its opposition); *O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir. 1996) (affirming sanctions where plaintiff's statements were contradicted by a prior decision and affidavit); *Bletas v. Deluca*, 2011 WL 13130879, at *10–*11 (S.D.N.Y. Nov. 15, 2011) (imposing sanctions after an opportunity to amend and cure defects, where plaintiff's claims had no private right of action and implicated the litigation privilege).  That is not the case here.  Wigdor's request that Mr. Black and his counsel be sanctioned for purported legal "defects" in his original complaint is not a proper basis for a Rule 11 motion.  Wigdor's arguments belong in a motion to dismiss.

## B.     The Civil RICO Claims Are Not Frivolous

The elements of a civil RICO claim are "that a person engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Cruz v. FXDirectDealer, LLC*, 720

F.3d 115, 120 (2d Cir. 2013).   Despite Wigdor's attempts (*see* Mot. 13–26), it cannot even demonstrate that the RICO claims here fail to state a cause of action—let alone warrant sanctions.

### 1.        The complaint sufficiently alleges a racketeering enterprise

Contrary to Wigdor's assertions (Mot. 13–15), Plaintiff properly and adequately alleged that Ms. Ganieva, Wigdor, and the John Doe Defendants, together, comprise an associated-in-fact Enterprise.   *See* Compl. ¶¶ 21, 89–99.   "The RICO enterprise is defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct' and 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"   *Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1287 (S.D.N.Y. 1988) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).   For an association of individuals to constitute an enterprise, the individuals must share "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."   *Boyle v. United States*, 556 U.S. 938, 946 (2009); *see First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).   Plaintiff met his pleading requirement by alleging all members were willing participants and specifically identifying their roles in an enterprise with a common goal.   *See* Compl. ¶¶ 21, 89–99.

Wigdor's role as Ms. Ganieva's legal counsel does not automatically insulate it from RICO liability.   An attorney and client may form a RICO enterprise, where the attorney "has discretionary authority in carrying out the instructions of the [conspiracy's] principals, . . . or played some part in directing the [enterprise's] affairs." *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) (holding insurance broker was proper RICO defendant under same standard) (quotation marks and citations omitted); *see Madanes v. Madanes*, 981 F. Supp. 241, 257 n.14 (S.D.N.Y. 1997) ("Obviously, a lawyer who solicits and files false lawsuits plays a key role in directing this type of RICO scheme."); *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 227 (E.D.N.Y. 2005) (sustaining RICO claim

9

against accountant and bookkeeper where they only "provided professional services and exhibited no control over the business of the enterprise" and "act[ed] within the scope of their employment").

"It is sufficient to allege that there is an enterprise with the stated objective of defrauding the plaintiff." *Eagle One Roofing Contractors, Inc. v. Acquafredda*, 2018 WL 1701939, at *7 (E.D.N.Y. Mar. 31, 2018); *see Feinberg v. Katz*, 2002 WL 1751135, at *12–*13 (S.D.N.Y. July 26, 2002) (the Second Circuit has "repeatedly found a sufficient enterprise where the complaint alleges a group without centralized hierarchy formed for the sole purpose of carrying out a pattern of racketeering acts") (citing *Pavlov v. Bank of New York Co., Inc.*, 25 F. App'x 70 (2d Cir. 2002); *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997) (alleging one victim "does not, by itself, preclude a RICO pattern"). Wigdor's contention that the complaint did not allege a racketeering enterprise is incorrect, and Wigdor's assertion that the complaint so egregiously failed to allege a racketeering enterprise as to violate Rule 11 is absurd.

> **2.     The complaint sufficiently alleges Wigdor "participated in the affairs" of the enterprise**

Wigdor is likewise incorrect to seek sanctions (Mot. 15) on the basis that the complaint fails to properly allege Wigdor "participated in the [Enterprise's] affairs." Under the "operation and management test," to participate in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This test requires neither primary responsibility for enterprise affairs nor a formal position in the enterprise, only that the defendants have "some part in directing the enterprise's affairs." *Id.* In the Second Circuit, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *First Capital Asset Mgmt.*, 385 F.3d at 176 (RICO defendant need only "have played *some* part in directing the enterprise's affairs") (internal

quotation marks and alterations omitted).  The question of operation or management is "essentially one of fact."  *Id.* (citing *United States v. Allen*, 155 F.3d 35, 42–43 (2d Cir. 1998)).

The complaint alleges Wigdor participated in the affairs of the RICO conspiracy by working in tandem with other members of the conspiracy to foment damaging press releases to extort and defame Mr. Black.  Compl. ¶¶ 1, 3, 6–10, 13–18, 26–27, 47–48, 50–53, 58, 61, 74, 76, 78.  These allegations are more than sufficient for pleading purposes and clearly not frivolous.  *See First Capital Asset Mgmt.*, 385 F.3d at 177–78 (RICO plaintiff adequately pled defendant participated in operation or management of her son's bankruptcy estate, despite having no formal position within estate); *D'Addario v. D'Addario*, 901 F.3d 80, 104 (2d Cir. 2018) (individuals "actively assist[ing]" executor who used estate to effectuate fraudulent schemes, "which directly affected his management" of the estate, were "fairly considered" to have participated in operation or management of RICO enterprise).

### 3.      The complaint sufficiently alleges Wigdor engaged in predicate acts

Wigdor wrongly contends (Mot. 17–21) the Court should sanction Plaintiff and his counsel for failure to adequately allege Wigdor engaged in RICO predicate acts.  The complaint sufficiently alleges at least two categories of predicate acts in which Wigdor engaged.

First, the complaint alleges Wigdor engaged in the predicate act of mail or wire fraud.  *See* Compl. ¶¶ 92, 96–97.  The preparation and filing of fraudulent litigation, which counsel knew or should have known was fraudulent, can constitute mail and wire fraud as a predicate RICO act. *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 543 (S.D.N.Y. 2002) (allegations that law firm prepared and filed fraudulent affidavits established the civil RICO predicate act of mail and wire fraud).  Further, "the Second Circuit and courts in this district have allowed RICO claims to proceed where the alleged predicate acts involved litigation activities."  *Mayfield v. Asta Funding, Inc*., 95 F. Supp. 3d 685, 697–98 (S.D.N.Y. 2015) (declining to "adopt a bright-line rule

11

that mail and wire fraud committed in the course of litigation activities cannot, as matter of law, constitute predicate acts for RICO purposes"); *United States v. Eisen*, 974 F.2d 246, 253–54 (2d Cir. 1992) (perjurious pleadings and pretrial submissions considered mail fraud predicates for RICO claim); *Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 425 (S.D.N.Y. 2010) (denying motion to dismiss RICO claims where predicate acts involved filing fraudulent affidavits); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 578 (S.D.N.Y. 2014) (sustaining RICO claim involving litigation activity as a predicate act), *aff'd*, 833 F.3d 74 (2d Cir. 2016).

Wigdor's reliance on *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)—and cases applying *Kim's* holding—is unpersuasive.  In *Kim*, the Second Circuit specifically "decline[d] to reach the issue of whether all RICO actions based on litigation activity are categorically meritless."  *Id.* at 105. Instead, the court held "litigation activity *alone* cannot constitute a viable RICO predicate act." *Id.* (emphasis added).  Here, the complaint does not allege litigation activity alone.  Rather, the complaint additionally alleges that Wigdor assisted in and exacerbated the Enterprise's wire fraud by helping Ms. Ganieva make a false report to the Manhattan District Attorney's Office that Mr. Black sexually assaulted her, and by ensuring that members of the press received Ms. Ganieva's false allegations in the lawsuits and in her report.  *See* Compl. ¶ 97(d).

Second, the complaint alleges Wigdor engaged or assisted in the predicate act of extortion. *Id*. ¶ 96(d).  "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  "The fact that the RICO Defendants have not succeeded in obtaining the desired payoff is immaterial to the question whether [plaintiff] sufficiently has alleged Hobbs Act extortion as a RICO predicate act."  *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 248–49 (S.D.N.Y. 2012).  Alleging that defendants "knowingly and willingly created or

instilled fear of economic harm" is adequate. *Id.* Ms. Ganieva started the extortionate scheme against Mr. Black in 2015, when she threatened to go public with the affair and make false allegations regarding her relationship with Mr. Black unless he paid her. Compl. ¶¶ 1, 4, 38, 40, 91(c), 96(b). By "assist[ing] Ms. Ganieva in making good on [those] extortionate threats," and by attempting to extort Plaintiff into providing additional consideration by filing sham lawsuits, assisting Ms. Ganieva with making a false criminal report against Plaintiff, and creating media coverage regarding Ms. Ganieva's false allegations, Wigdor played a critical role in furthering that extortionate scheme. *Id.* ¶ 96(d). These predicate act allegations are far from frivolous.

### 4.    The complaint sufficiently alleges a pattern of racketeering activity

Wigdor fares no better in seeking sanctions (Mot. 21–23) because all acts supposedly "occurred within just the past year," thus rendering it impossible for Plaintiff to allege a pattern of racketeering activity. For starters, the extortion that Wigdor and the other members of the Enterprise exacerbated and helped carry out actually began over six years ago, in 2015, when Ms. Ganieva first threatened Mr. Black with publicizing their affair and false allegations regarding their relationship if he did not pay her hush money. Compl. ¶¶ 1, 4, 38, 40, 91(c), 96(b). These allegations are sufficient to plead a closed-ended pattern. The complaint also adequately pleads an open-ended pattern of RICO activity. Specifically, Plaintiff's allegations give rise to the inference that Wigdor will continue to make and disseminate filings containing false and outrageous allegations against Mr. Black and continue to encourage the media to publish articles regarding this litigation and false accusations. *Id.* ¶¶ 98–100. Such activity gives rise to the requisite threat of continuity. *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) ("[A]n inherently unlawful act performed at the behest of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity.") (quotation marks and citation omitted); *U.S. v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989) (a

RICO violation does not require "proof of more than one scheme, episode, or transaction, or []
proof" of "a scheme with no apparent termination date"); *G-I Holdings*, 238 F. Supp. 2d at 544–
45 (allegations that a law firm filed approximately 200 false or fraudulent affidavits as part of its
"regular course of business" were sufficient to "imply a threat of on-going criminal activity" and
met the pleading requirement of open-ended continuity); *Morrow v. Black*, 742 F. Supp. 1199,
1207 (E.D.N.Y. 1990). (sustaining RICO claim where predicate RICO acts "lasted at most a few
months, [but] threatened future criminal activity").

Wigdor also wrongly seeks (Mot. 23) sanctions because the Enterprise's racketeering
scheme had only "one victim."  Courts, including the Second Circuit, have sustained RICO claims
where the plaintiff "was the only victim of the alleged scheme."  *State Wide Photocopy, Corp. v.
Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 140–41 (S.D.N.Y. 1995); *see Jacobson v. Cooper*, 882
F.2d 717, 720 (2d Cir. 1989) (holding the "requisite pattern of racketeering has been adequately
pleaded" where the predicate acts "involved the same participants, victim, and methods . . . and
are not isolated events").  Wigdor relies on *Sehgal v. Aggarwal*, 2021 WL 3617479 (E.D.N.Y.
Aug. 16, 2021), but there, the court ruled the complaint failed to allege a "pattern" because the
supposed scheme began between May and July 2020 and ended around July 22, 2020.  *Id.* at *4.
Those allegations foreclosed finding an open-ended or closed-ended conspiracy as a matter of law
because the fraud had a definitive end and occurred over less than two years.  *Id.*  Here, the
complaint alleges an ongoing pattern spanning nearly six years.  Compl. ¶¶ 21, 41, 97, 99.

Plaintiff has sufficiently pled a "pattern" of racketeering activity, and Wigdor has identified
no basis to sanction Plaintiff or his counsel for making such allegations.

### 5.     The complaint sufficiently alleges a cognizable RICO injury

Wigdor also wrongly asserts (Mot. 23) that the Court should sanction Plaintiff and his
counsel for failure to allege "a cognizable RICO injury."  To establish standing for a civil RICO

claim, a plaintiff must show a concrete financial loss and the injury also must be "ascertainable and definable," such as when a plaintiff is deprived of its ability to use or transfer property. *D'Addario*, 901 F.3d at 95.  Plaintiff alleged he was "injured in business or property as a result of Defendants' racketeering scheme."  Compl. ¶ 101.  For example, Plaintiff "provided Ms. Ganieva (i) a £2 million payment; (ii) forgiveness of two loans of $480,000 that had been accruing interest at 5% per annum for two and four years, respectively; and (iii) monthly payments of $100,000 from October 2015 through March 2021."  *Id.*

Plaintiff likewise has incurred substantial costs "defending against Defendants' sham lawsuits and media campaign," *id.*, which the Second Circuit has held is sufficient to establish a RICO injury, *see Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (contemplating as RICO injuries legal fees and expenses in defending frivolous lawsuits and overcoming bribe-induced decisions); *Oygard v. Town of Coventry*, 166 F.3d 1201, 1201 n.1 (2d Cir. 1998) (legal fees may qualify as RICO injuries, including legal fees fighting "frivolous satellite lawsuits"); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 153 (S.D.N.Y. 2014) (holding plaintiffs alleged sufficient RICO injury "in the form of legal fees they had to pay in response to Defendants' allegedly fraudulent lawsuits").  Wigdor has not met its high burden to show that the Court should sanction Plaintiff or his counsel for failure to plead a cognizable RICO injury.

### 6.    The RICO claims are distinct from the contract claim

Wigdor next incorrectly asserts (Mot. 24) that the Court should sanction Plaintiff and his counsel because Plaintiff's "RICO claims are merely dressed up claims for purported breach of contract."  Plaintiff's breach of contract claim is a distinct cause of action from his RICO claims with different elements.  *See* Compl. ¶¶ 87–109, 128–138.  Not a single element of Plaintiff's RICO claim hinges on the existence of a contract.  *Id.* ¶¶ 128–38.  Whether Ms. Ganieva signed her NDA with Plaintiff has no bearing on whether she formed an Enterprise to carry out a

fraudulent and extortionate racketeering scheme. *Id.*; *see Fazio v. Ranestorm Ent., LLC*, 2016 WL 750965, at *2 (S.D.N.Y. Feb. 16, 2016) ("[T]he issues underlying civil RICO and fraud claims are significantly different from those underlying breach of contract claims.").

### 7.     The complaint sufficiently alleges Wigdor engaged in a racketeering conspiracy

Wigdor also wrongly seeks sanctions (Mot. 24–26) because "the Complaint in this case fails to plausibly allege that Wigdor engaged in a racketeering conspiracy." A RICO conspiracy requires proof "that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering." *Elsevier, Inc. v. Grossman*, 2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013) (quotation marks omitted). "[I]t is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011).

Plaintiff has met this standard. The complaint specifically alleges that such an agreement was formed and specifies in detail precisely what predicate acts Wigdor agreed to perform. *See* Compl. ¶¶ 92, 104–05. There is no basis to impose sanctions.

### 8.     The RICO claims are not barred by the *Noerr-Pennington* doctrine

Wigdor again overreaches in seeking sanctions (Mot. 26) claiming the RICO claims against Wigdor are barred by the *Noerr-Pennington* doctrine. The sham litigation exception to the *Noerr-Pennington* doctrine applies in this case, and even if somehow it does not, Plaintiff's position is hardly frivolous. The test here "is not retrospective but prospective: Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment? . . . . The relevant issue is whether the legal challenges are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Primetime 24 Joint Venture v.*

*Nat'l Broad., Co.*, 219 F.3d 92, 101 (2d Cir. 2000) (quotation marks and citations omitted).  The complaint adequately alleges that the sham exception applies, stating both that "[t]here is no factual basis for any of [the state court] claims" and that the litigation activity was designed to "defame and bully Mr. Black into adding to the extortionate payments he already has made to prevent Ms. Ganieva from further destroying him."  Compl. ¶ 6.  This is classic sham litigation to which the *Noerr-Pennington* doctrine does not apply

### C.     The Defamation *Per Se* Claims Are Not Frivolous

Wigdor's contention (Mot. 27–28) that the defamation *per se* claim is sanctionable fails for the same reason as its *Noerr-Pennington* argument:  that claim is subject to the sham pleading exception to New York's litigation privilege.  *See* Compl. ¶ 53.  New York courts have held this privilege "is capable of abuse and will not be conferred where the underlying lawsuit was a sham action brought solely to defame the defendant."  *Flomenhaft v. Finkelstein*, 127 A.D.3d 634, 638 (1st Dep't 2015); *see Lacher v. Engel*, 33 A.D.3d 10, 10 (1st Dep't 2006) (same).  "[O]n a motion to dismiss a defamation action because of the privilege, the complaint must be construed in a light most favorable to the plaintiff and . . . where there is a question as to the applicability of the privilege, the issue should be decided at trial."  *Flomenhaft*, 127 A.D. 3d at 638.  The complaint adequately alleges that the sham pleading exception applies.  Not only were Ms. Ganieva's and Wigdor's allegations flatly inconsistent with evidence of Ms. Ganieva's interactions with Plaintiff—Wigdor buried its head in the sand and refused to even *look* at that evidence.  Compl. ¶ 18.  Ms. Ganieva did not behave as a plaintiff seeking justice; to the contrary, she and Wigdor blocked discovery at every turn, making clear that the lawsuit was designed only to defame and extort Plaintiff by creating negative media attention, not to pursue legitimate civil claims.  *Id.* ¶¶ 72–74.  Plaintiff and his counsel should not be sanctioned for bringing defamation claims based on Ms. Ganieva's and Wigdor's sham pleadings.

## II.     THE COMPLAINT COMPLIES WITH RULE 11(B)(3)

Wigdor also wrongly pursues (Mot. 8) sanctions against Plaintiff and his counsel under Rule 11(b)(3) for supposedly not conducting a "reasonable pre-filing inquiry into the factual contentions regarding Wigdor."  At the outset, Wigdor once again confuses Rule 11 for Rule 12 and in doing so fails to prove Rule 11 sanctions are warranted.  To obtain Rule 11 sanctions, Wigdor must show more than Plaintiff failed to sufficiently plead a claim.

Further, "[w]ith regard to factual contentions, sanctions may not be imposed unless a particular allegation is *utterly lacking in support*."  *E. Gluck Corp.*, 252 F.R.D. at 179 (emphasis added; citations omitted).  Before imposing sanctions, courts "look for statements which rise to the level of direct falsehoods."  *Safe-Strap Co.*, 270 F. Supp. 2d at 412.  "Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." *E. Gluck Corp.,* 252 F.R.D. at 179.  Sanctionable conduct under Rule 11(b)(3) requires "a showing of objective unreasonableness on the part of the attorney or client signing the papers."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 579 F.3d 143, 150 (2d Cir. 2009) (quotation marks and citation omitted).  Wigdor fails to demonstrate *any* of Plaintiff's allegations meet this standard.

### A.     Plaintiff And His Counsel Made A Reasonable Pre-Filing Investigation

Wigdor's bald assertions (Mot. 8–12) that Plaintiff and his counsel failed to perform a reasonable pre-suit investigation are false and in any event insufficient to support sanctions under Rule 11(b)(3).  "[W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel of another member of the bar."  *Carlton Grp., Ltd. v. Tobin*, 2003 WL 21782650, at *3 (S.D.N.Y. July 31, 2003) (quotation marks and citation omitted).  Wigdor provides no proof that

the factual allegations in the complaint are false or objectively unreasonable, or that the pre-suit inquiry was unreasonable.  To the contrary, Plaintiff and his counsel undertook an extensive pre-suit investigation, including but not limited to the following:

1. Mr. Black's attorneys closely examined text messages and transcripts of conversations between Ms. Ganieva and Mr. Black, as well as various other documents provided by Mr. Black.

2. Mr. Black's attorneys listened to audio recordings of conversations between Ms. Ganieva and Mr. Black.

3. Mr. Black's attorneys examined detailed records regarding Mr. Black's payments to Ms. Ganieva.

4. Mr. Black's attorneys spoke with Mr. Black in depth regarding his allegations and with other individuals who had information as to the truth of Mr. Black's allegations.

5. Mr. Black's attorneys received information that public relations specialists, who have close ties to the Funder, a wealthy and powerful individual with an axe to grind against Mr. Black, were conducting outreach to reporters to generate interest in Ms. Ganieva's story, resulting in articles that directly quote Wigdor attorneys.

6. Mr. Black's attorneys propounded numerous discovery requests in the state court action in an attempt to obtain information from Ms. Ganieva, Wigdor, and various non-parties relating to Ms. Ganieva's allegations against Mr. Black.

7. Mr. Black's attorneys conducted extensive research regarding RICO and courts' treatment of defamation, breach of contract, and unjust enrichment claims under New York law.

(Declaration of Susan Estrich ("Estrich Decl.") ¶ 2.)

Under any objective measure, Plaintiff and his counsel undertook a reasonable investigation prior to bringing this action and Plaintiff's allegations are not frivolous.  Even if some allegations turn out to be incorrect, that is not a basis for imposing sanctions.  *See Safe-Strap Co.*, 270 F. Supp. 2d at 417 (in assessing Rule 11 motions, courts look to "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate") (quotation marks and citations omitted); *G-I Holdings, Inc.*, 2002 WL 1934004, at *14 (courts "avoid hindsight and resolve all doubts [for Rule 11 motions] in favor of the signer"); *In re Australia & New Zealand*

19

*Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement").

### B.    The "Funder" And "Flacks" Allegations Are Amply Supported

#### 1.    "John Doe" And "Information And Belief" Pleadings Do Not Violate Rule 11

Wigdor apparently takes issue (Mot. 17) with Plaintiff's allegations that "unidentified" "Flacks"—public relations professionals—and an "unnamed" "Funder" participated in the RICO Enterprise.  But "the Second Circuit has explained that 'courts have rejected the dismissal of suits against unnamed defendants . . . identified only as 'John Doe's,' until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials.'"  *Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*, 2011 WL 5507426, at *11 (E.D.N.Y. Nov. 9, 2011) (reinstating civil RICO claim against the defendants, including John Doe defendants) (quoting *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)).  The complaint's inclusion of John Doe Defendants does not render it insufficient and certainly does not require sanctions.  Quite the opposite:  the Doe pleading shows Plaintiff and his counsel were diligent and careful prior to naming individuals as defendants, especially considering the potential personal and professional implications of doing so.

Wigdor also errs in arguing (Mot. 8) that the Court should impose sanctions because the complaint makes allegations regarding the Funder and Flacks "on information and belief."  Rule 11 specifically permits such allegations.  *See* Fed. R. Civ. P. 11(b)(3) (an individual in presenting a pleading certifies, "to the best of the person's knowledge, *information, and belief*, formed after an inquiry reasonable under the circumstances," that "the factual contentions have evidentiary support, or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery") (emphasis added); *G-I Holdings, Inc.*, 2002 WL 1934004, at *16 (denying sanctions where claims "lacked requisite specificity because [Plaintiff] believed more

specific information was uniquely within the . . . Defendants' purview").

## 2.    The "Funder" Allegations Have Sufficient Support

Contrary to Wigdor's assertions (Mot. 8–9), Plaintiff had a sufficient basis to allege the participation of a "Funder" in the Enterprise's extortionate scheme.  It is clear that Wigdor's aggressive campaign of false and salacious filings on Ms. Ganieva's behalf is not cheap and that Ms. Ganieva, who appears to be unemployed and is no longer receiving extorted monthly payments, is not bankrolling the litigation and media operation.  But at the time Plaintiff filed the complaint—and even now after producing of its heavily redacted engagement letter with Ms. Ganieva—Wigdor has refused to disclose who is covering its litigation expenses.

In the state court action, Ms. Ganieva and Wigdor specifically declined to answer questions about payments they had received from any third parties.  Estrich Decl. ¶ 4.  In particular, Wigdor also refused to include *any* information or documents in its possession, custody or control in Ms. Ganieva's answers to interrogatories and requests for production.  *Id.* ¶ 7.  Mr. Black had served an interrogatory asking Ms. Ganieva to "Identify every Person with whom You or Your counsel have any contract, agreement, understanding or arrangement of any kind Concerning the payment by a third party of Your attorneys' fees or any other costs associated with this Lawsuit."  *Id.* ¶ 4. However, Ms. Ganieva's response stated only the matter was a "contingency retainer" and "no other person or entity [] has any agreement, contract, understanding or arrangement to pay Plaintiff's *attorneys' fees*."  *Id.* (emphasis added).  This answer—which specifically omitted any reference to "other costs associated with this Lawsuit"—only reaffirmed Mr. Black's suspicion of a third-party funder, given the significant filings, costs and other fees already associated with the lawsuit, and given Ms. Ganieva's apparent lack of means to pay.  And this suspicion was further reinforced when Plaintiff and his counsel received information that public relations professionals,

who have close ties the Funder, were conducting outreach to reporters to generate interest in Ms. Ganieva's story, resulting in articles that directly quote Wigdor attorneys. *See id.* ¶ 3.

When the complaint was filed, neither Plaintiff nor his counsel had seen anything to contradict their reasonable and plausible suspicion. *G-I Holdings, Inc.*, 2002 WL 1934004, at *13 (finding plaintiff could rely on statements after finding no contradicting evidence prior to filing). After conducting their pre-filing investigation, Plaintiff and his counsel had ample reason to suspect that a funder was behind Ms. Ganieva and Wigdor's litigation and media campaign.

Wigdor's redacted engagement letter with Ms. Ganieva (ECF No. 33-4)—which Defendants did not show to Mr. Black until over a month *after* the complaint was filed (*see* Estrich Decl. ¶ 5)—does not change the analysis. Only three sentences of the letter are visible, and the unredacted portion states "[t]here is a possibility that you [Ms. Ganieva] will recover nothing, in which case we will receive no attorneys' fee *from you*." (ECF No. 33-4 at 1(emphasis added).) The heavily redacted letter does nothing to disprove the possibility that Wigdor received funding or promises to pay from an outside funder. Plaintiff's allegations concerning the Funder, which were made well before Wigdor agreed to disclose the redacted letter, do not warrant sanctions.

### 3.    The "Flacks" Allegations Have Sufficient Support

Contrary to Wigdor's assertions (Mot. 10–11), Plaintiff likewise had a sufficient basis to allege the participation of public relations professionals, or "Flacks," in the Enterprise's scheme. In their pre-filing investigation, Plaintiff and his counsel learned of myriad press articles about Ms. Ganieva's allegations against Plaintiff and her state court lawsuit specifically—including many articles quoting Wigdor attorneys directly—indicating a coordinated effort at media coverage in favor of Ms. Ganieva and against Mr. Black.[2]

---

[2]   *See* Estrich Decl. Ex. 1, Josh Kosman and Priscilla DeGregory, *Leon Black defamed accuser by claiming she extorted him, suit alleges*, NEW YORK POST, June 1, 2021,

Plaintiff and his counsel also received specific information from one or more public relations professionals that corroborated the complaint's allegations regarding the Flacks. Estrich Decl. ¶ 3. Specifically, they learned that certain Flacks had been working on behalf of a Funder to conduct outreach to reporters to generate interest in Ms. Ganieva's false allegations and spread rumors about Plaintiff in the media. *Id.* Ms. Ganieva's carefully crafted tweets and carefully curated set of Twitter followers—who were each prominent reporters in the #MeToo movement— likewise gave the appearance that she was receiving public relations help; it beggars belief to suggest that Ms. Ganieva herself, without professional assistance, reached out to high-profile reporters and convinced them to sign on as the first three followers of her new Twitter account.

Add to this the fact that, prior to the filing of this action in October 2021, Ms. Ganieva and Wigdor refused to produce in the state court action any documents or respond to any interrogatories seeking information regarding media and public relations firms with whom they had contact. *See* Estrich Decl. ¶ 6. It was only *weeks after* Plaintiff filed his complaint that Ms. Ganieva finally responded to one of his requests regarding communications with public relation firms, and claimed that "neither [she] nor (to her knowledge or with her authorization) any other person acting her behalf has communicated with any public relations or media consultants concerning or relating to

---

https://nypost.com/2021/06/01/leon-black-defamed-accuser-with-extortion-claim-suit-alleges/ (published the same day as Ms. Ganieva's initial New York State complaint and quotes Ms. Jeanne Christensen of Wigdor); Estrich Decl. Ex. 2, Gabriel Sherman, *Billionaire Leon Black Allegedly Raped a Woman in Epstein's New York Mansion, New Legal Documents Claim*, VANITY FAIR, Sept. 20, 2021, https://www.vanityfair.com/news/2021/09/billionaire-leon-black-allegedly-raped-a-woman-in-epsteins-mansion (published the same day as filing of Wigdor publicly filed the New York State Proposed Second Amended Complaint); Estrich Decl. Ex. 3, Gabriel Sherman, *Billionaire Leon Black is Being Investigated by the Manhattan D.A., Sources Say*, VANITY FAIR, Oct. 25, 2021, https://www.vanityfair.com/news/2021/10/billionaire-leon-black-is-being-investigated-by-the-manhattan-da (quoting Ms. Jeanne Christensen of Wigdor); Estrich Decl. Ex. 4, Josh Kosman, *Leon Black Seen Out on the Town with Wife Debra Amid Sex Assault Allegations*, NEW YORK POST, Oct. 27, 2021, https://nypost.com/2021/10/27/leon-black-hits-the-town-with-wife-debra-amid-sex-assault-allegations.

Mr. Black." *Id.* And that representation was expressly qualified by Ms. Ganieva's assertion that her interrogatory responses did not "encompass any information . . . that [Wigdor] or anyone other than Ms. Ganieva has in her possession, custody or control." *Id.* ¶ 7. In other words, Ms. Ganieva was *not* saying that her agents, such as Wigdor, had never communicated with Flacks, only that she, herself, was not aware that they had. Under these circumstances, Plaintiff had a reasonable basis to believe that the Enterprise waging war against him in the press included Flacks.

## III.   THE COMPLAINT COMPLIES WITH RULE 11(B)(1)

Wigdor also argues (Mot. 28–29) the Court should sanction Plaintiff and his counsel under Rule 11(b)(1), baselessly asserting that Plaintiff filed this action to "interfere with Wigdor's ability to represent Ms. Ganieva in her first-filed State Court Action." Plaintiff did not file a federal complaint in an elaborate ploy to force Ms. Ganieva to obtain new state court counsel. To the contrary, Plaintiff seeks redress for the constant abuse, extortion, and defamation he is facing in both the media and the courts at the hands of the Enterprise. The Enterprise filed three sham complaints, each more fanciful than the next, falsely accusing Mr. Black of engaging in despicable conduct with social pariahs like Jeffrey Epstein. Compl. ¶¶ 50, 52, 54–58. The Enterprise abused the criminal justice process by making false reports of a sexual assault to the Manhattan District Attorney. *Id.* ¶¶ 75, 77–78, 80, 92(i). The Enterprise coordinated with the media to create toxic press coverage that sought to destroy Plaintiff's reputation, business, and private life. *Id.* ¶¶ 76–77, 92(h)–(i). Attacked from every angle, Plaintiff has rightfully turned to this Court to end this campaign against him. Plaintiff and his counsel should not be sanctioned for exercising his legal right to seek redress and end this abuse.

Finally, Wigdor's accusations as to Plaintiff's motives are not only baseless, they are also legally insufficient to justify sanctions under Second Circuit precedent. A plaintiff's "subjective state of mind . . . [is] not adequate to impose sanctions in the first place in the absence of an

24

objectively frivolous pleading." *Spithogianis v. Haj-Darwish*, 2008 WL 82188, at \*10 (S.D.N.Y. 2008).  "[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 393 (2d Cir. 2003) ("[E]conomic disparity [between a plaintiff and defendant] and a greater litigiousness [of the plaintiff] do not alone amount to improper purpose."); *JGB Properties, LLC v. Ironwood, LLC*, 2015 WL 1399997, at \*11 (N.D.N.Y. Mar. 26, 2015) ("[W]hile the filing of Plaintiff's Complaint was certainly aggressive (and its central legal theory imaginative), it was not so clearly brought for the purpose of harassing Defendants and needlessly increasing their litigation costs as to be sanctionable").

## IV.   THE COURT SHOULD AWARD PLAINTIFF ATTORNEYS' FEES

Rule 11(c)(2) allows the Court to award reasonable expenses including attorneys' fees to the prevailing party on a motion for sanctions. Fed. R. Civ. P 11(c)(2).  As discussed above, Wigdor has made serious and baseless accusations that Plaintiff failed to perform an adequate pre-investigation and filed his case for an improper purpose.  Wigdor does not come close to meeting the legal standard for a Rule 11 motion.  Plaintiff should not bear the expense of responding to this frivolous motion.  He should be awarded attorneys' fees. *Caribbean Wholesales & Serv. Corp. v. USA JVC Corp.*, 101 F. Supp. 2d 236, 242 (S.D.N.Y. 2000) (attorneys' fees awarded to non-movant); *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, 2016 WL 865299, at \*9 (N.D.N.Y. 2016) (same).

CONCLUSION

The Court should deny Wigdor's motion and award Plaintiff his costs incurred opposing Wigdor's motion.

25

Dated: January 24, 2022
      New York, New York

Respectfully submitted,

ESTRICH GOLDIN LLP

By: _Susan Estrich_

Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
Tel: (213) 399-2132
susan@estrichgoldin.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP

John B. Quinn
8565 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3200
johnquinn@quinnemanuel.com

Michael B. Carlinsky
Jennifer J. Barrett
Ryan A. Rakower
Jacqueline M. Stykes
51 Madison Ave., 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
ryanrakower@quinnemanuel.com
jacquelinestykes@quinnemanuel.com

*Attorneys for Plaintiff Leon Black*

26