**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEON D. BLACK, | |
| Plaintiff, | |
| v. | Case No. 21-cv-08824 (PAE) |
| GUZEL GANIEVA, WIGDOR LLP, AND JOHN DOES 1-3, | |
| Defendants. | |

## DECLARATION OF SUSAN ESTRICH

I, Susan Estrich, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a partner at the law firm of Estrich Goldin LLP, attorneys for Plaintiff. I submit this declaration in support of Plaintiff Leon Black's Memorandum of Law in Opposition to Defendant Wigdor LLP's Motion for Sanctions pursuant to Fed. R. Civ. P. 11. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to them.

2. Prior to filing the Complaint (ECF No. 1) on October 28, 2021, Mr. Black and his counsel undertook an extensive pre-suit investigation. This investigation included but was not limited to the following:

    a. Mr. Black's attorneys closely examined text messages and transcripts of conversations between Ms. Ganieva and Mr. Black, as well as various other documents provided by Mr. Black;

    b. Mr. Black's attorneys listened to audio recordings of conversations between Ms. Ganieva and Mr. Black;

- c. Mr. Black's attorneys examined detailed records regarding Mr. Black's payments to Ms. Ganieva;

- d. Mr. Black's attorneys spoke with Mr. Black in depth regarding his allegations and with other individuals who had information as to the truth of Mr. Black's allegations;

- e. Mr. Black's attorneys received information that public relations specialists, who have close ties to the Funder, a wealthy and powerful individual with an axe to grind against Mr. Black, were conducting outreach to reporters to generate interest in Ms. Ganieva's story, resulting in articles that directly quote Wigdor attorneys;

- f. Mr. Black's attorneys propounded numerous discovery requests in the state court action in an attempt to obtain information from Ms. Ganieva, Wigdor, and various non-parties relating to Ms. Ganieva's allegations against Mr. Black; and

- g. Mr. Black's attorneys conducted extensive research regarding RICO and courts' treatment of defamation, breach of contract, and unjust enrichment claims under New York law.

3. Prior to filing the complaint, we also received specific information from one or more public relations professionals that certain public relations professionals had been working on behalf of a wealthy individual to conduct outreach to reporters to generate interest in Ms. Ganieva's false allegations and spread rumors about Plaintiff in the media.

4. In the state court action, Mr. Black served a series of interrogatories and requests for production on Ms. Ganieva and served two non-party subpoenas on Wigdor LLP. Ms. Ganieva and Wigdor specifically declined to answer questions about payments they had received from any

third parties.  For example, Mr. Black had served an interrogatory asking Ms. Ganieva to "Identify every Person with whom You or Your counsel have any contract, agreement, understanding or arrangement of any kind Concerning the payment by a third party of Your attorneys' fees or any other costs associated with this Lawsuit."  Ms. Ganieva's response stated only the matter was a "contingency retainer" and "no other person or entity [] has any agreement, contract, understanding or arrangement to pay Plaintiff's attorneys' fees."

5.     Wigdor shared a redacted version of its engagement letter with Ms. Ganieva on December 1, 2021.

6.     Ms. Ganieva and Wigdor refused to produce any documents or respond to any interrogatories seeking information regarding media and public relations firms with whom they had contact.  Weeks after Plaintiff filed the complaint in this action, Ms. Ganieva finally responded to one of Mr. Black's requests in the state court action regarding communications with public relation firms, and claimed that "neither Plaintiff nor (to her knowledge or with her authorization) any other person acting her behalf has communicated with any public relations or media consultants concerning or relating to Mr. Black."

7.     On November 17, 2021, Wigdor, on behalf of Ms. Ganieva, told Mr. Black's counsel in an email that Wigdor was "not producing any documents and/or information in response to Black's discovery requests on our client and none of [Ms. Ganieva's] answers, either to date or otherwise, encompass any information or documents that we or anyone other than Ms. Ganieva has in her possession, custody or control."

8.     A true and correct copy of an article by Josh Kosman and Priscilla DeGregory entitled *Leon Black defamed accuser by claiming she extorted him, suit alleges*, published in the

New York Post on June 1, 2021, taken from the website https://nypost.com/2021/06/01/leon-black-defamed-accuser-with-extortion-claim-suit-alleges/, is attached as Exhibit 1.

9. A true and correct copy of an article by Gabriel Sherman entitled *Billionaire Leon Black Allegedly Raped a Woman in Epstein's New York Mansion, New Legal Documents Claim*, published in Vanity Fair on September 20, 2021, taken from the website https://www.vanityfair.com/news/2021/09/billionaire-leon-black-allegedly-raped-a-woman-in-epsteins-mansion, is attached as Exhibit 2.

10. A true and correct copy of an article by Gabriel Sherman entitled *Billionaire Leon Black is Being Investigated by the Manhattan D.A., Sources Say* published in Vanity Fair on October 25, 2021, taken from the website https://www.vanityfair.com/news/2021/10/billionaire-leon-black-is-being-investigated-by-the-manhattan-da, is attached as Exhibit 3.

11. A true and correct copy of an article by Josh Kosman entitled *Leon Black Seen Out on the Town with Wife Debra Amid Sex Assault Allegations* published in the New York Post on October 27, 2021, taken from the website https://nypost.com/2021/10/27/leon-black-hits-the-town-with-wife-debra-amid-sex-assault-allegations, is attached as Exhibit 4.

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2022.

_____
Susan Estrich