UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
LEON D. BLACK,

                                    Plaintiff,              **Civil Action No.:**
                                                           **1:21-cv-08824-PAE**
                    -against-

GUZEL GANIEVA, WIGDOR LLP,
AND JOHN DOES 1-3,

                                    Defendants.
--------------------------------------------------------------------X

_____

**WIGDOR LLP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR RULE 11 SANCTIONS**

_____

                              Respectfully submitted,

                              RIVKIN RADLER LLP
                              Attorneys for Defendant Wigdor LLP
                              926 RXR Plaza
                              Uniondale, New York 11556
                              (516) 357-3000

### TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................ii

I.    The Procedural History of This Case Demonstrates Why Sanctions are Warranted ....................................................................................................2

II.    The Opposition and Amended Complaint Show Why Sanctions are Warranted for the Filing of the RICO Claim ................................................4

III.    Sanctions Must Be Imposed for Asserting a Defamation Claim against Wigdor .................................................................................................9

CONCLUSION.......................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Baisch v. Gallina,
    346 F.3d 366 (2d. Cir. 2003).......................................................................................7

Binghamton Masonic Temple v. Bares,
    168 F.R.D. 121 (N.D.N.Y. 1996)................................................................................5

Egiazaryan v. Zalmayev,
    2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ...........................................................10

Flemming v. Port Auth. of N.Y. & N.J.,
    2021 U.S. Dist. LEXIS 44411 (E.D.N.Y. 2021)........................................................6

G-I Holdings, Inc. v. Baron & Budd,
    2002 U.S. Dist. LEXIS 15443 (S.D.N.Y. 2002).........................................................6

Glenn v. Kaleida Health,
    2017 WL 3727313 (W.D.N.Y. 2017) ........................................................................4

Highland Capital Mgt., L.P. v. Dow Jones & Co., Inc.,
    178 A.D.3d 572 (1st Dep't 2019) ..............................................................................9

James v. Arango, et al.,
    2006 WL 8439481 (E.D.N.Y. 2006)..........................................................................4

Kim v. Kimm,
    884 F.3d 98 (2d Cir. 2018)........................................................................................7

Madanes v. Madanes,
    981 F. Supp. 241 (S.D.N.Y. 1997)............................................................................7

McRedmond v. Sutton Place Rest. & Bar, Inc.,
    48 A.D.3d 258 (1st Dept 2008)..................................................................................9

Peters v. Coutsodontis,
    155 A.D.3d 540 (1st Dep't 2017) ..............................................................................9

Tuscano v. Tuscano,
    403 F. Supp. 2d 214 (E.D.N.Y. 2005) .......................................................................7

Defendant Wigdor LLP ("Wigdor") respectfully submits this reply memorandum of law in further support of its motion for sanctions, pursuant to Fed. R. Civ. P. 11, against Plaintiff Leon Black ("Black") and his lawyers, John B. Quinn, Michael B. Carlinsky, Jennifer J. Barrett, and Ryan A. Rakower, of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), and Susan Estrich, of Estrich Goldin LLP (collectively, "Counsel").

On October 28, 2021, Black and his Counsel filed a Complaint which falsely alleged that Wigdor and its client, Guzel Ganieva, together with fictitious "John Does," participated in the operation and management of a criminal racketeering enterprise. This, despite the fact that Black and his Counsel were well aware that the allegations against Wigdor were false, that their claims against Wigdor lacked any legal basis, and that Wigdor's role in the disputes between Black and Ms. Ganieva was limited to representing Ms. Ganieva in a first-filed state court action against Black. Black and his Counsel then compounded their sanctionable conduct by refusing to withdraw the Complaint during the safe harbor period, insisting at the time that the RICO claims filed against Wigdor were meritorious. Nevertheless, after forcing Wigdor to file a motion to dismiss, as well as this motion for sanctions, Counsel argued unsuccessfully that this sanctions motion was moot, and then filed an Amended Complaint in which all racketeering claims are abandoned with respect to Wigdor.[1] See, e.g., ECF Nos. 36-38, 40, 46.

The claims against Wigdor were, and are, nothing more than a baseless collection of labels and conclusions, held together by Black's money. The belated filing of the Amended Complaint only highlights the impropriety of the claims originally filed against Wigdor, and giving Black and his Counsel absolution for their belated withdrawal of their meritless RICO claims would undermine

---

[1] The Amended Complaint persists in alleging a slightly altered, but still factually and legally defective, defamation per se claim against Wigdor.

the entire purpose of the safe harbor provision. In this context, it is one thing to deny a woman's account of a sexual assault. It is another thing altogether to counterattack by filing a lawsuit that falsely accuses not only her, but her attorneys too, of running a criminal racketeering enterprise. Black and his Counsel must be held accountable for this outrageous conduct.

## I.    <u>The Procedural History of This Case Demonstrates Why Sanctions are Warranted</u>

On December 14, 2021, Wigdor's counsel served Black and Counsel with the Rule 11 motion and a detailed "safe harbor" letter. <u>See</u> Gershenoff Decl., Ex. 1. On January 4, 2022, Counsel sent a letter in which they explicitly <u>refused</u> to withdraw Black's claims against Wigdor. <u>Id</u>., Ex. 2. Thus, on January 7, 2022, Wigdor filed its motion to dismiss. <u>See</u> ECF No. 30. On January 10, 2022, Wigdor filed this motion for Rule 11 sanctions. <u>See</u> ECF No. 33. On January 13, 2022, Black and Counsel belatedly announced their intention to amend. <u>See</u> ECF No. 36. At the same time, Black and Counsel asked for an extension of the briefing schedule on this sanctions motion, because -- according to them -- the prospective Amended Complaint would render the sanctions motion "moot". <u>Id</u>.  The Court denied their request. <u>See</u> ECF No. 40.

On January 23, 2022, the day before the deadline to oppose the sanctions motion, one of Black's lawyers, Michael Carlinsky ("Carlinsky"), called counsel for Wigdor. During the conversation, surely already knowing that the RICO claims against Wigdor were going to be abandoned in the about-to-be-filed Amended Complaint, Carlinsky offered to dismiss the RICO claim against Wigdor "without prejudice" (the equivalent of snow in the winter), if Wigdor would agree to withdraw the sanctions motion. <u>See</u> Gershenoff Decl., ¶ 5. Wigdor's attorney asked about a dismissal with prejudice, but Carlinsky declined. Carlinsky then said that it could change things if Wigdor could provide him with information that implicated Joshua Harris ("Harris"), owner of the Philadelphia 76ers and New Jersey Devils, and a former Apollo executive, who Black apparently believes is funding Ms. Ganieva's lawsuit (<u>i.e.</u>, the so-called "Funder"). <u>Id</u>.; <u>see also</u> ECF No. 46,

<u>passim</u>.  In other words, not only did Carlinsky acknowledge that he did not have information connecting Ms. Ganieva with any purported "Funder" -- the central theory of the RICO conspiracy claim against Wigdor -- but the clear inference was that Carlinsky wanted Wigdor to provide information against its own client, Ms. Ganieva. The proposal was rejected. <u>Id</u>.[2]

The next day, Black, represented by Ms. Estrich, filed an Amended Complaint. <u>See</u> ECF No. 46. Though the Amended Complaint continues to assert a baseless defamation claim against Wigdor, the fact that it no longer asserts any RICO claims against Wigdor is a tacit admission that Black's racketeering claims against the firm lacked any factual or legal basis. Indeed, it is clear that the falsified facts were not even capable of amendment, thereby offering further proof of the sheer frivolousness underlying the RICO claims that Black and Counsel knew should never have been asserted in the first place. <u>Id</u>.

On the same day, it seems that Quinn Emanuel finally realized that it is not a good idea to lend one's name to baseless and legally defective "RICO" and "defamation" claims against opposing counsel in a first-filed case.  As a result, the Quinn Emanuel attorneys moved to withdraw as Black's counsel in this action. <u>See</u> ECF No. 51. Mr. Quinn, Mr. Carlinsky, Ms. Barrett, and Mr. Rakower predicated their request to withdraw on a "potential conflict of interest" they supposedly just *happened* to discover on the due date for their opposition to Wigdor's sanctions motion.  However, it seems obvious that the "potential" conflict is just a flimsy pretext to try and side-step the consequences of their own misconduct. <u>For example, though the unspecified "potential" conflict supposedly prevents Quinn Emanuel from representing Black in the *present* case, Quinn Emanuel</u>

---

[2] While we would not ordinarily cite a discussion between counsel, Black's Counsel referenced the discussion in their opposition brief but mischaracterized what was said as "Wigdor has informed [Black] that it will maintain its request for sanctions even should [Black] withdraw his RICO claims against it." <u>See</u>  ECF No. 49, p. 2.

somehow manage to continue to represent Black in Ms. Ganieva's state court action which is obviously parallel to this case. Moreover, this purported conflict did not prevent Carlinsky from representing Black just one day earlier during the discussion with Wigdor's counsel. As to the "potential" conflict referred to, it is likely that reference involves Alex Spiro ("Spiro"), a partner at Quinn Emanuel, who attempted to directly solicit Ms. Ganieva as a client on March 24, 2021.  See ECF No. 33-1, at 2, 28.  Wigdor raised the issue to Black's lawyers in this case and in Ms. Ganieva's state court action on November 2, 2021. If this is the conflict, raising it on January 24, 2022 is disingenuous.  Notably, the opposition completely fails to mention Spiro, much less dispute facts about Spiro, and thus they have conceded the allegation. See e.g., Glenn v. Kaleida Health, 2017 WL 3727313, * 3 (W.D.N.Y. July 7, 2017); James v. Arango, et al., 2006 WL 8439481, * 3 (E.D.N.Y. 2006)  ("plaintiff fails to dispute, and hence concedes…the allegation that the Amended Complaint was [untimely] filed").

## II.   The Opposition and Amended Complaint Show Why Sanctions are Warranted for the Filing of the RICO Claim

Black and Counsel's opposition to the present motion make clear that they asserted baseless "RICO" and "defamation" claims against Wigdor. See ECF No. 49. The opposition is devoid of any factual basis for how or why Wigdor was properly named as a defendant or participated in a criminal racketeering enterprise. As to the decision to drop the RICO claims against Wigdor, the brief simply cites "the recent motion practice [e.g., Wigdor's motion to dismiss and sanctions motion] and the complexity associated with asserting RICO claims against law firm defendants". See ECF No. 49, p. 2. However, Black and Counsel knew or should have known when the Complaint was signed that Wigdor was not properly named as a RICO defendant, and -- in light of the safe harbor letter -- they had time to withdraw that claim against Wigdor before forcing Wigdor to file an unnecessary motion to dismiss and sanctions motion.  Indeed, while Ms. Estrich submits a declaration supposedly

recounting her good-faith, pre-filing inquiry, nothing she recounts from that inquiry suggests in any way that Wigdor participated in any racketeering activity at all. See ECF No. 50.

This is not the only way in which the opposition brief reveals the sanctionable nature of the "RICO" and "defamation" claims against Wigdor. For instance, the opposition admits that the only "evidence" for the scandalous allegations that Wigdor was working with a Funder was a "suspicion" that Ms. Ganieva -- who they themselves alleged had received many millions of dollars from Black in recent years -- could not afford to pay Wigdor. This, despite the fact that they acknowledge Wigdor works on contingency. See ECF No. 49, pp. 21-22; see also ECF No. 1, ¶¶ 2, 91, and passim.

Similarly, it is obvious that no facts ever existed to support the claim that Wigdor worked with Flacks on behalf of Ganieva. Black's lawyers signed a pleading alleging that Wigdor was part of a RICO enterprise based solely on the fact that Wigdor attorneys were quoted in press coverage of a case they were handling against Black, a celebrity CEO and high-profile billionaire. Under no objective standard could lawyers consider such information supportable of the claims in the Complaint, particularly given that Ms. Estrich herself has repeatedly spoken to the media about it, and written stories which tout Black's defense as what she supposedly believes "really" happened.[3] See ECF No. 1, ¶¶ 91(k), 92(h), 96(d), 97(d). Additionally, it defies common sense, and legal analysis, to think that Wigdor could be accused of a conspiracy with Flacks, when it is never even alleged that the unidentified "public relations professionals", and "certain Flacks" ever mentioned or communicated with Wigdor in any way. See ECF Nos. 49, pp. 22-23; 50, ¶¶ 2-3.

Courts have not hesitated to impose Rule 11 sanctions where, as in the present case, a plaintiff's allegations rest on gross speculation without any factual support. See, e.g., Binghamton

---

[3] https://www.newsmax.com/estrich/darrow-judicial-system-leon-black/2022/01/26/id/1054204/.

Masonic Temple v. Bares, 168 F.R.D. 121, 127 (N.D.N.Y. 1996)(imposing sanctions where RICO claim was "based completely on speculation and conjecture").

Incredibly, Black and Counsel try to justify their improper RICO claim against Wigdor by contending that the complete lack of evidence to support their claims somehow entitled them to presume that such evidence existed. See ECF No. 49, p. 21, 23-24.  The opposition's inclusion of false accusations about Wigdor delaying discovery in the State Action  is not only irrelevant to the good-faith filing of  RICO claim, but also is further proof of the need for sanctions because it constitutes an admission that Black and his Counsel were in possession of no facts that would permit them to file a colorable RICO claim against Wigdor. See ECF No. 49, pp. 21, 23-24.  Filing the Complaint under such circumstances is sanctionable. See Flemming v. Port Auth. of N.Y. & N.J., 2021 U.S. Dist. LEXIS 44411 at * 4 (E.D.N.Y. 2021)("a party cannot allege facts to make out ... a claim when it has an insufficient basis to make those allegations in the hope that discovery may fortuitously give it a good faith basis, unless it has reason to believe that will in fact occur.")(Internal quotations and citation omitted).[4]

In sum, the opposition and Counsel's declaration in support offer no basis to dispute the conclusion that the RICO claims filed against Wigdor were irremediably defective. See Gershenoff Decl., Exhibit "1"; ECF No. 33. For example, Black and Counsel fail to address the lack of

---

[4] Black and his counsel attempt to rely on G-I Holdings, Inc. v. Baron & Budd, 2002 U.S. Dist. LEXIS 15443 (S.D.N.Y. 2002), where the court held that a plaintiff could rely on witness statements after finding no contradicting evidence prior to filing. See Docket No. 49, p. 22. However, G-I Holdings is inapposite. In contrast to the situation in G-I Holdings, in the present case it is clear from Black and his counsel's opposition brief, and their Amended Complaint, that they had no witness statements or any other evidence to support their scurrilous RICO claims against Wigdor. Instead, they just had their "suspicion", speculation, and conjecture, which is insufficient.   Their purpose was almost certainly to tar Wigdor with baseless racketeering claims in the media under cover of a frivolous pleading.

distinction between their alleged RICO "enterprise" and the alleged RICO "persons", or between the alleged "enterprise" and the supposed pattern of racketeering activity. Nor do they address their failure to plead any facts to plausibly suggest that two main constituent parts of the contrived "enterprise" -- <u>i.e.,</u> the "Funder" and the "Flacks" -- ever existed in the first place. By extension, they do not address their failure to allege facts to plausibly suggest any common purpose between and among the members of the supposed enterprise, or any relationships, other than the attorney-client relationship between Wigdor and Ms. Ganieva, among those associated with the supposed enterprise. <u>See</u> ECF No. 49, pp. 9-10.[5]

Nor do Black or Counsel address their failure to plausibly allege that Wigdor participated in the operation and management of any purported racketeering enterprise. Rather than show how their RICO claims met the <u>actual</u> standard -- <u>i.e.,</u> that Wigdor had some part in directing the affairs of the notional "enterprise" -- Black and Counsel simply claim that "Wigdor participated in the affairs of the RICO conspiracy by working in tandem with other members of the conspiracy to foment damaging press releases to extort and defame Mr. Black." <u>See</u> ECF No. 49, p. 19. When were the press releases issued? Who issued them? To whom? What did they say? How does "fomenting" damaging press releases -- whatever that may mean -- equate to directing the affairs of a racketeering enterprise? Black's breezy certitudes are insufficient to rebut Wigdor's showing that there was no factual or legal basis for his RICO claims.

---

[5] Instead, they rely on totally inapposite cases, including <u>Baisch v. Gallina</u>, 346 F.3d 366 (2d. Cir. 2003)(insurance broker who actually committed cognizable predicate acts was a proper RICO defendant); <u>Madanes v. Madanes,</u> 981 F. Supp. 241 (S.D.N.Y. 1997)(recognizing that the provision of important legal services to a racketeering enterprise is not the same as directing the affairs of an enterprise, even where attorney allegedly recommended certain courses of fraudulent behavior); and <u>Tuscano v. Tuscano</u>, 403 F. Supp. 2d 214 (E.D.N.Y. 2005)(sustaining RICO claim against accountant and bookkeeper who actually were alleged to have engaged in specific acts of mail and wire fraud). These decisions do not address Black's failure to plausibly allege a racketeering enterprise.

Nor, for that matter, do Black and Counsel explain their failure to plausibly allege that Wigdor engaged in any pattern of racketeering activity. As set forth in <u>Kim v. Kimm</u>, 884 F.3d 98 (2d Cir. 2018), "allegations of frivolous, fraudulent, or baseless litigation activities -- without more -- cannot constitute a RICO predicate act". Though Black and his lawyers argue that their initial Complaint did not "allege litigation activity alone", they do not manage to point to any <u>actual</u> predicate acts committed by Wigdor. <u>See</u> ECF No. 49, pp. 12-13. Instead, they seem to contend that Wigdor "help[ed]" Ms. Ganieva, in some totally unspecified way, to file a supposedly false report of Black's misconduct with the Manhattan District Attorney's office, and "ensur[ed]" -- again, in some unknown way -- that "members of the press received Ms. Ganieva's false allegations in the lawsuits and in her report". <u>See</u> <u>id</u>., <u>citing</u> ECF No. 1, ¶ 97(d). By any legitimate metric, these acts -- even if true -- are not predicate acts of racketeering activity. Accordingly, sanctions are warranted.

Far from saving Black and Counsel, the Amended Complaint only highlights how inappropriate it was that RICO claims were brought against Wigdor in the first place. Black's Complaint paints a narrative, *without any actual facts to support it*, of Wigdor heavily involved in, and orchestrating, a racketeering enterprise. The Amended Complaint, while still riddled with outrageous allegations against Wigdor, abandons the theory that the firm was working with a "Funder" or "Flacks" in connection with its representation of Ms. Ganieva. Indeed, the Amended Complaint offers a totally different explanation as to "what happened." Black now alleges that: (i) Harris, a founder of Apollo who Black says is a disgruntled protégé, was plotting against Black for "months;" (ii) Harris and a "war council" of "lieutenants" staged a failed corporate takeover; (iii) Harris was seeking to hire counsel who could represent interests that were adverse to Black's; and (iv) after the takeover failed, Ms. Ganieva tweeted her allegations against Black.

Even assuming that these allegations are true, they utterly fail to support any of the claims asserted in either complaint against Ms. Ganieva or Wigdor. But, if the Amended Complaint's version of events is to be believed, it is a tacit admission that Wigdor not only was never involved in any way with "Flacks" or a "Funder," as alleged in the Complaint, but that Wigdor never even knew the identities of these individuals, much less "worked" alongside them as part of a conspiracy.

**III.**     **Sanctions Must Be Imposed for Asserting a Defamation Claim Against Wigdor**

The "defamation" claim against Wigdor in Black's initial Complaint likewise is sanctionable. It was objectively impossible for any claim to be asserted against Wigdor based on the allegations in the Complaint, and the opposition only reinforces this truth. First, Black admits that the defamation claim against Wigdor is based solely on Wigdor's representation of Ms. Ganieva in the state court action, allegations contained in the pleadings, and statements made by Wigdor *about the state court action*. Although Black's Counsel appears to be aware of the litigation privilege and that N.Y. Civil Rights Law § 74 ("Section 74") precludes a defamation claim based on statements that are "fair and true report(s) of any judicial proceeding," the Complaint asserts a defamation claim against Wigdor, without even attempting to argue that statements made by Wigdor were not "fair and true" reports.

Incredibly, Black alleges that Wigdor made statements about Ms. Ganieva's state court action to promote one big "press release" about *Ms. Ganieva's case*, which of course is squarely within Section 74. See ECF No. 1, ¶ 3, and passim. Nowhere does Black discuss the Wigdor statements in connection with the content of the pleadings in the state court action in order to distinguish Section 74's applicability. Black and his Counsel knew, or should have known, that a defamation claim against Wigdor is precluded under these circumstances. Here, the claim of defamation is sanctionable as it was asserted without even including facts that address well-settled New York law regarding fair and true reports. See e.g., McRedmond v. Sutton Place Rest. & Bar,

Inc., 48 A.D.3d 258, 259 (1st Dept 2008); Highland Capital Mgt., L.P. v. Dow Jones & Co., Inc., 178 A.D.3d 572, 573 (1st Dep't 2019).

Further, Black does not plausibly allege that Ms. Ganieva's first-filed state court action "was brought maliciously and solely" for the purpose of later defaming Black so as to come within the sham litigation exception to the litigation privilege. Rather, the Complaint affirmatively alleges that Ms. Ganieva and Wigdor commenced the State Action *to obtain money from him*. See Peters v. Coutsodontis, 155 A.D.3d 540, 541 (1st Dep't 2017); See ECF No. 1, ¶ 3, and passim (alleging that the state court action was intended to "extort even more" from Black).[6] Thus, no such sham litigation exception possibly exists here based on the allegations in Black's Complaint. See e.g., Egiazaryan v. Zalmayev, 2011 WL 6097136, *3 (S.D.N.Y. Dec. 7, 2011). Specious, conclusory verbiage, that Wigdor filed "fraudulent complaints that, as a result of her lawyers' "fomentation", became instant press releases in the Enterprise's effort to extort even more money from Black," not only fail to support a defamation claim, but actually defeat any application of the sham litigation exception.  As such, sanctions are warranted.

## CONCLUSION

Accordingly, the Court should impose an appropriate sanction on Black and his Counsel, pursuant to Rule 11.

---

[6] In this context, it is worthwhile to note that the New York anti-SLAPP statute was enacted to provide a defense to improper "defamation" lawsuits such as this one. See, e.g., New York State Legislature, Press Release, Senate and Assembly Majorities Advance Anti-SLAPP Legislation to Protect Free Speech (July 22, 2020), https://nyassembly.gov/Press/files/20200722a.php ("This broken system has led to … survivors of sexual abuse and others being dragged through the courts on retaliatory legal challenges solely intended to silence them.").

Dated: Uniondale, New York
      January 31, 2022

                      Respectfully submitted,

                      RIVKIN RADLER LLP
                      Attorneys for Wigdor LLP

                      /s/ Max Gershenoff    /s/ Janice DiGennaro

                      Max Gershenoff     Janice J. DiGennaro
                      Yonatan Bernstein
                      926 RXR Plaza
                      Uniondale, New York 11556
                      (516) 357-3000