# EXHIBIT "1"



WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

December 14, 2021

**<u>VIA ELECTRONIC MAIL AND FIRST CLASS MAIL</u>**

John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, California 90017
51 Madison Avenue, 22nd Floor, New York, New York 10010

Susan Estrich, Esq.
Estrich Goldin, LLP
699 W Exposition Boulevard, Los Angeles, California 90089

> Re:   *Black v. Ganieva, et al.*, S.D.N.Y. Case No. 1:21-cv-08824
>        "Safe Harbor" Notice Pursuant to Fed. R. Civ. P. 11(c)

Dear Counsel:

As you know, we represent Wigdor LLP ("Wigdor LLP" or the "Firm") in connection with the above-referenced action (the "SDNY Action") filed by each of you and your respective firms on behalf of Leon Black ("Mr. Black"). As discussed below, you know that there is no evidentiary support or good-faith basis for Mr. Black's fanciful "RICO" and "defamation" claims against the Firm, and that his claims are frivolous as a matter of law.[1] It is also clear that you and Mr. Black commenced the SDNY Action for an improper purpose, in a calculated attempt to interfere with Wigdor LLP's representation of its client, Ms. Ganieva, in connection with Ms. Ganieva's first-filed state court action against Mr. Black. This was clearly done to make good on Mr. Black's explicit threat to use his immense wealth and resources to retaliate against Ms. Ganieva and her counsel.

In fact, you are well-aware that Wigdor LLP is not -- as you allege on behalf of Mr. Black -- a constituent of any purported racketeering enterprise. Quite to the contrary, over the course of

---

[1] Mr. Black's claims against Guzel Ganieva ("Ms. Ganieva") in the SDNY Action likewise are frivolous, but she has retained her own counsel in connection with the SDNY Action and we write on behalf of Wigdor LLP, only.

66 South Pearl Street, 11th Floor
Albany, NY 12207-1533
T 518.462.3000 F 518.462.4199

25 Main Street
Court Plaza North, Suite 501
Hackensack, NJ 07601-7082
T 201.287.2460 F 201.489.0495

477 Madison Avenue
New York, NY 10022-5843
T 212.455.9555 F 212.687.9044

2649 South Road
Poughkeepsie, NY 12601-6843
T 845.473.8100 F 845.473.8777



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 2

the past nine years, Mr. Carlinsky himself has referred numerous clients to Wigdor LLP, including his own relatives, and has repeatedly sought the advice and assistance of the Firm's named partner, Douglas Wigdor, on various matters. Mr. Carlinsky referred one such client to Wigdor LLP just this past June, only four months before you lent your names to a federal Complaint alleging the Firm to be part of a racketeering enterprise. Nor is there any basis for you or Mr. Black to allege that Wigdor LLP acted improperly in any manner in connection with its representation of Ms. Ganieva in her first-filed state court action. Indeed, we understand that Quinn Emanuel partner Alex Spiro himself sought to represent Ms. Ganieva in connection with this matter, before she decided to retain Wigdor LLP. In this context, your good faith in asserting these false and scandalous claims against the Firm obviously will be relevant to any sanctions inquiry.

*Accordingly, we write to provide you and Mr. Black with the enclosed motion/notice of motion pursuant to Fed. R. Civ. P. 11(c), as well as the detailed basis for the motion that is set forth below. We hereby advise you that, unless the claims against Wigdor LLP in the SDNY Action are withdrawn within 21 days, we will move for sanctions against Mr. Black, you, and your firms.*

## I.   <u>The Relevant Standards</u>

Rule 11(b) provides, in relevant part, that an attorney presenting a pleading to a court must "certify that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

(1)   the pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)   the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and

(3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

<u>See</u> Fed. R. Civ. P. 11(b)(1)-(3). Thus, a pleading, motion, or other paper will violate Rule 11 "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 3

pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (internal quotations omitted); see also Steele v. Polymer Rsch. Corp. of Am., 1987 WL 12819 at *2 (S.D.N.Y. 1987) ("Rule 11, then, imposes upon attorneys an affirmative duty of prefiling inquiry into the facts and the law."). Rule 11(c) provides for sanctions based upon violations of Rule 11(b). "Sanctions shall be imposed against an attorney, his client, or both" when a pleading violates Rule 11. Greene v. Donovan, 2007 U.S. Dist. LEXIS 49932 at * 5 (S.D.N.Y. 2007).

As is particularly relevant to the SDNY Action, "[i]t is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details but you must have the outline of a claim at the beginning." Gelfman Int'l Enterprises v. Miami Sun Int'l Corp., 2009 U.S. Dist. LEXIS 82403, *13 n.5 (E.D.N.Y. 2009), quoting Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987); see also Flemming v. Port Auth. of N.Y. & N.J., 2021 U.S. Dist. LEXIS 44411 at * 4 (E.D.N.Y. 2021)(under Rule 11, "a party cannot allege facts to make out the substance of a claim when it has an insufficient basis to make those allegations in the hope that discovery may fortuitously give it a good faith basis, unless it has reason to believe that will in fact occur.")(Internal quotations and citation omitted).

Rule 11 sanctions are especially appropriate in cases, like this one, in which plaintiffs allege unsubstantiated racketeering conspiracies. As the Honorable Paul A. Engelmayer noted when granting Rule 11 sanctions in a RICO action, "Rule 11 is particularly important in [RICO] cases because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants." Charles v. Levitt, 2016 U.S. Dist. LEXIS 95725 at * 24 (S.D.N.Y. 2016)(internal quotations and citation omitted); see also Malvar Egerique v. Chowaiki, 2020 U.S. Dist. LEXIS 73060 at * 82 (S.D.N.Y. 2020) (same, and collecting cases).

In fact, "improper RICO claims are *even more egregious when levied against a law firm*: '[t]he consequences to a law firm, in particular, are nothing short of disastrous.... [E]thical lawyers have no business bringing RICO allegations against another lawyer as a tool to force settlement negotiations, or as a litigation strategy in a contested business matter.'" LCS Grp., LLC v. Shire LLC, 2019 U.S. Dist. LEXIS 43255 at * 43 - * 44 (S.D.N.Y. 2019)(emphasis added)(internal quotations and citation omitted).



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 4

## II.     The Claims Against Wigdor LLP Violate Rule 11(b)(3)

It is clear that neither you nor Mr. Black conducted any reasonable pre-filing inquiry into the "factual" contentions regarding Wigdor LLP in the SDNY Action, and that your conclusory allegations against the Firm lack any evidentiary support. Accordingly, the claims against the Firm violate Rule 11(b)(3).

For example, the supposed factual basis for Mr. Black's RICO claims against the Firm is that Wigdor LLP conspired with Ms. Ganieva, a completely unidentified (and fictitious) "Funder", and completely unidentified (and equally fictional) "Flacks", in order to extort money from Mr. Black. However, Mr. Black obviously has no evidence to demonstrate that the purported "Funder" and "Flacks" even exist, much less any evidence to support his baseless conspiracy allegations. To the contrary, even the most fundamental "fact" regarding the completely unidentified Funder and Flacks -- i.e., their existence -- is pleaded "upon information and belief".

However, and in keeping with the fact that you failed to conduct any reasonable pre-filing inquiry here, there is no "information" alleged to support the "belief" that that the hypothetical "Funder" and "Flacks" actually exist. Rather, you simply pile untethered conclusion upon conclusion in an attempt to hypothesize the so-called "Funder" and "Flacks" into existence. This is totally insufficient, as any legitimate pre-suit inquiry would have shown.

Nor, for that matter, have you pleaded any facts to plausibly suggest that Wigdor LLP knew about any Funder, communicated with a Funder, received money from a Funder, or otherwise had anything whatsoever to do with any Funder. Not a single transaction or communication between Wigdor LLP and the completely unidentified Funder is alleged, much less with any plausibility. The absence of any substantive factual allegations to support your baseless conspiracy claims underscores the extent to which: (i) you failed to make reasonable inquiry; yet nonetheless (ii) proceeded to assert scandalous and conclusory claims against the Firm in violation of Rule 11.[2]

---

[2] In fact, no amount of investigation could possibly have led you or Mr. Black to a good-faith belief that Wigdor LLP had any knowledge of, or involvement with, any purported Funder. Instead -- as you were well-aware when you commenced this suit, and as has been confirmed from discovery produced in Ms. Ganieva's state court action -- Wigdor LLP is representing Ms. Ganieva pursuant to a contingency fee agreement. No one has paid or reimbursed Wigdor LLP for *anything* in connection with its representation of Ms. Ganieva.



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 5

Along similar lines, and contrary to the conclusory speculation masquerading as "facts" in the SDNY Action, Wigdor LLP has not worked with any public relations or social media professionals, or "Flacks", in connection with its representation of Ms. Ganieva. Further, Wigdor LLP knows of no public relations or social media professionals who have been retained by Ms. Ganieva or on her behalf. A careful review of the SDNY Action reveals only six unfounded assertions -- not facts, but baseless conclusions -- to support the false claim that Wigdor LLP has been working on this matter with any supposed Flacks: specifically, that Ms. Ganieva and Wigdor LLP supposedly needed the Flacks to: (i) "draft … Tweets with the right hashtags; and then to make sure that (ii) the lies were then sold to the media; (iii) the right reporters were recruited; (iv) the right interviews were set up; (v) the right calls were made; and (vi) the right materials were distributed to inflict the maximum amount of damage and extort the maximum amount of money from Mr. Black." None of these assertions is true.

Like the purported existence of the Funder, the purported existence of the Flacks is alleged only "upon information and belief", except without any factual "information" to actually support the supposed "belief". As noted above, the Firm has not used any Flacks in connection with its representation of Ms. Ganieva, and knows of no Flacks who have been retained by her or on her behalf.[3] As for the Tweets, Wigdor LLP played no role whatsoever in drafting or publishing the Tweets, nor did Wigdor LLP have even the slightest clue that Ms. Ganieva was going to publish the Tweets prior to their publication. To the contrary, and as would have been clear from any legitimate pre-suit inquiry, ***Wigdor LLP did not even represent Ms. Ganieva at the time of the Tweets***, was not in any way involved with the Tweets, and certainly did not coordinate with any

---

[3] It appears as if you and Mr. Black have baselessly speculated that the Rubinstein Public Relations Firm was a purported "Flack". However, and as you know, the Rubinstein Public Relations Firm has flatly denied any involvement with Ms. Ganieva in response to your subpoena in the state court action. Others you seem to believe to be a "Funder" or "Flacks" likewise have categorically denied any involvement. For example, and as you know, Michael Rubin, Paul Holmes, and Josh Harris, along with the Rubinstein firm, have all denied any involvement with Ms. Ganieva or her dispute with Mr. Black. See, e.g., https://nypost.com/2021/12/02/leon-black-wants-comms-between-accusers-lawyer-and-fanatics-michael-rubin/. Nevertheless, you knowingly have proceeded to allege and prosecute groundless and conclusory conspiracy claims against Wigdor LLP, based on the purported existence of completely unidentified Flacks and a Funder.



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 6

"Flack" regarding the Tweets. In fact, to the best of the Firm's knowledge, no Flack was involved in the drafting or publishing of the Tweets.[4]

The baseless and conclusory allegations that Wigdor LLP conspired with a Funder or Flacks are independently sufficient to render sanctionable each of Mr. Black's claims against Wigdor LLP.  However, there are various *other* allegations in the SDNY Action related to Wigdor LLP that were proffered despite Mr. Black and your firms' actual knowledge that they are false. Among these additional frivolous allegations is that Wigdor LLP "decline[d] the opportunity to review the transcripts, to listen to the tapes", to find out if Ms. Ganieva's claims are bogus. SDNY Action Complaint, ¶ 73.

The truth of the matter, which both Mr. Black and Quinn Emanuel know, is that the Firm repeatedly requested these documents and audio recordings, as well as the purported written agreement between Mr. Black and Ms. Ganieva that forms the true basis of the SDNY Action. It is Quinn Emanuel, along with Mr. Black's other attorneys at Perry Guha, which refused to produce any of these documents for over five months, feigning confidentiality concerns and the need for a protective order, but failing to move for any such relief. What is more, and as you know or should know, there is ample evidence to demonstrate that Mr. Black's "extortion" claims against Wigdor LLP are contrived and false. These materials include the purported written agreement between Mr. Black and Ms. Ganieva, as well as purported transcripts and audio recordings of their discussions -- including many which, to this day, Mr. Black refuses to produce.

In fact, there is not a single allegation to suggest that Wigdor LLP ever made any pre-filing demand for money from Mr. Black in exchange for silence or confidentiality.

Because there is an utter lack of evidentiary support for Mr. Black's claims against Wigdor LLP, the claims are materially false, and the claims clearly were not properly investigated, the claims violate Rule 11(b)(3). See, e.g., O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir.

---

[4] More generally, it is frivolous for Mr. Black to allege -- as he does, with your imprimatur -- that Ms. Ganieva needed the assistance of a "Flack" to use the hashtags "#MeToo" or "#LeonBlack", while simultaneously alleging that she is a Columbia University graduate who fully understood the implications of a purported written contract that Mr. Black coerced her to sign. It likewise is frivolous to allege that Wigdor LLP engaged in a criminal conspiracy with completely unidentified Flacks based on Ms. Ganieva's use of these hashtags on Tweets that were sent *before* Ms. Ganieva ever retained the Firm.



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 7

1996) (court may impose sanction if a particular allegation is utterly lacking in support); Chien v. Skystar Bio Pharm. Co., 256 F.R.D. 67, 74 (D. Conn. 2009), aff'd, 378 F. App'x 109 (2d Cir. 2010) (Rule 11(b)(3) violated where complaint contained material falsehoods); see also Bletas v. Deluca, 2011 U.S. Dist. LEXIS 133132 at * 41 (S.D.N.Y. 2011) (factual contentions regarding defendants' alleged criminal activity sanctionable where -- as in the present case -- they rested on "gross speculation").

**III.    The Claims Against Wigdor LLP Violate Rule 11(b)(2)**

Furthermore, the claims against Wigdor LLP are unwarranted by existing law, or any nonfrivolous argument to extend, modify, or reverse existing law or establish new law. As a result, the claims against the Firm also violate Rule 11(b)(2).

**A.    The Civil RICO Claims**

In the SDNY Action, Mr. Black attempts to state claims against the Firm for substantive RICO violations under 18 U.S.C. § 1962(c), and for conspiracy to commit substantive RICO violations under 18 U.S.C. § 1962(d). To state a claim under Section 1962(c), Mr. Black was required to plausibly and sufficiently allege that: (i) Wigdor LLP; (ii) through a pattern of racketeering activity; (iii) directly or indirectly conducted or participated in; (iv) an enterprise; (v) the activities of which affect interstate or foreign commerce. See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983). In addition, Mr. Black was required to allege that he was injured in his business or property by reason of the conduct constituting the RICO violation. See Moss, supra, 719 F.2d at 17. To state a claim under Section 1962(d), Mr. Black was required to sufficiently allege that Wigdor LLP "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." United States v. Yanotti, 541 F.3d 112, 121-22 (2d Cir. 2008).

However, and as discussed below, Mr. Black's civil RICO claims against the Firm are completely defective for multiple, independent reasons. As his attorneys, you either knew or should have known of these irremediable defects, but you nonetheless proceeded to assert the claims on Mr. Black's behalf.

First, Mr. Black has failed to properly allege a legally-cognizable racketeering enterprise in support of his purported RICO claims. In this context, although a RICO enterprise can include legal entities such as corporations, it may also constitute "any union or group of individuals associated in fact" such as "a group of persons associated together for a common purpose of engaging in a



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 8

course of conduct." United States v. Turkette, 452 U.S. 576, 580-581 (1981). The alleged RICO enterprise must, however, be distinct from the person or persons purportedly conducting the affairs of the enterprise. See, e.g., First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004). Additionally, an association-in-fact enterprise -- such as the one you attempt to allege in the present case -- "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). Moreover, to sufficiently plead an association-in-fact enterprise, a RICO plaintiff must allege facts to plausibly demonstrate that the association-in-fact enterprise, as a whole, was in some way different from and had some existence beyond the sum of its parts and the underlying pattern of racketeering activity. See, e.g., Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, 2021 U.S. Dist. LEXIS 126819 at * 34 - * 36 (S.D.N.Y. 2021) (recommending dismissal of civil RICO claims where -- as in the present case -- the complaint did not provide any factual information regarding "John Doe" members of association-in-fact enterprise, failed to allege the nature and extent of the relationships between and among the members of the supposed enterprise, and also also failed to allege that the purported enterprise had any existence independent of the alleged racketeering activity of mail and wire fraud); Cont'l Fin. Co. v. Ledwith, 2009 U.S. Dist. LEXIS 52618 at *17 (S.D.N.Y. 2009) (pleading insufficient where plaintiffs only alleged that together defendants engaged in predicate acts); Greenberg v. Blake, 2010 U.S. Dist. LEXIS 57617 at *18-*21 (E.D.N.Y. 2010) (complaint alleging association-in-fact enterprise must provide "solid information" to demonstrate actual existence of enterprise beyond the individual defendants, acting together, and "[c]onclusory allegations that there was an enterprise are wholly insufficient.").

In the present case, Mr. Black relies solely on conclusory statements -- often pleaded "upon information and belief" -- in an attempt to conjure up an association-in-fact racketeering enterprise consisting of none other than Wigdor LLP, Ms. Ganieva, the purported "Funder", and the purported "Flacks". However, there are no allegations to plausibly suggest that the purported association-in-fact enterprise was distinct from Wigdor LLP, Ms. Ganieva, the purported "Funder", and the purported "Flacks", who are the persons named as defendants on the RICO claim and who supposedly conducted the affairs of the "enterprise". Nor are any facts alleged to demonstrate, or even suggest, that the supposed "enterprise" had any existence beyond the vaguely-alleged pattern of racketeering activity. Nor are there any facts alleged to plausibly suggest that two main constituent parts of the contrived "enterprise" -- i.e., the "Funder" and the "Flacks" -- ever existed in the first place. Nor, by extension, are there any facts alleged to plausibly suggest that there was ever any common purpose between and among the members of the enterprise, or any relationships, other than the attorney-client relationship between the Firm and Ms. Ganieva, among those associated with the supposed enterprise. Pursuant to



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 9

the standards set forth above, these allegations are totally insufficient to plausibly allege a racketeering enterprise.

Second, a RICO plaintiff must plead facts establishing that the defendant "participated in the affairs" of the RICO enterprise. See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir 1994). Participation in the RICO context means "participation in the operation or management of the enterprise." De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001), citing Reves v. Ernst & Young, 507 U.S. 170, 179-85 (1993). Under the Supreme Court's "operation and management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." Id.  In the Second Circuit, the "operation and management" test is extremely rigorous. See, e.g., Kumaran v. Nat'l Futures Ass'n, 2021 U.S. Dist. LEXIS 177784 at fn. 35 (S.D.N.Y. 2021) (noting that the "'operation and management' test is an extremely rigorous test, and it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise" nor "simply provide goods and services that ultimately benefit the enterprise.") Conclusory "operation and management" allegations are insufficient. See, e.g., Tech. in P'ship v. Rudin, 2011 U.S. Dist. LEXIS 114127, at *11-*13 (S.D.N.Y. Oct. 3, 2011).

In the SDNY Action, however, Mr. Black does not plead any facts sufficient to plausibly demonstrate that the Firm participated in the operation and management of the theoretical "enterprise", the existence of which is itself largely alleged "upon information and belief". To the contrary, all of the substantive allegations against the Firm boil down to vague and conclusory claims to the effect that the Firm acted improperly while representing Ms. Ganieva in her lawsuit against Mr. Black. However, these kinds of conclusory allegations do not establish the "participation" element of your client's obviously malicious RICO claims against Wigdor LLP. See, e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) (dismissing RICO claims against attorneys because provision of legal services to enterprise in relation to fraudulent transaction did not amount to management or direction of the enterprise); Santana v. Adler, 2018 U.S. Dist. LEXIS 51401 at fn 6. (S.D.N.Y. 2018), adopted by 2018 U.S. Dist. LEXIS 79279 (dismissing RICO claims against attorney, and holding that attorney's provision of professional services to alleged RICO enterprise was not enough to establish his participation in the operation and management of the enterprise); Madanes v. Madanes, 981 F. Supp. 241 (S.D.N.Y. 1997) (recognizing the provision of important legal services to a racketeering enterprise is not the same as directing the affairs of an enterprise even where attorney allegedly recommended certain courses of fraudulent behavior or had substantial persuasive power to induce management of the enterprise to take certain actions).



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 10

    Furthermore, and as discussed above, Mr. Black's inchoate allegations to the effect that the Firm worked in tandem with the unnamed "Funder" and mystery "Flacks" are totally insufficient to demonstrate, or even suggest, that Wigdor LLP directed the affairs of any racketeering enterprise. Again, Mr. Black evidently cannot even muster up a name for the purported Funder or any of the purported Flacks, which underscores the extent to which you have filed a complaint based on labels and conclusions, without conducting any appropriate inquiry.[5]

    <u>Third</u>, Mr. Black has failed to allege any facts to demonstrate, or even suggest, that Wigdor LLP engaged in any predicate acts of racketeering activity. In particular, Mr. Black -- with your endorsement -- contends that Wigdor LLP engaged in Hobbs Act violations by: (i) filing state court complaints; (ii) "causing" the completely unidentified "Flacks", through some unspecified means, to disseminate the complaints to the media; (iii) "assisting" Ms. Ganieva, in some unspecified way, in making a false report about Mr. Black to the Manhattan District Attorney's Office; and (iv) "causing" the unidentified Flacks -- again, through some unspecified means -- to tell the media that the District Attorney's Office had opened a criminal investigation into Mr. Black. Mr. Black -- again, with your imprimatur -- goes on to allege that these acts somehow "attempt[ed] to induce Mr. Black into providing additional payments under" completely unspecified "fraudulent pretenses through interstate mails and/or wires", which somehow supposedly amounts to "mail and wire fraud".

    The implausibility of these conclusory allegations is highlighted by the fact that Wigdor LLP made no pre-filing demand for money from Mr. Black under threat of going public or proceeding with Ms. Ganieva's state court action. In fact, when Ms. Ganieva retained the Firm, she had *already* gone public with her Tweets. Instead, all Wigdor LLP did was file suit on behalf of its client, Ms. Ganieva. In order for the Firm to secure any monetary recovery in connection with Ms. Ganieva's claims against Mr. Black, she will have to prevail in the state court action. That is not extortion, it is litigation, and every lawyer knows it.

---

[5] In fact, to the extent that the activities of the purported enterprise can be discerned at all from the vaguely-pleaded Complaint in the SDNY Action, they occurred long before Ms. Ganieva retained the Firm. For example, Ms. Ganieva's threat to go public with her relationship with Mr. Black; purported demands for $100,000,000.00; entry into the alleged contract with Mr. Black; receipt of alleged payments thereunder by Ms. Ganieva; and finally the Tweets, themselves, all pre-dated Ms. Ganieva's retention of Wigdor LLP. Wigdor LLP could not direct the affairs of any enterprise when the supposed affairs of the fictional "enterprise" occurred prior to any alleged involvement by the Firm.



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 11

Whatever else can be said about these statements, they are not sufficient to allege that the Firm engaged in any predicate acts of racketeering activity. Litigation activity, and even the filing of frivolous or malicious complaints, does not constitute extortion. See, e.g., Ritchie v. N. Leasing Sys., 2016 U.S. Dist. LEXIS 40537 at *38 (S.D.N.Y. 2016)(collecting cases). Nor would it be a Hobbs Act violation even if, as Mr. Black contends, Wigdor LLP "caused" the "Flacks" to publicize the complaints or the District Attorney's investigation to the media. Hobbs Act violations require -- among other things -- the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. See 18 U.S.C. § 1951(b). Here, however, Mr. Black's allegations regarding the dissemination of Ms. Ganieva's complaints, or information regarding a District Attorney investigation, are not sufficient to suggest that Wigdor LLP did any of these things.

Mr. Black's allegations likewise are insufficient to demonstrate that Wigdor LLP engaged in any mail or wire fraud. While a plaintiff alleging that the mails or wires were used "in furtherance of" a fraudulent scheme need not plead each individual mailing or wire with particularity, it nonetheless must plead the *underlying fraudulent misrepresentations and omissions* with the requisite particularity, including the who, what, when, where, and why of the fraudulent misrepresentations or omissions. See, e.g., Sanchez v. ASA Coll., Inc., 2015 U.S. Dist. LEXIS 73222 at * 16 - * 17 (S.D.N.Y. 2015) (where RICO plaintiff alleges that mailings did not themselves contain false or misleading information, but instead were used in furtherance of a fraudulent scheme, it must still delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme); Lakonia Mgmt., Ltd. v. Meriwether, 106 F. Supp. 2d 540, fn. 31 (S.D.N.Y. 2000)(dismissing RICO claim where plaintiff failed to sufficiently plead an underlying scheme to defraud and, thus, "even if defendants' communications were simply 'in furtherance of a master plan', plaintiff's allegations of fraud would still violate Rule 9(b)."). Here, however, Mr. Black never gets around to explaining how Wigdor LLP used the mails or wires in furtherance of any fraudulent scheme. What was the supposed fraud? Who relied on any fraudulent misrepresentations? When were the misrepresentations made? To whom? How was Mr. Black damaged as a result? Mr. Black does not say.

Furthermore, where more than one defendant is charged with fraud in the context of a RICO claim, the plaintiff must "particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F. Higgins, Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008); see also Foster v. 2001 Real Estate, 2015 U.S. Dist. LEXIS 159489 at * 20, fn. 1 (S.D.N.Y. 2015) (dismissing civil RICO claims where the complaint did not explain how defendants were



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 12

"alleged to have engaged in the required two predicate acts, a showing that is required"). Despite this requirement, none of the allegations in Mr. Black's Complaint plausibly ascribe any particular misrepresentation or omission to Wigdor LLP.

Fourth, Mr. Black does not -- and cannot -- allege any pattern of racketeering activity. Isolated acts of racketeering activity are insufficient to support RICO liability. Rather, the acts of racketeering activity must be sufficient to "constitute a pattern". See, e.g., United States v. Daidone, 471 F.3d 371, 375-376 (2d Cir. 2006). To establish a pattern sufficient to satisfy the statute, a plaintiff not only must allege at least two acts of racketeering activity within 10 years, but also must allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern -- a series of related predicate acts extending over a substantial period of time -- or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

In terms of closed-ended continuity, the time span associated with the allegations made in Mr. Black's SDNY Action falls well short of the mark. Since the Supreme Court's decision in H.J. Inc., the Second Circuit generally has not held a period of fewer than two years to constitute a substantial period of time. See, e.g., First Capital Asset Mgmt, 385 F.3d at 181; see also Reich v. Lopez, 858 F.3d 55, 60 (2d Cir. 2017)("closed-ended continuity is 'primarily a temporal concept,' Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008), and it requires that the predicate crimes extend 'over a substantial period of time.' H.J., 492 U.S. at 242. Predicate acts separated by only a few months will not do, id.; this Circuit generally requires that the crimes extend over at least two years.") However, to the extent that the basis for Mr. Black's conclusory allegations can be deciphered at all, it is clear that all "predicate acts" that are attributed to the Firm occurred within just the past year.

Mr. Black is similarly deficient in pleading an open-ended pattern, which requires facts establishing a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999); GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir.1995) (describing open-ended continuity as "past criminal conduct coupled with a threat of future criminal conduct"). To determine the existence of a continuing threat, a court looks at the nature of the enterprise and of the predicate acts. See Cofacredit, 187 F.3d at 242. The Second Circuit has made clear that



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 13

"there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Spool, 520 F.3d at 185. The Complaint in the SDNY Action simply does not contain any facts that would allow a court to draw such a conclusion with respect to Wigdor LLP.

Courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern. See, e.g., Sehgal v. Aggarwal, 2021 U.S. Dist. LEXIS 154043 at * 11 (E.D.N.Y. 2021) ("[C]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.")(Internal quotations and citation omitted). This is because a single narrow scheme with one victim and limited participants does "not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO". Ritter v. Klisivitch, 2008 U.S. Dist. LEXIS 58818 at * 32 (E.D.N.Y. 2008); see also Spool, 520 F.3d at 186 (holding that "inherently terminable" scheme does not pose threat of continued criminal activity thereby precluding Plaintiff from alleging open-ended continuity); Jus Punjabi, LLC v. Get Punjabi, Inc., 2015 U.S. Dist. LEXIS 66006 at * 27 (S.D.N.Y. 2015) (serious, but discrete and relatively short-lived scheme to defraud a handful of victims held insufficient to establish open-ended pattern). In the present case, even assuming -- for argument's sake -- that Mr. Black had sufficiently alleged some predicate acts of racketeering activity (and he has not), there is not a single well-pleaded fact to suggest that anyone other than himself was targeted or affected by the alleged conduct. Nor has he pleaded anything to suggest that the Defendants' conduct amounted to anything other than a single, narrow, inherently terminable scheme aimed at obtaining money from him. Considering that Mr. Black has, at most, alleged a single, narrow scheme with one victim and limited participants, he has not pleaded the existence of any open- or closed-ended pattern of racketeering activity.

Fifth, Mr. Black's RICO claims are defective because he has not alleged a cognizable RICO injury. To allege that he was "injured in its business or property by reason of the conduct constituting the RICO violation", Mr. Black was obligated to plead facts demonstrating: (i) a clear, definite, and provable amount of damages; (ii) that the damages were proximately caused by Wigdor LLP's alleged racketeering activity; and (iii) that he exhausted his legal and contractual remedies before bringing suit. See, e.g., First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768-770 (2d Cir. 1994); see also Panabroker Protecting & Indem. Assoc. v. Vneshprombank, 2017 U.S. Dist. LEXIS 159393 at * 10 - * 11 (S.D.N.Y. 2017).



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 14

 Mr. Black's RICO claims against the Firm do not meet these standards. Though Mr. Black alleges that he suffered damages in the form of various payments to Ms. Ganieva, and when he forgave two loans to Ms. Ganieva, he does not, and cannot, allege any facts to demonstrate that these purported damages are attributable to ***anything*** done by the Firm, much less any "racketeering activity". To the contrary, any legitimate pre-suit investigation would have revealed that Mr. Black sustained all these purported damages ***before Ms. Ganieva retained Wigdor LLP to represent her.*** Moreover, it appears as if Mr. Black has failed to exhaust his legal and contractual remedies before bringing suit, considering that -- as discussed below -- Mr. Black's scandalous and conclusory "RICO" claims are really just dressed up claims for breach of contract.

 <u>Sixth</u>, and in particular, despite your efforts to conjure the appearance of a racketeering scheme, Mr. Black's RICO claims are merely dressed up claims for purported breach of contract against Ms. Ganieva (a claim that itself lacks merit). <u>Compare</u> SDNY Action Complaint ¶¶ 87-102, <u>with</u> ¶¶ 128-138. In this context, courts will not hear putative "RICO" claims, such as those contained in the SDNY Action, that are really just dressed-up claims for breach of contract. <u>See</u>, <u>e.g.</u>, <u>S.A.R.L. v. Cantamessa USA, Inc.</u>, 2013 U.S. Dist. LEXIS 107552, at * 9 (S.D.N.Y. July 27, 2013) ("[T]he allegations in the Complaint that purport to plead predicate criminal acts sufficient to establish a cause of action under RICO amount merely to a breach of contract claim [and common business torts], which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.")

 <u>Seventh</u>, the Complaint in the SDNY Action fails to plausibly allege that Wigdor LLP engaged in any racketeering conspiracy. Where, as in the present case, a plaintiff's substantive RICO claims are subject to dismissal, its RICO conspiracy claims likewise should be dismissed. <u>See</u>, <u>e.g.</u>, <u>Rosner v. Bank of China</u>, 528 F. Supp. 2d 419 (S.D.N.Y. 2007)("[b]ecause the Court finds that Rosner does not sufficiently allege a violation of § 1962(a) or § 1962(c), the Court need not consider § 1962(d), as a complaint must adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d).")

 In any case, to state a claim under Section 1962(d), a plaintiff must allege that the defendant "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." <u>United States v. Yanotti</u>, 541 F.3d 112, 121-22 (2d Cir. 2008). As set forth above, Mr. Black has not sufficiently pleaded any predicate acts by Wigdor LLP, much less a pattern of racketeering activity. Nor has Mr. Black pleaded any facts to demonstrate that Wigdor LLP agreed to participate in any predicate acts, or even knew about any predicate acts. <u>See</u> <u>United States v. Viola</u>, 35 F.3d 37, 44-45 (2d Cir.1994)(to establish a RICO conspirator's knowledge, it is sufficient that the alleged conspirator



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 15

knew what other conspirators "were up to" or that the situation "logically would lead him to suspect he was part of a larger enterprise"). Indeed, Mr. Black has not even managed to plead facts to demonstrate the existence of the "Funder" or "Flacks", let alone any facts to show that the Firm ever conspired with them.

Accordingly, because Mr. Black has not pleaded any substantive RICO claims, or that that Wigdor LLP agreed to participate in any predicate acts, his Section 1962(d) claims lack any merit.

Eighth, and more generally, Mr. Black's RICO claims against the Firm are barred by the Noerr-Pennington doctrine, inasmuch as they are obviously based on the Firm's representation of Ms. Ganieva in connection with her state court lawsuit. Under the Noerr-Pennington doctrine, federal Courts recognize that, generally, claims stemming from a party's petition to the government are immune from liability. See, e.g., Tuosto v. Philip Morris USA Inc., 2007 U.S. Dist. LEXIS 61669, *15 (S.D.N.Y. 2007); Matsushita Electronics Corp. v. Loral Corp., 974 F. Supp. 345, 359 (S.D.N.Y. 1997). Petitioning activity includes complaints filed in civil actions. See, e.g., Ginx, Inc. v. Soho Alliance, 2010 U.S. Dist. LEXIS 64313, *55-57 (S.D.N.Y. 2010).

Though there is a "sham litigation" exception to the Noerr-Pennington doctrine, the burden is on the plaintiff to allege facts showing the applicability of the sham exception. See, e.g., Primetime 24 Joint Venture v. National Broadcasting Company, 219 F.3d 92, 100-101 (2d Cir. 2000)("Plaintiff must show" that the litigation in question falls within the exception). The burden to demonstrate sham litigation is a heavy one. Here, however, Mr. Black alleges no facts (as opposed to conclusions) to plausibly suggest that Ms. Ganieva's state court lawsuit is objectively baseless, that the Firm had any reason to believe it was objectively baseless, or that the lawsuit was intended to cause harm to Mr. Black through the use of the governmental process, as opposed to the outcome of that process, as required to establish the sham litigation exception.

B.    The Defamation Per Se Claim

Mr. Black's defamation per se claim against the Firm likewise is frivolous. To the extent that it is predicated on the state court pleadings the Firm filed in its capacity as Ms. Ganieva's counsel, the claim is foreclosed by the New York litigation privilege. In particular, "[i]t is a well established principle of New York law that statements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy." Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 281 (S.D.N.Y. 2004); see also Assoun v. Assoun, 2014 U.S. Dist. LEXIS 179762 at * 15 (S.D.N.Y. 2014) (same). The test



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 16

of "pertinency" is "extremely broad and embraces anything that may possibly or plausibly be relevant or pertinent with the barest rationality, divorced from any palpable or pragmatic degree of probability." <u>Caro Capital, LLC v. Koch</u>, 2021 U.S. Dist. LEXIS 78641 at * 32 (S.D.N.Y. 2021)(Internal quotations and citation omitted).

You clearly are aware that the litigation privilege forecloses Mr. Black's defamation claim against the Firm, and so Mr. Black's Complaint tries to plead around this issue by characterizing Ms. Ganieva's state court lawsuit against Mr. Black as "sham litigation". Again, however, Mr. Black fails to allege any *facts* -- as opposed to conclusions -- to suggest that the Firm filed the state court action on behalf of Ms. Ganieva "solely to defame" him. <u>See Flomenhaft v. Finkelstein</u>, 127 A.D.3d 634, 638 (N.Y. A.D. 1ˢᵗ Dep't 2015). Quite the opposite: Mr. Black affirmatively alleges that Ms. Ganieva,  represented by Wigdor LLP, commenced and prosecuted the state court action in order to obtain money from him.[6]

Nor can Mr. Black credibly allege that any public statements by the Firm regarding Ms. Ganieva's state court action constitute actionable defamation. All of the alleged statements, to the extent that they can be identified from Mr. Black's Complaint, either constitute fair and true reports of a judicial proceeding (<u>see</u> N.Y. Civil Rights Law § 74), or else constitute non-actionable opinion. <u>See Mann v. Abel</u>, 10 N.Y.3d 271, 276 (N.Y. 2008)("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation.")

## IV.    **The Claims Against Wigdor LLP Violate Rule 11(b)(1)**

Against this backdrop, Mr. Black -- with your assistance and ratification -- clearly filed the SDNY Action for an improper purpose. In particular, it was filed in an attempt to interfere with the Firm's ability to represent Ms. Ganieva in her first-filed state court action, by naming the Firm and Ms. Ganieva as co-defendants on a series of factually and legally baseless claims. We think this improper purpose will be apparent to the Court, considering, among other things, the proceedings in the state court action, and that any legitimate pre-suit review would have shown that Mr. Black has no factual or legal basis to assert these scandalous RICO and defamation claims against the Firm.

---

[6] As noted above, and in keeping with the fact that Ms. Ganieva's first-filed state court action is anything but a sham, we understand that Quinn Emanuel partner Alex Spiro himself sought to represent Ms. Ganieva in connection with this matter, before she decided to retain Wigdor LLP.



John B. Quinn, Esq.
Michael B. Carlinsky, Esq.
Jennifer J. Barrett, Esq.
Ryan A. Rakower, Esq.
Susan Estrich, Esq.
December 14, 2021
Page 17


In this respect, we note that you prematurely attempted to take discovery in the SDNY Action before Wigdor LLP's response to the Complaint was even due, in what obviously was an after-the-fact attempt to find some support for Mr. Black's frivolous claims against the Firm in advance of a motion to dismiss. Now that the Court in the SDNY Action has denied that application, we understand that Mr. Black is making similar efforts in Ms. Ganieva's state court lawsuit. However, it is totally improper for you to have filed a baseless, conclusory, and sanctionable racketeering action against the Firm, and then to try to locate some *post-hoc* support for the specious claims after they already were publicly filed. See, e.g., TOA Sys. v. IBM, 2019 U.S. Dist. LEXIS 191318 at * 4 (S.D.N.Y. 2019) ("discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim.")(Internal quotations and citation omitted). Your belated attempts to find support for the scandalous claims you *already* have asserted against the Firm only underscores the improper motivations behind the SDNY Action.

*Accordingly, please take notice that unless the claims against Wigdor LLP in the SDNY Action are withdrawn within 21 days -- we will proceed to move for sanctions.*

Very truly yours,

RIVKIN RADLER LLP

*/s/ Max Gershenoff   /s/ Janice DiGennaro*

Max Gershenoff      Janice DiGennaro