# EXHIBIT "2"



January 4, 2022

**VIA ELECTRONIC MAIL**

Max Gershenoff
Janice DiGennaro
Yonatan Bernstein
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, NY 11556
Max.Gershenoff@rivkin.com
Janice.DiGennaro@rivkin.com
Yonatan.Bernstein@rivkin.com

**Re:** *Black v. Ganieva*, No. 1:21-cv-08824-PAE (S.D.N.Y.)

Dear Messrs. Gershenoff and Bernstein and Ms. DiGennaro,

  We represent Plaintiff Leon D. Black and are writing in response to your December 14, 2021 letter providing notice of your intention to move for sanctions unless our client dismisses Defendant Wigdor LLP from this matter. We decline to do so.

  We will respond to the detailed points made in your seventeen page letter at the appropriate time. We expect many of the same points will be treated at even greater length in the fifty pages of briefing we agreed was appropriate for a motion to dismiss in a case of this significance. As you pointed out to the court, in seeking expanded briefing, Mr. Black's "allegations raise particularly complex legal issues."

  A Rule 11 hearing is no place to resolve such issues. They are certainly not, as your December 14th letter charges, "frivolous as a matter of law." Frivolous issues don't require fifty pages to explain. While we continue to uncover new evidence supporting the RICO allegations in the complaint, we take issue with your accusation that we failed to investigate or substantiate the allegations of the complaint as it was first filed.

  We are familiar with the important work you have done in applying RICO, as plaintiffs' counsel, to agents, attorneys, and others who engage in schemes using fraudulent claims to fleece your clients. As you well know, when, as is often the case, "direct evidence regarding an agreement on an overall objective is absent, a plaintiff

may establish such agreement through inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme…. The existence of a conspiracy is rarely provable by direct evidence; its existence must be inferred from the circumstances." *Gov't Emps. Ins. Co. v. Landau & Assocs., P.A.*, 2019 WL 12493609, at *8 (M.D. Fla. Mar. 29, 2019) (quotation marks and citations omitted).

Any comparison between this case and the situation facing Judge Engelmayer in *Charles v. Levitt*, 2016 WL 3982514 (S.D.N.Y. July 21, 2016), makes clear the difference between a complaint raising important legal and factual issues and one which should be deterred as an abuse of the system. The amended complaint in *Charles*, arising out of a property sale to satisfy a six year old debt to a law firm, named everyone even remotely related to either the debt or the sale. It was a "sufficiently baffling document" that the court could discern "no plausible allegations" on critical points relating to defendants about whom it alleged not only no improper conduct but "hardly any conduct at all." *Id.* at *5, *7. The operative pleading there did "not even specify what two predicate acts each defendant participated in, let alone allege sufficient predicate acts generally," and "[t]o the extent possible predicate acts [we]re even hinted at, they [we]re pled in utterly conclusory and implausible terms." *Id.* at *7. As Judge Engelmayer summarized the situation, *Charles* was a case where the plaintiff was relying on the plot of John Grisham's "The Firm" to provide his theory of the case. *Id.* *Charles* is also distinguishable because the amended complaint in that case was, "in substance, [an] appeal[] from [a] state judgment" that was barred by the Rooker-Feldman doctrine. *Id.* at *4 (quotation marks and citation omitted). Moreover, unlike Mr. Black's complaint, the amended complaint in *Charles* was also "shot-through with plainly irrelevant, absurd, and/or scurrilous statements," which was part of the basis for the court's decision to direct plaintiff's counsel to pay $1,000 to the Clerk as a sanction. *Id.* at *7.

Mr. Black's complaint alleges that Wigdor filed not one but three frivolous, false and defamatory complaints against Mr. Black in situations where it must have known that its client was fabricating the events involved. We say "must have known" because, prior to your representation of the firm, Wigdor repeatedly declined the opportunity to sign a routine protective order and review the transcripts and tapes which undermined their client's account. They continue, even now, not only to pursue these scurrilous claims, starring Jeffrey Epstein in a fourteen year old saga of a kidnapping that never happened, even though their client could not remember meeting him, but to aggressively market negative stories about supposed investigations of Mr. Black, activities which we hope will cease now that we are meeting in federal court.

We look forward to beginning discovery as soon as possible. To that end, please immediately provide all evidence relevant to or relied upon by you in connection with the statements in your letter, including but not limited to:

- All documents and facts supporting your assertion that Quinn Emanuel attorney Alex Spiro "sought to represent Ms. Ganieva in connection with this matter, before she decided to retain Wigdor LLP."

- An unredacted copy of Wigdor LLP's engagement agreement with Ms. Ganieva.

- The date of Wigdor LLP's first contact with Ms. Ganieva or any of her representatives.

- The identity of each representative of Ms. Ganieva who was involved in connecting Ms. Ganieva with Wigdor LLP and arranging for Wigdor LLP's representation of Ms. Ganieva.

Sincerely,

ESTRICH GOLDIN, LLP

*/s/ Susan Estrich*
Susan Estrich

QUINN EMANUEL
URQUHART & SULLIVAN, LLP

*/s/ John B. Quinn*
John B. Quinn

cc: Michael B. Carlinsky
Jennifer J. Barrett
Ryan A. Rakower
Jacqueline M. Stykes