UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LEON D. BLACK,

                              Plaintiff,                       Case No: 21 Civ. 8824 (PAE)

        - against -


GUZEL GANIEVA, WIGDOR LLP,
JOSH HARRIS, and STEVEN RUBINSTEIN,


                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GUZEL
GANIEVA'S MOTION TO DISMISS THE AMENDED COMPLAINT**


LAW OFFICE OF KEVIN MINTZER, P.C.
Kevin Mintzer
Laura L. Koistinen
1350 Broadway, Suite 2220
New York, New York 10018
T: 646-843-8180
F: 646-478-9768
km@mintzerfirm.com


*Attorneys for Defendant Guzel Ganieva*

## **TABLE OF CONTENTS**

Table of Authorities ………………………………………………………………….. iv

PRELIMINARY STATEMENT ................................................................................ 1

ALLEGATIONS IN THE AMENDED COMPLAINT ............................................. 3

ARGUMENT ............................................................................................................. 7

    I.  STANDARDS ON A MOTION TO DISMISS ................................................. 7

    II.  BLACK HAS FAILED TO SUFFICIENTLY PLEAD THE REQUIRED
    ELEMENTS OF HIS RICO CLAIMS AGAINST GANIEVA .......................... 8

        a. Black Does Not Sufficiently Allege a Racketeering Enterprise......................... 9

        b. Black Does Not Sufficiently Allege that Ganieva Participated in the Operation
        or Management of a Racketeering Enterprise........................................................ 13

        c. Black Has Failed to Sufficiently Allege that Ganieva Engaged in a Pattern of
        Racketeering Activity ........................................................................................... 15

            1. Legal Principles Pertaining to the RICO Pattern Requirement……….15

            2. The Alleged 2015 Extortion is Not Related to the Enterprise or the Later
            Alleged Predicate Acts and Thus Cannot be Part of a RICO Pattern of
            Racketeering Activity …………………………………………………...16

            3. Ganieva's Public Statements, the State Court Action, and Complaints to
            the District Attorney are Not Predicate Acts and, In Any Event, They Do
            Not Satisfy the RICO Continuity Requirement…………………………17

                A.  The alleged acts do not constitute extortion, wire fraud,
                or mail fraud…………………………………………………...17

                B.  Black cannot demonstrate continuity ………………………20

        d. Black Has Failed to Sufficiently Allege any Cognizable RICO Injury ............. 22

        e. Black Has Not Plausibly Alleged that Ganieva Was in a Racketeering
        Conspiracy .......................................................................................................... 23

    III.  BLACK'S RICO CLAIMS, WHICH ARE BASED ON GANIEVA'S STATE COURT
LAWSUIT AGAINST HIM, ARE BARRED BY THE NOERR-PENNINGTON DOCTRINE. 24

IV.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER
BLACK'S STATE LAW CLAIMS............................................................................................ 25

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Aerowest GmbH v. Freitag,*
15 Civ. 2894, 2016 WL 3636619 (E.D.N.Y. June 28, 2016) ...................................................... 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................................. 8

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.,*
229 F.3d 1135 (2d Cir. 2000).................................................................................................. 24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................................. 7

*Boyle v. United States,*
556 U.S. 938 (2009)................................................................................................................. 9

*Cassidy v. Madoff,*
18 Civ. 00394, 2018 WL 5792786 (N.D.N.Y. Nov. 5, 2018) ................................................... 15

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001)............................................................................................................... 13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
187 F.3d 229, 242 (2d Cir. 1999)........................................................................................... 20

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,*
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ..................................................................................... 19

*De Falco v. Bernas,*
244 F.3d 286 (2d Cir. 2001).................................................................................................... 13

*Dekom v. Fannie Mae,*
846 F. App'x 14 (2d Cir. 2021) ............................................................................................... 19

*Elsevier Inc. v. W.H.P.R. Inc.,*
 692 F. Supp. 2d 297 (S.D.N.Y. 2010) ............................................................................... 11, 15

*FindTheBest.com, Inc. v. Lumen View Tech. LLC,*
20 F. Supp. 3d 451 (S.D.N.Y. 2014) .................................................................................. 18, 19

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
385 F.3d 159 (2d Cir. 2004).......................................................................................... 10, 13, 20

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994) ........................................................................................ 22

*Flexborrow LLC v. TD Auto Fin. LLC*,
255 F. Supp. 3d 406 (E.D.N.Y. 2017) ....................................................................... 13

*Ginx, Inc. v. Soho Alliance*,
720 F. Supp. 2d 342 (S.D.N.Y. 2010) ....................................................................... 24

*Goldfine v. Sichenzia*,
118 F. Supp. 2d 392 (S.D.N.Y.2000) ........................................................................ 12

*Greenberg v. Blake*,
09 Civ. 4347, 2010 WL 2400064 (E.D.N.Y. June 10, 2010) ...................................... 10

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989) ................................................................................................... 15

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
12 Civ. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013) ...................................... 23

*Kaminetsky Rosner & Snitow, LLP*,
20 Civ. 9784, 2021 WL 4692779 (S.D.N.Y. July 7, 2021) ........................................ 12

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) .................................................................................... 19-20

*Knight v. Standard Chartered Bank*,
531 F. Supp. 3d 755 (S.D.N.Y. 2021) ....................................................................... 25

*Knoll v. Schectman*,
275 Fed. Appx. 50 (2d Cir. 2008) .............................................................................. 18

*Lakonia Mgmt., Ltd. v. Meriwether*,
106 F. Supp. 2d 540 (S.D.N.Y. 2000) ....................................................................... 18

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir.2006) .......................................................................................... 9

*Maersk, Inc. v. Neewra, Inc.*,
687 F. Supp. 2d 300, 333 (S.D.N.Y. 2009) ............................................................... 12

*Matsushita Electronics Corp. v. Loral Corp.*,
974 F. Supp. 345, 359 (S.D.N.Y. 1997) .................................................................... 24

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
15 Civ. 293, 2018 WL 1627257 (S.D.N.Y. Mar. 30, 2018) ....................................... 11

*Panabroker Protecting & Indem. Assoc. v. Vneshprombank*,
16 Civ. 2120 (ALC), 2017 WL 7411188(S.D.N.Y. Sept. 26, 2017) ........................... 22

*Patrizzi v. Bourne in Time, Inc.*,
11 Civ. 2386, 2012 WL 4833344 (S.D.N.Y. Oct. 11, 2012) ................................... 8, 9

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*
888 F. Supp. 491 2d at 503 (S.D.N.Y. 2012)........................................................... 8, 9

*Primetime 24 Joint Venture v. National Broadcasting Company*,
219 F.3d 92 (2d Cir. 2000)........................................................................................ 24

*Reich v. Lopez*,
858 F.3d 55, 60-61 (2d Cir. 2017) ..................................................................... 16, 20

*Reves v. Ernst & Young*,
507 U.S. 170, 179-85 (1993) .................................................................................... 13

*Ritchie v. N. Leasing Sys., Inc.*,
12 Civ. 4992, 2016 WL 1241531(S.D.N.Y. Mar. 28, 2016) ..................................... 18

*Ritter v. Klisivitch*,
06 Civ. 5511, 2008 WL 2967627 (E.D.N.Y. July 30, 2008) ...................................... 21

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*, N.A.,
30 F.3d 339 (2d Cir 1994)........................................................................................ 13

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007) ...................................................................... 23

*Sanchez v. ASA Coll., Inc.*,
14 Civ. 5006, 2015 WL 3540836 (S.D.N.Y. June 5, 2015)....................................... 18

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393, 409 (2003)........................................................................................... 17

*Singh v. NYCTL 2009-A Trust*,
683 Fed. Appx. 76 (2d Cir. 2017)……………………………………………………………24

*Sehgal v. Aggarwal*,
20 Civ. 4577, 2021 WL 3617479 (E.D.N.Y. Aug. 16, 2021)..................................... 21

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
17 F. Supp. 3d 207 (E.D.N.Y. 2014) ........................................................ 22

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) ............................................................ 16, 21

*Tuosto v. Philip Morris USA Inc.*,
05 Civ. 9384, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) .................... 24

*United States v. Daidone*,
471 F.3d 371 (2d Cir. 2006) ...................................................................... 15

*United States v. Turkette*,
452 U.S. 576 (1981) .................................................................................... 9

*United States v. Viola*,
35 F.3d 37 (2d Cir.1994)………………………………………………………23

*United States v. Yanotti*,
541 F.3d 112 (2d Cir. 2008) ........................................................................ 9

*Woods v. Mercier*,
11 Civ. 6502, 2012 WL 3925852 (W.D.N.Y. Sept. 7, 2012) .................... 12

**STATUTES**

18 U.S.C. § 1341 ........................................................................................ 18

18 U.S.C. § 1343 ........................................................................................ 18

18 U.S.C. § 1951(b) .................................................................................... 17

18 U.S.C. § 1962(c) ...................................................................................... 8

18 U.S.C. § 1962(d) ................................................................................ 8, 23

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ................................................................................ 7

Defendant Guzel Ganieva respectfully submits this memorandum of law in support of her motion to dismiss the Amended Complaint of Plaintiff Leon D. Black under Fed. R. Civ. P. 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Black's Amended Complaint has abandoned his outlandish theory that Ganieva engaged in a racketeering conspiracy with her lawyers in her first-filed state court lawsuit against Black. In an ever-shifting narrative, Black now asserts that Ganieva is part of a racketeering enterprise with Josh Harris, a former colleague of Black's at Apollo Global Management, and Steven Rubinstein, a public relations professional. But Ganieva has never met or communicated with Harris or Rubinstein, and the Amended Complaint does not claim otherwise. How can Ganieva be in a racketeering enterprise with people she doesn't know? Throughout nearly 60 pages of rambling accusations, Black doesn't say.

Black should not be permitted to use his endless resources to continue meritless and retaliatory satellite litigation against a woman who has sued him for sexually abusing her. The Amended Complaint against Ganieva should be dismissed for the following reasons:

*First*, Black has failed to allege an "association-in-fact" racketeering enterprise. He has not plausibly alleged that Ganieva had an interpersonal relationship with the other members of the enterprise, that members of the enterprise acted with a common purpose, that the enterprise exists separately from the persons purportedly conducting the affairs of the enterprise, or that the enterprise exists separately from the purported racketeering acts which are the basis of his claims.

*Second*, the Amended Complaint does not plausibly allege that Ganieva participated in the operation or management of a RICO enterprise. At most, Black has alleged that Ganieva acted in

her own interest in pursuing litigation against Black after he publicly accused her of extortion, which the other defendants amplified for their own reasons and without her involvement.

*Third,* Black has failed to allege that Ganieva engaged in a pattern of racketeering activity required by the statute. The lynchpin of Black's claims against Ganieva, her alleged "extortion" of him in 2015, occurred many years before he claims a RICO enterprise even exists, and thus cannot contribute to an alleged pattern of racketeering activity. The public statements by Ganieva and litigation activities that underlie the rest of his RICO complaint do not constitute Hobbs Act extortion, wire fraud, and mail fraud as a matter of law. Black's claims also do not satisfy the RICO pattern requirements of relatedness and continuity.

*Fourth*, Black has not alleged that he suffered a cognizable RICO injury. The only alleged damages Black has pleaded with the required degree of specificity have nothing to do with his RICO claims.

*Fifth*, because Black has failed to allege a substantive violation of RICO, his claims for RICO conspiracy under 18 U.S.C. § 1962(d) must also be dismissed. Black has also failed to plausibly allege that Ganieva agreed to participate in the affairs of the enterprise through a pattern of racketeering activity, as is required for such a RICO conspiracy claim.

*Sixth*, the RICO claims asserted by Black against Ganieva, to the extent they are based on her state court litigation against Black or any complaints by Ganieva to the District Attorney, are barred by the *Noerr-Pennington* doctrine.

*Seventh*, because the only federal claims alleged by Black are inadequately pleaded and subject to dismissal, the Court should not exercise supplemental jurisdiction over the state law claims asserted against Ganieva.

## ALLEGATIONS IN THE AMENDED COMPLAINT

**Parties**

Plaintiff Leon Black is is the co-founder and former chairman of the private equity firm Apollo Global Management. Amended Complaint ("AC") ¶¶ 1, 3.

Defendant Guzel Ganieva is the plaintiff in a first-filed action in New York State Supreme Court in which she has asserted claims against Black for defamation, intentional infliction of emotional distress, gender-motivated violence, and retaliation. *Ganieva v. Black*, Index No. 155262/2021 (N.Y. Cty. Sup. Ct.) (the "State Court Action"). AC ¶ 72, Ex. 1 (Ganieva's Complaint), Ex. 3 (Ganieva's Amended Complaint). In substance, Ganieva has alleged that Black sexually abused her for years, bullied her into silence with a coercive non-disclosure agreement, and then defamed her when she finally summoned the courage to speak publicly about Black's conduct. *Id.*

Defendant Wigdor LLP ("Wigdor") is a law firm that is known for representing women who have suffered sexual abuse and represents Ganieva in the State Court Action. AC ¶¶ 19, 70.

Defendant Josh Harris is a former colleague of Black's at Apollo. According to Black, Harris wanted to replace him as the CEO of Apollo but was denied the opportunity to do so. AC ¶ 27.

Defendant Steven Rubinstein is a public relations professional. His firm has performed work for Apollo. AC ¶ 28.

**The Relationship Between Black and Ganieva**

Black alleges that he and Ganieva had a sexual relationship from 2008 to 2014. AC ¶¶ 1, 32. Ganieva left the United States in July 2014 and did not return until June 2015. *Id.* ¶ 33. When Ganieva returned, Black alleges she demanded that he pay her $100 million or she would disclose

3

their affair. *Id.* ¶ 34. Black further claims he believed he was being extorted by Ganieva and spoke to lawyers about it. *Id.* ¶ 35. Rather than report Ganieva to the authorities, according to Black, in October 2015, in exchange for a release and non-disclosure agreement, he agreed to pay Ganieva $100,000 monthly for 15 years, to forgive approximately $1,000,000 in loans, and to provide £2,000,000 for her to obtain legal status in the United Kingdom. AC ¶¶ 37-38.

In the State Court Action, Ganieva has alleged that she signed the agreement Black presented to her – an agreement Black refused to give her a copy of – because Black, a billionaire with immense power, threatened to destroy her life and have put her jail if she did not take his money and remain silent about his sexual abuse of her. AC Ex. 3.

In October 2019, Ganieva complained to Black that he had forced her to sign the agreement. AC ¶ 39. In March 2020, before retaining Wigdor, Ganieva had another law firm send Black a letter requesting a copy of the agreement. *Id.* Black ignored this letter. *Id.*

From late 2015 through March 2021, Black paid Ganieva monthly payments. AC ¶ 38. Black stopped making those payments because, on March 17, 2021, Ganieva broke her silence. Ganieva posted on Twitter she had been "sexually harassed and abused by Mr. Black for years;" that Black "could not understand me when I refused his sexual advances;" that Black had "bullied, manipulated, threatened, and coerced" her; that, "under duress, I was forced to sign an NDA in 2015;" and that she did "not want this type of predatory behavior to continue happening to other women." AC ¶ 63.[1]

---

[1]   In his initial Complaint in this Action, Black alleged that Ganieva's tweets, including the hashtags #MeToo and #LeonBlack were the product of a sophisticated public relations strategy executed by unnamed "flacks" and paid for by an unnamed "funder" as part of a racketeering enterprise. The Amended Complaint has abandoned that claim.

Several weeks after her tweets, Ganieva spoke to Josh Kosman, a reporter from the *New York Post*, who had previously written unfavorable stories about Black. AC ¶ 66. Ganieva's statement that "Black's abuse [of her] was over a long period of time and it was tragic," appeared in a story in the *New York Post* on April 8, 2021. *Id.* In response, Black told a journalist at Bloomberg that his "affair" with Ganieva was "consensual," and that "any allegation of harassment or any other inappropriate behavior is fabricated." AC ¶ 67. Black also said that he had been "extorted by Ms. Ganieva for many years and [that he] made substantial monetary payments to her, based on her threats to go public" about their relationship. *Id.*

On June 1, 2021, Ganieva, through Wigdor, filed the State Court Action. Neither Ganieva nor her counsel made any demand of Black before filing suit. AC ¶¶ 70-71. About six weeks later, Black filed an Answer to the Complaint in which he purports to quote from texts and audio recordings he says contradict Ganieva's claims of sexual abuse and defamation. Black also asserted three counterclaims against Ganieva for defamation, defamation *per se*, and breach of contract. *Ganieva v. Black*, Index No. 155262/2021 at Dkt. No. 4. Ganieva promptly moved to dismiss those counterclaims. *Id.* at Dkt. No. 19. Rather than oppose the motion to dismiss, Black withdrew his counterclaims. *Id.* at Dkt. No. 44.

Ganieva filed an amended complaint in the State Court Action on August 9, 2021. AC Ex. 3. The amended pleading details Black's relationship with Jeffrey Epstein and alleges that Black took Ganieva against her will in his private plane to meet Epstein in Florida. *Id.* In his answer to Ganieva's amended complaint, Black claims that flight manifests and the testimony of one of Epstein's close associates will show that Ganieva's allegations are untrue. AC ¶¶ 84-85.

On September 20, 2021, Ganieva filed a proposed Second Amended Complaint in the State Court Action. The proposed amendment includes additional information concerning Black's

relationship with Epstein and allegations about Black sexually abusing another woman at Epstein's Manhattan townhouse and paying the woman money for her silence. AC Ex. 5. Black denies these allegations and argues they are irrelevant to Ganieva's claims against him. AC ¶¶ 90-92. He also alleges that Ganieva's lawyers in the State Court Action have delayed the discovery process in that case. AC ¶ 93-96.

Finally, Black alleges that Ganieva has made a false report to the District Attorney's office concerning him. AC ¶ 98.

**<u>Defendants Harris and Rubinstein and the "Enterprise"</u>**

Black does not allege that Ganieva has ever communicated with either Harris or Rubinstein. He alleges that unnamed "confederates" of Harris attempted to identify a lawyer to represent Ganieva. AC ¶ 61. But Black does not claim that Ganieva had any knowledge of that purported attempt, let alone that she authorized it. Moreover, Ganieva did *not* hire Alex Spiro at Quinn Emanuel, the lawyer who the unnamed Harris associates wanted Ganieva to hire.[2] *Id.*

Black further alleges that Harris formed a "war council," including lawyers and public relations professionals, to promote his candidacy to be the next CEO of Apollo, to denigrate Black and other Apollo board members associated with Black, and to undermine a report by the Dechert law firm which found that there was no improper relationship between Black and Jeffrey Epstein, notwithstanding that Black had paid the convicted sex offender $50 million for "tax advice." AC ¶¶ 40-58. Black does not allege that Ganieva was involved in any of these efforts by Harris.

Despite the absence of any communications between Ganieva and Harris or Rubinstein, Black alleges that the three of them, along with other unnamed "vendors" and public relations

---

[2]     Quinn Emanuel represented Black in this action until they purportedly discovered a "conflict" that prevented them from continuing the representation. The firm continues to represent Black in the State Court Action.

experts – so-called "flacks"– formed an "enterprise" to harm Black. AC ¶ 29. Black claims that the "enterprise" has promoted Ganieva's story to the press by disseminating Ganieva's public filings in the State Court Action and telling the press that the Manhattan District Attorney has opened an investigation into Black. AC ¶ 28, 114. Black claims that Harris has paid Rubinstein and the other "flacks" who have promoted Ganieva claims. AC ¶ 117(e).

Black alleges that Ganieva's goal is to obtain more money from Black, even though she walked away from millions by breaking her silence and has made no demand of Black since. AC ¶¶70-71,104. Harris purportedly seeks to retaliate against Black for denying him the chance to be CEO of Apollo. *Id.*

**Procedural History**

Black filed the Complaint in this action on October 28, 2021. He alleged that Ganieva was part of a racketeering enterprise and conspiracy with Wigdor as well as an unnamed litigation "funder" and two unnamed "flacks." In his first Complaint, Black claimed – without any factual basis – that the "funder" was paying Ganieva and her counsel. Dkt. No. 1, Cmplt. ¶ 26. Defendants filed motions to dismiss the initial complaint on January 7, 2022. Several weeks later, Black filed the Amended Complaint, in which he abandoned his RICO claims against Wigdor but maintained them against Ganieva. He also added Rubinstein and Harris as co-defendants but does not claim they are paying Ganieva or her lawyers.

## ARGUMENT

## I.        STANDARDS ON A MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570. In evaluating a motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint and draw all inferences in the plaintiff's favor. *Patrizzi v. Bourne in Time, Inc.*, 11 Civ 2386, 2012 WL 4833344, at *3 (S.D.N.Y. Oct. 11, 2012) (Engelmayer, J.).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted).

## II.    BLACK HAS FAILED TO SUFFICIENTLY PLEAD THE REQUIRED ELEMENTS OF HIS RICO CLAIMS AGAINST GANIEVA

Black unsuccessfully attempts to state claims against Ganieva for substantive RICO violations under 18 U.S.C. § 1962(c), and for conspiracy to commit substantive RICO violations under 18 U.S.C. § 1962(d). Black must meet a high burden "when pleading RICO allegations as courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Aerowest GmbH v. Freitag*, 15 Civ. 2894, 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016) (internal quotation and brackets omitted); *see also Patrizzi*, 2012 WL 4833344, at *3 (S.D.N.Y. Oct. 11, 2012) ("Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.") (internal quotations omitted).

To sustain a private cause of action under RICO, Black must allege "(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888

F. Supp. 2d 491, 503 (S.D.N.Y. 2012) (quoting *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 283 (2d Cir.2006)). A violation of 18 U.S.C. 1962(c) occurs when, "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. 1962(c). "Thus, in addition to injury and causation, a plaintiff must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Petrosurance*, 888 F. Supp. 2d at 503. To state a claim under Section 1962(d) Black was required to sufficiently allege that Ganieva "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." *United States v. Yanotti*, 541 F.3d 112, 121-22 (2d Cir. 2008).

For the reasons explained below, Black's civil RICO claims against Ganieva should be dismissed.

### a. Black Does Not Sufficiently Allege a Racketeering Enterprise

RICO enterprises may include "any union or group of individuals associated in fact" such as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 580-81 (1981). An association-in-fact enterprise, as Black tries to allege, "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

The alleged RICO enterprise must, moreover, be distinct from the person or persons conducting the affairs of the enterprise (*e.g.*, the defendants on the RICO claims). *See, e.g., First*

*Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). A plaintiff must allege facts to demonstrate that the association-in-fact enterprise was in some way different from, and had some existence beyond, the sum of its parts and the underlying pattern of racketeering activity. *See Greenberg v. Blake*, 09 Civ. 4347, 2010 WL 2400064, at *6 (E.D.N.Y. June 10, 2010) (complaint alleging association-in-fact enterprise must provide "solid information" to demonstrate actual existence of enterprise beyond the individual defendants, acting together, and "[c]onclusory allegations that there was an enterprise are wholly insufficient.") (internal citations omitted).

Here, Black's allegation of an association-in-fact racketeering enterprise is inadequate. First, the Amended Complaint fails to allege that Ganieva has any interpersonal relationship with the other members of the alleged "enterprise," as required by *Boyle*, 556 U.S. at 946. Indeed, there is not a single non-conclusory allegation that Ganieva has ever communicated – directly or indirectly – with either Harris or Rubinstein, who are the only other named members of the "enterprise." The closest Black comes to such an allegation is that "confederates" of Harris were supposedly looking for a lawyer to represent Ganieva. AC ¶¶ 60-62. But the Amended Complaint does *not* allege that this purported search was done with Ganieva's approval or even with her knowledge. Indeed, the Amended Complaint suggests the opposite: Wigdor, the law firm that Ganieva hired to represent her against Black, was not one of the firms allegedly suggested by Harris' associates, and it was not the lawyer mentioned to her by the private detectives who showed up at her home uninvited in March 2021. AC ¶ 62. Moreover, Black has abandoned his RICO claims against Wigdor.

Black does not explain how Ganieva can be in a racketeering enterprise with people who are strangers to her. While Black claims that Harris and his associates, for their own reasons, want people to know that Ganieva has alleged that Black sexually abused her, this is far below what is

needed to establish a RICO enterprise. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 306–07 (S.D.N.Y. 2010) (dismissing RICO claims for failure to allege an association in fact because the complaint did not allege that members of the enterprise had any interpersonal relationships; "parallel conduct by separate actors" was insufficient to plead a RICO enterprise under *Boyle*).

The Amended Complaint also fails to allege that the members of the enterprise acted with a common purpose. While Ganieva and Harris both allegedly have animus toward Black, according to Black, their goals are different. The Amended Complaint asserts that Ganieva is a former paramour of Black who wants his money. AC ¶¶ 1, 32, 39.[3] Harris, in contrast, is a former business associate of Black who hoped to be CEO of Apollo. Like Black, Harris is extraordinarily wealthy, AC ¶ 20, and there is no suggestion that his actions against Black are financially motivated. The third named member of the "enterprise," Rubinstein, has no alleged purpose for being in this "enterprise" other than promoting the interest of Harris. Thus, the Amended Complaint fails to allege that Ganieva has a "common purpose" with any of her alleged co-conspirators. *See Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 15 Civ 293, 2018 WL 1627257, at *4 (S.D.N.Y. Mar. 30, 2018) (holding that RICO enterprise-in-fact was not sufficiently pleaded because the facts alleged did not support an inference that defendants shared common purpose).

---

[3]     Underscoring the incoherence of Black's allegations, he claims that Ganieva wants his money, while acknowledging that she walked away from millions in future payments from him and has made no demand of him since then. In his initial complaint, Black tried to explain this by alleging, with no evidence, that a mystery "funder" was paying Ganieva what she could have continued receiving from Black. The Amended Complaint has abandoned that false claim while nonsensically adhering to the theory that Ganieva is motivated by money.

The Amended Complaint also fails to allege a RICO enterprise because there are no allegations to suggest that the purported association-in-fact enterprise exists separately from the named defendants. *Maersk, Inc. v. Neewra, Inc.,* 687 F. Supp. 2d 300, 333 (S.D.N.Y. 2009) (stating that alleged RICO enterprise "must be an organization distinct from the conduct of the culpable defendants comprising it"). Black alleges that other "vendors" assisted the enterprise, but the Amended Complaint contains no information about who these vendors are or what type of assistance they may have provided. Black also asserts that the enterprise included other "flacks" such as Jonathan Rosen and Paul Holmes. But again, Black does not plead what these individuals did for the "enterprise." At most, the Amended Complaint suggests that Rosen and Holmes provided public relations services to Harris in his attempt to become CEO of Apollo. AC ¶ 44.

Likewise, the Amended Complaint fails to allege facts to suggest that the supposed "enterprise" had any existence beyond the barely-alleged pattern of racketeering activity. Not a single fact suggests that the "enterprise" operated for any purpose other than the alleged "fraud" and "extortion" that Black (falsely) alleges took place. This is insufficient. *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 20 Civ. 9784, 2021 WL 4692779, at *11 (S.D.N.Y. July 7, 2021) (recommending dismissal of civil RICO claims where the amended complaint failed to allege the nature and extent of the relationships between and among the members of the supposed enterprise and failed to allege that the purported enterprise had any existence independent of the alleged racketeering activity of mail andwire fraud); *Woods v. Mercier*, 11 Civ. 6502, 2012 WL 3925852, at *6 (W.D.N.Y. Sept. 7, 2012) (dismissing civil RICO claim because plaintiff "failed to allege an enterprise that is distinct from the racketeering activity in which it allegedly engaged"); *Goldfine v. Sichenzia,* 118 F. Supp. 2d 392, 401 (S.D.N.Y.2000) (same).

Accordingly, because the Amended Complaint fails to plausibly allege the existence of a RICO enterprise, Black's RICO claims should be dismissed.

### b. Black Does Not Sufficiently Allege that Ganieva Participated in the Operation or Management of a Racketeering Enterprise

A plaintiff must plead facts establishing that each defendant "participated in the affairs" of the RICO enterprise. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank,* N.A., 30 F.3d 339, 344 (2d Cir 1994). Participation in the RICO context means "participation in the operation or management of the enterprise." *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001), *citing Reves v. Ernst & Young*, 507 U.S. 170, 179-85 (1993). Under the Supreme Court's "operation and management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." *Id.* RICO liability, therefore, "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (quoting *Reves*, 507 U.S. at 185 (emphasis in original). A person may not be held liable merely for performing tasks that are "necessary and helpful to the enterprise," or for providing "goods and services that ultimately benefit the enterprise." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017) (internal quotations omitted) Instead, "the RICO defendant must have played '*some* part in directing [the enterprise's] affairs.'" *Id.* (quoting *First Capital Asset Mgmt.*, 385 F.3d at 176) (further internal quotation omitted).

Here, however, Black does not plead *any* facts sufficient to plausibly demonstrate that Ganieva participated in the operation and management of the imaginary "enterprise." Black's allegations against Ganieva are the following: 1) that she extorted him in 2015, which led to Black's agreement to forgive certain loans that he made to Ganieva and to make monthly payments of $100,000 to her for several years, AC ¶¶ 37, 113(c), 118(b), 123, 131; 2) that Ganieva sent him

13

a message in October 2019 in which she asked about their agreement, *id.* ¶¶ 39; 3) that she had a law firm other than Wigdor send Black a letter in March 2020 requesting a copy of the agreement she had signed with Black, *id.*; 4) that she tweeted about Black's sexual abuse of her in March 2021 and spoke to a journalist soon after, *id.* ¶¶ 63, 66; and 5) that she filed the State Court Action against Black in June 2021 and authorized subsequent amendments of her state court complaint. *Id.* ¶¶ 72, 82, 89. None of these allegations, individually or collectively, are sufficient to establish that Ganieva operated or managed a RICO enterprise.

Black cannot plausibly argue that the alleged 2015 extortion, the October 2019 message, or the March 2020 lawyer's letter are connected to the "enterprise." Black does not even allege that Ganieva undertook these acts with anyone else, and the Amended Complaint does not suggest that the "enterprise" even *existed* as of the latest of these events.[4] Black does assert that the "enterprise" amplified Ganieva's public statements about Black and in the State Court Action, AC ¶ 66, but there are no facts alleged to suggest that Ganieva had any role in how the "enterprise" used her statements or her lawsuit, or that Ganieva made her public statements or filed suit against Black to achieve the goal of the "enterprise." Nor is there any suggestion in the Amended Complaint that Ganieva directed anyone associated with the "enterprise" in its activities.

In short, nothing in the Amended Complaint supports a finding that Ganieva did anything other than to manage her own affairs for her own reasons. Thus, even if Black's fictitious "enterprise" existed and it used Ganieva's statements and pleadings, that does not establish that Ganieva had any role in operating or managing the enterprise. *See Cassidy v. Madoff*, 18 Civ.

---

[4]     Black does not allege when the "enterprise" supposedly came into being. But the earliest "enterprise" activity referred to in the Amended Complaint is October 2020, when unspecified members of the "enterprise" began to spread stories about Black's relationship with Jeffrey Epstein.  AC ¶ 40.

00394, 2018 WL 5792786, at *12 (N.D.N.Y. Nov. 5, 2018) (holding that defendants who merely provided services that aided in the perpetration of an allegedly fraudulent scheme did not operate or manage a RICO enterprise); *Elsevier*, 692 F. Supp. 2d at 308 (granting motion to dismiss RICO claim where the complaint failed to allege that any members of the enterprise acted at the moving defendant's behest or that the moving defendant "coordinated their efforts or provided a common repository for the fruits of their illicit labors"). Black's RICO claims against Ganieva should thus be dismissed.

c.   **Black Has Failed to Sufficiently Allege that Ganieva Engaged in a Pattern of Racketeering Activity**

Black's RICO claims also fail because he does not allege that Ganieva engaged in any pattern of racketeering activity. Attempting to conjure a pattern where one does not exist, Black erroneously includes so-called predicate acts that Ganieva allegedly committed on her own, before the so-called RICO "enterprise" even existed. And the purported crimes that Ganieva allegedly committed with the "enterprise" – publicly accusing Black of sexual abuse, filing a lawsuit against him, and complaining to the District Attorney – are not predicate acts as a matter of law, nor do they constitute a "pattern" under the applicable legal standards.

1.   *Legal Principles Pertaining to the RICO Pattern Requirement*

To establish a pattern sufficient to satisfy the RICO statute, a plaintiff must allege at least two acts of racketeering activity within 10 years and allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Relatedness and continuity are both required; isolated acts of racketeering activity are insufficient to support liability. *See, e.g., United States v. Daidone*, 471 F.3d 371, 375-376 (2d Cir. 2006).

For predicate crimes to be "related" under RICO, they must relate to both each other

15

("horizontal relatedness") and the enterprise as a whole ("vertical relatedness"). *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017). Predicate acts are horizontally related "when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 61. Vertical relatedness requires "that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprises' affairs, or because the offense related to the activities of the enterprise." *Reich*, 858 F.3d at 61 (internal quotation omitted).

The "continuity" requirement is satisfied either by showing a "closed-ended" pattern – a series of related predicate acts extending over a substantial period – or by demonstrating an "open-ended" pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

2.    *The Alleged 2015 Extortion is Not Related to the Enterprise or the Later Alleged Predicate Acts and Thus Cannot be Part of a RICO Pattern of Racketeering Activity*

Black asserts that Ganieva's alleged extortion of him in 2015, and each time she accepted a payment from him through 2021, is part of a pattern of racketeering. AC ¶¶ 117(a)-(b). But the alleged 2015 extortion (which Ganieva denies) – and the payments subsequently made by Black to Ganieva – were not in any way related to the "enterprise" underlying his RICO claims. As discussed above, the Amended Complaint does not suggest that Ganieva's alleged act of extortion involved any other person, and it certainly had nothing to do with the imaginary "enterprise," which even Black claims did not exist in 2015 or for many years later. Nor does the alleged 2015 extortion have any connection to codefendants Harris or Rubinstein or any of the later litigation

activity that Black wrongly labels as extortion and fraud. As a result, these alleged predicate acts fail to satisfy the essential requirements of horizontal and vertical relatedness under the standards described above. Accordingly, Black cannot rely on the alleged extortion of him in 2015 or the payments flowing from that alleged offense to establish a pattern of racketeering by Ganieva.

3.      *Ganieva's Public Statements, the State Court Action, and Complaints to the District Attorney are Not Predicate Acts and, In Any Event, They Do Not Satisfy the RICO Continuity Requirement*

Black has no more success in pleading a pattern of racketeering activity about the more recent events described in the Amended Complaint. Black contends that various actions by Ganieva since 2021 form a pattern of racketeering activity. AC ¶ 117(c), 118(c). But contrary to Black's claims, none of these acts amount to extortion, wire fraud, or mail fraud. Moreover, Black cannot show that they are sufficiently continuous to establish a pattern of racketeering activity.

A.      The alleged acts do not constitute
extortion, wire fraud, or mail fraud

The Amended Complaint fails to plausibly allege that Ganieva extorted Black while associated with a RICO enterprise. Black contends that Ganieva's March 2021 tweets about him, her statements to a reporter from the *New York Post*, the State Court Action, and her complaint to the District Attorney constitute extortion under the Hobbs Act, 18 U.S.C. § 1951(b).[5] AC ¶ 117(c). However, an essential element of the crime of extortion under the Hobbs Act is obtaining or attempting to obtain property from the alleged victim. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). Black cannot show that Ganieva's public statements about him or her complaint to the District Attorney involved any attempt to obtain his property. Indeed, Black

---

[5]      The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

acknowledges that Ganieva has not made a monetary demand to him since he stopped making payments to her in March 2021. AC ¶¶ 70-71.

Nor can Black demonstrate a Hobbs Act violation based on Ganieva's complaint or amended complaints in the State Court Action. Litigation activity, even if frivolous or malicious (which the State Court Action is not) does not constitute extortion. *Ritchie v. N. Leasing Sys., Inc.*, 12 Civ. 4992, 2016 WL 1241531, at *13 (S.D.N.Y. Mar. 28, 2016) (collecting cases); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) ("There are sound policy reasons against recognizing the instigation of meritless litigation as a RICO predicate act.").

Black's allegations likewise fail to demonstrate that Ganieva engaged in mail or wire fraud while she was allegedly associated with a RICO enterprise.[6] The particularity requirements of pleading Fed. R. Civ. P. 9(b) apply to RICO claims based on mail and wire fraud under 18 U.S.C. § 1341 and § 1343. *See, e.g., Knoll v. Schectman*, 275 Fed. Appx. 50, 51 (2d Cir. 2008) (noting that where civil RICO claims are predicated on mail and wire fraud, the fraud allegations must be pleaded with particularity). Black was required to plead the underlying fraudulent misrepresentations and omissions with the requisite particularity – including the who, what, when, where, and why of the fraudulent misrepresentations or omissions. *See e.g., Lakonia Mgmt., Ltd. v. Meriwether*, 106 F. Supp. 2d 540, fn. 31 (S.D.N.Y. 2000) (dismissing RICO claim where plaintiff failed to sufficiently plead an underlying scheme to defraud with sufficient particularly).

---

[6]     To plead mail or wire fraud as a predicate act, Plaintiffs' complaint "must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Sanchez v. ASA Coll., Inc.*, 14 Civ. 5006, 2015 WL 3540836, at *5 (S.D.N.Y. June 5, 2015).

Here, Black never explains how Ganieva, while associated with the purported "enterprise," used the mails or wires in furtherance of any fraudulent scheme. Among the missing information is who, if anyone, relied on the fraudulent misrepresentations and how Black was damaged as a result. *FindTheBest.com, Inc.*, 20 F. Supp. 3d at 458 ("To constitute a RICO predicate act, a pleading of wire fraud or mail fraud must plausibly allege reliance on the misrepresentations at issue."). Black's lengthy Amended Complaint not once mentions the concept of reliance.

Black also cannot plausibly allege that the various filings in the State Court Action are wire fraud or mail fraud predicates for RICO purposes. Courts in the Second Circuit and elsewhere have refused to recognize litigation activity as wire or mail fraud simply because the mails or wires were used in connection with the litigation. *See Dekom v. Fannie Mae*, 846 F. App'x 14 (2d Cir. 2021) ("[A]llegations of frivolous, fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate act.") (internal citations omitted) (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *FindTheBest.com*, 20 F. Supp.3d 451, 460 (dismissing RICO claim against parties who had previously sued the plaintiff and their counsel because mail or wire transmission of litigation documents such as pleadings did not constitute predicate acts of mail or wire fraud); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010), ("persuasive authority in this and other jurisdictions suggests that the litigation activities alleged in this [c]omplaint cannot properly form the basis for RICO predicate acts"), *aff'd*, 443 Fed. Appx. 582 (2d Cir. 2011).

As the Second Circuit observed in *Kim*:

> If litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings . . . Moreover, endorsing this interpretation of RICO would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts because

> any litigant's or attorney's pleading and correspondence in an
> unsuccessful lawsuit could lead to drastic RICO liability.

*Kim*, 884 F.3d at 104 (internal quotations and citations omitted). These principles are even more

compellingly applied here, as the State Court Action has not been resolved in Black's favor and is

ongoing. Black has thus not alleged that Ganieva committed a single RICO predicate act while

associated with a RICO enterprise.

### B.   Black cannot demonstrate continuity

Even if Black could show that Ganieva committed a RICO predicate act while associated

with the "enterprise," his claimed pattern of racketeering activity would still fail for lack of

continuity. First, Black cannot show closed-ended continuity. Since the Supreme Court's decision

in *H.J. Inc.*, the Second Circuit generally has held that a period of fewer than two years does not

constitute a substantial period. *See Reich v. Lopez*, 858 F.3d at 60; *First Capital Asset Mgmt.*, 385

F.3d at 181. Here, however, the "predicate acts" that Black attributes to Ganieva while she was

allegedly associated with an enterprise all occurred within the past year, beginning in March 2021

when Ganieva tweeted about Black.[7]

The Amended Complaint is similarly deficient in pleading an open-ended pattern of

racketeering activity, which requires facts establishing a "threat of continuing criminal activity

beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor*

*Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). To determine the existence of a continuing

threat, courts look at the nature of the enterprise and of the predicate acts. *Id.* "[T]here must be

some evidence from which it may be inferred that the predicate acts were the regular way of

---

[7]    Black cannot claim that the relevant period extends back to the alleged 2015 extortion
because, as discussed above, there are no facts pleaded in the Amended Complaint to suggest that
Ganieva's conduct in 2015 was part of an "enterprise."

operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Spool*, 520 F.3d at 185. Black's Complaint does not contain any facts that would allow a court to draw such a conclusion concerning Ganieva, who is not alleged to be doing anything "wrongful" other than pursuing the State Court Action. AC ¶ 122. Whether Black contends that the State Court Action is meritless or even malicious is irrelevant; as discussed above, prosecuting a lawsuit is not criminal.

Furthermore, courts have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended *or* open-ended pattern. *See Sehgal v. Aggarwal*, 20 Civ. 4577, 2021 WL 3617479, at *4 (E.D.N.Y. Aug. 16, 2021) ("Regardless of the theory [of continuity], courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.") (internal quotation and citations omitted). A single narrow scheme with one victim and limited participants does "not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO." *Ritter v. Klisivitch*, 06 Civ. 5511, 2008 WL 2967627, at *11 (E.D.N.Y. July 30, 2008).

Here, even if Black had alleged some predicate acts of racketeering activity, he has not plausibly alleged that anyone other than himself was targeted by the alleged conduct. His claim that Apollo was also victimized by the "enterprise," AC ¶ 124, is conclusory and is merely derivative of the company's association with Black. Black has at most alleged a single, narrow, inherently terminable scheme with one victim and limited participants aimed at obtaining money from him by the pursuit of the State Court Action. His allegations thus do not support the existence of any open or closed-ended pattern of racketeering activity.

### d.       Black Has Failed to Sufficiently Allege any Cognizable RICO Injury

Black's RICO claims are also deficient because they fail to allege a cognizable RICO injury. To show that he was "injured in its business or property by reason of the conduct constituting the RICO violation," Black must plead facts showing: (i) clear, definite, and provable damages; (ii) that the damages were proximately caused by Ganieva's alleged racketeering activity; and (iii) that he exhausted his legal and contractual remedies before bringing suit. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768-770 (2d Cir. 1994); *Panabroker Protecting & Indem. Assoc. v. Vneshprombank*, 16 Civ. 2120, 2017 WL 7411188, at *3 (S.D.N.Y. Sept. 26, 2017).

Black's RICO claims against Ganieva do not meet these standards. Though Black alleges that he suffered damages in the form of various payments and forgiven loans to Ganieva, he cannot demonstrate that those damages were caused by alleged racketeering activity. The only specific damages that Black alleges he has sustained resulted from the alleged 2015 extortion, which pre-dates and is not connected to the RICO "enterprise" that Black has conjured. The other damages Black has pleaded – unspecified costs to defend the State Court Action and "media campaign" – as well as "loss of business opportunities" – are not sufficiently clear and definite to sustain a RICO claim. *See Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 233 (E.D.N.Y. 2014) (holding that alleged damages that depended on the results of ongoing state court action and arbitration were not sufficiently clear and definite to support RICO claims).

Black has also failed to exhaust his legal and contractual remedies before bringing suit. Along with his spurious RICO claims, Black asserted a common law breach of contract claim against Ganieva, which seeks the same damages as his RICO claims. Essentially, Black alleges that he did not receive the full benefit of the non-disclosure agreement that he forced on Ganieva

in 2015. Black initially made this claim in the State Court Action before voluntarily dismissing it to forum shop by asserting the hopelessly defective federal racketeering claims. The Court should reject Black's attempt to transform his purported contract damages into a racketeering case. *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 12 Civ. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) ("The allegations in the Complaint that purport to plead predicate criminal acts sufficient to establish a cause of action under RICO amount merely to a breach of contract claim and common business torts, which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.") (internal quotations and brackets omitted).

    e.    **Black Has Not Plausibly Alleged that
           <u>Ganieva Was in a Racketeering Conspiracy</u>**

Black has also not plausibly alleged that Ganieva engaged in any racketeering conspiracy under 18 U.S.C. 1962(d). Where, as here, a plaintiff's substantive RICO claims are subject to dismissal, his RICO conspiracy claims should also be dismissed. *See Rosner v. Bank of China*, 528 F. Supp. 2d 419 (S.D.N.Y. 2007) ("Because the Court finds that Rosner does not sufficiently allege a violation of § 1962(a) or § 1962(c), the Court need not consider § 1962(d), as a complaint must adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d)."). Moreover, Black has not pleaded any facts to demonstrate that Ganieva agreed to participate in any predicate acts of racketeering activity. As discussed above, the Amended Complaint does not even plead facts that would support an inference that Ganieva has ever communicated with her co-defendants, much less agreed to join them in a conspiracy to commit at least two predicate racketeering acts. Accordingly, Black's RICO conspiracy claim against Ganieva should be dismissed. *See United States v. Viola*, 35 F.3d 37, 44-45 (2d Cir.1994) (holding that defendant was not guilty of a RICO conspiracy in the absence of proof

that defendant knew what other conspirators "were up to" or that the situation "logically would

lead him to suspect he was part of a larger enterprise").

### III. BLACK'S RICO CLAIMS, WHICH ARE BASED ON GANIEVA'S STATE COURT LAWSUIT AGAINST HIM, ARE BARRED BY THE NOERR-PENNINGTON DOCTRINE

Black's RICO claims against Ganieva are also barred by the *Noerr-Pennington* doctrine

because they are based on the Ganieva filing and pursuing the State Court Action. Under *Noerr-*

*Pennington*, federal courts recognize that, generally, claims stemming from a party's petition to

the government are immune from liability. *See, e.g., Tuosto v. Philip Morris USA Inc.*, 05 Civ.

9384, 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007); *Matsushita Electronics Corp. v. Loral*

*Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). Petitioning activity includes complaints filed in

civil actions. *See, e.g., Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 363-364 (S.D.N.Y. 2010).

*Noerr-Pennington* immunity has been extended to RICO actions where, as here, such claims

are premised on litigation or litigation-related activity. *Singh v. NYCTL 2009-A Trust*, 683 Fed.

Appx. 76, 78 (2d Cir. 2017) (summary order) (holding *Noerr-Pennington* barred RICO claims

based upon state court foreclosure action); *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners,*

*L.P.*, 229 F.3d 1135 (2d Cir. 2000) (summary order) (applying the doctrine to RICO claims).

Though there is a "sham litigation" exception to the *Noerr-Pennington* doctrine, the burden

is on the plaintiff to allege facts showing the applicability of the sham exception. *See, e.g.,*

*Primetime 24 Joint Venture v. National Broadcasting Company*, 219 F.3d 92, 100-101 (2d Cir.

2000). The burden to demonstrate sham litigation is a heavy one. Here, however, Black alleges

no facts (as opposed to conclusions) to suggest that Ms. Ganieva's State Court Action is

objectively baseless or that the lawsuit was intended to cause harm to Black through the use of

the governmental process. Accordingly, Black's RICO claims must be dismissed under the *Noerr-Pennington* doctrine.

## IV.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER BLACK'S STATE LAW CLAIMS

Because the only federal claims alleged by Black are inadequately pleaded and ripe for dismissal, the Court should not exercise supplemental jurisdiction over the state law claims asserted against Ganieva. *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 774 (S.D.N.Y. 2021) (declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims on the pleadings) (Engelmayer, J.).

At this early stage in the case, Black cannot show any legitimate reason why this Court should retain jurisdiction over purely state law claims. This is especially so considering Ganieva's first-filed State Court Action is ongoing. Principles of comity and the conversation of judicial resources support allowing the New York courts to resolve the competing claims between Ganieva and Black. Moreover, retaining jurisdiction over this matter would reward Black's transparent forum shopping as well as his attempt to further retaliate against a woman who has made claims against him for sexual abuse.

## CONCLUSION

For the reasons set forth above, the Court should grant Ganieva's motion to dismiss the Amended Complaint, together with such other and further relief as the Court deems proper. [8]

---

[8]    Parts of this brief were adapted with permission from the Memorandum of Law in Support of Defendant Wigdor LLP's Motion to Dismiss the Complaint. Dkt. No. 43.

Dated:  March 4, 2022
        New York, New York

By:  _____

LAW OFFICE OF
KEVIN MINTZER, P.C.
Kevin Mintzer
Laura L. Koistinen (not yet admitted to the SDNY)
1350 Broadway, Suite 2220
New York, New York 10018
*Attorneys for Defendant Guzel Ganieva*
646-843-8180
km@mintzerfirm.com