UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

LEON D. BLACK,

                                  Plaintiff,

    -against-

GUZEL GANIEVA, WIGDOR LLP, JOSH HARRIS,
AND STEVEN RUBENSTEIN,

                                  Defendants.

-----------------------------------------------------------------------X

**Civil Action No.:
1:21-cv-08824-PAE**

---

## DEFENDANT WIGDOR LLP'S MOTION TO DISMISS
## PLAINTIFF'S THIRD CAUSE OF ACTION

---

Respectfully submitted,

RIVKIN RADLER LLP
Attorneys for Defendant, Wigdor LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

On the brief:

Max Gershenoff, Esq.
Janice J. DiGennaro, Esq.
Yonatan Bernstein, Esq.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................2

    I.      The Parties ...........................................................................................2

    II.    Ms. Ganieva's First-Filed State Court Action Against Black ...........................3

    III.   Black's Contrived and Retaliatory Claims Against Wigdor
          and Ms. Ganieva in the Present Case ...................................................4

ARGUMENT ........................................................................................................6

    I.      The Standards on This Motion...........................................................6

    II.    Black's Defamation Claim is Defective and Should be Dismissed .................6

    III.   Black's Defamation Claim is Barred by the Noerr Pennington Doctrine .........17

    IV.   The Court Should Decline to Exercise Supplemental Jurisdiction Over Black's
          Defamation Claim ............................................................................ 18

    V.     In the Alternative, the Court Can Abstain Under the Colorado River
          Doctrine ......................................................................................... 19

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amodei v. N.Y. State Chiropractic Ass'n,
  160 A.D.2d 279 (N.Y. A.D. 1st Dep't 1990), aff'd, 77 N.Y.2d 890 (1991) ..........................13

Assoun v. Assoun,
  2014 U.S. Dist. LEXIS 179762 (S.D.N.Y. 2014)......................................................................6

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007).................................................................................................................6

Bisogno v. Borsa,
  101 A.D.3d 780, 954 N.Y.S.2d 896 (N.Y. A.D. 2d Dep't 2012) .............................................7

Capsolas v. Pasta Res., Inc.,
  2013 U.S. Dist. LEXIS 28508 (S.D.N.Y. 2013)......................................................................9

Caro Capital, LLC v. Koch,
  2021 U.S. Dist. LEXIS 78641 (S.D.N.Y. 2021)......................................................................7

Colorado River Water Conservation District v. United States,
  424 U.S. 800 (1976)...............................................................................................................19

Cruz v. Marchetto,
  2012 U.S. Dist. LEXIS 142662 (S.D.N.Y. 2012)....................................................................9

Davis v. Boeheim,
  24 N.Y.3d 262 (N.Y. 2014) ...................................................................................................11

Davison v. Goodwill Indus. of Greater N.Y. & N. N.J., Inc.,
  2012 U.S. Dist. LEXIS 43283 (E.D.N.Y. 2012)......................................................................9

Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP,
  2021 U.S. Dist. LEXIS 126819 (S.D.N.Y. 2021)..................................................................19

Flomenhaft v. Finkelstein,
  127 A.D.3d 634 (N.Y. A.D. 1st Dep't 2015)............................................................................8

Freeman v. Lasky, Haas & Cohler,
  410 F.3d 1180 (9th Cir. 2005) ...............................................................................................17

Ginx, Inc. v. Soho Alliance,
  2010 U.S. Dist. LEXIS 64313 (S.D.N.Y. 2010)....................................................................17

Hadar v. Pierce,
    111 A.D.3d 439 (N.Y. A.D. 1st Dep't 2013)...........................................................10

Hollander v. Cayton,
    145 A.D.2d 605 (N.Y. A.D. 2d Dep't 1988) ..........................................................13

Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.,
    424 N.Y.S.2d 165 (N.Y. 1979) ..............................................................................11

In Touch Concepts, Inc. v. Cellco P'ship,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013).....................................................................6

Johnson v. Riverhead Cent. Sch. Dist.,
    2018 WL 4344957 (E.D.N.Y. 2018).......................................................................14

Kalie v. Bank of Am. Corp.,
    297 F.R.D. 552 (S.D.N.Y. 2013)(Engelmayer, J.)...................................................6

Lacher v. Engel,
    33 A.D.3d 10 (N.Y. A.D. 1st Dep't 2006) ......................................................8, 9, 11

Lader v. Delgado,
    941 F. Supp. 2d 267 (E.D.N.Y. 2013) ...................................................................10

Long v. Marubeni Am. Corp.,
    406 F. Supp. 2d 285 (S.D.N.Y. 2005).....................................................................11

Marek v. Old Navy (Apparel) Inc.,
    348 F. Supp. 2d 275 (S.D.N.Y. 2004).......................................................................6

Matsushita Electronics Corp. v. Loral Corp.,
    974 F. Supp. 345 (S.D.N.Y. 1997)..........................................................................17

Oladokun v. Ryan,
    2011 U.S. Dist. LEXIS 109638 (S.D.N.Y. 2011)....................................................19

Pelt v. City of N.Y.,
    2013 U.S. Dist. LEXIS 122848 (E.D.N.Y. 2013)....................................................18

Peters v Coutsodontis,
    155 A.D.3d 540 (N.Y. A.D. 1st Dep't 2017)...........................................................10

Primetime 24 Joint Venture v. National Broadcasting Company,
    219 F.3d 92 (2d Cir. 2000).....................................................................................17

Quirino v. New Jewish Home,
    2021 U.S. Dist. LEXIS 55005 (S.D.N.Y. 2021)........................................................6

Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist,
      178 F. Supp. 3d 118 (S.D.N.Y. 2016)........................................................................14

Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.),
      503 F.3d 89 (2d Cir. 2007)........................................................................................9

Sparrow Fund Mgmt. LP v. Mimedx Grp., Inc.,
      2020 U.S. Dist. LEXIS 49813 (S.D.N.Y. 2020)..............................................12, 15

Tasso v. Platinum Guild Int'l,
      1998 WL 841489 (S.D.N.Y 1998)..........................................................................14

Tuosto v. Philip Morris USA Inc.,
      2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. 2007)....................................................17

Varughese v. Mount Sinai Med. Ctr.,
      2015 WL 1499618 (S.D.N.Y. 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017).........13

Weeden v. Lukezic,
      2022 N.Y. A.D. LEXIS 24 (N.Y. A.D. 1st Dep't 2022)...............................15, 16, 17

Wexler v. Allegion (UK) Ltd.,
      374 F. Supp. 3d 302 (S.D.N.Y. 2019).................................................................7, 11

Wexler v. Dorsey & Whitney, LLP,
      2019 WL 5485265 (E.D.N.Y. 2019), aff'd, 815 F. App'x 618 (2d Cir. 2020).........13

Williams v. Williams,
      23 N.Y.2d 592, 298 N.Y.S.2d 473 (N.Y. 1969) .....................................................7

## PRELIMINARY STATEMENT

Defendant Wigdor LLP ("Wigdor" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Leon Black's ("Black" or "Plaintiff") Third Cause of Action for defamation per se.

Wigdor is a law firm that represents sexual assault victims, and currently represents Guzel Ganieva ("Ms. Ganieva") -- who also has been named as a Defendant in this case -- in a first-filed, sexual assault and defamation lawsuit against Black that is pending in New York State Supreme Court. It is transparently obvious from the face of his original Complaint, and now his Amended Complaint, that Black -- a billionaire unused to any limits to his power -- commenced this lawsuit in a misguided attempt to interfere with Wigdor's ability to represent Ms. Ganieva in her already-pending state court case, and to retaliate against Wigdor for representing Ms. Ganieva in that lawsuit.

In particular, Black's sole claim against Wigdor in the Amended Complaint is that Wigdor's representation of Ms. Ganieva in her first-filed state court action somehow amounts to "defamation". However, courts in this Circuit, and New York state courts, look with justified skepticism on claims, like Black's, to the effect that a lawyer committed defamation by filing pleadings on behalf of a client, or by expressing fair comment and opinion in connection with an ongoing lawsuit. To hold otherwise would invite wasteful, retaliatory, satellite litigation in federal court each time a defendant felt aggrieved by a first-filed state court action. It also would frustrate the public policy goal of open access to the courts, because any litigant's or attorney's pleading or correspondence could lead to baseless defamation claims upon the mere filing of a state court lawsuit.

In the present case, wasteful, retaliatory, satellite litigation clearly is at the top of multi-billionaire Black's agenda, as Ms. Ganieva's obviously parallel, first-filed state court action is currently pending. In keeping with his improper purpose, it bears emphasizing that Black's defamation claim against Wigdor – the only cause of action asserted against Wigdor in the Amended

Complaint – is based solely on allegations contained in Ms. Ganieva's state court pleadings, and statements allegedly made by Wigdor <u>about the state court case</u>. In this context, Black obviously is aware that his "defamation" claim against Wigdor (and Ms. Ganieva) is barred by the New York litigation privilege, and by New York Civil Rights Law § 74. He therefore tries to plead around the issue by contending, in conclusory fashion, that Ms. Ganieva's state court action falls within the narrow "sham" exception to the litigation privilege. However, Black's own allegations defeat this claim. For instance, rather than allege any facts to demonstrate that Ms. Ganieva and Wigdor commenced the state court action <u>with malice, and solely to defame</u>, Black alleges that Ms. Ganieva and Wigdor had a <u>pecuniary</u> motive for commencing the state court lawsuit, and brought the action to recover money from him. These allegations -- along with the fact that Wigdor and Ms. Ganieva are alleged to have heavily litigated the state court lawsuit -- defeat Black's conclusory "sham" litigation contentions.

At bottom, if the Court were to permit Black's defamation claim to stand, it would chill every lawyer's ability to represent their clients without fear of facing a defamation lawsuit -- especially in instances when the adversary is a billionaire with virtually unlimited resources to pursue trumped-up retaliatory claims against his alleged victim <u>and her lawyers</u>. Wigdor respectfully submits that the Court should put a stop to Black's improper and recriminatory tactics against his adversary's lawyers, and dismiss his defective defamation claim with prejudice.

<u>**STATEMENT OF RELEVANT FACTS**</u>

**I.**     <u>**The Parties**</u>

Plaintiff Black is the co-founder and former chairman of the private equity firm Apollo Global Management, has a net worth in excess of $10,000,000,000, and himself alleges that he

2

engaged in an extramarital relationship with Ms. Ganieva for many years. <u>See</u> Amended Complaint at ¶ 1, and <u>passim</u>.

Defendant Wigdor is a nationally recognized and very successful law firm that, among other things, specializes in high-profile cases of sexual harassment and sexual misconduct, and is currently representing Ms. Ganieva in connection with her first-filed New York State Supreme Court lawsuit against Black for defamation, defamation <u>per se</u>, intentional infliction of emotional distress, and gender-motivated violence, which was filed on June 1, 2021 under Index No. 155262/2021 (the "State Court Action").

## II.    <u>Ms. Ganieva's First-Filed State Court Action Against Black</u>

In Ms. Ganieva's State Court Action[1] she alleges that, beginning in 2008, Black sexually assaulted her for years, and used his immense wealth and power to intimidate and force her into silence. Ms. Ganieva further alleges in the State Court Action that in 2015, after these repeated sexual assaults, she signed -- under duress and without being afforded the right to obtain the advice of independent counsel -- a purported non-disclosure agreement (the "NDA") with Black. The general terms of the NDA were that Black would pay Ms. Ganieva a monthly stipend and forgive his previous loans to her in exchange for Ms. Ganieva's silence. <u>See</u> State Court Complaint, Gershenoff Decl., Exhibit "1", at ¶¶ 198-215. Thereafter, Black paid Ms. Ganieva a monthly stipend from late 2015 through March 2021, at which point the payments stopped. <u>Id.</u> at ¶¶ 216-218. The payments stopped in March 2021 because, on March 17, 2021, Ms. Ganieva broke her silence regarding Black, and posted on Twitter that he had sexually abused her for years. <u>Id.</u> at ¶¶ 222-226.

---

[1] In the State Court Action, Ms. Ganieva filed an original complaint, a first amended complaint, and has a pending motion for leave to file a proposed second amended complaint. This summary of allegations in the State Court Action is derived from Ms. Ganieva's currently-operative first amended complaint, which is attached to the accompanying Declaration of Max Gershenoff, Esq. ("Gershenoff Decl.") as Exhibit "1".

The State Court Action goes on to detail how, on April 8, 2021, Bloomberg published an article containing a statement by Black in which he falsely contended that his "affair" with Ms. Ganieva was "consensual", and that "any allegation of harassment or any other inappropriate behavior is fabricated". Black also falsely stated to Bloomberg that he supposedly had been "extorted by Ms. Ganieva for many years and [that he] made substantial monetary payments to her, based on her threats to go public" about their relationship. Gershenoff Decl., Exhibit "1",  at ¶¶ 227-229.

On June 1, 2021, as the result of these false and defamatory statements, Ms. Ganieva -- through her counsel, Wigdor -- commenced the State Court Action.[2]

## III.   Black's Contrived and Retaliatory Claims Against Wigdor and Ms. Ganieva in the Present Case

In obvious retaliation for Ms. Ganieva's first-filed State Court Action, Black commenced the present action on October 28, 2021, with Ms. Ganieva and Wigdor as the only specifically-identified Defendants, and asserting causes of action against Wigdor for defamation as well as for civil RICO violations under 18 U.S.C. § 1962(c) and (d).  See Complaint, Docket No. 1, passim. On January 24, 2022 – in the face of Wigdor's Rule 11 motion and motion to dismiss – Black amended his complaint, and removed the completely frivolous civil RICO claims against Wigdor, but still continues to assert his conclusory and baseless defamation per se claim against Wigdor.[3]

---

[2] Black could have asserted, in the State Court Action, the same claims he asserts in the Amended Complaint. In keeping with this fact, Black initially asserted counterclaims against Ms. Ganieva for breach of contract and defamation in the State Court Action based on the same facts he alleges in this case. See Black's initial counterclaims in the State Court Action, annexed to the Gershenoff Decl. as Exhibit "2". However, after Ms. Ganieva filed a motion to dismiss the counterclaims and thereafter filed her first amended complaint in the State Court Action, Black dropped his counterclaims. Then, within just a few months, he commenced the present, obviously parallel case, in this Court, in a transparent attempt to interfere with the State Court Action, and undermine Wigdor's ability to represent Ms. Ganieva in that first-filed case.

[3] In addition to his claims against Wigdor in his Amended Complaint, Black alleges that Ganieva coordinated with newly named Defendants Joshua Harris, the billionaire owner of the Philadelphia

Distilled to their essence from pages of conclusory recrimination, Black's only allegations against Wigdor in support of his defamation per se cause of action in the Amended Complaint amount to the following:

(i)     Wigdor represents Ms. Ganieva in her State Court Action, and has filed pleadings on her behalf in the State Court Action that supposedly contain false allegations of sexual abuse, sexual intimidation, and sexual assault. See Amended Complaint at ¶¶ 12, 15, 72, 82, 133-149, and passim.

(ii)    At some unspecified times, in some unspecified places, Jeanne Christensen ("Ms. Christensen") -- a partner at Wigdor -- supposedly made statements to mostly unspecified persons:

   (a)     "branding" Black as a "sexual predator";

   (b)     "inviting prosecutors to 'go after' him";

   (c)     "accusing Black of 'heinous conduct' towards Ms. Ganieva and of "intimidating" her; and

   (d)     invoking the #MeToo movement.

(iii)   An unidentified person, at an unidentified time, supposedly told another unidentified person, via an unidentified medium, that Black raped a Jane Doe 20 years ago.

See Amended Complaint at ¶ 144.

Based on these allegations – all centering around statements made in the State Court Action or about the State Court Action -- Black asserts a cause for defamation per se against Wigdor. See Amended Complaint at ¶¶ 133-149.

---

76ers and New Jersey Devils, Steven Rubenstein, head of a leading New York City public relations firm, and unidentified "Flacks", in an effort to extort Black. Based on these allegations, which are totally conclusory, and alleged in all material respects "on information and belief", Black attempts to conjure up an association-in-fact racketeering enterprise consisting of Ganieva, Harris, Rubenstein, and unidentified "Flacks", and in turn asserts civil RICO violations against them, as well as a breach of contract claim against Ms. Ganieva. Ms. Ganieva, Mr. Harris, and Mr. Rubenstein each address these meritless and retaliatory claims in their respective motions to dismiss.

<u>**ARGUMENT**</u>

**I.      <u>The Standards on This Motion</u>**

Pursuant to Rule 12(b)(6),  a complaint may be dismissed where it fails to state a claim upon which relief can be granted. "In deciding a motion to dismiss, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." <u>Quirino v. New Jewish Home</u>, 2021 U.S. Dist. LEXIS 55005 at * 26 (S.D.N.Y. 2021)(internal quotations and citations omitted), <u>adopted by</u> 2021 U.S. Dist. LEXIS 53494 (Engelmayer, J.)

Even so, "that tenet 'is inapplicable to legal conclusions.' … Thus, a pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Kalie v. Bank of Am. Corp.</u>, 297 F.R.D. 552, 556 (S.D.N.Y. 2013)(Engelmayer, J.), <u>quoting</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

**II.     <u>Black's Defamation Claim is Defective and Should be Dismissed</u>**

Under New York law, a <u>prima</u> <u>facie</u> claim of defamation requires a showing of (1) a defamatory statement of fact; (2) of and concerning the plaintiff; (3) publication to a third party; (4) falsity; (5) made with the applicable level of fault; (6) causing injury to the plaintiff; and (7) the statement is not protected by privilege. <u>See</u> <u>In Touch Concepts, Inc. v. Cellco P'ship</u>, 949 F. Supp. 2d 447, 484 (S.D.N.Y. 2013).

However, "[i]t is a well-established principle of New York law that statements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy." <u>Marek v. Old Navy (Apparel) Inc.</u>, 348 F. Supp. 2d 275, 281 (S.D.N.Y. 2004); <u>see also</u> <u>Assoun v. Assoun</u>, 2014 U.S. Dist. LEXIS 179762 at * 15 (S.D.N.Y. 2014) (same). This is true "notwithstanding the motive with which they are made, so long as they are material and

pertinent to the issue to be resolved in the proceeding." See Bisogno v. Borsa, 101 A.D.3d 780, 781, 954 N.Y.S.2d 896 (2d Dep't 2012). The test of "pertinency" is "extremely broad and embraces anything that may possibly or plausibly be relevant or pertinent with the barest rationality, divorced from any palpable or pragmatic degree of probability." Caro Capital, LLC v. Koch, 2021 U.S. Dist. LEXIS 78641 at * 32 (S.D.N.Y. 2021)(internal quotations and citation omitted).

As set forth above, Black's defamation per se claim against Wigdor is based solely on Wigdor's representation of Ms. Ganieva in the State Court Action, allegations contained in the pleadings, and statements made by Wigdor about the State Court Action. Accordingly, Black's defamation claim should be dismissed because any statements made in the state court pleadings are protected by the New York litigation privilege. Likewise, the statements Ms. Christensen allegedly made about the State Court Action -- to the extent that they can even be identified from Black's Amended Complaint -- are subject to dismissal because they either constitute fair and true reports of a judicial proceeding (see N.Y. Civil Rights Law § 74), or else constitute non-actionable opinion.

Black clearly is aware that the litigation privilege forecloses his defamation claim against Wigdor, and so he tries to plead around this issue by characterizing Ms. Ganieva's State Court Action as "sham litigation". See Amended Complaint at ¶¶ 69, 74, and passim. Under this doctrine, a party that "maliciously institute[s] a judicial proceeding alleging false and defamatory charges", only to "circulate a press release or other communication based thereon", cannot escape liability for defamation by invoking the privilege. See Williams v. Williams, 23 N.Y.2d 592, 599, 298 N.Y.S.2d 473 (N.Y. 1969).

However, it is well settled that the Williams exception is "narrow" and does not apply in the absence of factual allegations tending to show that the underlying action "was brought maliciously and solely" for the purpose of later defaming the defendant. See, e.g., Wexler v. Allegion (UK) Ltd.,

374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019); <u>Flomenhaft v. Finkelstein</u>, 127 A.D.3d 634, 638 (N.Y.

A.D. 1st Dep't 2015). Additionally, the "sham litigation" doctrine is inapplicable where the

underlying case has been extensively litigated. <u>See</u> <u>Lacher v. Engel</u>, 33 A.D.3d 10, 17 (N.Y. A.D.

1st Dep't 2006).

In this setting, Black fails to allege any <u>facts</u> -- as opposed to baseless conclusions -- to

suggest that Wigdor filed the state court action on behalf of Ms. Ganieva "solely to defame" him.

Indeed, rather than citing any plausible facts in support of his contention that this is a sham litigation,

Black resorts to pointing to various instances in which he personally takes issue with Wigdor's

litigation decisions, and then concludes -- based on his own, subjective lay opinion -- that the State

Court Action is a "sham".

In particular, Black takes issue with the fact that: (i) Wigdor did not offer to settle Ms.

Ganieva's case in advance of filing the State Court Action, <u>see</u> Amended Complaint, ¶¶ 70-72; (ii)

Wigdor has not entered into a protective order in the State Court Action, <u>Id</u>. at 96; (iii) Wigdor has

amended Ms. Ganieva's State Court Action complaints to add additional allegations, <u>Id</u>. at ¶¶72, 82-

83, 89-92; and (iv) Wigdor has objected to discovery requests in the State Court Action. <u>Id</u>. at ¶¶ 93-

95.[4]  The Amended Complaint alleges, incredibly, that Ganieva "walked away from the certainty of

receiving $1.2 million a year for nine more years…without even making a settlement demand first."

---

[4] Black also contends that "documentary evidence" in the form of various cherry-picked text
messages and voice recordings of conversations between Black and Ms. Ganieva is proof positive
that Ms. Ganieva's story is false. Black then concludes that Wigdor therefore must know that Ms.
Ganieva's story is false based on this "documentary evidence". <u>See</u> Amended Complaint at ¶¶13,14,
141. However, this conclusion is based on Black's personal opinion about how much weight to
afford this evidence. An attorney representing a client is perfectly entitled to come to a different
conclusion about the weight and credibility of evidence than the conclusion reached by their
adversary. Were it otherwise – and were an attorney be subject to a defamation suit in instances
where he views evidence differently than an adversary – it would be virtually impossible for an
attorney to ever represent a client.

Amended Complaint, ¶ 2.  If anything, this belies Black's claim that the State Court Action is a sham.  He concedes that by filing her lawsuit, Ganieva literally walked away from substantial future payments. That alone shows that she believes in her case, and was willing to forego more money from Black to bring the State Court Action. That is the opposite of extortion.

Nevertheless, ignoring his contrary allegations, Black focuses on Wigdor's litigation decisions in the State Court Action with which he disagrees, and then concludes that -- in his subjective lay opinion -- the State Court Action must be a sham. However, Black's subjective conclusion that the State Court Action lacks merit falls far short of the pleading requirements necessary to plausibly allege that Ms. Ganieva's State Court Action is a "sham", and therefore actionable. See Capsolas v. Pasta Res., Inc., 2013 U.S. Dist. LEXIS 28508 (S.D.N.Y. 2013)(holding – on a motion to dismiss – that contentions that allegations in a complaint were "false", and conclusory allegations of "malicious conduct", were  insufficient to support a claim that a lawsuit was a "sham"); Cruz v. Marchetto, 2012 U.S. Dist. LEXIS 142662 at * 11 (S.D.N.Y. 2012)(dismissing defamation claim involving statements from a lawsuit and/or made in connection with a lawsuit, and holding that the plaintiff's "deductions" do not overcome the litigation privilege); Calif. Pub. Emples.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.), 503 F.3d 89, 95 (2d Cir. 2007)("legal conclusions, deductions, or opinions couched as factual allegations are not accorded a presumption of truthfulness."); Davison v. Goodwill Indus. of Greater N.Y. & N. N.J., Inc., 2012 U.S. Dist. LEXIS 43283 at * 9 (E.D.N.Y. 2012)(dismissing defamation claim "largely premised on conclusory statements and deductions", which the court noted did not need to be credited as true on a motion to dismiss).

In fact, even if Ganieva does not ultimately prevail in the State Court Action, it still would be insufficient to defeat Wigdor's privilege or invoke the sham exception. See Lacher, supra. In

Lacher, the court explained "[i]f the privilege existed only in cases that were ultimately sustained, none of the persons whose candor is protected by the rule -- parties, counsel or witnesses -- would feel free to express themselves." See also Peters v Coutsodontis, 155 A.D.3d 540 (N.Y. A.D. 1st Dep't 2017)(holding that failure to prevail on heavily litigated matter did not establish the sham litigation exception or defeat the litigation privilege).

Not only has Black failed to allege any plausible facts to suggest that Wigdor filed the State Court Action on behalf of Ms. Ganieva "solely to defame" him, he actually does the opposite: Black affirmatively alleges that despite foregoing millions of dollars in guaranteed payments, Ms. Ganieva -- represented by Wigdor -- commenced and prosecuted the State Court Action in order to obtain what she was already receiving: money from him. See Amended Complaint at ¶ 16, and passim; see also Hadar v. Pierce, 111 A.D.3d 439, 439-440 (N.Y. A.D. 1st Dep't 2013)(dismissing claims against opposing counsel based on allegedly-false claims in prior proceedings, and rejecting application of the sham litigation exception, where the prior proceedings "were not a sham, i.e., instituted for the sole purpose of defaming", because -- much as in the present case -- the complaint alleged that the prior proceedings were instituted "to seize control of certain real estate assets and/or gain leverage to extort concessions"). Moreover, Black alleges facts to demonstrate that Wigdor, on behalf of Ms. Ganieva, has been vigorously litigating the underlying State Court Action, further underscoring why he cannot plausibly contend that it is a "sham litigation".[5]

In addition, pursuant to Section 74 of the New York Civil Rights Law, statements made outside of judicial proceedings are subject to a qualified privilege to the extent that they constitute

---

[5] The Court also can take judicial notice of the myriad motions and other filings in the State Court Action, which reflect how vigorously Wigdor and Ms. Ganieva have litigated the State Court Action. See Lader v. Delgado, 941 F. Supp. 2d 267, 269 (E.D.N.Y. 2013)(taking judicial notice of the pleadings in a related state court matter).

fair and true reporting on such proceedings. <u>See</u> N.Y. Civil Rights Law § 74. This statute "confers an absolute immunity, regardless of proof of malice or negligence, upon any person who publishes a 'fair and true report' of a judicial [proceeding]." <u>Wexler v. Allegion (UK) Ltd</u>., 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019). This statutory privilege has been held to apply to out-of-court statements published in press releases (<u>see</u> <u>Long v. Marubeni Am. Corp</u>., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005)), and also "includes statements published not only by the media, but also by parties or their counsel." <u>Long v. Marubeni Am. Corp</u>., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005).

In order for a report to be considered fair and true, "it is enough that the substance of the [statement] be [a] substantially accurate" description of the allegations in a complaint. <u>See</u> <u>Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co</u>., 424 N.Y.S.2d 165, 167 (N.Y. 1979). For example, "[c]omments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within section 74's privilege." <u>see</u> <u>also</u> <u>Lacher</u>, <u>supra</u> (same).

Moreover, "expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation". <u>See</u> <u>Davis v. Boeheim</u>, 24 N.Y.3d 262, 269 (N.Y. 2014).

Against this backdrop, and as noted above, Black loosely references[6] the following three supposed statements in support of his claim that Wigdor[7] defamed Black in the press:

 (i)  Statements from Ms. Christensen supposedly "branding" Black as a "sexual predator", "inviting prosecutors to go after him", and a comment invoking the #MeToo movement;

---

[6] Black does not identify when any of the statements were made, and -- other than the second group of statements which only generally identifies Forbes magazine -- also does not indicate to whom the statements supposedly were made.

[7] All of the other statements cited by Black in support of his baseless defamation claims were purportedly made by Ms. Ganieva, not Wigdor. <u>See</u> Complaint, at ¶ 122.

(ii)     Ms. Christensen's statement to Forbes "accusing Black of 'heinous conduct' and of 'intimidating' Ganieva'"; and

(iii)    Allegations that Black raped a Jane Doe 20 years ago.

<u>See</u> Docket No. 46, ¶ 144.

As an initial matter, Black does not sufficiently identify when the first and third of these communications were made nor to whom they were made, and this by itself warrants dismissal of the defamation claim to the extent it is predicated on these "statements". <u>See</u> <u>Sparrow Fund Mgmt. LP v. Mimedx Grp., Inc.</u>, 2020 U.S. Dist. LEXIS 49813 at *19  (S.D.N.Y. 2020)(defamation claim is only sufficient if it adequately identifies the purported communication, and indicates who made the communication, when it was made, and to whom it was communicated)(internal quotations and citations omitted).

While Black's Amended Complaint does not provide sufficient information regarding the provenance of these alleged statements, it does appear as if some of them may have been taken from the Wigdor website, where Ms. Christensen made the following statement:

> This case [<u>e.g.</u>, Ms. Ganieva's State Court Action] is the epitome of why #MeToo exists.  In textbook fashion, men with wealth, power and an army of elite lawyers continue to escape accountability for their heinous acts by twisting the legal system to penalize their victims for speaking up.  Sadly, until prosecutors consistently go after sexual predators that wrongly accuse sexual assault victims of extortion, it is clear that *#MeToo* has many miles to go.

<u>See</u>, https://www.wigdorlaw.com/leon-black-sexual-violence-defamation-lawsuit-guzel-ganieva/

If, in fact, Black's defamation claim is based on these statements on the Wigdor website, his Amended Complaint mischaracterizes the statements. The comments make no reference to Black, and amount to nothing but Ms. Christensen's general opinion on the #MeToo movement and the criminal justice system.

Moreover, courts have held that statements that appear on private law firm websites, as is the case here, commenting on matters of public concern are comparable to a newspaper's Op Ed section, and therefore the "common expectation" is that the comments published "will represent the viewpoints of their authors, and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion". See Wexler v. Dorsey & Whitney, LLP, 2019 WL 5485265 at *8 (E.D.N.Y. 2019), aff'd, 815 F. App'x 618 (2d Cir. 2020).

In any case, to the extent that this statement can even be interpreted as Ms. Christensen "branding" Black a "sexual predator", it would simply amount to a summary of facts detailed in Ms. Ganieva's lawsuit, where Ms. Ganieva accuses Black of sexually assaulting and raping her. As a result, it is protected under Section 74 of the New York Civil Rights Law, and is also non-actionable opinion. See Amodei v. N.Y. State Chiropractic Ass'n, 160 A.D.2d 279, 281 (N.Y. A.D. 1st Dep't 1990) (accusation that chiropractor engaged in "unprofessional conduct" was opinion as it described the nature of complaints lodged against him), aff'd, 77 N.Y.2d 890 (1991); Hollander v. Cayton, 145 A.D.2d 605, 606 (N.Y. A.D. 2d Dep't 1988) (statements that employee was "immoral" and "unethical" were non-actionable opinion as they were too "indefinite, ambiguous and incapable of being objectively characterized as true or false"); Varughese v. Mount Sinai Med. Ctr., 2015 WL 1499618 (S.D.N.Y. 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017)(holding that statements that a plaintiffs' work was "unsatisfactory", "unprofessional" and "substandard" were non-actionable opinion).

What is more, none of the comments included in Ms. Christensen's statement on the Wigdor website implies that Ms. Christensen's opinion is based on facts known only her. To the contrary, to the extent that these statements can be read to apply to Black in the first instance, they are based on the allegations made against Black in a publicly-filed lawsuit. In this setting, courts have repeatedly

held that a statement criticizing individuals constitutes pure opinion when it is based on publicly disclosed facts -- as is the case here. See Johnson v. Riverhead Cent. Sch. Dist., 2018 WL 4344957 at *12 (E.D.N.Y. 2018) (commenting that a person presented a threat to "safety and security" was non-actionable opinion as it was a conclusion based on publicly disclosed facts); Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist, 178 F. Supp. 3d 118, 158 (S.D.N.Y. 2016) ("A statement of 'pure opinion' is one which is either 'accompanied by a recitation of the facts upon which it is based' or 'does not imply that it is based upon undisclosed facts.'")

It appears as though the second of Ms. Christensen's statements referenced by Black -- "accusing Black of heinous conduct" -- comes from an online Forbes article dated July 19, 2021, which is annexed as Exhibit "3" to the Gershenoff Decl. In this statement to Forbes, Ms. Christensen purportedly stated that "Black's counter-claims are an obvious effort at intimidating Ms. Ganieva who will continue to aggressively litigate her claims and hold Black accountable for his heinous conduct".

As with Ms. Christensen's first group of statements, the comment that Black's counterclaims are meant to "intimidate" Ms. Ganieva is Ms. Christensen's opinion on the matter and is not actionable under New York law.[8]

Likewise, Ms. Christensen's comment that the actions Ms. Ganieva accuses Black of in the State Court Action are "heinous" is also an opinion, and is also otherwise subject to protection under Section 74 as it is merely a way of summarizing Black's actions. See Tasso v. Platinum Guild Int'l, 1998 WL 841489, at *5 (S.D.N.Y 1998) (finding statements that plaintiff was "unethical, untrustworthy, unprofessional" and "incompetent" to be non-actionable opinion).

---

[8] Indeed, Ms. Ganieva amended her complaint in the State Court Action to allege that Black's counterclaims constituted an independent act of retaliation.

Finally, it is entirely unclear from Black's Amended Complaint when, where, or to whom the allegation that "Black raped a Jane Doe twenty years ago" was made -- which by itself warrants dismissal of this allegation of defamation. See Sparrow Fund Mgmt. LP, Inc, supra. [9] However, to the extent Black is referring to the allegation made in Ms. Ganieva's second amended complaint in the State Court Action, where it is alleged that Black raped a Jane Doe around December 2001, this allegation is protected by the New York litigation privilege. See State Court Action second amended complaint at ¶¶ 60-85, annexed as Exhibit "4" to the Gershenoff Decl.

A very recent decision from the New York Appellate Division, Weeden v. Lukezic, 2022 N.Y. A.D. LEXIS 24 (N.Y. A.D. 1st Dep't 2022), illustrates these principles, is on-point, and demonstrates why Black's contrived and retaliatory "defamation" claims against his adversary's counsel must be dismissed. In Weeden, the plaintiff had previously sued her former employer, alleging -- in substance -- that he sexually harassed her and abused her during a business trip, and then fired her when she reported the incident to the police. Id. at * 1. Then, the employer filed his own lawsuit, alleging that his former employee was a prostitute, was under investigation by the financial authorities, and -- for the purposes of extortion -- had fabricated criminal and embarrassing allegations against him to the police, leading to his arrest and to the publication of those false allegations in the media. Id. at * 2 - * 3.

Then, the former employee filed another lawsuit against her former employer, and his attorneys, alleging that the prostitution, extortion, and other allegations in the preceding lawsuit were defamatory, and that the lawyers had initiated the lawsuit "solely for purposes of harassment,

---

[9] Considering this allegation is included in a paragraph specifically devoted to allegations regarding statements purportedly made to the press, it follows that Black appears to be alleging that someone at Wigdor offered this statement to the press at some point in time. However, it is impossible to discern from Black's Amended Complaint, when, to whom, and via what medium, this statement was purportedly made.

intimidation, and disparagement." <u>Weeden</u>, at * 3 - * 4. In addition, the former employee alleged that the lawyers for her former employer had disseminated the prostitution, extortion, and other allegations to the media. <u>Id.</u> at * 4 - * 5.

The lawyers moved to dismiss, arguing that even if their client made false allegations against his former employee, "no claim could validly be asserted against them based merely on their including such allegations in the … complaint or in their responding to press inquiries about that complaint. Defendant attorneys contended that under the common law absolute privilege, they were absolutely immune from liability for statements pertinent to judicial proceedings, and that their fair reporting of that judicial proceeding to the press was protected by Civil Rights Law § 74." <u>Weeden</u>, at * 5.

In opposition to the lawyers' motion to dismiss, the former employee contended "that her complaint sufficiently asserted the claims against defendant attorneys, despite their claims of privilege, based on her allegations that defendant attorneys had filed a 'sham action' containing false and irrelevant defamatory statements for the purpose of having those statements published in the media to injure her, and acted … to announce in the press the imminent filing of the sham action, and that by sufficiently pleading the sham action exception, the litigation and fair report privileges did not apply." <u>Id.</u> at * 6.

The trial court granted the attorneys' motion to dismiss and, on appeal, the Appellate Division affirmed, holding that the former employee's "sham litigation" claims were conclusory; that preparing and filing the complaint, and advising a reporter that it had been filed, were "merely the providing of information which could be obtained by any individual perusing the NYSCEF system"; and that "defendant attorneys are protected by Civil Rights Law § 74, which protects the

immunity of a litigant's attorney", "even assuming the truth of plaintiff's allegations". <u>Weeden</u>, at *7 - * 9.

All of this is true in the present case, as well. Accordingly, Wigdor respectfully submits that Black's retaliatory and defective "defamation" claims against his adversary's attorneys should be dismissed.

**III.   <u>Black's Defamation Claim is Barred by the Noerr-Pennington Doctrine</u>**

Relatedly, Black's defamation <u>per se</u> claim against Wigdor is barred by the <u>Noerr-Pennington</u> doctrine, inasmuch as it is clearly – and solely – based on Wigdor's representation of Ms. Ganieva in connection with the State Court Action. Under the <u>Noerr-Pennington</u> doctrine, federal courts recognize that, generally, claims stemming from a party's petition to the government are immune from liability.  <u>See</u>, <u>e.g.</u>, <u>Tuosto v. Philip Morris USA Inc.</u>, 2007 U.S. Dist. LEXIS 61669, *15 (S.D.N.Y. 2007); <u>Matsushita Electronics Corp. v. Loral Corp.</u>, 974 F. Supp. 345, 359 (S.D.N.Y. 1997). Petitioning activity includes complaints filed in civil actions. <u>See</u>, <u>e.g.</u>, <u>Ginx, Inc. v. Soho Alliance</u>, 2010 U.S. Dist. LEXIS 64313, *55-57 (S.D.N.Y. 2010).

Moreover, the Noerr-Pennington doctrine is applicable to immunize the attorneys of the petitioning party as their agents. <u>See</u> <u>Freeman v. Lasky, Haas & Cohler</u>, 410 F.3d 1180, 1186 (9th Cir. 2005) (explaining that if the protection applies to the petitioning party, as principal, it must extend to the petitioning party's attorneys, as agents).

Though there is a "sham litigation" exception to the <u>Noerr-Pennington</u> doctrine, the burden is on the plaintiff to allege facts showing the applicability of the sham exception. <u>See</u>, <u>e.g.</u>, <u>Primetime 24 Joint Venture v. National Broadcasting Company</u>, 219 F.3d 92, 100-101 (2d Cir. 2000). The burden to demonstrate sham litigation is a heavy one. As discussed above, however, Black alleges no facts (as opposed to conclusions) to plausibly suggest that Ms. Ganieva's State Court Action is

objectively baseless, that Wigdor had any reason to believe it was objectively baseless, or that the lawsuit was intended to cause harm to Black through the use of the governmental process, as opposed to the outcome of that process, as required to establish the sham litigation exception. Accordingly, Black's defamation per se claim against Wigdor -- which hinges entirely on Wigdor's representation of Ms. Ganieva in the State Court Action -- must be dismissed as Wigdor is immune from the claims under the Noerr-Pennington doctrine.

## IV.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Black's Defamation Claim

In any event, the only alleged grounds for federal jurisdiction in this action are Black's factually and legally baseless civil RICO claims asserted against Ms. Ganieva, Mr. Harris, and Mr. Rubenstein – allegations which should be dismissed for the reasons set forth in their respective motions to dismiss. Therefore, if the Court proceeds to dismiss the civil RICO claims against Ms. Ganieva, Mr. Harris, and Mr. Rubenstein, then the Court should decline to exercise supplemental jurisdiction over Black's state law claims, including his defamation per se claim against Wigdor. See Pelt v. City of N.Y., 2013 U.S. Dist. LEXIS 122848 at * 67 (E.D.N.Y. 2013)("A federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's early stages")(internal citations omitted).[10]

Even if the Court does not dismiss those RICO claims, it still should not exercise supplemental jurisdiction over the defamation claim against Wigdor, considering that the defamation claim against Wigdor does not share a common nucleus of operative fact with the RICO claims

---

[10] Had Black brought the same defamation claim in New York state court by way of counterclaim in the State Court Action, or in a plenary action, it would be subject to dismissal with costs and attorney's fees pursuant to the New York Anti-SLAPP statute, N.Y. Civil Rights Law §70-a.

against Ms. Ganieva, Mr. Harris, and Mr. Rubenstein. See, e.g., Oladokun v. Ryan, 2011 U.S. Dist. LEXIS 109638 at * 30-* 31 (S.D.N.Y. 2011).

## V.   In the Alternative, the Court Can Abstain Under the Colorado River Doctrine

As detailed above, Black's contrived and defective defamation claim should be dismissed. In the alternative, the Court has discretion to abstain from exercising jurisdiction over this purely vexatious and reactive action pursuant to the abstention doctrine set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 817 (1976) and its progeny. In the State Court Action, Black previously alleged the same facts as here against Ms. Ganieva, only to withdraw his counterclaims after she filed a motion to dismiss. See Gershenoff Decl., Exhibit "2".  Black then converted his prior counterclaims into hollow RICO and defamation claims simply by adding Wigdor LLP, Harris, and Rubenstein as defendants. See Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, 2021 U.S. Dist. LEXIS 126819 (S.D.N.Y. 2021) (holding that Colorado River abstention applied where a party "dresse[d] up [a] case under the moniker of RICO" when the actual objective was to interfere with a state court proceeding).

In short, this case is clearly parallel to Ms. Ganieva's first-filed State Court Action, and the factors courts consider in connection with Colorado River abstention would support abstention here. For instance, dismissal of this action would avoid piecemeal litigation; Ms. Ganieva filed her State Court Action first, and it has proceeded into the discovery phase, whereas this case is in its infancy; state law provides most of the rules of decision, and -- but for Black's contrived and meritless "RICO" claims -- would provide all of the rules of decision; and Black's rights can be adequately protected in state court, considering that New York courts are obviously familiar with Black's defamation and contract claims, and have concurrent jurisdiction over Black's baseless RICO claims.

## <u>CONCLUSION</u>

For the reasons set forth herein, Wigdor LLP's motion to dismiss should be granted, and Black's improper and retaliatory claims against Wigdor should be dismissed with prejudice, together with such other and further relief as the Court deems proper.

Dated: Uniondale, New York
     March 4, 2022

Respectfully submitted,

RIVKIN RADLER LLP
Attorneys for Wigdor LLP
/s/ Max Gershenoff    /s/ Janice DiGennaro
Max Gershenoff     Janice J. DiGennaro
Yonatan Bernstein
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000