**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEON D. BLACK,

                        Plaintiff,

      v.

GUZEL GANIEVA, WIGDOR LLP,
JOSH HARRIS, and STEVEN RUBENSTEIN,

                      Defendants.

Case No.: 21-cv-8824 (PAE)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT STEVEN RUBENSTEIN'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD ............................................................................................. 4

ARGUMENT .......................................................................................................... 4

    I.   Black's Civil RICO Claims Against Rubenstein Should Be Dismissed .................... 4

        A.   Black Cannot Plead A RICO Enterprise ................................................. 5

        B.   Black Cannot Plead Rubenstein Conducted The Affairs Of Any
            Enterprise ................................................................................................. 7

        C.   Black Cannot Plead Rubenstein Engaged In Any Racketeering Activity ......... 9

        D.   Black Cannot Plead A Pattern Of Racketeering Activity ............................... 13

        E.   Black Cannot Plead Cognizable Injury .......................................... 16

        F.   Black Cannot Plead Rubenstein Participated In Any RICO Conspiracy ........ 17

    II.   Black's Defamation Claim Against Rubenstein Should Be Dismissed .................... 17

        A.   Black Cannot Plead Rubenstein Made Any Non-Privileged
            Publications ............................................................................................. 18

        B.   Black's Other Stray Allegations Fail To State A Claim ................................. 20

        C.   Black Cannot Plead Rubenstein Acted With Actual Malice ........................... 21

        D.   Alternatively, The Court Should Decline To Exercise Supplemental
            Jurisdiction ............................................................................................. 22

    III.   Black's Claims Should Be Dismissed With Prejudice ............................................. 23

CONCLUSION ..................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................4

*Bangl. Bank v. Rizal Com. Banking Corp.*,
  No. 19 Civ. 983, 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020) ...............................5

*Barberan v. Nationpoint*,
  706 F. Supp. 2d 408 (S.D.N.Y. 2010).......................................................................7

*Boyle v. United States*,
  556 U.S. 938 (2009)...................................................................................................5

*Brady v. IGS Realty Co. L.P.*,
  No. 19 Civ. 10142, 2020 WL 5414683 (S.D.N.Y. Sept. 8, 2020).........................23

*Cajero Torres v. Sushi Sushi Holdings Inc.*,
  No. 19 Civ. 2532, 2021 WL 2158017 (S.D.N.Y. May 27, 2021).........................23

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) .........................................................8, 11, 12

*Daniel v. City of New York*,
  No. 20 CIV. 11028, 2021 WL 5988305 (S.D.N.Y. Dec. 16, 2021).......................23

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019).......................................................................9

*Entretelas Americanas S.A. v. Soler*,
  No. 19 Civ. 3658, 2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020), *aff'd*, 840 F.
  App'x 601 (2d Cir. 2020)..........................................................................................11

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)....................................................................................5, 6

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994).......................................................................................16

*Ganieva v. Black*,
  Index No. 155262/2021 (N.Y. Sup. Ct. filed June 1, 2021) .............................1, 3, 8

*Grace Int'l Assembly of God v. Festa*,
  797 F. App'x 603 (2d Cir. 2019) .........................................................................13, 14

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)............................................................................................13

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)............................................................................................22

*Hinterberger v. Cath. Health Sys., Inc.*,
   536 F. App'x 14 (2d Cir. 2013) ...........................................................................5

*Hoatson v. New York Archdiocese*,
   No. 05 Civ. 10467, 2007 WL 431098 (S.D.N.Y. 2007), *aff'd*, 280 F. App'x 88
   (2d Cir. 2008)......................................................................................................6

*Houston v. N.Y. Post Co.*,
   No. 93 CIV. 4408, 1997 WL 10034 (S.D.N.Y. Jan. 10, 1997)............................17

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)..................................................................7

*Jimenez v. United Fed'n of Tchrs.*,
   657 N.Y.S.2d 672 (App. Div. 1997)....................................................................22

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
   No. 14-CV-3318, 2015 WL 2400182 (S.D.N.Y. May 20, 2015), *aff'd*, 640 F.
   App'x 56 (2d Cir. 2016).......................................................................................12

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)....................4

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018)..................................................................................10

*Long v. Marubeni Am. Corp.*,
   406 F. Supp. 2d 285 (S.D.N.Y. 2005)..................................................................19

*Mikhlin v. HSBC*,
   No. 08-CV-1302, 2009 WL 485667 (E.D.N.Y. Feb. 26, 2009) .............................6

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................................................22

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   No. 19-CV-1861, 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021)............................17

*Rajaratnam v. Motley Rice, LLC*,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) ...........................................................4, 11, 12

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017) .................................................................................................14

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ...........................................................................................................7

*Ritchie v. N. Leasing Sys., Inc.*,
    No. 12-CV-4992, 2016 WL 1241531 (S.D.N.Y. Mar. 28, 2016), *aff'd*, 701 F.
    App'x 45 (2d Cir. 2017) ....................................................................................................10

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007) ..............................................................................17

*Sehgal v. Aggarwal*,
    No. 20-CV-4577, 2021 WL 3617479 (E.D.N.Y. Aug. 16, 2021) .........................................13

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
    No. 18 Civ. 4921, 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020) .........................................18

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) .........................................................................................13, 14

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) .........................................................................................................22

*Starr v. Sony BMG Music Ent.*,
    592 F.3d 314 (2d Cir. 2010) ..............................................................................................4

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017) ............................................................................................21

*Tech. in P'ship, Inc. v. Rudin*,
    No. 10 Civ. 8076, 2011 WL 4575237 (S.D.N.Y. Oct. 4, 2011) ...........................................7

*United States v. Kirsch*,
    903 F.3d 213 (2d Cir. 2018) ............................................................................................10

*United States v. Turkette*,
    452 U.S. 576 (1981) ...........................................................................................................5

*United States v. Yanotti*,
    541 F.3d 112 (2d Cir. 2008) ...............................................................................................5

*Vasquez v. H.K. & Shanghai Banking Corp. Ltd.*,
    No. 18 Civ. 1876, 2019 WL 2327810 (S.D.N.Y. May 30, 2019) .....................................8, 23

*Wexler v. Allegion (UK) Ltd.*,
    374 F. Supp. 3d 302 (S.D.N.Y. 2019) ..............................................................................18

*Zhu v. First Atl. Bank,*
    No. 05 Civ. 96, 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) ................................................7

## **Statutes**

18 U.S.C. § 1341 ..................................................................................................................9

18 U.S.C. § 1343 ..................................................................................................................9

18 U.S.C. § 1951 ..................................................................................................................9

18 U.S.C. § 1962 ........................................................................................................ *passim*

N.Y. Civ. Rights Law § 74 .................................................................................................18

N.Y. Civ. Rights Law §76-a ..............................................................................................22

## **Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................11

## INTRODUCTION

The amended complaint is a study in sound and fury signifying nothing. Behind the hyperbolic rhetoric, the threadbare allegations do not come close to stating viable civil RICO or defamation claims.

This is especially true with respect to the claims Leon Black asserts against Steven Rubenstein for civil RICO violations, 18 U.S.C. § 1962(c) (Count I), civil RICO conspiracy, 18 U.S.C. § 1962(d) (Count II), and defamation *per se* (Count III). The gist of Black's allegations is that Rubenstein was paid by Josh Harris to provide public-relations services in support of (a) an attempted coup by Harris to replace Black as the head of Apollo, and (b) alleged extortion efforts by Guzel Ganieva, who has accused Black of sexually abusing her for years. *See generally* Amended Complaint ("AC"), Dkt. 46, ¶¶ 4, 8, 28, 63. The few specific allegations Black makes against Rubenstein in connection with this twisted plot, however, cannot give rise to liability, even were they true. (They are not.)

Rubenstein is mentioned only a handful of times in Black's roving nearly 60-page amended complaint, in allegations made almost exclusively on information and belief. In fact, the full extent of the supposed racketeering activity by Rubenstein is that he (a) disseminated complaints that Ganieva filed against Black in New York state court, *Ganieva v. Black*, Index No. 155262/2021 (N.Y. Sup. Ct. filed June 1, 2021), "to members of the media in an effort to publicize those allegations" and (b) told "the press that the Manhattan District Attorney's Office had opened a criminal investigation into Mr. Black," all allegedly in exchange for payment from Harris. AC, Dkt. 46, ¶¶ 114, 117(d), 118(d).

These allegations against Rubenstein are deficient on every element of civil RICO and come nowhere close to stating viable claims. Among other things:

- Black cannot plead a cognizable RICO *enterprise*, given that he can allege no connection among its supposed members beyond his own allegations of a scheme against him;

- Black cannot plead that Rubenstein *directed* the affairs of the supposed enterprise;

- Black cannot plead that the supposed enterprise engaged in any *pattern* of criminal conduct or poses any threat of continuing criminal activity;

- Black cannot plead that Rubenstein engaged in any *racketeering activity* at all, as the alleged actions (even if true) do not remotely approach criminal conduct; and

- Black cannot plead he suffered *injury* other than generalized reputational harm, which is not cognizable under RICO.

At bottom, Black alleges in conclusory fashion that Rubenstein participated in spreading supposedly false information about Black. Black's defamation claim is premised on essentially the same allegations of Rubenstein disseminating information about Ganieva's state-court litigation against Black. *Id.* ¶¶ 135-146. Courts routinely reject plaintiffs' attempts at what Black tries to pull off here: transmuting state-law defamation allegations into a federal RICO claim.

Black's attempt at alchemy is doubly flawed because even his defamation allegations fail to state a claim. Black fails to plead when Rubenstein made any alleged false statements or to whom, other than vague generalities about disseminating Ganieva's litigation filings to the press. But even if that happened—which it did not—such activities are privileged reports of official judicial proceedings under applicable New York law. If all that were not enough, Black also fails to allege any facts that plausibly suggest Rubenstein acted in reckless disregard of the truth.

The inadequacy of Black's pleading is especially striking given that this is his second go-round. In his original complaint, Black named Wigdor LLP (Ganieva's attorneys in state court) as "a willing and critical participant" in a supposed "racketeering scheme," alongside Ganieva, an unnamed "Funder," and unnamed "Flacks." Complaint, Dkt. 1, ¶¶ 10, 92. Black also sued Wigdor for defamation. *Id.* ¶ 113. Wigdor moved to dismiss, highlighting among myriad flaws the utter

lack of factual detail concerning the supposed "Funder" or "Flacks." *E.g.*, Defendant Wigdor LLP's Memorandum of Law in Support of its Motion to Dismiss ("Wigdor Motion to Dismiss"), Dkt. 43, at 2, 5-6, 9-10, 12-13, 23.[1] In response, Black filed his amended complaint, alleging a re-imagined conspiracy in which Wigdor was no longer a part, much less a "critical participant," although Black still accuses Wigdor of defamation. Harris and Rubenstein have been added as defendants, and two PR firms—BerlinRosen and Finsbury Glover Hering—have now assumed the title of "Flacks." *See* AC, Dkt. 46, ¶¶ 4, 27-28, 44. While Black has now named names, the allegations of the amended complaint remain woefully inadequate. Black does not deserve a third try.

Make no mistake: Rubenstein has never spoken, met, or corresponded with Ms. Ganieva or her representatives. Rubenstein has never publicized her allegations. Contrary to Black's allegations, Rubenstein never disseminated Ganieva's litigation filings to the press; never was involved in arranging an interview for her; and never told the press that Black was being investigated by the Manhattan District Attorney. *Id.* ¶¶ 114(a)-(b), 135. Rubenstein also never colluded with Harris to launch a coup against Black, and Harris never asked Rubenstein to assist Ganieva in any way. *Id.* ¶¶ 4, 114(c). Rubenstein and his firm have never represented, worked for, or worked on behalf of Ganieva in any capacity, directly or indirectly, formally or informally. And it is simply untrue that Rubenstein has refused "even just to search for phone records for calls with Ms. Ganieva." *Id.* ¶ 17. To the contrary, Rubenstein has informed Black that no such records exist. *Ganieva v. Black*, Index No. 155262/2021, Dkt. 137, at 1-2, 5; *id.*, Dkt. 120, at 5-7; *id.* Dkt. 116.

Nevertheless, whether for purposes of distraction or from the depths of desperation, Black chose to name Rubenstein as a defendant in this suit, on the thinnest of allegations, none of which

---

[1] The cited page numbers refer to the native pagination within the document, not the additional pagination applied by the ECF system.

state facts with respect to Rubenstein that plausibly amount to violations of civil RICO or defamation. Black's claims against Rubenstein should be dismissed with prejudice.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal alteration omitted). "Given the powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO due to the allure of treble damages, attorney's fees, and federal jurisdiction, courts must scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020) (internal quotations and citation omitted); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." (internal quotations and citations omitted)).

## ARGUMENT

### I.    Black's Civil RICO Claims Against Rubenstein Should Be Dismissed

To state a claim under civil RICO, 18 U.S.C. § 1962(c), Black must allege (1) that Rubenstein (2) through the commission of two or more acts (3) constituting a "pattern" (4) of

"racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Hinterberger v. Cath. Health Sys., Inc.*, 536 F. App'x 14, 16 (2d Cir. 2013). To state a RICO conspiracy claim, 18 U.S.C. § 1962(d), Black must allege Rubenstein "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." *United States v. Yanotti*, 541 F.3d 112, 121 (2d Cir. 2008). Black's amended complaint is deficient on every front.

### A.    Black Cannot Plead A RICO Enterprise

This case could begin and end with Black's inability to plead any cognizable RICO "enterprise." The only connection among the members of the supposed enterprise is that they allegedly contributed to the scheme against Black. Under black-letter law in this Circuit, that is insufficient. Black's vague and conclusory allegations about the structure and purpose of any enterprise, moreover, do not even begin to pass muster.

To establish a RICO "enterprise," a plaintiff must show "an ongoing organization, formal or informal," in which the "various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 945 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The "enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. And it must exist "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

Black's amended complaint is deficient in every respect. *First*, and foremost, Black fails to allege that the alleged enterprise exists "separate from" the alleged racketeering acts. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004); *Bangl. Bank v. Rizal Com. Banking Corp.*, No. 19 Civ. 983, 2020 WL 1322275, at *8 (S.D.N.Y. Mar. 20, 2020) (describing the "explicit directive that allegations of illegal conduct separate from the racketeering

acts are a requirement in this Circuit" (internal quotations and citation omitted)); *Mikhlin v. HSBC*, No. 08-CV-1302, 2009 WL 485667, at *3 (E.D.N.Y. Feb. 26, 2009) ("If the sole purpose of the alleged enterprise is to perpetuate the alleged fraud, there can be no enterprise for RICO purposes." (citation omitted)). The amended complaint includes no allegations about the defendants' association with each other other than their supposed "cancellation campaign" against Black. AC, Dkt. 46, ¶ 18. Because Black has merely "grouped together" the defendants "for the sole reason that they all allegedly had a hand" in the alleged scheme to cancel him, Black fails to plead a cognizable RICO "enterprise." *See Hoatson v. New York Archdiocese*, No. 05 Civ. 10467, 2007 WL 431098, at *3 (S.D.N.Y. 2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008).

*Second*, the amended complaint includes only the vaguest allegations of the structure of any enterprise. Black fails to plead specific facts about the supposed interrelationships among the members of the supposed enterprise, and does not and cannot allege that Rubenstein had any association with Ganieva at all. The closest it comes is describing Harris as having a "war cabinet," AC, Dkt. 46, ¶ 4, and an "unholy alliance" with Ganieva, *id*. ¶ 8, whatever that means. There is nothing close to the "solid information" regarding the "hierarchy" and "organization" required to plead an "association-in-fact enterprise." *First Cap.*, 385 F.3d at 174 (citation omitted).

*Third*, Black fails to plausibly allege any coherent common purpose. Black alleges that Harris and his supposed "war cabinet" acted with the purpose of "destroy[ing] Mr. Black" so that Harris could "salvage one last chance at the promotion he had always wanted but never received." AC, Dkt. 46, ¶ 4. There is no allegation that Ganieva shared any purpose to promote Harris's career at Apollo. Rather, Black alleges that Ganieva's purpose was to obtain money from Black—*i.e.*, that she extorted Black for years by "threatening to distort and disclose their relationship." *Id.* ¶ 2.[2]

---

[2] Of course, neither of these purposes makes sense to begin with. Black recognizes that any ability Ganieva had to "extort" Black ended when she made her accusations public in March 2021. AC, Dkt. 46, ¶ 2 (calling Ganieva's public

Black does not allege that any other alleged member of the enterprise acted with the purpose of obtaining money from Black.

### B.    Black Cannot Plead Rubenstein Conducted The Affairs Of Any Enterprise

Black also does not and cannot allege that Rubenstein "conducted or participated" in the affairs of any RICO enterprise, which requires pleading facts that, if true, would establish that Rubenstein "participated in the operation or management of the enterprise itself" and had "some part in directing" its affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 177-185 (1993).

The "operation and management" test is a "very difficult test to satisfy," particularly in claims against service professionals like Rubenstein. *Zhu v. First Atl. Bank*, No. 05 Civ. 96, 2005 WL 2757536, at *5 (S.D.N.Y. Oct. 25, 2005) (citation omitted). Because providing "professional services" does "not require taking part in the direction of the enterprise's affairs," the provision of such services "in itself is insufficient to meet RICO's participation requirement." *Tech. in P'ship, Inc. v. Rudin*, No. 10 Civ. 8076, 2011 WL 4575237, at *4 (S.D.N.Y. Oct. 4, 2011); *id.* ([T]he plaintiff cannot simply allege that certain entities provided services which were helpful to an enterprise; the complaint must allege that those entities exerted any control over the enterprise." (citation omitted)).

Black does not and cannot plead that Rubenstein "directed" or "controlled" anything about the enterprise. Just the opposite, the amended complaint alleges that Rubenstein "worked under Mr. Harris's direction." AC, Dkt. 46, ¶ 4. And given that Black cannot even muster factual

---

revelations "economically irrational and inexplicable"). And Black recognizes that his successor at Apollo had already been named before Harris embarked on his supposed scheme to take Black down. *Id.* ¶ 4. The internally contradictory nature of Black's allegations alone is sufficient reason not to credit them. *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010) ("[A]lthough the Court accepts Plaintiffs' factual allegations as true, the Court is not required to accept as true pleadings that are directly contradicted by other factual statements . . . ."); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself . . . .").

allegations plausibly suggesting that Harris directed any racketeering activity, the amended complaint doubly fails to allege any direction of a RICO enterprise on Rubenstein's part. While pleading the "conduct" element should be a "low hurdle" in any remotely viable civil RICO claim, Black cannot even allege that Rubenstein "played *some* part in directing the enterprise's affairs." *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) (internal quotations and citation omitted).

In fact, the only two acts of racketeering activity specifically charged against Rubenstein involve his allegedly (a) disseminating Ganieva's complaints to the press, and (b) telling the press that Black was under investigation by the Manhattan DA, in exchange for payment from Harris. AC, Dkt. 46, ¶¶ 114, 117(d), 118(d). Even taking those allegations as true (which they are not), they amount to an allegation that Harris paid Rubenstein to engage in the most ministerial of public-relations tasks: providing already-public information to the press. *See Ganieva v. Black*, Index No. 155262/2021, Dkt. 1 (Complaint), 26 (Amended Complaint), 47 (Proposed Second Amended Complaint); AC, Dkt. 46, ¶ 99 (alleging in Black's own amended complaint that it is "understood that the Manhattan District Attorney as a matter of policy is obligated to examine every complaint of sex abuse").[3]

Those allegations—of workaday PR services allegedly conducted at Harris's direction—amount to nothing even remotely close to Rubenstein's "direction" or "control" of any racketeering enterprise on Rubenstein's part. At most, Black alleges that Rubenstein provided a discrete set of professional services that ultimately might have benefited the alleged enterprise. That is insufficient to state a claim. *See Vasquez v. H.K. & Shanghai Banking Corp. Ltd.*, No. 18 Civ.

---

[3] Rubenstein's alleged participation in already-public petitioning activity also immunizes any such conduct under the *Noerr-Pennington* doctrine, as argued by Wigdor in its motion to dismiss the original complaint. *See* Wigdor Motion to Dismiss, Dkt. 43, at 14-15.

1876, 2019 WL 2327810, at *14 (S.D.N.Y. May 30, 2019) ("Providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise. . . . Even provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise." (cleaned up) (citation omitted)); *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019) (noting the "operation and management test is an extremely rigorous test," and "it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise" nor to "simply provide goods and services that ultimately benefit the enterprise" (cleaned up) (citation omitted)).

### C.   Black Cannot Plead Rubenstein Engaged In Any Racketeering Activity

Next in the litany of the amended complaint's fatal flaws is that it does not allege Rubenstein engaged in any racketeering activity whatsoever.

As discussed above, there are only two acts of supposed racketeering activity alleged against Rubenstein: that he, at unspecified times, to unspecified persons, allegedly (a) disseminated Ganieva's complaints to the press, and (b) told the press that Black was under investigation by the Manhattan DA, in exchange for payment from Harris. AC, Dkt. 46, ¶¶ 114, 117(d), 118(d). As if those allegations weren't thin enough already, Black makes those allegations solely on information and belief. *Id.* And as if those allegations weren't vague enough already, they also indicate that some unspecified set of the so-called "Flacks" were involved in these same acts in some unspecified way. *Id.* Black is lightyears from adequately pleading that Rubenstein engaged in any predicate violations of the Hobbs Act, 18 U.S.C. § 1951, or the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, as alleged in the amended complaint. AC, Dkt. 46, ¶¶ 117(d), 118(d).

Privileged Litigation Activity. As an initial matter, the allegations concerning Rubenstein's alleged dissemination of Ganieva's complaints cannot constitute predicate acts of extortion, or

mail and wire fraud. Ganieva's litigation against Black cannot serve as a RICO predicate as a matter of law, no matter how baseless or frivolous Black says that litigation may be. *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) ("[W]here, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act."); *Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992, 2016 WL 1241531, at *13 (S.D.N.Y. Mar. 28, 2016), *aff'd*, 701 F. App'x 45 (2d Cir. 2017) ("The law is clear that litigation—even if frivolous or malicious—cannot constitute extortion."); *see also* Wigdor Motion to Dismiss, Dkt. 43, at 4-9. Rubenstein's alleged dissemination of Ganieva's complaints adds nothing to the public filing of those complaints on the docket, and likewise cannot constitute extortion or mail and wire fraud.

In any event, even without a categorical exemption for litigation activities as predicate acts, Black fails to plead Rubenstein engaged in any predicate Hobbs Act or mail and wire fraud violations.

No Hobbs Act Violation. Black has not pleaded Rubenstein engaged in any predicate violations of the Hobbs Act. The Hobbs Act prohibits extortion "that affects interstate commerce," with extortion defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." *United States v. Kirsch*, 903 F.3d 213, 221 (2d Cir. 2018) (citation and emphasis omitted).

To start, Black's allegations are so conclusory as to leave him unable to meet the interstate-commerce element. As best one can tell from the amended complaint, all of the alleged activity took place within New York. Rubenstein is a New York resident, AC, Dkt. 46, ¶ 28, and the amended complaint does not specify to whom Rubenstein allegedly disclosed information or whether those individuals were located anywhere other than New York. And the alleged

extortion—putting aside the myriad other flaws discussed below—appears to involve further payments from Black to Ganieva, both of whom are New York residents, *id.* ¶¶ 22, 25.

The amended complaint likewise fails to allege, other than in conclusory fashion, that Rubenstein obtained or attempted to obtain any property from Black. There is no allegation that Rubenstein ever requested any property from Black whatsoever, through threats or otherwise.

Nor does the amended complaint allege that Rubenstein threatened any force, violence, or fear. At most, the amended complaint alleges that Rubenstein helped spread falsehoods about Black, which courts have routinely found cannot amount to federal Hobbs Act extortion or civil RICO. *Entretelas Americanas S.A. v. Soler*, No. 19 Civ. 3658, 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020), *aff'd*, 840 F. App'x 601 (2d Cir. 2020) (finding an "absence of allegations of force, violence or fear" when the complaint alleged the defendant had made "false allegations" about the plaintiff); *Conte*, 703 F. Supp. 2d at 137 ("[P]laintiff's allegations that defendants threatened to defame him are insufficient for plaintiff's RICO claim.").

<u>No Mail or Wire Fraud</u>. Black also fails to plead the elements of mail and wire fraud against Rubenstein: "(1) a scheme to defraud[;] (2) money or property as the object of the scheme[;] and (3) use of the mails or wires to further the scheme." *Rajaratnam*, 449 F. Supp. 3d at 68 (citation omitted). As fraud-based predicates, wire fraud and mail fraud "must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b)"; the particularity requirement extends "to each defendant." *Id.* (citations omitted).

The amended complaint contains none of the particulars required to satisfy Rule 9(b). Aside from generically alleging Rubenstein helped disseminate false statements about Black, the complaint lacks any information about "when and where such statements were made"—which, in addition to lacking adequate particularity, again leaves Black unable to demonstrate any

connection to interstate commerce. *Jus Punjabi, LLC v. Get Punjabi Inc.*, No. 14-CV-3318, 2015 WL 2400182, at *5 (S.D.N.Y. May 20, 2015), *aff'd*, 640 F. App'x 56 (2d Cir. 2016).

Additionally, given that Rubenstein is lumped in indiscriminately with the other so-called "Flacks," the amended complaint fails to "identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme." *Conte*, 703 F. Supp. 2d at 137; *Rajaratnam*, 449 F. Supp. 3d at 68 (explaining that for "each defendant" a "complaint must specify the time, place, speaker, and content of the alleged misrepresentations" and "explain how the misrepresentations were fraudulent" (citation omitted)).

Black also fails to plead any "events which give rise to a strong inference" that Rubenstein had "intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Rajaratnam*, 449 F. Supp. 3d at 68 (citation omitted). The amended complaint does not even make clear who supposedly was being defrauded, let alone any intent to defraud them. While the amended complaint includes allegations about information that Black says discredits Ganieva's accusations against him, there are no allegations that Rubenstein was even aware of that information, knew of or understood its implications, or in any way acted in reckless disregard of such information. And, at minimum, there are no allegations of any facts that could provide a "strong inference" that Rubenstein acted with fraudulent intent simply by circulating already-public information about Ganieva.

At bottom, again, Black's trumped-up accusations that Rubenstein helped disseminate false information about him cannot be transmuted into a mail or wire fraud claim constituting a civil RICO predicate. *Rajaratnam*, 449 F. Supp. 3d at 73 ("Just as courts are loath to permit litigation activities to be shoehorned into civil RICO predicates, courts express similar reticence towards

12

attempts to recast defamatory statements as mail and wire fraud violations. The mere fact that a statement is negative or even defamatory . . . does not make it fraudulent." (internal quotations and citation omitted)).

### D.  Black Cannot Plead A Pattern Of Racketeering Activity

Even if Black could plead the required two predicate acts within the last ten years—which, as discussed, he cannot—Black cannot plead a "pattern" of racketeering activity.

<u>No Required Continuity</u>. Black cannot plead the "continuity" required to show a pattern of racketeering activity. A pattern requires that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

Given that Black alleges a narrow scheme to harm only him, he cannot establish the requisite closed- or open-ended continuity. *See Sehgal v. Aggarwal,* No. 20-CV-4577, 2021 WL 3617479, at *4 (E.D.N.Y. Aug. 16, 2021) ("Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." (cleaned up)); *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019) (stating that a scheme that, "[a]t bottom," has a "limited goal" of harming just a single victim or even a "few victims" does not satisfy the requirement of closed-ended continuity); *Spool*, 520 F.3d at 186 (2d Cir. 2008) (holding that an "inherently terminable" scheme does not pose threat of continued criminal activity, thereby precluding the plaintiff from alleging open-ended continuity).

All of the supposed racketeering activity in the amended complaint is directed at Black. Black alleges the enterprise extorted him. AC, Dkt. 46, ¶ 117. Black alleges the enterprise used the mails and wires to obtain money from him under fraudulent pretenses. *Id.* ¶ 118. The only ongoing conduct of the alleged enterprise that Black can conjure is Ganieva's prosecution of already-filed litigation against him. *Id.* ¶ 122. Black fails to plead any facts that permit the inference of any "threat of continued criminal activity." *Spool*, 520 F.3d at 185 (citation omitted).

In an apparent effort to cure his obvious pleading deficiency, Black adds that Apollo was another supposed "victim" of the enterprise. AC, Dkt. 46, ¶ 124. The mere addition of Apollo, however, does not solve the problem, as Black still at best identifies a scheme with only a "few victims," which remains insufficient. *Festa*, 797 F. App'x at 605. But, regardless, Black's allegations regarding Apollo come nowhere close to pleading "continuity" of a criminal enterprise. Black alleges no racketeering activity against Apollo. Black alleges no scheme or purpose to harm Apollo. The harm Apollo is alleged to have suffered is entirely derivative of the alleged scheme to harm Black. And Black at most alleges that the supposed racketeering activity caused Apollo "reputational harm," which is not even a cognizable RICO injury, as discussed further below. *See infra* Part I.E.[4]

<u>No Pattern or Threat of Continued Criminal Activity by Rubenstein</u>. Black's allegations of a "pattern" of racketeering activity by Rubenstein are especially thin and far from sufficient. The paragraphs specifying the predicate acts allegedly committed by Rubenstein—namely, alleged extortion and mail/wire fraud by virtue of disseminating Ganieva's litigation documents and telling

---

[4] Black also fails to plead closed-ended continuity given the limited duration of the alleged scheme. The racketeering activity alleged against all members of the supposed enterprise except Ganieva relate to or otherwise appear to post-date Ganieva's defamation suit against Black from June 2021. AC, Dkt. 46, ¶¶ 117(d), 118(d). Those alleged predicate acts, apparently dating back less than a year, fall well short of the requirements for closed-ended continuity. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) ("[T]his Circuit generally requires that the crimes extend over at least two years.").

the press about a Manhattan DA investigation, AC, Dkt. 46, ¶¶ 117(d), 118(d)—all implicate Rubenstein in a singular, narrow scheme to harm Black, such that those allegations cannot support "continuity." There are only two other portions of the amended complaint that go beyond generalities or conclusory statements to allege any facts about Rubenstein's conduct. Neither of them allege any racketeering activity at all, and regardless neither demonstrates any "pattern" of racketeering activity on the part of Rubenstein or a threat of any continuing criminal activity.

*First*, Black alleges, solely on information and belief, that "Mr. Rubenstein and his team planted a hit job story with the *New York Post* attacking" Siddhartha Mukherjee, a new Apollo board member. *Id.* ¶ 57. The allegations, however, provide no detail about Rubenstein's or his team's supposed involvement with the article or its contents. (Unsurprising, because they did not plant the story.) Nor does the amended complaint allege how the conduct was supposedly criminal or constituted racketeering, or even what specifically was false about the article. There is also no allegation that Mr. Mukherjee was harmed, but at most one could again infer only the non-cognizable RICO injury of reputational harm.[5] There are no factual allegations here to permit a plausible inference of a pattern of racketeering activity.

*Second*, Black alleges that "Mr. Rubenstein and the Flacks" were involved in "setting up an interview with the New York Post" and Ganieva. *Id.* ¶ 135. To start, the amended complaint fails to plausibly allege facts indicating that Rubenstein personally had any involvement in setting up the interview. The allegation lumps Rubenstein indiscriminately alongside the "Flacks," leaving no indication of which of them supposedly set up the interview. The only other facts about the interview alleged by Black are that Rubenstein's firm, Rubenstein Associates, was "particularly

---

[5] The amended complaint goes on to reference another supposedly defamatory article concerning another Apollo board member, Pamela Joyner, but does not include any allegation that Rubenstein was involved in that article in any way. AC, Dkt. 46, ¶ 58.

close to" Josh Kosman, the reporter with the New York Post with whom "[a]n interview was arranged" with Ms. Ganieva. *Id*. ¶ 66. Beyond that innuendo and conspicuous use of the passive voice, the amended complaint does not and cannot plead that Rubenstein himself was in any way involved in setting up the interview—not even on information and belief. (Because he was not; and neither, for that matter, was his firm.)

In any event, even if it were true, Rubenstein's allegedly facilitating an interview between Ganieva and the Post also supports no pattern of racketeering activity. Black does not and cannot explain how such conduct is anywhere close to criminal or constitutes the conduct of a RICO enterprise. There is no allegation that the interview was Rubenstein's idea, or that he knew what Ganieva would be asked or would say during the interview. There is no allegation that the interview could have caused any injury other than non-cognizable reputational harm to Black. And the alleged conduct provides no plausible inference of criminal activity that would continue beyond the alleged scheme to harm Black. Even if true (and again, it is not), the alleged conduct would add nothing to Black's attempt to demonstrate a "pattern" of racketeering.

### E.     Black Cannot Plead Cognizable Injury

Black has not pleaded any of Rubenstein's alleged racketeering activity caused him cognizable harm. The only concrete damages Black can allege are the amounts he paid to Ganieva *prior* to making her accusations against him public in March 2021. AC, Dkt. 46, ¶ 123. Black does not and cannot connect such damages to anything done by Rubenstein, let alone any of the racketeering activity in which Rubenstein was allegedly involved as part of the supposed enterprise—all of which, as already discussed, involves events related to and post-dating Ganieva's bringing suit against Black in June 2021. *Id.* ¶¶ 117(d), 118(d). There is no plausible allegation that any amounts Black paid to Ganieva were "by reason of" any action of Rubenstein. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994).

Black otherwise alleges only vague and conclusory "loss of business opportunities" that do not constitute cognizable RICO injury. *Id.* ¶ 123. Generalized reputational harm is not sufficient to plead injury to business or property for purposes of a civil RICO claim. *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021) (collecting cases). Black's reference to the "costs defending against Defendants' sham lawsuits and media campaign," AC, Dkt. 46, ¶ 123, is just a variation on his non-cognizable reputational harm damages. In fact, costs incurred to mitigate reputational harm are a classic defamation damages remedy, *Houston v. N.Y. Post Co.*, No. 93 CIV. 4408, 1997 WL 10034, at *6 (S.D.N.Y. Jan. 10, 1997), and Black's assertion of such damages in connection with his RICO claim is yet another marker of the effort to improperly federalize his (also meritless) state-law allegations.[6]

### F.   Black Cannot Plead Rubenstein Participated In Any RICO Conspiracy

Given the myriad deficiencies in Black's substantive RICO claims, as well as the wholly conclusory allegations of any agreement to participate in a RICO enterprise or pattern of racketeering activity, the conspiracy claim likewise should be dismissed. *See, e.g.*, *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428 (S.D.N.Y. 2007) (declining to consider a RICO conspiracy count under § 1962(d) when the complaint failed to adequately allege a substantive RICO violation under §§ 1962(a), (b), or (c)).

## II.   Black's Defamation Claim Against Rubenstein Should Be Dismissed

Black's gambit to plead his defamation allegations as a civil RICO claim is all the more improper given that Black cannot plead a viable defamation claim against Rubenstein in the first place. Black's defamation claim against Rubenstein should be dismissed.

---

[6] On the issue of litigation costs, Black's claim against Rubenstein also fails because Rubenstein is not a lawyer and is not alleged to have had any role in instituting or prosecuting Ganieva's lawsuit against Black. No action of Rubenstein's is alleged to, nor could have, caused Black to incur litigation costs.

### A.   Black Cannot Plead Rubenstein Made Any Non-Privileged Publications

With limited exceptions discussed below, the entirety of Black's defamation allegations against Rubenstein is that Rubenstein participated in disseminating Ganieva's litigation filings to the press. *See generally* AC, Dkt. 46, ¶¶ 136-48.

Black has not even met the basic requirements of notice pleading as to those allegations, failing to provide any detail on when or to whom Rubenstein allegedly made any defamatory statements, beyond vague allegations that he or Wigdor or the "Flacks" provided Ganieva's litigation filings to "the press," *e.g.*, *id.* ¶ 138. *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18 Civ. 4921, 2020 WL 1330283, at *7 (S.D.N.Y. Mar. 22, 2020) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." (citation omitted)). Among other problems, the lack of specificity makes it impossible to discern from the amended complaint what supposedly defamatory statements were in any of the particular litigation filings Rubenstein himself supposedly disseminated, and whether any of the alleged defamatory statements in those filings were actually false statements of fact as opposed to any of the various non-actionable statements of opinion or rhetoric described in the amended complaint.

But, in all events, Black's defamation allegations are irreparably flawed in substance as well. Rubenstein's alleged dissemination of litigation materials and accurate reports of litigation materials, even if true, would be protected under New York's privilege for fair and true reports of any "judicial proceeding" or other "official proceeding." N.Y. Civ. Rights Law § 74; *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019) ("The statute confers an absolute immunity, regardless of proof of malice or negligence, upon any person who publishes a 'fair and true report' of a judicial proceeding." (internal alterations and citation omitted)).

Recognizing that the "fair and true report" privilege clearly precludes liability here, Black

tries to plead around it by invoking the "sham pleading" rule. The "sham pleading" exception to the "fair and true report" privilege is exceedingly narrow, and courts have held that it applies only in the instance of the "deliberate institution of baseless litigation for the precise purpose of fabricating a reporting privilege." *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 295 (S.D.N.Y. 2005).

Black, however, invokes the "sham pleading" rule only in the most conclusory fashion, parroting the language of the standard itself. *See* AC, Dkt. 46, ¶ 139 (alleging that the privilege does not apply because the filings relayed to the press "were made exclusively for the purpose of attempting to cloak the allegations in them with the appearance of such protections, immunities or privileges"). The amended complaint lacks any plausible factual allegations that Ganieva instituted her litigation solely for the purpose of fabricating a reporting privilege.

Quite the contrary, the amended complaint alleges facts that directly negate the notion that the litigation was instituted simply to conjure the reporting privilege. As the amended complaint alleges, Ganieva made public her allegations of "Mr. Black being a sexual predator" in March 2021, *id.* ¶¶ 10, 63, *months before* she initiated her litigation against Black in June 2021*, id.* ¶¶ 12, 72. And as the amended complaint recognizes, Ganieva's litigation included claims "for defamation based on Mr. Black's public statement" rebutting her tweets*. Id.* ¶ 72. In other words, Black recognizes that Ganieva already had made accusations against him in an entirely non-privileged context, negating any inference that Ganieva felt she needed a "fair and true reporting" shield for her accusations. And Black recognizes that Ganieva's lawsuit was at least in part a *response* to Black calling Ganieva a liar, not a lawsuit conjured from the blue in order to attack Black.

In any event, even assuming Ganieva did conjure her lawsuit solely as a vehicle to defame

Black, the amended complaint lacks any non-conclusory allegation that Rubenstein was involved in generating any such sham pleading, or what his supposed role in generating any such pleading was. Nor is there any non-conclusory allegation that Rubenstein knew or even should have known any pleading to be a sham. The amended complaint alleges only that "*Wigdor LLP and Ms. Ganieva* knew that the pleadings had no basis in fact*." Id.* ¶ 136 (emphasis added). Similarly, the amended complaint refers to the evidence that Black says conclusively proves Ganieva was lying as "contemporaneous documentary evidence that *Wigdor LLP* has deliberately refused to view and has never rebutted." *Id.* ¶ 141 (emphasis added). There is no allegation Rubenstein knew about any such evidence, or its implications for whether Ganieva was telling the truth, or its implications for whether Ganieva was bringing her lawsuit solely to defame Black. As the paucity of factual allegations against Rubenstein makes clear, Rubenstein has no knowledge of any of this, as he is a stranger to this whole sordid affair, and the amended complaint includes no plausible allegation to the contrary.

### B.    Black's Other Stray Allegations Fail To State A Claim

Black's handful of other stray allegations in support of his defamation claim do not rescue his failed claim.

Other Unspecified Publications. Black's generic allegation that "Mr. Rubenstein and the Flacks pushed stories and articles to promote [Ganieva's] lies" does not plead any defamatory statements and is too generic to state a claim. AC, Dkt. 46, ¶ 135. As to the one specific allegation regarding an interview with the New York Post, the statement at issue is attributed to Ganieva, not Rubenstein. While the amended complaint alleges indiscriminately, and without any factual elaboration, that the interview was set up by "Mr. Rubenstein and the Flacks," it pleads no facts indicating Rubenstein was involved in determining what Ganieva might be asked or might say in the course of that interview. *Id*. ¶ 135. There is no adequate allegation that Rubenstein was

involved in the publication of this allegedly defamatory statement. (Because, again, he was not.) And even as to the notion that Rubenstein was involved in setting up the interview, the allegations in the amended complaint are deficient for reasons already discussed. *See supra* Part I.D.

<u>Manhattan DA</u>. In his defamation count, Black does not reference the allegation that Rubenstein falsely told the press that the Manhattan DA was investigating Black. *Compare* AC, Dkt. 46, ¶¶ 133-149, *with id.* ¶¶ 114(b), 117(d), 118(d). To the extent Black nevertheless attempts to argue the amended complaint should be construed to include that allegation as part of the defamation count, the allegation cannot support a defamation claim because Black fails to plead the alleged statement is false.

The amended complaint states that "the Manhattan District Attorney as a matter of policy is obligated to examine every complaint of sex abuse*." Id.* ¶ 99. Black's own allegations thus confirm the substantial truth of the statement that he was, at some point in time, under investigation by the Manhattan DA in connection with Ganieva's allegations. New York courts dismiss defamation complaints for failure to state a claim when the "plaintiff's own allegations" led to a "well supported" inference that the statement at issue was not false. *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 246 (2d Cir. 2017). Any quibble Black might have about the *timing* of such investigation or whether it was *active* at the time of the alleged defamatory statement is irrelevant, because the alleged statement that the Manhattan DA had opened an investigation was, by Black's own account, substantially true. *Id*. (discussing a case in which a statement that an employee "was going to be fired" was found to be "substantially true" when, *later*, the employee was in fact fired).

### C.    Black Cannot Plead Rubenstein Acted With Actual Malice

Black has also failed to plead that Rubenstein acted with actual malice, which Black is

required to plead and prove by virtue of his status as a "public figure." [7]

Black's own allegations establish him as a public figure, *e.g.*, AC, Dkt. 46, ¶¶ 23-24, who was implicated in a variety of issues of public interest, ranging from his leadership of Apollo to his involvement with Jeffery Epstein. Black is thus required to plead, and eventually prove, "actual malice"—a subjective standard requiring that the defendant "in fact" had a "high degree of awareness of probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted). Even at the pleading stage, a plaintiff is required "to allege facts sufficient to show actual malice with convincing clarity." *Jimenez v. United Fed'n of Tchrs.*, 657 N.Y.S.2d 672, 673 (App. Div. 1997). A mere "failure to investigate before publishing . . . is not sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).

As discussed above, the amended complaint lacks any allegations of fact plausibly suggesting that Rubenstein in fact had a high degree of awareness of the probable falsity of Ganieva's statements about Black. The allegations of knowledge of falsity relate to Wigdor and Ganieva, not Rubenstein. *See* AC, Dkt. 46, ¶¶ 136, 141; *see supra* Part II.A. Allegations about Wigdor or Ganieva or anyone else in the enterprise supposedly acting with actual malice may not be blithely attributed or carried over to Rubenstein. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("[T]he state of mind required for actual malice [must] be brought home to the persons in the . . . organization having responsibility for the publication . . . .").

### D. Alternatively, The Court Should Decline To Exercise Supplemental Jurisdiction

Alternatively, if the Court dismisses Black's civil RICO claims but for whatever reason is not prepared to dismiss Black's defamation claim on the merits, the Court should at least decline

---

[7] Rubenstein reserves all rights to argue that Black is also required to plead and prove actual malice under New York's anti-SLAPP statute, N.Y. Civ. Rights Law §76-a, but the Court need not decide the issue given Black's status as a public figure.

to exercise supplemental jurisdiction over the defamation claim. This Court routinely declines to exercise supplemental jurisdiction over state law claims after dismissing the federal claims providing the basis for original jurisdiction. *E.g.*, *Daniel v. City of New York*, No. 20 CIV. 11028, 2021 WL 5988305, at *11 (S.D.N.Y. Dec. 16, 2021); *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532, 2021 WL 2158017, at *6 (S.D.N.Y. May 27, 2021).

### III.   Black's Claims Should Be Dismissed With Prejudice

Respectfully, the Court should dismiss Black's claims against Rubenstein with prejudice.

The defects in Black's pleading are so pervasive that they cannot be cured by amendment. This is, moreover, already Black's second attempt to plead his claims. While Rubenstein was not identified by name in Black's original complaint, it appears he is one of the previously unnamed "Flacks" that Black alleged to be part of the scheme against him. Wigdor's prior motion to dismiss fully put Black on notice about deficiencies in his prior complaint, including with respect to the lack of adequate factual detail plausibly implicating any of the "Flacks" in RICO violations or defamatory conduct. *E.g.*, Wigdor Motion to Dismiss, Dkt. 43, at 2, 5-6, 9-10, 12-13, 23.

The amended complaint is apparently the best Black could do. He has come nowhere close to pleading viable claims against Rubenstein. In these circumstances, dismissal with prejudice is the appropriate course. *Vasquez*, 2019 WL 2327810, at *19 n.7 (dismissing a RICO claim with prejudice when the plaintiffs had "already amended their complaint once" and had "not pointed to any additional facts . . . that could cure the deficiencies" in the complaint); *Brady v. IGS Realty Co. L.P.*, No. 19 Civ. 10142, 2020 WL 5414683, at *13 (S.D.N.Y. Sept. 8, 2020). Black's efforts to deflect attention from his own headlines by targeting innocent bystanders like Rubenstein should be put to a swift, conclusive end.

**CONCLUSION**

For the foregoing reasons, Rubenstein respectfully requests that the Court grant the motion to dismiss Black's claims against him—for civil RICO violations, 18 U.S.C. § 1962(c) (Count I), civil RICO conspiracy, 18 U.S.C. § 1962(d) (Count II), and defamation *per se* (Count III)—with prejudice.

Dated: New York, New York
      March 4, 2022

<div style="margin-left:40%">

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Jacob W. Buchdahl*
Jacob W. Buchdahl
Mark Musico
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
jbuchdahl@susmangodfrey.com
mmusico@susmangodfrey.com

*Attorneys for Defendant Steven Rubenstein*

</div>

24