

March 11, 2022

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:   *Black v. Ganieva, et al.*, No. 1:21-cv-08824 (PAE)

Dear Judge Engelmayer:

      I write on behalf of Plaintiff Leon Black to request leave to file a sur-reply to Defendant Wigdor LLP's Rule 11 motion, in light of facts recently disclosed in discovery in the state court action that Defendant Guzel Ganieva has brought against Mr. Black; in the alternative, we ask that this letter be accepted in lieu of a sur-reply. As the Court directed at the March 10, 2022 initial pretrial conference, this letter, originally filed as ECF No. 92, now attaches as Exhibits 1-6 excerpts of the newly produced evidence quoted herein. This evidence further demonstrates why the Court should reject Wigdor's motion for sanctions pursuant to Rule 11(b)(3), which requires that claims "have evidentiary support" or are "likely" to have evidentiary support "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

      As set forth in the prior briefing, "[w]ith respect to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Traynor v. Hereafter, Inc.*, 2019 WL 3940128, at *1 (S.D.N.Y. July 31, 2019) (internal quotation marks and citation omitted). In support of its motion, Wigdor makes much of the fact that Mr. Black alleged it entered into a criminal conspiracy with Mr. Black as its target *before* Ms. Ganieva signed an engagement agreement with Wigdor on April 9, 2021, and attacks the allegation of such an alliance as utterly baseless. Specifically, Wigdor claims that these allegations are sanctionable in part because "Ms. Ganieva's . . . Tweets [] were sent in March 2021 -- *before* Ms. Ganieva ever retained Wigdor," and that "***Wigdor did not even represent Ms. Ganieva at the time of the Tweets.***" Wigdor Mem. at 11 (emphasis in original).[1] Wigdor goes on to argue that Mr. Black failed to allege "any common purpose between and among the members of the enterprise, or any relationships, other than the attorney-client relationship between Wigdor and Ms. Ganieva, among those associated with the supposed enterprise." *Id*. at 15. Wigdor even went so far as to argue that "no facts ever existed to support the claim that Wigdor worked with Flacks on behalf of Ganieva." Reply at 5.[2] In other words, Wigdor argued that the original complaint is sanctionable because

---

[1] "Wigdor Mem." refers to the Memorandum of Law in Support of Defendant Wigdor LLP's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, ECF No. 33-1.

[2] "Reply" refers to Wigdor LLP's Reply Memorandum of Law in Further Support of Motion for Rule 11 Sanctions, ECF No. 55.

Mr. Black's allegation that Ms. Ganieva and Wigdor were working together prior to her retention of the firm in April 2021 is "utterly lacking in support" and would be incapable of proof.

In fact, just the opposite is true. Recently produced documents show Douglas Wigdor, the co-founder of the firm, in communication with Ms. Ganieva to advance her cause with the media *as early as October 2020*. What is more, Mr. Wigdor was engaged in precisely the activity that is the subject of the complaint in this action: not just the pursuit of sham litigation activity, but the promotion of Ms. Ganieva's false narrative to the press.

Specifically, the recently produced documents demonstrate that on October 30, 2020, Ms. Ganieva sent a WhatsApp message to *New York Times* reporter Matthew Goldstein, stating: "Did you speak to Wigdor? He is reaching out about a reporter wanting to speak to me." Ex. 1. Mr. Goldstein quickly responded that he had been in communication with Douglas Wigdor, stating: "We are supposed to talk. But not sure if there is another reporter on this too from another publication." *Id*. Mr. Goldstein soon followed up, writing: "Tho I'm pretty certain it's me. Are you ok with him talking to me on background." *Id*. On November 5, 2020, Ms. Ganieva confirmed she intended to permit Mr. Wigdor to speak to Mr. Goldstein on her behalf, stating: "P.S. I will let [W]igdor know that if you want to speak with him you can. Best." Ex. 2.

Mr. Goldstein sent another message to Ms. Ganieva on November 10, 2020, confirming that he had plans to speak with Douglas Wigdor. Mr. Goldstein stated: "Hey there. Talking to Wigdor tomorrow afternoon … He wanted to review his notes. Let's talk on Wednesday if you are free or Thursday sorta wanted to wait until I spoke to Doug[.]" Ex. 3. Mr. Goldstein then continued to keep Ms. Ganieva apprised of scheduling changes for his discussions with Mr. Wigdor, sending her messages on November 11, 2020 (Ex. 4) and November 13, 2020 (Ex. 5). On November 16, 2020, Mr. Goldstein wrote: "Had good chat with Wigdor over the weekend. Will update you tomorrow Wednesday [*sic*]." Ex. 6.

These messages confirm that—at a minimum—the Wigdor firm was working with Ms. Ganieva many months before it was officially retained as her counsel, and in an effort to promote the Enterprise's lies about Mr. Black for the "common purpose" of defaming him and extorting him for millions of dollars. Wigdor was no idle player who did not "participate[] in the operation and management of the enterprise," *see* Wigdor Memo. at 16, but a key figure in spreading Ms. Ganieva's lies to members of the press like Mr. Goldstein (and others). And contrary to Wigdor's assertion that there are no facts to support the argument that it worked with PR flacks, Mr. Wigdor himself was *directly* involved with talking to members of the press on Ms. Ganieva's behalf. In addition to demonstrating the above, these documents raise serious questions about the veracity of all assertions by Wigdor and Ganieva. Indeed, if, as Plaintiff believes, these documents show that there were false or misleading statements made to this Court and the state court, no factual statement or assertion made in connection with this motion can be credited. Accordingly, Plaintiff requests leave to file a sur-reply to further demonstrate why the Court should reject Wigdor's arguments pursuant to Rule 11(b)(3), or requests that the Court accept this letter as a means of doing so.

Respectfully submitted,

/s/ *Susan Estrich*
Susan Estrich
Counsel for Plaintiff

Estrich Goldin LLP
susan@estrich.goldin.com
www.estrichgoldin.com

CC: Counsel of Record (via ECF)