UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEON D. BLACK,

                                      Plaintiff,                    **Civil Action No.:**
                                                                    **1:21-cv-08824-PAE**

-against-

GUZEL GANIEVA, WIGDOR LLP, JOSH HARRIS,
AND STEVEN RUBENSTEIN,

                                      Defendants.
-------------------------------------------------------------------X

_____

**DEFENDANT WIGDOR LLP'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S THIRD CAUSE OF ACTION**
_____


                                      Respectfully submitted,

                                      RIVKIN RADLER LLP
                                      Attorneys for Defendant, Wigdor LLP
                                      926 RXR Plaza
                                      Uniondale, New York 11556
                                      (516) 357-3000

On the brief:

Max Gershenoff, Esq.
Janice J. DiGennaro, Esq.
Yonatan Bernstein, Esq.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.     Black Fails to Sufficiently Plead Defamation Per Se ............................... 2

          A.    The Court Should Reject Black's Three Theories as to
               Why the "Narrow" Sham Litigation Exception Should Apply ..................... 3

          B.    Wigdor's Statements to the Press Made in Connection With
               the State Court Action are Not Subject to a Defamation Claim ................... 8

    II.    The Court Should Decline to Exercise Supplemental Jurisdiction
          Over Black's Defamation Claim ............................................................... 9

    III.   In the Alternative, The Court Can Abstain Under the Colorado
          River Doctrine ......................................................................................... 9

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Bulow v. Women in Need, Inc.
    89 A.D. 3d 525,526 (N.Y. 1st Dep't 2011)..................................................................6

Capsolas v. Pasta Res., Inc.,
    2013 U.S. Dist. LEXIS 28508 (S.D.N.Y. 2013).........................................................5

Conti v. Doe,
    535 F. Supp. 3d 257 (S.D.N.Y. 2021).........................................................................2

Cruz v. Marchetto,
    2012 U.S. Dist. LEXIS 142662 (S.D.N.Y. 2012)........................................................5

Flomenhaft v. Finkelstein,
    8 N.Y.S.3d 161 (App. Div. 2015)................................................................................7

Ginarte Gallardo Gonzalez & Winograd, LLP v. Schwitzer,
    2019 NY Slip Op 33275(U) (N.Y. Sup. Ct. 2019) ....................................................4

Halperin v. Salvan,
    117 A.D.2d at 547 (N.Y. 1st Dep't 1986)...................................................................4

Kelly v. Albarino,
    485 F.3d 664 (2d Cir. 2007)........................................................................................7

Lader v. Delgado,
    941 F. Supp. 2d 267 (E.D.N.Y. 2013) .......................................................................3

Manhattan Sports Rests. of Am., LLC v. Lieu,
    45 N.Y.S.3d 468 (N.Y. App. Div. 2017) ...................................................................4

Morgan Art Found. Ltd. v. McKenzie,
    2019 U.S. Dist. LEXIS 109997 (S.D.N.Y. 2019)......................................................7

Palmer v. Cook,
    108 N.Y.S.3d 297 (N.Y. Sup. Ct. 2019) ................................................................7, 8

Ross v. Portchester Housing Auth.
    2019 U.S. Dist LEXIS 16878 (S.D.N.Y. Sept. 27, 2019).........................................8

Sanborn Library Llc v. Eris Info.,
    2021 U.S. Dist. LEXIS 165496 (S.D.N.Y. 2021).......................................................3

<u>Seltzer v. Fields</u>,
   20 A.D. 2d 60, aff'd 14 N.Y. 2d 624 ...........................................................................7

<u>Sexter & WarmFlash, P.C. v. Margrabe</u>,
   38 A.D. 3d 163 (N.Y. 1st Dep't 2007)..........................................................................7

<u>Sweeney v. Prisoner's Legal Srvs of N.Y.</u>,
   84 N.Y. 2d 786 (NY 1995) ...........................................................................................6

**Statutes**

N.Y. Civil Rights Law § 74 ...........................................................................................8

RICO ..................................................................................................................1, 2, 9, 10

**Other Authorities**

CPLR 3024..........................................................................................................................7

Fed. R. Civ. P. 12(f) ...........................................................................................................7

**<u>PRELIMINARY STATEMENT</u>**

Defendant Wigdor LLP ("Wigdor") respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiff Leon Black's ("Black" or "Plaintiff") Third Cause of Action for defamation <u>per se</u>. <u>See</u> ECF No. 87.

After originally naming Wigdor in a frivolous, far-fetched, and constantly changing RICO "conspiracy", and then abandoning his RICO claims against Wigdor entirely, Black doubles-down on his attack on Wigdor in the Amended Complaint and in his opposition. Black's defamation <u>per se</u> claim against Wigdor and his opposition to Wigdor's motion is based on nothing more than Wigdor's zealous representation of Ms. Ganieva in her first-filed, state court defamation and gender-based violence claims against Mr. Black.

The supposedly-defamatory statements attributed to Wigdor in the Amended Complaint were made either in connection with the claims in Ms. Ganieva's state court litigation, or else constitute fair comment about them, and thus are privileged. The public policy fostered by the litigation privilege is of great importance to our judicial system. It assures access to the courts and protection not only to litigants, but also to their lawyers, because if an attorney's zealous advocacy could be diluted by threats of defamation the client's access to the courts would be fundamentally impaired. This public policy is especially important where, as here, a lawyer has been asked to represent an alleged victim of gender-based violence like Ms. Ganieva against a massively powerful and wealthy person like Leon Black.

Nevertheless, Black tries to circumvent the litigation privilege with a conclusory claim that the state court litigation was a "sham", simply because Black claims no sexual abuse ever happened. However, Wigdor is not required to become judge and jury of its client's claim in order to preserve the litigation privilege. Rather, the narrow sham litigation exception to the litigation privilege is limited to that tiny category of cases where the litigation was brought <u>solely to defame</u> based on

some malicious intent under circumstances where the plaintiff, unlike here, took no steps to prosecute the claim. There is, however, no fact or extrapolation of fact alleged here that would establish that Ganieva's state court case was solely brought to defame, was motivated by malice, or that it was not aggressively prosecuted so as to come within the sham litigation exception.

In the final analysis, Black's calculated, "best defense is an offense" strategy in the form of his present attack on Wigdor is as meritless as his belatedly withdrawn RICO claim.

## ARGUMENT

### I.      Black Fails to Sufficiently Plead Defamation Per Se

"It is well established that under New York law, statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding. New York courts have long recognized the litigation privilege as a defense to defamation claims." See Conti v. Doe, 535 F. Supp. 3d 257 (S.D.N.Y. 2021).

Yet, despite this "well established" law, Black's defamation per se claim against Wigdor is based solely on Wigdor's representation of Ms. Ganieva in connection with her first-filed New York State Supreme Court lawsuit ("the State Court Action"), allegations contained in the pleadings in the State Court Action, and statements made by Wigdor or Wigdor partners about the State Court Action. In other words, Black's defamation per se claim is based solely on statements that are protected by the absolute litigation privilege.

In his opposition to this motion, Black repeats the same "sham" litigation argument he made in his Amended Complaint and argues that because – according to him – Ganieva's state court lawsuit is purportedly a "sham", the absolute litigation privilege should not foreclose his defamation

claim. See Memorandum of Law in Opposition to Defendants' Motions to Dismiss, ECF No. 101, at 29, 33, 44-52, and passim.

At bottom, none of Black's theories support his ultimate contention that the sham litigation exception – which courts "have emphasized is 'narrow'" – should apply and overcome Wigdor's absolute litigation privilege. See Sanborn Library Llc v. Eris Info., 2021 U.S. Dist. LEXIS 165496 at 64 (S.D.N.Y. 2021).

### A.    The Court Should Reject Black's Three Theories as to Why the "Narrow" Sham[1] Litigation Exception Should Apply

Black's first theory for why Ms. Ganieva's State Court Action is a sham is that Wigdor supposedly has failed to prosecute the State Court Action – thereby demonstrating its purported malicious intent in bringing the lawsuit. See Black Opposition at 14, citing Amended Complaint at ¶¶ 93, 94.

However, contrary to Black's argument, any fair reading of the docket in the State Court Action – Index No. 155262/2021, pending in New York County Supreme Court – demonstrates[2] that Ms. Ganieva has in fact diligently prosecuted her claims. For instance, and just by way of example, Ms. Ganieva has: (i) amended her complaint, see Docket No. 26; (ii) sought to file a second amended complaint, see Docket Nos. 45, 46, 59; (iii) filed an opposition to a motion to dismiss, see Docket Nos. 19 and 20; (iv) sought discovery – and sought court intervention, when necessary, see Docket Nos. 29, 34 and (v) worked extensively to enter into an agreed upon protocol that will govern

---

[1] As set forth in Wigdor's opening papers on this motion, and herein, because Black has not plausibly alleged that the sham litigation exception should apply, Black's defamation claim is also barred by the Noerr-Pennington doctrine, inasmuch as it is clearly – and solely – based on Wigdor's representation of Ms. Ganieva in connection with the State Court Action. See Wigdor MTD at 17-18.

[2] The Court can take judicial notice of the State Court Action docket, a true and correct copy of which is submitted herewith. See Lader v. Delgado, 941 F. Supp. 2d 267, 269 (E.D.N.Y. 2013)(taking judicial notice of the pleadings in a related state court matter).

discovery in the State Court Action. <u>See</u> Docket Nos. 127, 147-149; and (vi) produced discovery on behalf of Ms. Ganieva in response to Black's discovery demands.

Against this factual backdrop, the sham litigation exception is inapplicable, and Black's defamation claim against Wigdor should be dismissed. <u>See</u> <u>Manhattan Sports Rests. of Am., LLC v. Lieu</u>, 45 N.Y.S.3d 468 (N.Y. App. Div. 2017) (dismissing a defamation claim, where the alleged defamatory statements were made in a litigation, on the grounds that the plaintiff diligently prosecuted its claims – a conclusion the court reached specifically due to the fact that the plaintiff "filed an amended complaint" and opposed a motion to dismiss, which is exactly what Ms. Ganieva has done in the State Court Action); <u>see also</u> <u>Ginarte Gallardo Gonzalez & Winograd, LLP v. Schwitzer</u>, 2019 NY Slip Op. 33275(U) (N.Y. Sup. Ct. 2019)(dismissing a defamation counterclaim asserted against an attorney, despite a "sham action" argument, where "substantial opposition" to a motion to dismiss undermined the argument that the litigation was a sham).

Moreover, the one case that Black relies on to support his theory that Wigdor has not prosecuted the State Court Action is wholly distinguishable. In particular, Black cites to <u>Halperin v. Salvan</u>, 117 A.D.2d at 547 (N.Y. 1ˢᵗ Dep't 1986), a case where a defendant-attorney was sued for libel for statements the defendant-attorney made in a class action complaint. The court denied the defendant-attorney's motion to dismiss because, unlike here, the defendant-attorney -- on behalf of his clients -- did not prosecute the class action. <u>See</u> Black Opposition at 48.

In this regard, in <u>Halperin</u> the defendant-attorney never took even the most basic steps in prosecuting the allegedly defamatory lawsuit. In particular, despite the fact that the case was styled as a class action lawsuit and had been pending for approximately two years, the defendant-attorney never even moved for an order to certify the class, and there had been no discovery. <u>See</u> <u>Halperin</u> at 545, 547.

These facts are inapposite to the present case where – as set forth above – Wigdor has taken extensive steps on behalf of Ms. Ganieva in prosecuting the State Court Lawsuit against Black.

Black's second theory in support of his argument that the State Court Action is purportedly a "sham" hinges on the fact that he does not like, or agree with, Wigdor's litigation decisions. See Black Opposition at 47. In particular, Black takes issue with the fact that: (i) Wigdor did not offer to settle Ms. Ganieva's case in advance of filing the State Court Action (further proof the pleading was not crafted for a vexatious purpose); (ii) Wigdor has not entered into a protective order in the State Court Action so Black would produce his supposed evidence to Wigdor; and (iii) Wigdor has objected to discovery requests in the State Court Action. See Black Opposition at 47, citing Amended Complaint at ¶¶ 17, 70, 71, 93-96.

Simply put, because Black does not like Wigdor's litigation decisions in the State Court Action he engages in unwarranted leaps in logic and asks this court to conclude that as a result -- in his subjective lay opinion -- the State Court Action must be a sham. However, and as set forth in Wigdor's opening papers on this motion, Black's subjective conclusion that the State Court Action lacks merit falls far short of the pleading requirements necessary to plausibly allege that Ms. Ganieva's State Court Action is a "sham", and therefore actionable. See Capsolas v. Pasta Res., Inc., 2013 U.S. Dist. LEXIS 28508 (S.D.N.Y. 2013)(holding – on a motion to dismiss – that contentions that allegations in a complaint were "false", and conclusory allegations of "malicious conduct", were insufficient to support a claim that a lawsuit was a "sham"); Cruz v. Marchetto, 2012 U.S. Dist. LEXIS 142662 at * 11 (S.D.N.Y. 2012)(dismissing defamation claim involving statements from a lawsuit and/or made in connection with a lawsuit, and holding that the plaintiff's "deductions" do not overcome the litigation privilege).

Likewise, Black's conclusory claim that Wigdor did not do an "adequate investigation" into Ms. Ganieva's claims given their serious nature, is also insufficient to overcome the litigation privilege. The alleged failure to investigate (or in this context the obligation to distrust a sexual victim's account of the crime) does not cause the privilege to evaporate. See <u>Bulow v. Women in Need, Inc</u>. 89 A.D. 3d 525, 526 (N.Y. 1st Dep't 2011) (privilege is not overcome by the claimed insufficiency of the investigation of the allegedly defamatory charges); <u>see also Sweeney v. Prisoner's Legal Srvs of N.Y</u>., 84 N.Y. 2d 786 (NY 1995)(failure to investigate the truth of a statement standing alone is not enough to undermine the privilege as it is insufficient to show actual malice). Here, Black admits to a long-time extramarital relationship with Ms. Ganieva, and to the payment of millions of dollars to buy her silence. Whether those payments were to protect his family, as Black claims, or to cover-up misconduct, as Ms. Ganieva alleges, is a question of fact for a jury to decide in the State Court Action. Wigdor is not required to refrain from bringing a case simply because Black claims that he is not guilty as charged.

Black's <u>third</u> theory for why the State Court Action is a sham is based on the idea that Ms. Ganieva alleged certain facts in her amended complaint and proposed second amended complaint concerning Black's relationship with Jeffrey Epstein, that these allegations are "not pertinent to the controversy", and therefore fall outside the absolute litigation privilege. See Black Opposition at 48-49, citing Amended Complaint at ¶¶ 83, 84, 89-91.

However, if anything, this "pertinency" test undermines Black's argument, because the allegations in the State Court Action concerning Black's relationship with Jeffrey Epstein are obviously relevant to Ms. Ganieva's sexual abuse claims against Black as Black has denied such a personal relationship with Epstein or awareness of Epstein's predatory sexual exploits. "All doubt should be resolved in favor of relevance and pertinence and for the purposes of relevancy the court

will assume the alleged slanderous charges to be true…." <u>Seltzer v. Fields</u>, 20 A.D. 2d 60, 62-63, <u>aff'd</u> 14 N.Y. 2d 624. Accepting Ms. Ganieva's claim that Black took her to Epstein for purposes of engaging in sex with Epstein, Black's close personal relationship with Epstein is surely pertinent and relevant. Pertinence "is a question of law for the court". <u>Sexter & WarmFlash, P.C. v. Margrabe</u>, 38 A.D. 3d 163 (N.Y. 1st Dep't 2007)

This is especially so considering that in a defamation context, the test to determine whether a statement is "pertinent to" litigation is "<u>extremely liberal</u>", such that the offending statement, to be actionable, must have been "<u>outrageously out of context</u>". <u>Flomenhaft v. Finkelstein</u>, 8 N.Y.S.3d 161 (App. Div. 2015). <u>See also</u> <u>Morgan Art Found. Ltd. v. McKenzie</u>, 2019 U.S. Dist. LEXIS 109997 at *56 (S.D.N.Y. 2019)(holding that to be pertinent, all that is needed is "that the alleged defamatory material may possibly bear on the issue now or some future time"); <u>Kelly v. Albarino</u>, 485 F.3d 664 (2d Cir. 2007)("any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege"….and "this is so irrespective of motive of the speaker or writer").

In this context, Black argues that since the Epstein-related allegations took place outside the statute of limitations and are not mentioned in the causes of action, they supposedly "have nothing to do with" the allegations, and therefore the Court may "draw an inference that they are malicious and actionable as defamation." <u>See</u> Black Opposition at 50. However, the one case Black cites to in support of this proposition is inapposite and reaches the opposite conclusion than the one Black suggests. <u>Id</u>. at 50, citing <u>Palmer v. Cook</u>, 108 N.Y.S.3d 297, 313 (N.Y. Sup. Ct. 2019).

In particular, the issue in <u>Palmer</u> was whether language in a bill of particulars accusing a party of being reckless, negligent, and of engaging in illegal conduct would cause undue prejudice to the party and therefore should be stricken under CPLR 3024—equivalent to Fed. R. Civ. P. 12(f).

The <u>Palmer</u> case had nothing to do with whether a statement needs to be mentioned in a cause of action in a complaint in order to qualify for the litigation privilege. Moreover, the Court in <u>Palmer</u> declined to strike the allegations <u>regardless of the fact that the allegations were time-barred</u>. <u>See</u> <u>Palmer</u> at *395.

As a result, Ms. Ganieva's allegations against Black concerning Jeffrey Epstein and various other women (the "Jane Does") are "pertinent" to the State Court Action.

**B.      Wigdor's Statements to the Press Made in Connection With the State Court Action are Not Subject to a Defamation Claim**

As a general matter, and set forth in Wigdor's opening papers on this motion, any statement made by Wigdor in the State Court Action pleadings that Black alleges are defamatory are protected by the litigation privilege. By extension, any statements made by Wigdor to the press – to the extent they can even be identified -- are subject to a qualified privilege since they constituted a fair and true reporting on the State Court Action. <u>See</u> Wigdor MTD at 11-16; <u>see</u> <u>also</u> N.Y. Civil Rights Law § 74.

Moreover, in addition to the qualified litigation privilege, Black's defamation allegations relating to the purported statements Wigdor made to the press in connection with the State Court Action fail for the additional reasons that Black fails to sufficiently identify when the first and third allegedly defamatory statements were made, and because the second allegedly defamatory statement is non-actionable opinion. <u>See</u> Wigdor MTD at 12-16.

Notably, Black does not address either of these other two issues in his opposition to Wigdor's motion to dismiss. The failure to controvert Wigdor's argument in opposition is a tacit concession of its merit. <u>Ross v. Portchester Housing Auth</u>. 2019 U.S. Dist LEXIS 168768 (S.D.N.Y. 2019)("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument…").

## II.     The Court Should Decline to Exercise Supplemental Jurisdiction Over Black's Defamation Claim

In its opening papers on this motion, Wigdor argued that the Court should decline to exercise supplemental jurisdiction – irrespective of whether the RICO claims against its co-defendants are dismissed – because the defamation claim against Wigdor does not share a common nucleus of operative facts with the RICO claims against its co-defendants. See Wigdor MTD at 18-19.

Black does not address this point in his opposition. Instead, Black focuses his argument on issues that are applicable only to Wigdor's co-defendants, and not Wigdor. In particular, in support of his argument that the Court should exercise supplemental jurisdiction, Black posits that "considerations of judicial economy, convenience, and fairness mitigate against Black having to refile and relitigate his state law claims in state court". See Black Opposition at 61. In support of this argument, Black contends that he faces a short one-year statute of limitations for defamation based on "March 2021 tweets" and that this Court has spent time familiarizing itself with this case.  Id.

However, Black's defamation claim against Wigdor is not based on any "March 2021 tweets", and so this argument is irrelevant to the defamation claim against Wigdor. In any event, this case is still in its very early stages, and -- contrary to Black's argument -- there is no legitimate reason to think that "overall efficiency and fairness would be served by this Court retaining supplemental jurisdiction" over Black's state law defamation claim against Wigdor. To the contrary, the defamation claim obviously is an attempt to retaliate against Wigdor for representing Ms. Ganieva in her first-filed State Court Action. With that in mind, "overall efficiency and fairness" actually weigh in favor of dismissal.

## III.     In the Alternative, The Court Can Abstain Under the Colorado River Doctrine

In opposition to the Defendants' motions to dismiss, Black argues that the Court should decline to abstain under the Colorado River doctrine because: (i) the State Court Action and this federal action "involve different parties", in that Defendants Harris, Wigdor, and Rubenstein are not

parties to the State Court Action; and (ii) the State Court Action and this federal action involve different subject matter and seek different forms of relief, considering that the State Court Action involves only Ms. Ganieva's claims against Black for defamation, while the federal case involves RICO claims against Harris, Rubenstein, and Ms. Ganieva, as well as a defamation claim against Wigdor. See Black Opposition at 41-42.

However, in reality, all Black has done in this federal action is name Ms. Ganieva, her lawyers, and individuals who are alleged, at most, to be loosely connected to her, in a series of trumped-up claims that are transparently aimed at interfering with Wigdor's ability to represent its client in the first-filed State Court Action. Considering that this case is clearly parallel to Ms. Ganieva's first-filed State Court Action, and the Colorado River factors weigh in favor of abstention, the Court should abstain from exercising jurisdiction.

## CONCLUSION

For the reasons set forth herein and in Wigdor's opening papers on this motion, Wigdor LLP's motion to dismiss should be granted, and Black's improper and retaliatory claims against Wigdor should be dismissed with prejudice, together with such other and further relief as the Court deems proper.

Dated: Uniondale, New York
      May 5, 2022                Respectfully submitted,

                                    RIVKIN RADLER LLP
                                    Attorneys for Wigdor LLP
                                    /s/ Max Gershenoff     /s/ Janice J.DiGennaro
                                    Max Gershenoff      Janice J. DiGennaro
                                    Yonatan Bernstein
                                    926 RXR Plaza
                                    Uniondale, New York 11556
                                    (516) 357-3000