UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LEON D. BLACK,

                      Plaintiff,              Case No: 21 Civ. 8824 (PAE)

    - against -

GUZEL GANIEVA, WIGDOR LLP,
JOSH HARRIS, and STEVEN RUBINSTEIN,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GUZEL GANIEVA'S MOTION TO DISMISS THE AMENDED COMPLAINT

                              LAW OFFICE OF KEVIN MINTZER, P.C.
                              Kevin Mintzer
                              Laura L. Koistinen
                              1350 Broadway, Suite 2220
                              New York, New York 10018
                              T: 646-843-8180
                              F: 646-478-9768
                              km@mintzerfirm.com

                              *Attorneys for Defendant Guzel Ganieva*

## **Table of Contents**

Table of Authorities ………………………………………………………………………...iii

Preliminary Statement........................................................................................................... 1

Argument .............................................................................................................................. 1

    I.    The Amended Complaint Fails to Allege a RICO Enterprise............................. 1

        a. Ganieva has No Relationship with Harris or Rubinstein ................................ 1

        b. Ganieva and the Co-defendants do Not Share a Common Purpose............................... 3

        c. Other Deficiencies in Black's Enterprise Allegations ...................................... 4

    II.    Ganieva Did Not Participate in the Operation of Management of a Racketeering Enterprise .................................................................................................................... 4

    III.    The Amended Complaint Does Not Allege that Ganieva Engaged in a Pattern of Racketeering Activity ................................................................................... 6

        a. Black's Extortion and Wire/Mail Fraud Allegations are Defective............................... 6

        b. There is No Open-Ended Continuity ............................................................... 8

    IV.    The Court Should Not Exercise Supplemental Jurisdiction Over the State Law Claims Against Ganieva........................................................................................................ 9

Conclusion ............................................................................................................................ 10

**Table Of Authorities**

**CASES**

*Am. Transit Insurance Company v. Bilyk*,
514 F. Supp 3d 463 (E.D.N.Y 2021) ................................................................................... 4

*Beauford v. Helmsley*,
865 F.2d 1386 (2d Cir. 1989) ............................................................................................... 9

*Boyle v. United States,*
556 U.S. 938 (2009) ........................................................................................................ 1,3

*Curtis v. L. Offs. of David M. Bushman, Esq.*,
443 F. App'x 582 (2d Cir. 2011) ......................................................................................... 2

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018) ................................................................................................. 5

*Dempsey v. Sanders*,
132 F. Supp. 2d 222 (S.D.N.Y. 2001) ................................................................................. 9

*Felske v. Hirschmann*,
No. 10 Civ. 8899, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ........................................... 4

*FindTheBest.com, Inc. v. Lumen View Tech. LLC,*
20 F. Supp. 3d 451 (S.D.N.Y. 2014) .................................................................................. 7

*Flexborrow LLC v. TD Auto Fin. LLC*,
255 F. Supp. 3d 406 (E.D.N.Y. 2017) ................................................................................ 5

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
67 F.3d 463 (2d Cir. 1995) ................................................................................................. 8

*Hedges v. Town of Madison*,
456 F. App'x 22 (2d Cir. 2012) ........................................................................................ 10

*Hollander v. Pressreader, Inc.*,
No. 19 Civ. 2130, 2020 WL 2836189 (S.D.N.Y. May 30, 2020) ....................................... 7

*In re Lupron Marketing and Sales Practices Litigation*,
95 F.Supp.2d 148 (D. Mass 2003) ..................................................................................... 3

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) ................................................................................................. 8

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017). ........................................................................................... 3

*Nat'l Air Cargo Grp., Inc. v. Maersk Line Ltd.*,
No. 17 Civ. 8659, 2019 WL 4735426 (S.D.N.Y. Sept. 27, 2019) .................................................. 2

*O'Diah v. New York City*,
No. 02 Civ. 274, 2002 WL 1941179 (S.D.N.Y. Aug. 21, 2002) ................................................... 10

*Rajaratnam v. Motley Rice, LLC*,
449 F. Supp. 3d 45 (E.D.N.Y. 2020) ............................................................................................ 10

*Sehgal v. Aggarwal*,
20 Civ. 4577, 2021 WL 3617479 (E.D.N.Y. Aug. 16, 2021) .......................................................... 9

*United States v. Arena*,
428 F.3d 361 (2d Cir. 1999) ............................................................................................................ 6

*United States v. Indelicato*,
865 F.2d 1370 (2d Cir. 1989) .......................................................................................................... 9

*United States v. Zhou*,
428 F.3d 361 (2d Cir. 2015) ........................................................................................................ 6,7

*Zamora v. FIT Int'l Grp. Corp.*,
834 F. App'x 622 (2d Cir. 2020) ..................................................................................................... 3

**PRELIMINARY STATEMENT**

Leon Black cannot escape the essential fact that Guzel Ganieva does not know Josh Harris or Steven Rubinstein, her alleged co-conspirators in Black's fictitious racketeering enterprise. The conclusory and irrelevant allegations in the Amended Complaint cited by Black to show that Ganieva has personal relationships with the RICO co-defendants only underscore the lack of such relationships and that Ganieva, Harris, and Rubinstein never functioned as a unit. Beyond that, Black's opposition to Ganieva's motion to dismiss does not show that Ganieva shared a common purpose with Harris or Rubinstein to violate the law or that the "enterprise" amounts to anything but the (non-existent) racketeering activity he has alleged. Black's opposition also concedes that Ganieva's purported extortion of him in 2015 was unrelated to a racketeering enterprise and he has failed to show how her more recent conduct amounts to a single RICO predicate crime, no less a pattern of racketeering activity. Black, moreover, does not establish that there is any continuous criminal activity, as he must to state a RICO claim.

For these reasons, among others, Black's RICO claims against Ganieva should be dismissed with prejudice, and the Court should not exercise supplemental jurisdiction over Black's state law claims, which should be decided by a New York court.

**ARGUMENT**

**I.   The Amended Complaint Fails to Allege a RICO Enterprise**

   a.   Ganieva has No Relationship with Harris or Rubinstein

Plaintiff has failed to show that Ganieva had any interpersonal relationships with the other members of the alleged enterprise, as required by *Boyle v. United States* 556 U.S. 938, 946 (2009). Black argues (Pl. Mem. 19-21) that he alleges these relationships based on: (i) "Harris and his war cabinet joined forces with Ganieva in a 'larger campaign of destruction'" (citing AC ¶ 8); (ii) "The

RICO Defendants worked together to spread Ganieva's lies to destroy Black" (citing AC ¶¶ 9, 10); (iii) "Harris's war council contacted law firms on Ganieva's behalf" (citing AC ¶ 9); (iv) "Facts from which one could reasonably conclude that Harris sent a lawyer to encourage Ganieva to pursue her claims against Black" (citing AC ¶ 9); (v) "Harris 'funded and actively encouraged' the communication of Ganieva's filings to the press" (citing AC ¶ 138); and (vi) "Rubenstein spoke to the press about Ganieva's case and may have been key to arranging for Ganieva to be interviewed by his favored reporter, Josh Kosman" (citing AC ¶¶ 17, 66).

These allegations do not show any personal relationship between Ganieva and the RICO co-defendants. First, the statements in (i) and (ii) that Ganieva "joined forces" or "worked together" with Harris or his "war cabinet" are conclusions, not facts, and are entitled to no weight. *See Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582, 586 (2d Cir. 2011) (affirming dismissal of RICO claims and holding that "conclusory allegations that the various defendants and others worked together" cannot state a claim); *Nat'l Air Cargo Grp., Inc. v. Maersk Line Ltd.*, No. 17 Civ. 8659, 2019 WL 4735426, at *8 (S.D.N.Y. Sept. 27, 2019) (allegation that companies "worked together" is conclusory and insufficient to plead a conspiracy).

Next, the allegations in (iii) and (iv) *at most* show that Harris wanted Ganieva to have a lawyer to make her claims against Black, but they do not suggest that Ganieva ever accepted—or even knew about—Harris' purported assistance, and thus do not show any relationship between Ganieva and Harris. Indeed, the Amended Complaint suggests the opposite: if Harris and Ganieva knew each other, neither Harris nor his "confederates" would have needed to send investigators to her apartment to suggest the name of a lawyer for her to hire. Further undermining Black's conspiracy theory, Ganieva did *not* hire Alex Spiro, the lawyer suggested by the investigators.

Finally, the assertions in (v) and (vi) that Rubinstein or Harris communicated (or paid for the communication of) Ganieva's litigation filings to the press do not show that Harris or Rubinstein had any relationship with Ganieva. Ganieva's case is a matter of public record, and the filings are available to anyone with an internet connection. Thus, even if Harris or Rubinstein made the media aware of Ganieva's case, all that would suggest is that they wanted people to know about Ganieva's allegations against Black, not that either of them knew Ganieva. Because the Amended Complaint does not contain any well-pleaded facts showing that Ganieva has a personal relationship with Harris or Rubinstein or that they functioned together as a unit, Black's RICO claims against Ganieva are deficient—indeed, they are frivolous—and should be dismissed.

b. <u>Ganieva and the Co-defendants do Not Share a Common Purpose</u>

Black next claims he has satisfied the requirement that the members of the "enterprise" have a common purpose by simply declaring that the defendants want to "take down" and "destroy" him. Pl. Mem. 18. But Black cannot conjure a RICO enterprise merely by asserting that all members of the enterprise wanted to harm him. Under *Boyle*, a RICO plaintiff must establish that the members of the alleged association-in-fact enterprise "share a common purpose to engage in a *particular fraudulent course of conduct* and work together to achieve such purposes." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020) (emphasis added); *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 299 (E.D.N.Y. 2017).[1] Here, the Amended Complaint contains no such allegations of a common purpose. Black claims (falsely) that Ganieva is trying to get his money, but Black does not assert that Harris or Rubinstein have any similar purpose.

---

[1] *In re Lupron Marketing and Sales Practices Litigation*, 95 F.Supp.2d 148 (D. Mass 2003), cited by Black, does not suggest otherwise. *Lupron* holds that persons in the same profession who allegedly benefited from a fraudulent scheme and have a common motive such as "greed" are *not* part of an "enterprise in fact" unless they are acting as a coordinated unit. *Id.* 173-174. Similarly, it is not enough for Black to allege that Ganieva and her co-defendants were generally motivated by animosity toward Black.

Black tries to obscure this difference by arguing that each of the defendants is trying to "cancel" him. But RICO does not criminalize "cancellation" campaigns, "taking down" someone, or even "spreading lies." Rather, the statute applies to enterprises in which the participants act as a unit in pursuit of the *same unlawful goal* through a pattern of racketeering activity. *Zamora.*, 834 F. App'x at 625. While members of a RICO enterprise may share an illegal purpose other than obtaining money (Pl. Mem. 19), Black has not pled that Ganieva shared *any unlawful goal* with Harris or Rubinstein. For this added reason, Black has failed to plausibly plead a RICO enterprise.

        c.   Other Deficiencies in Black's Enterprise Allegations

In Ganieva's main brief, she showed that Black's enterprise allegations are also deficient because the Amended Complaint did not support a conclusion that (i) the enterprise existed separately from racketeering activity Black has alleged or (ii) that the alleged enterprise existed beyond the activities of the individual defendants, both of which are required by courts in the Second Circuit considering civil RICO claims. Gan. Mem. 12-13. Black failed to address these arguments in his opposition and has thus conceded them. *See, e.g., Felske v. Hirschmann*, No. 10 Civ. 8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A Plaintiff effectively concedes a defendant's arguments by his failure to respond to them").[2]

## II. Ganieva Did Not Participate in the Operation of Management of a Racketeering Enterprise

Even if Black had adequately alleged the existence of a RICO enterprise, his RICO claims against Ganieva should still be dismissed because the Amended Complaint does not contain any facts showing that Ganieva participated in the operation or management of the enterprise. Black

---

[2] To the extent Black argues that these requirements no longer exist after *Boyle*, he is incorrect. *See, e.g., Am. Transit Insurance Company v. Bilyk*, 514 F. Supp 3d 463, 473 (E.D.N.Y 2021) (post-*Boyle*, holding that "the alleged 'enterprise' through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity.").

acknowledges (Pl. Mem. 25) that, under *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018), he must "plausibly allege that each defendant played *some* part in directing the enterprise's affairs." *Id.* (internal quotation omitted). But the allegations he cites about Ganieva do not meet this standard.

Black first points to allegations that Ganieva made "common cause" with others in the enterprise, that she formed an "unholy alliance" and "conspired with" Harris and Rubinstein, that she had "confederates," that she "needed support," and that the purported scheme could not have occurred without Ganieva and her co-defendants acting "together." Pl. Mem. 26. But as discussed above, such allegations are mere conclusions, and thus carry no weight. And even if these statements were not conclusory, they relate to whether Ganieva was part of the enterprise, but do not show that Ganieva *directed* the enterprise's affairs.

The remaining allegations cited by Black do not save his claims. He maintains that the enterprise helped Ganieva recruit legal counsel, but that is contradicted by his pleading, which says that Harris' associates were looking for a lawyer who would represent Ganieva (AC ¶ 61), not that she hired anyone they recommended (she did not). Even if the enterprise did help Ganieva find representation, that would not show that she directed the enterprise's affairs. Similarly, Black does not explain how the allegations that reporters were "recruited" to Ganieva's Twitter account (AC ¶ 64) show that Ganieva had any role in making decisions for the enterprise. Finally, that the enterprise allegedly found Ganieva's tweets about Black to be helpful does not show that she participated in its operations or management. *See Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017) (holding that "person may not be held liable merely for taking directions and performing tasks that are necessary and helpful to the enterprise") (citations and internal quotations omitted). For this further reason, Black's RICO claims should be dismissed.

### III. The Amended Complaint Does Not Allege that Ganieva Engaged in a Pattern of Racketeering Activity

Black does not dispute, and thus concedes, that Ganieva's pre-2021 conduct, including the alleged extortion in 2015 and the money Black paid to Ganieva after that, was unrelated to a racketeering enterprise and cannot be a part of a pattern of racketeering activity. Black's RICO claim against Ganieva thus rests on her alleged conduct in 2021, but he hasn't shown how anything she did that year constitutes extortion, wire fraud, or mail fraud. Black's RICO claims also do not sufficiently allege an open-ended pattern of continuing criminal activity.

#### a. Black's Extortion and Wire/Mail Fraud Allegations are Defective

Black argues that Ganieva, Harris, and Rubinstein extorted him in 2021 by "making good on" Ganieva's alleged extortionate threats from 2015, purportedly to make Black pay her more than what he had paid her between October 2015 and March 2021. But there can be no extortion without at least an attempt to wrongly obtain the victim's property (Gan. Mem. 17), and Black has failed to plead that Ganieva engaged in any conduct in 2021 that would amount to such an attempt. Indeed, the Amended Complaint acknowledges that Black *stopped* paying Ganieva in March 2021 after she tweeted about his abuse of her and that neither Ganieva nor her representative made any demand of Black before she tweeted about him or at any time since. AC ¶¶ 2, 15.

Attempting to salvage his claim, Black asserts that Ganieva was "unsatisfied" (Pl. Mem. 28) with what he had previously paid her and that her conduct in 2021 was "designed to show Mr. Black that $100,000 per month was no longer enough to prevent her from making good on her extortionate threats." Pl. Mem. 30. But extortion under the Hobbs Act requires that "a victim is given the option of relinquishing some property immediately or risking unlawful violence resulting in other losses, and he simply *chooses* what he perceives to be the lesser harm." *United States v. Zhou*, 428 F.3d 361, 371 (2d Cir. 2015) (quoting *United States v. Arena*, 428 F.3d 361, 371 (2d

6

Cir. 1999); *id.* ("Choice on the part of the victim is a common theme in all extortion cases.") Here, Ganieva went public with her accusations about Black, and, after he called her a liar and criminal, she sued Black without ever making a demand or giving Black a choice to pay to avoid exposure. Thus, regardless of Black's speculation about Ganieva's "design[s]," her *conduct* in 2021 was not extortion.

Nor has Black plausibly alleged that Ganieva committed wire or mail fraud. Contrary to Black's argument, he has not alleged a scheme to defraud with the particularity required by Fed. R. Civ. P. 9. Black argues that Ganieva committed mail and wire fraud by falsely alleging that he sexually abused her in public statements, court filings, and to the District Attorney. But the Amended Complaint does not specify who allegedly relied on these false statements or how Black has been damaged because of such reliance. While Black argues that he was not required to plead that *he* relied on Ganieva's alleged false statements, Black fails to allege that *anyone* relied on them or how he was damaged because of such reliance, which is a necessary part of his claim. *See FindTheBest.com, Inc. v. Lumen View Tech. LLC,* 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014). Black's fraud allegations also fail because they are no more than a claim that Ganieva defamed him, which courts have consistently held do not state a claim for mail or wire fraud. *See Hollander v. Pressreader, Inc.*, No. 19 Civ. 2130, 2020 WL 2836189, at *4 (S.D.N.Y. May 30, 2020). Black's conclusory assertion that Ganieva intended to profit from her statements by inducing him to pay her more does not convert garden-variety defamation claims into a criminal scheme to defraud.

Black's claims of extortion and wire and mail fraud also fail because they are based on Ganieva's State Court Action. As Ganieva described in her main brief, courts have held that litigation activity cannot be considered a RICO predicate act, even if such litigation is meritless or malicious. Black attempts to side-step the overwhelming authority on this point by noting that *Kim*

7

*v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018), which held that a frivolous, fraudulent, or baseless lawsuit cannot be a RICO predicate act, declined "to reach the issue of whether all RICO actions based on litigation activity are categorically meritless." *Id.* Black argues that *Kim* does not dispose of his RICO claims because he has supposedly pleaded "many in court and out of court actions the RICO Defendants took in furtherance of the enterprise." Pl. Mem 32-33. But the bulk of Black's "extortion" and "fraud" claims against Ganieva is indeed based on her filings in the State Court Action. AC ¶¶ 117(c) & 118(c). Black offers no reason why the balance of his allegations against Ganieva – tweeting about Black's abuse, speaking to a reporter once, and making a complaint to the District Attorney – allow him to turn the State Court Action into predicate RICO crimes. And he fails to cite a single case in which a court has recognized such a claim in comparable circumstances. His RICO claims against Ganieva should thus be dismissed.

      b.  <u>There is No Open-Ended Continuity</u>

The Amended Complaint also does not satisfy the requirement of continuing criminal activity. Black does not dispute that he failed to plead a closed-ended pattern. Black's attempt to meet the continuity requirement through an alleged open-ended pattern of racketeering activity fails for three reasons. First, Black's only allegation of "continuing criminal activity" is that Ganieva is engaged in her lawsuit. But, as discussed above, prosecuting a lawsuit is not a crime, nor does it become a crime because the defendant claims the case is a "sham" and the public filings may be the subject of media reports. Second, the alleged "fraudulent scheme" in this case, which according to Black is intended to obtain his money through a "sham litigation" and press stories, is inherently terminable and does not support a finding of open-ended continuity. *See GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (finding no open-ended continuity because "[e]ven if we assume that defendants' scheme was designed to deprive [company] of its

assets, it is clear that the scheme was *inherently* terminable"); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) (same).[3]

Finally, notwithstanding Black's rhetoric that the fraudulent scheme involves a "laundry list of people" working to "take [him] down" (Pl. Mem. 38), the continuing scheme Black has alleged, to deprive him of his money, involves at most no more than a handful of people and one victim, which does not satisfy the continuity requirement. *Sehgal v. Aggarwal*, 20 Civ. 4577, 2021 WL 3617479, at *4 (E.D.N.Y. Aug. 16, 2021).[4] There is no suggestion that any of the lawyers or public relations professionals that Black contends are part of the enterprise share the goal of depriving Black of his money, and there is no basis for Black's suggestion that other directors of Apollo are "victims" of the enterprise because they have been the subject of media attention.[5]

## IV. The Court Should Not Exercise Supplemental Jurisdiction Over the State Law Claims Against Ganieva

If the Court dismisses Black's RICO claims, the Court should decline to exercise supplemental jurisdiction over the state law claims against Ganieva. Contrary to Black's argument, this is the nearly universal outcome in non-diversity cases in which the only federal claims are

---

[3] *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir. 1989) (en banc), relied on by Black, is distinguishable. *Beauford* involved a scheme to send out thousands of fraudulent mailings in connection with a condominium conversion plan, and the complaint alleged facts sufficient for the court to conclude that the defendants would send similar fraudulent mailings in the coming years. Unlike Black's allegations, the alleged scheme at issue in *Beauford* was wide-ranging and not inherently terminable. *See GICC Cap.*, 67 F.3d at 466 (distinguishing *Beauford* on the same basis).

[4] Contrary to Black's argument, *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989), does not suggest that continuity may be established regardless of the nature of the scheme alleged, or the number of participants or victims. In any case, the more recent decisions in the Second Circuit, as described in the authorities above and in Ganieva's main brief, hold that those factors are indeed relevant to assessing whether a RICO claim shows open-ended continuity.

[5] Ganieva rests on the arguments in her main brief that Black does not plead cognizable RICO damages and that Black's RICO claims are barred by the *Noerr-Pennington* doctrine. Gan. Mem. 22, 24. Black does not dispute that his RICO conspiracy claim should be dismissed if the Court dismisses his substantive RICO claim. *Id.* 23.

dismissed before discovery. *See, e.g., Hedges v. Town of Madison*, 456 F. App'x 22, 24 (2d Cir. 2012). While Black suggests that federal courts "routinely" exercise jurisdiction over state law claims even if a plaintiff's federal claims are dismissed on motion, the cases that he cites do not support such a conclusion. For example, in *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 81 (E.D.N.Y. 2020) and *O'Diah v. New York City*, No. 02 Civ. 274, 2002 WL 1941179, at *14 (S.D.N.Y. Aug. 21, 2002), the courts exercised supplemental jurisdiction only over certain state law claims to dismiss them on legal grounds. Here, the state law claims Black has asserted against Ganieva for defamation, breach of contract, and unjust enrichment are intertwined with Ganieva's claims in the State Court Action, which are in discovery. Having separate courts supervise discovery and trials over two sides of the same claims would waste both courts' time and the parties' resources. Such an approach would also risk inconsistent rulings and undermine principles of comity to state courts. Any purported concern that Black has about the statute of limitations for his defamation claims—which Black does not explain—is a problem of his own making. Black had filed his state law claims against Ganieva in the State Court Action and voluntarily dismissed those claims so he could forum shop and append them to defective RICO allegations. This case never presented any federal question and should never have been filed in federal court. The Court should not exercise supplemental jurisdiction.

## **CONCLUSION**

For the reasons stated above and in Ganieva's main brief, her motion to dismiss Black's RICO claims should be granted, with prejudice, and the Court should decline to exercise supplemental jurisdiction over Black's state law claims.

Dated: May 5, 2022
      New York, New York

By: _____
LAW OFFICE OF
KEVIN MINTZER, P.C.
Kevin Mintzer
Laura L. Koistinen (not yet admitted to the SDNY)
1350 Broadway, Suite 2220
New York, New York 10018
*Attorneys for Defendant Guzel Ganieva*
646-843-8180
km@mintzerfirm.com