UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEON D. BLACK,

                       Plaintiff,

   -against-

GUZEL GANIEVA, WIGDOR LLP,
JOSH HARRIS, and STEVEN RUBENSTEIN,

                       Defendants.

Case No. 21-cv-8824 (PAE)

---

# REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT JOSH HARRIS'S MOTION TO DISMISS THE AMENDED COMPLAINT

 

Paul Spagnoletti
Martine M. Beamon
Matthew Cormack
Lindsay Schare
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
212-450-4000

*Attorneys for Defendant Josh Harris*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     BLACK FAILS TO ALLEGE THE ELEMENTS OF A RICO CLAIM ...........................2

        A.     Black Fails to Allege the Existence of a RICO Enterprise .....................................2

        B.     Black Fails to Allege Harris's Operation or Management of the Enterprise ........................................................................................................6

        C.     Black Fails to Allege Harris Committed Any Predicate Act ..................................6

               i.     Failure to Allege Hobbs Act Extortion ........................................................6

               ii.     Failure to Allege Mail or Wire Fraud ..........................................................7

        D.     Black Fails to Allege a Pattern of Racketeering Activity .......................................8

        E.     Black Fails to Allege a Cognizable RICO Injury ....................................................9

II.     BLACK HAS ABANDONED HIS DEFAMATION CLAIM AS TO HARRIS ..............10

CONCLUSION ................................................................................................................................10

# **TABLE OF AUTHORITIES**

CASES

PAGE(S)

*Beauford v. Helmsley*,
   865 F.2d 1386 (2d Cir. 1989) ................................................................................................ 8

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
   No. 11 Civ. 7801 (PAE), 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ............................ 3, 4

*D. Penguin Bros. v. City Nat'l Bank*,
   587 F. App'x 663 (2d Cir. 2014) ............................................................................................ 5

*Elsevier Inc. v. W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) .................................................................................... 4

*Foster v. 2001 Real Est.*,
   No. 14 Civ. 9434 (RWS), 2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015) ............................... 5

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) ...................................................................................................... 7

*Kimm v. Lee*,
   No. 04 CIV. 5724 (HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14
   (2d Cir. 2006) .......................................................................................................................... 7

*Lazzaro v. Manber*,
   701 F. Supp. 353 (E.D.N.Y. 1988) ......................................................................................... 4

*Motorola Credit Corp. v. Uzan*,
   322 F.3d 130 (2d Cir. 2003) .................................................................................................... 9

*Peralta v. Peralta*,
   No. 16-cv-8890 (ALC), 2018 WL 1384509 (S.D.N.Y. Mar. 16, 2018) .................................. 3

*Procapui-Productores de Camaroes de Icapui Ltda. v. Layani*,
   No. 07-CV-6627 (BSJ), 2008 WL 3338199 (S.D.N.Y. Jan. 11, 2008) ................................... 7

*Sekhar v. United States*,
    570 U.S. 729 (2013) ............................................................................................................... 7

*State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*,
   909 F. Supp. 137 (S.D.N.Y. 1995) ......................................................................................... 4

*Toussaint v. City of New York*,
   No. 19 CIV. 1239 (AT), 2021 WL 4429316 (S.D.N.Y. Sept. 27, 2021) ................................. 5

*United States v. Indelicato*,
   865 F.2d 1370 (2d Cir. 1989) .................................................................................................. 9

S<span></span>TATUTES

18 U.S.C. § 1962(d) ................................................................................................................. 10

**PRELIMINARY STATEMENT**

Black's Opposition ("Opp.") does nothing to address the myriad reasons why Black's Amended Complaint must be dismissed, and only further demonstrates the utter lack of merit of this frivolous RICO litigation.[1] Incredibly, Black continues to advance his false narrative that Harris is responsible for his problems, even though Black admits that (i) an investigation at Apollo exposed that he maintained a close relationship with, and made over $150 million in payments to, Jeffrey Epstein for "tax" advice; and (ii) Ganieva had already contacted Black with her own lawyers in 2020, well before Black supported Rowan for CEO of Apollo in early 2021. Black's apparent issue with Harris is that Harris acted in Apollo's best interests when he responded to the crisis Black created.

Harris's opening brief established Black's failure to plead that Harris and Ganieva (or their associates) ever knew, met, or spoke to each other (they did not). In response, Black nonetheless asks the Court to infer that Harris acted on behalf of *Ganieva* and secured her representation from *Wigdor* (he did not)—based on vague allegations that an unnamed individual, acting for an "unidentified shadowy" faction at Apollo, contacted Quinn Emanuel about the ability to be adverse to Black in early 2021. Not only does the Amended Complaint not support any of this speculative invention, but Black's own Opposition disproves it. Black cites text messages establishing that Ganieva and Wigdor were in touch months *before* Harris supposedly began to reach out to lawyers. It is simply not possible that, in 2021, Harris connected Ganieva to the same lawyers with whom she was already discussing her claims the

---

[1] All capitalized terms and abbreviations used herein and not otherwise defined shall have the meanings ascribed to them in Harris's opening brief ("Mot.").

year before.[2]  Lacking anything else to hold together a RICO enterprise of strangers, Black attempts to resuscitate his former allegation that Harris "funded the Enterprise" even though in the Amended Complaint Black *abandoned* the theory that Harris funded Ganieva's state case, after discovery in that proceeding showed those allegations were untrue.  Black's ever-shifting tales show he has no claim—each time he attempts to fill a hole in his case, he creates another.

Black's attempt to address the multiple other fatal defects of his RICO claims fares no better.  As discussed below, Black has no coherent response to Harris's arguments that the Amended Complaint fails to adequately allege any element of a RICO claim.  Moreover, after Harris pointed out Black's failure to allege Harris made a single defamatory statement, Black effectively abandoned his defamation claim.  In a 63-page Opposition, Black still does not come close to alleging an actionable claim against Harris.  In these circumstances, there is no basis for a further opportunity to replead, and the Court should dismiss Black's meritless claims with prejudice.

## ARGUMENT

**I.      BLACK FAILS TO ALLEGE THE ELEMENTS OF A RICO CLAIM**

     **A.      Black Fails to Allege the Existence of a RICO Enterprise**

Black does not dispute that to plead a RICO enterprise he must allege actual relationships between the defendants.  (Opp. at 19.)  The problem for Black is that his Amended Complaint offers nothing but suspiciously worded conjecture in an attempt to link Harris to Ganieva.  Black alleges, for example, that Harris's associate reached out to Spiro "on behalf of a faction at

---

[2] As Harris pointed out in his opening papers (Mot. at 19 n.14), Black's allegation that he stepped down at Apollo out of concern that a *New York Post* story about Ganieva would damage him (AC ¶ 67) is likewise implausible because Black had *already announced he was stepping down* from his positions at Apollo weeks *before* that article was printed.  The Opposition neither retracts nor attempts to explain this allegation.

Apollo" to ask if Spiro could be "adverse to Leon Black" and that "[t]he potential client" was "later identified" as Ganieva. (AC ¶ 61.) Black further alleges that the search for law firms "ended when [she] retained" Wigdor. (*Id.* ¶¶ 60-61.) Such vague and rank speculation that Harris connected Ganieva to Wigdor—in addition to being pure fiction—simply cannot support a reasonable inference that Harris and Ganieva worked together to operate a RICO enterprise (they did not).³ *See Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) (failure to "plead with any specificity . . . the mechanics of the alleged ongoing working relationship among defendants is fatal"); *see also Peralta v. Peralta*, No. 16-cv-8890 (ALC), 2018 WL 1384509, at *6 (S.D.N.Y. Mar. 16, 2018) (deeming allegation that one defendant was the "ringleader" insufficient).⁴

If this were not enough, Black's Opposition actually disproves his own flawed conspiracy theories. Black now claims, for example, that newly discovered text messages from the state court proceeding establish that Wigdor was in communication with Ganieva as early as October 2020 (Opp. at 20-21 (citing ECF No. 92))—months *before* Harris's "associates" are alleged to have attempted to secure representation for Ganieva in 2021. Black alleges no action by Harris in 2020. Simply put, neither Harris nor his associates could have connected Ganieva to Wigdor in 2021 if Ganieva was already communicating with Wigdor in October 2020.

Black's suggestion that he should be excused from alleging interpersonal relationships because "[c]onspiracies are inherently secretive, and the particulars are often known only to

---

³ Nor does Black's allegation that unnamed "investigators" recommended that Ganieva hire Spiro (AC ¶ 62) plead a relationship between Harris and Ganieva.

⁴ Black also purports to link Harris to Ganieva by stating Harris "funded the dissemination of Ganieva's claims to the press" (which he did not) (Opp. at 20), but dissemination of court filings does not establish a relationship to the filer.

3

insiders" (Opp. at 21) is meritless.  As an initial matter, unlike most RICO plaintiffs, Black has had the benefit of subpoena power and discovery in the state court litigation against Ganieva to search for evidence of his fantastical conspiracy for months (which produced no evidence supporting Black's claims against Harris).  Moreover, the cases Black cites in support of his position (both of which concern fraud allegations and substantially more developed pleadings) do not, in fact, excuse a RICO plaintiff from pleading that defendants actually worked together.[5]  Those decisions also predate *Twombly*, which confirmed that alleging "nothing more than parallel conduct by separate actors" is insufficient.  *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (stating "a complaint pleading a RICO violation cannot be held to a lesser standard" than the conspiracy claims at issue in *Twombly*).

      Black's claim that he need not plead the enterprise's hierarchy and organization after *Boyle* (Opp. at 23) is equally infirm.  As this Court has observed, "*Boyle* [did] not change the settled understanding" that a RICO plaintiff must allege that a putative enterprise's "members functioned as a unit."  *Cont'l Petroleum Corp.*, 2012 WL 1231775, at *5.  Indeed, courts in this Circuit routinely analyze the "hierarchy, organization, and activities" of the alleged association in assessing that requirement.  *Id.*

      Black's argument that Harris "headed up and funded" the enterprise (Opp. at 23) also fails because, among other things, it is entirely conclusory and appears to be based on allegations

---

[5] *See State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 141 (S.D.N.Y. 1995) (excusing inability to list all of defendants' agents in light of detailed allegations about scheme to defraud); *Lazzaro v. Manber*, 701 F. Supp. 353, 373 (E.D.N.Y. 1988) (complaint contained "detailed factual allegations" sufficient to provide general circumstances, content, and perpetrator of each fraudulent representation).

that Black abandoned when he amended his complaint.[6] The only "funding" allegation concerning the alleged enterprise that remains in Black's Amended Complaint relates to Harris's alleged funding of PR efforts (i.e., publicizing Ganieva's allegations) which, as noted above, do not plausibly establish any connection to Ganieva or Wigdor or his alleged role *vis-à-vis* Ganieva or Wigdor in the alleged RICO enterprise. Moreover, Black's plea that this Court should focus on what the enterprise allegedly "does" as opposed to its "structure" (Opp. at 23) fares no better. There is simply no conduct alleged that provides any clarity on how the defendants allegedly acted together, much less that they "formed and organized a separate entity . . . on whose behalf they acted." *Foster v. 2001 Real Est.*, No. 14 Civ. 9434 (RWS), 2015 WL 7587360, at *4 (S.D.N.Y. Nov. 24, 2015) (internal quotation marks omitted).

Finally, Black's claim that defendants had a "common purpose" because they shared the "common goals of spreading lies about and injuring Black" (Opp. at 19) elides Harris's and Ganieva's distinct objectives as alleged by Black. According to the Amended Complaint, Ganieva seeks to extort money from Black (*see* AC ¶ 104), while Harris allegedly seeks to harm Black's reputation (*see id.* ¶ 27). That the defendants' alleged objectives may entail similar alleged effects on Black does not mean defendants share a "common purpose" within the meaning of the RICO statute. At most, the Amended Complaint alleges defendants were acting to advance their own distinct self-interests, not that they were acting "on behalf of the enterprise." *See D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (allegations "that [defendants] worked together in some respects" failed to create a "plausible inference that they did so to advance the political agenda of their purported 'enterprise' or for

---

[6] ECF No. 1, Compl. ¶ 26 (alleging a John Doe was covering "the cost(s) for the Flack(s), litigation costs, and the compensation that Ms. Ganieva would have received"). *See Toussaint v. City of New York*, No. 19 CIV. 1239 (AT), 2021 WL 4429316, at *2 (S.D.N.Y. Sept. 27, 2021) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect.").

5

any shared purpose").

### B. Black Fails to Allege Harris's Operation or Management of the Enterprise

The Amended Complaint fails to allege that Harris engaged in the operation or management of the enterprise. (Mot. at 13.) The Opposition attempts to cure this defect by relying largely on allegations that concern Harris's operation or management of *Apollo*.[7] (Opp. at 24-25.) There is no question that Harris, who was running Apollo's day-to-day operations in early 2021, played the chief role in Apollo's operation and management—but that says nothing about his role with respect to the alleged enterprise. Moreover, even crediting Black's now-disproven assertion that Harris's phantom "associate" tried to identify a lawyer for Ganieva, making an introduction to an attorney without more does not come close to constituting operation or management of a RICO enterprise. Nor does publicizing the alleged enterprise's exploits establish operation or management of the enterprise itself.

### C. Black Fails to Allege Harris Committed Any Predicate Act

The Opposition does not cure Black's failure to allege any predicate acts by Harris.

#### i. Failure to Allege Hobbs Act Extortion

Black misrepresents Harris's position on the Hobbs Act. Harris did not argue, as Black claims, that Harris's alleged conduct (i.e., inquiring as to a lawyer's conflicts and paying a public relations firm to publicize Ganieva's allegations) does not constitute extortion because it was not "inherently unlawful." (Opp. at 29.) Rather, Harris's alleged conduct does not constitute extortion because it does not entail the obtaining of property from Black, with his consent,

---

[7] In the Opposition, Black continues to rely on allegations concerning corporate governance discussions that took place at Apollo in 2021, including Harris's alleged unremarkable use of the widely used messaging platform Slack (Opp. at 21-22), but those discussions are not alleged to have anything to do with the alleged racketeering scheme involving Ganieva (*see* Mot. at 5-6).

"induced by wrongful use of actual or threatened force, violence, or fear." (Opp. at 28.)

As discussed, there are no well-pleaded allegations establishing that Harris participated in Ganieva's litigation against Black. Moreover, it is well settled that litigation does not constitute extortion as a matter of law.[8] Nor is Black's claim that "Harris sought to push out Black from his position" at Apollo (Opp. at 31) capable of establishing extortion. Even assuming those roles were Black's property that he had the power to transfer or sell (they were not), *see Sekhar v. United States*, 570 U.S. 729, 736 (2013), Black had already agreed to step down by the time the supposed extortionate conduct took place. Nor does Black say how Harris's supposed efforts to "destroy" Black (Opp. at 31) resulted in *Harris* obtaining anything.

      ii.      <u>Failure to Allege Mail or Wire Fraud</u>

Incredibly, the Opposition does not dispute that the Amended Complaint fails to allege that Harris had the requisite *intent* to defraud anyone. (Mot. at 17.) For this reason alone, Black cannot allege mail or wire fraud and his RICO claim should be dismissed with prejudice.

Black's fraud allegations are also deficient because, as explained in Harris's opening brief, the Amended Complaint fails to allege with particularity any mail or wire fraud scheme. (Mot. at 16.) Nothing in the Opposition sheds further light on how the supposed scheme worked, or Harris's particular role in it. *Procapui-Productores de Camaroes de Icapui Ltda. v. Layani*, No. 07-CV-6627 (BSJ), 2008 WL 3338199, at *2 (S.D.N.Y. Jan. 11, 2008) (plaintiff must

---

[8] Black's attempt to distinguish *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018), which held that litigation conduct is insufficient to plead extortion, by claiming Black's extortion allegations "are not limited to the sham litigation" is wholly unpersuasive. (Opp. at 32.) The only other "extortionate" conduct Black has alleged relates to the publication of allegedly defamatory statements, which do not entail the requisite "force, violence, or fear" and do not constitute RICO predicates as a matter of law. *See Kimm v. Lee*, No. 04 CIV. 5724 (HB), 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14 (2d Cir. 2006) ("[I]t is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations"). *Kim* is directly on point and forecloses Black's extortion claims.

"particularize and prove each defendant's participation"). And Black does not even attempt to address the cases cited by Harris establishing that fraudulent litigation and defamatory statements like those alleged by Black do not and cannot constitute mail or wire fraud. (Mot. at 16-17.)

Black says that he need not identify specific mails or wires if the use of the mails or wires was incidental to the fraudulent scheme (Opp. at 34-35), but that does not excuse him from alleging *any* use of the mails and wires. Moreover, Black cannot cure these pleading defects by pointing to allegations that Harris communicated over Zoom and Slack about Apollo corporate governance issues. (*See* Opp. at 36.) Black does not explain how any of these purported communications related to the allegedly fraudulent scheme involving Ganieva.

### D. Black Fails to Allege a Pattern of Racketeering Activity

Black does not dispute, and therefore concedes, that he fails to allege closed-ended continuity. Accordingly, he must establish open-ended continuity to state a RICO claim.[9] Once again, Black's Opposition utterly fails to establish that he has met this pleading obligation.

Black argues open-ended continuity is established because he will remain a target (*see* Opp. at 37), but the sole paragraph in the Amended Complaint addressing continuing "criminal" activity makes no reference to Harris at all (*see* AC ¶ 122), and Black does not point to a single allegation that plausibly suggests Harris poses a "continued" threat.[10] Indeed, there is no well-pleaded allegation that Harris has been involved in any respect in Ganieva's litigation. In addition, Black is actively defending against Ganieva's claims in state court. If they are a sham, Black will vindicate himself in that forum (where he admits he will receive a fair hearing) and

---

[9] Black also does not dispute he fails to allege the predicate acts are related. (Mot. at 20 n.15.)

[10] *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir. 1989) (en banc), cited by Black (Opp. at 37-38), concerned a factually dissimilar scheme that involved thousands of fraudulent mailings to hundreds of victims, which led to the inference that defendants would defraud additional victims in the future. There is no similar inference to be drawn from the allegations here.

the alleged scheme will end.  (*See* 3/10/2022 Tr. at 36.)

Defendants also cited well-established law that an alleged scheme involving a single, narrow purpose and one or few participants directed towards a single victim does not establish continuity.  (*See, e.g.*, Mot. at 18-19; Opp. at 38.)  Black responds by citing *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (en banc), a mafia case in which the court held that continuity was not precluded simply because *three close-in-time murders* were part of the same scheme.  *Id.* at 1384-85.  *Indelicato* is inapposite, and defendants' cases are on point.

### E. Black Fails to Allege a Cognizable RICO Injury

In the Opposition, Black pursues only two categories of damages—his state court legal fees and alleged loss of business opportunities.  (*See* Opp. at 39.)  With respect to his legal costs, Black ignores that Harris cannot be held responsible for the costs of defending Ganieva's state lawsuit in the absence of any well-pleaded allegation that Harris filed, or is otherwise directing, that litigation.  (Mot. at 22.)  Black's argument that he need not identify the "dollar-and-cent amount" of his litigation costs misses the point made in Harris's opening brief that Black's legal fees remain insufficiently "clear and definite" to claim as the basis for a RICO injury.  *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003).  Unlike the cases cited by Black, which involved legal costs that were attributed to completed proceedings (Opp. at 40), Black's own legal fees are hardly "clear and definite."  Among other things, Black's state court litigation against Ganieva is ongoing, and Black is seeking reimbursement of his legal fees in that case.  (*Ganieva v. Black*, No. 155262/2021 (Sup. Ct. N.Y. Cty.), NYSCEF No. 36 at 72.)

Black likewise argues with respect to his allegedly lost business opportunities that he is not required to plead with "particularity" or quantify his damages.  (Opp. at 40.)  He ignores that merely referring to speculative lost business opportunities is insufficient.  (*See, e.g.*, Mot. at 22.)  Black cannot pursue damages for lost business opportunities without alleging in non-conclusory

terms even a single opportunity lost as a result of Harris's alleged conduct. Regardless, it is clear that Black's own misconduct is what caused him to lose these supposed opportunities.[11]

## II. BLACK HAS ABANDONED HIS DEFAMATION CLAIM AS TO HARRIS

In the Opposition, Black essentially abandons his defamation claim against Harris, and now says that "Harris aided and abetted . . . defamation by funding and encouraging it." (Opp. at 44.) But the Amended Complaint does not assert a claim for aiding and abetting defamation.[12]

In addition, Black says that Section 74 is not applicable to Harris, but does nothing more than point to conclusory allegations that Harris played a role in "coordinating" Ganieva's state court pleadings, and "had no good faith basis to believe [the allegations] were true." (Opp. at 58.) In the absence of a single well-pleaded allegation that Harris and Ganieva are more than strangers, Black has no basis to assert Section 74 immunity does not apply.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice. Black has had multiple opportunities to plead his case and, in a 63-page Opposition, still does not identify facts that could cure the Amended Complaint's multiple and significant defects.[13] Any further attempt at repleading would only provide Black a platform from which to advance yet another iteration of these falsehoods designed to distract from his own problems at Harris's expense.

---

[11] Black does not dispute, and therefore concedes, that the Amended Complaint fails to allege a RICO conspiracy claim under 18 U.S.C. § 1962(d). (Mot. at 23.)

[12] The allegations in the Amended Complaint do not support an aiding and abetting claim. Black's threadbare allegations that Harris "coordinated" with Ganieva on her state court filings and "funded and actively encouraged" communications of those filings to the press (Opp. at 55-56) are too vague and conclusory to establish that Harris substantially assisted anyone in the making of any allegedly defamatory statement.

[13] Nor did Black's proposed Second Amended Complaint (*see* ECF No. 105-1), which the Court has already rejected (ECF No. 108).

| | |
|---|---|
| Dated: May 5, 2022<br>New York, New York | Respectfully submitted,<br><br>**DAVIS POLK & WARDWELL LLP**<br><br>By: */s/ Paul Spagnoletti*<br>Paul Spagnoletti<br>Martine M. Beamon<br>Matthew Cormack<br>Lindsay Schare<br>450 Lexington Avenue<br>New York, New York 10017<br>212-450-4000<br><br>*Attorneys for Defendant Josh Harris* |