**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEON D. BLACK,

 Plaintiff,

 v.

GUZEL GANIEVA, WIGDOR LLP,
JOSH HARRIS, and STEVEN RUBENSTEIN,

 Defendants.

Case No.: 21-cv-8824 (PAE)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT STEVEN RUBENSTEIN'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.    Black Cannot Plead A RICO Enterprise .................................................................. 1

II.   Black Cannot Plead Rubenstein Conducted The Affairs Of Any Enterprise ............ 3

III.  Black Cannot Plead Rubenstein Engaged In Any Racketeering Activity ................. 4

IV.  Black Cannot Plead A Pattern of Racketeering Activity ........................................... 7

V.   Black Cannot Plead Cognizable Injury..................................................................... 7

VI.  Black Cannot Plead A Viable Defamation Claim Against Rubenstein ..................... 8

VII. Black's Claims Should Be Dismissed With Prejudice ............................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angermeir v. Cohen*
14 F. Supp. 3d 134, 140 (S.D.N.Y. 2014).................................................................8

*Bangl. Bank v. Rizal Commercial Banking Corp.*,
No. 19 Civ. 983, 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020) .............................2

*Bankers Trust Co. v. Rhoades*
859 F.2d 1096, 1099 (2d Cir. 1988)........................................................................8

*D. Penguin Bros. v. City Nat'l Bank*,
587 F. App'x 663 (2d Cir. 2014) .........................................................................1, 2

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018)......................................................................................4

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
20 F. Supp. 3d 451 (S.D.N.Y. 2014)........................................................................6

*Grace Int'l Assembly of God v. Festa*,
797 F. App'x 603 (2d Cir. 2019) .............................................................................7

*Hello I Am Elliot, Inc. v. Sine*,
No. 19 Civ. 6905, 2020 WL 3619505 (S.D.N.Y. July 2, 2020) .............................10

*Jordan v. Pierre*,
No. 18 Civ. 8528, 2021 WL 2581444 (S.D.N.Y. June 22, 2021)..............................2

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018)......................................................................................5

*Rajaratnam v. Motley Rice, LLC*,
449 F. Supp. 3d 45 (E.D.N.Y. 2020) ......................................................................6

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)..................................................................................................3

*Ritchie v. N. Leasing Sys., Inc.*,
No. 12 Civ. 4992, 2016 WL 1241531 (S.D.N.Y. Mar. 28, 2016), *aff'd*, 701 F.
App'x 45 (2d Cir. 2017)...........................................................................................5

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008).....................................................................................7

*Tsinberg v. City of New York*,
No. 20 Civ. 749, 2021 WL 1146942 (S.D.N.Y. Mar. 25, 2021) ............................................10

*U.S. v. Indelicato,*
865 F.2d 1370, 1371, 1384 (2d Cir. 1989).................................................................................7

*United States v. Turkette*,
452 U.S. 576 (1981).................................................................................................................1

*Weir v. Cenlar FSB*,
No. 16 Civ. 8650, 2018 WL 3443173 (S.D.N.Y. July 17, 2018) ..............................................2

Nothing in Black's opposition brief cures the fact that the allegations in his amended complaint are by turns too thin, too conclusory, and too incomprehensible to plausibly state any claim against Rubenstein. The myriad pleading failures of Black's civil RICO claim—each of which provides an independent basis for dismissing that claim—confirm that Black is improperly attempting to federalize state-law defamation allegations. And those defamation allegations, in addition to having their own pleading deficiencies, run smack into New York's fair reporting privilege. Rubenstein cannot know why Black chose to drag him into this sordid dispute between Black and Ganieva. But Rubenstein respectfully submits that this Court should return him to where he belongs: the sidelines. Black's claims against Rubenstein should be dismissed with prejudice.

## I.      Black Cannot Plead A RICO Enterprise

Black does not even attempt to argue that he has pleaded "an entity separate and apart from the pattern of activity in which it engages," as required by *United States v. Turkette*, 452 U.S. 576, 583 (1981). Rather, Black incorrectly suggests that *Boyle* silently overturned decades of long-standing precedent—including, apparently, the Supreme Court's own decision in *Turkette*. Opp., Dkt. 101, at 23 (attempting to distinguish Defendants' cited cases only on the basis that they are "pre-*Boyle*"). *Boyle* did no such thing. To the contrary, even after *Boyle*, the Second Circuit and other courts have reaffirmed and applied *Turkette*'s instruction that a civil RICO claim fails when the plaintiff cannot establish that the supposed enterprise existed "separate and apart from the pattern of activity in which it engages." *E.g.*, *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) ("Plaintiffs' complaint gives no basis for inferring that these two defendants in isolation formed 'an ongoing organization, formal or informal,' let alone a coherent 'entity separate and apart' from the alleged fraudulent scheme." (citing *Turkette*, 452 U.S. at

583)).[1] Because Black can identify no association whatsoever among the Defendants other than their participation in the supposed scheme, Black fails to plead a RICO enterprise. *See* Mem. of Law in Supp. of Def. Rubenstein's Mot. to Dismiss ("Rubenstein MTD"), Dkt. 89, at 5-6.

Neither can Black plead a common purpose in any plausible, nonconclusory fashion. The suggestion that the putative enterprise's common purpose was to "harass and harm Black," Opp. at 18, is "little more than a naked assertion devoid of further factual enhancement" that is insufficient to state a claim. *D. Penguin Bros.*, 587 F. App'x at 668 (internal quotations and citation omitted). Black's opposition does nothing to address the inherent incoherence and internally contradictory nature of his allegations regarding the supposed enterprise's allegedly common purpose. *See* Rubenstein MTD at 6 & n.2. And Black fails to explain why Rubenstein would share the supposed common purpose to "harass and harm Black." *See D. Penguin Bros.*, 587 F. App'x at 668 (affirming dismissal of a RICO claim against defendants as to which there was no plausible explanation of why they "would share the goal" of the supposed enterprise). Indeed, there are not even any allegations of Rubenstein's intent in the amended complaint—a fact underscored by Black's citation to allegations only of "Harris's and Ganieva's personal motivations." Opp. at 18. This absence of "specific factual allegation[s] about [Rubenstein's] intent" is also fatal to Black's claim. *See D. Penguin Bros.*, 587 F. App'x at 668.

Black's opposition likewise fails to identify any adequate allegation of a relationship between Rubenstein and the supposed enterprise. Black's vague allegation that Rubenstein was

---

[1] *Accord Jordan v. Pierre*, No. 18 Civ. 8528, 2021 WL 2581444, at *4 (S.D.N.Y. June 22, 2021) ("In this case, the alleged enterprise is described solely in terms of the alleged scheme against the plaintiff . . . . As a result, it is not 'an entity separate and apart from the pattern of activity in which it engages.'" (citing *Turkette*, 452 U.S. at 583)); *Bangl. Bank v. Rizal Commercial Banking Corp.*, No. 19 Civ. 983, 2020 WL 1322275, at *8 (S.D.N.Y. Mar. 20, 2020) ("Critically, a requirement in this Circuit is that the enterprise engages in a course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves." (cleaned up)); *Weir v. Cenlar FSB*, No. 16 Civ. 8650, 2018 WL 3443173, at *8 (S.D.N.Y. July 17, 2018) ("The Amended Complaint lacks even a conclusory allegation as to how the alleged enterprise has an existence apart from the pattern of racketeering activity . . . .").

part of some ill-defined "war cabinet" convened to "destroy Mr. Black," *see* Opp. at 20, just substitutes the conclusory words "war cabinet" for the obviously deficient allegation that Rubenstein was part of the "enterprise." And while Black's opposition tries to concoct a relationship between Rubenstein and Ganieva, there is no well-pleaded allegation to that effect in the amended complaint (because, of course, Rubenstein has had no contact or association with Ganieva whatsoever). The accusation that Rubenstein "spoke to the press about Ganieva's case," *id.*, even if it were true, would not establish any relationship with Ganieva herself. And while Black invokes an interview between Ganieva and the Post*, id.*, he does not and cannot cure the deficiency in pleading that Rubenstein was actually involved in any way, *see* Rubenstein MTD at 15-16. Black conspicuously says only that Rubenstein "***may*** have been key" to arranging Ganieva's interview. Opp. at 20 (emphasis added). This is pure speculation. Black cannot even come right out and allege that Rubenstein was involved, because Black knows he has no good-faith basis for doing so.

Black's allegations of a RICO enterprise remain entirely deficient. His RICO claim can and should be dismissed on this basis alone.

## II.    Black Cannot Plead Rubenstein Conducted The Affairs Of Any Enterprise

Black's opposition confirms that the amended complaint also fails to allege Rubenstein had "some part in directing" the supposed enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 177-85 (1993). The most Black can point to are generic, conclusory allegations that Rubenstein "conspired" with Harris and Ganieva. Opp. at 25. Black highlights his allegation that the scheme "could not have occurred" without Rubenstein*, id.*, but offers no factual allegations as to why that is the case or how that amounts to direction or control of the supposed enterprise. Black also points to the (entirely untrue) allegation that "Rubenstein and his team planted a hit job story" against an Apollo board member. *Id.* There is no allegation, however, that the story at issue was Rubenstein's

idea or placed at his direction (because, of course, it wasn't). Indeed, the amended complaint does not even explain what is supposedly false about the article, nor does it include any factual allegations about what was Rubenstein's supposed involvement with the article or any of its supposed-but-unspecified falsehoods, nor does it explain how this conduct could possibly amount to racketeering activity. *See* Rubenstein MTD at 15.

Black also entirely ignores the cases from this District making clear that even providing "essential" services to an enterprise does not amount to directing or controlling its affairs, as is required to state a claim. *See* Rubenstein MTD at 8-9 (discussing the *Vazquez* and *Democratic Nat'l Comm.* decisions on this point). While Black invokes *D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) (cited Opp. at 25), the limited allegations of Rubenstein's conduct, which consist of his allegedly contacting the press about already-public information, are a far cry from the active participation in fraudulent business or property transactions alleged in that case.

Given Black's continued inability to allege that Rubenstein directed or controlled anything about the supposed enterprise, his RICO claim against Rubenstein should be dismissed.

## III. Black Cannot Plead Rubenstein Engaged In Any Racketeering Activity

Black still cannot come close to alleging that Rubenstein engaged in any racketeering activity, providing yet another basis for dismissing his civil RICO claim.

<u>No Hobbs Act Extortion</u>. Black cannot get around the fundamental flaw in his extortion claim: it simply makes no sense. *See* Opp. at 28-29. Black recognizes that any ability Ganieva had to "extort" Black ended when she made her accusations public in March 2021. Amended Complaint ("AC"), Dkt. 46, ¶ 2 (calling Ganieva's public revelations "economically irrational and inexplicable"). The "threat" of going public was the only threat she had to wield. And because Rubenstein's supposed involvement in the alleged extortion relates only to the now-public aspects of Ganieva's conduct (again, even assuming the truth of these entirely scurrilous accusations), AC

¶ 117(d), the amended complaint does not and cannot implicate Rubenstein in any extortion at all.

In any event, Black does not and cannot dispute that litigation activity standing alone cannot constitute extortion. *See generally* Rubenstein MTD at 9-10; *see also Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) ("[W]here, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act."); *Ritchie v. N. Leasing Sys., Inc.*, No. 12 Civ. 4992, 2016 WL 1241531, at *13 (S.D.N.Y. Mar. 28, 2016), *aff'd*, 701 F. App'x 45 (2d Cir. 2017) ("The law is clear that litigation—even if frivolous or malicious—cannot constitute extortion."). While Black tries to argue that the alleged scheme involved other nonlitigation activity, he cannot actually point to any alleged "out-of-court threats" in which *Rubenstein* was supposedly involved. Opp. at 33. Again, the *only* supposedly extortionate conduct alleged against *Rubenstein* in the entire complaint refers to dissemination of litigation materials, which cannot be extortionate, AC ¶ 117(d)(i), and telling the press that the DA had opened an investigation into Black's conduct, which even Black recognizes is necessarily true, *id.* ¶ 117(d)(ii); *id.* ¶ 99 ("[T]he Manhattan District Attorney as a matter of policy is obligated to examine every complaint of sex abuse").

There is, moreover, nothing Rubenstein is alleged to have done other than assist in spreading alleged falsehoods about Black. Black cites to various allegations about the motives or goals of various unspecified members of the supposed enterprise, such as ousting Black as CEO of Apollo or extracting money from him. *See* Opp. at 31, 33. But even putting aside how few of those allegations actually implicate Rubenstein, the alleged mechanism for harming Black is, top-to-bottom, the alleged dissemination of false information about him or other Apollo board members (which, in fact, Rubenstein never did). Courts have repeatedly held that such allegations cannot ground Hobbs Act or RICO claims. *See* Rubenstein MTD at 11.

No Mail or Wire Fraud. Black largely does not respond to Rubenstein or the other Defendants' arguments as to mail and wire fraud other than to say that he was not required to plead specific fraudulent statements provided he can plead use of the mails or wires in a broader fraudulent scheme. Opp. at 34-36. Even accepting that false premise, however, the amended complaint fails to plead with particularity any such broader fraudulent scheme. Again, the amended complaint does not explain who is supposedly being defrauded, or how. While Black's opposition now says that the alleged fraudulent scheme is a "scheme to defraud Black," *id.*, it does not explain what that possibly means. While Black's opposition attempts to implicate Rubenstein in an effort to "recruit the most aggressive counsel" for Ganieva, Black's complaint does not actually say as much. *See* AC ¶ 59 (cited Opp. at 36) (only vaguely referring to the "Enterprise" and not Rubenstein individually). In any event, Black has no explanation for or authority to support the proposition that "recruiting counsel" in any way constitutes fraud.

Black's allegations of mail and wire fraud thus fare no better than his allegations of extortion. To the extent Black is alleging Ganieva's litigation against him constitutes the supposed fraud, the claim is squarely foreclosed. *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) ("[C]ourts have consistently refused to recognize as wire or mail fraud even litigation activities that rise to the level of malicious prosecution simply because the mail or wires were used."). Ultimately, the only alleged wrongdoing is the supposed dissemination of false information about Black, which also cannot ground a claim for mail or wire fraud. *See* Rubenstein MTD at 12-13; *see also Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73 (E.D.N.Y. 2020) ("Just as courts are loath to permit litigation activities to be shoehorned into civil RICO predicates, courts express similar reticence towards attempts to recast defamatory statements as mail and wire fraud violations. The mere fact that a statement is negative or even

defamatory . . . does not make it fraudulent." (internal quotations and citation omitted)).

## IV.    Black Cannot Plead A Pattern of Racketeering Activity

Black likewise fails to plead a "pattern" of racketeering activity. Black's opposition entirely fails to address the cases cited by Rubenstein (and other Defendants) making clear that inherently limited schemes, like the one Black alleges against him, cannot have the "continuity" required to establish a "pattern" of racketeering activity. Rubenstein MTD at 13-14. Black still does not plausibly allege any "victim" of the alleged scheme other than himself; and even Black's additional, vague (and false) allegations about "hit pieces" about two Apollo directors do not amount to racketeering at all, let alone anything close to a "pattern" of racketeering activity.

Black's allegations are nothing like those at issue in *Beauford* (cited Opp. at 37), which involved *thousands* of victims. Nor is this case anything like *Indelicato* (cited Opp. at 38), which involved three murders orchestrated by the governing "Commission" of the La Cosa Nostra organized-crime families that had "existed for decades," making "clear beyond peradventure that there was a threat of continuing racketeering activity." 865 F.2d 1370, 1371, 1384 (2d Cir. 1989).

More recent cases from this Circuit confirm that narrow, terminable schemes with limited alleged victims, like the one Black alleges, cannot constitute a "pattern" of racketeering activity. *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605-06 (2d Cir. 2019) (scheme that, "[a]t bottom," has a "limited goal" of harming just a single victim or even a "few victims" does not satisfy the requirement of closed-ended continuity); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) ("inherently terminable" scheme does not pose threat of continued criminal activity, thereby precluding the plaintiff from alleging open-ended continuity). Black's failure to plead this element provides yet another basis for dismissing his RICO claim.

## V.    Black Cannot Plead Cognizable Injury

Black does not deny that the bulk of his allegations entail alleged reputational harms that

are not cognizable under RICO. *See* Rubenstein MTD at 16–17. While Black alludes to "loss of business opportunities," Opp. at 39, he does not actually identify any business opportunities lost or explain how loss of such opportunities is anything other than a variation on the sort of reputational damage that he knows cannot constitute RICO injury.

So, instead, Black fixates on alleged "legal fees incurred fighting frivolous lawsuits," *id.*; but Black's cited cases look nothing like this one. When courts have found legal fees to constitute cognizable RICO injury, the litigation activity at issue was part and parcel of a broader fraudulent scheme. For example, in *Bankers Trust Co. v. Rhoades* (cited Opp. at 39–40), the litigation at issue was part of a broader scheme of fraudulent concealment and depletion of assets, and the defendants had bribed the judge in one of the lawsuits at issue. 859 F.2d 1096, 1099 (2d Cir. 1988). In *Angermeir v. Cohen* (cited Opp. at 40), the litigation at issue was based on "forged documents, which Defendants knew were forged" and that Defendants used to institute fraudulent strike suits. 14 F. Supp. 3d 134, 140 (S.D.N.Y. 2014). Black's claim to legal fees as RICO injury writ large would provide a federal RICO claim to literally every state-court defendant who claimed the suit against him was meritless. There is no support in the law for such a sweeping role for civil RICO.

Black's failure to plead that Rubenstein caused him any cognizable RICO injury is yet another independently sufficient reason to dismiss the RICO claim.

## VI.    Black Cannot Plead A Viable Defamation Claim Against Rubenstein

Turning to the defamation allegations that are really the crux of Black's grievances against Defendants, Black's opposition does not even address the basic notice pleading failures in his defamation claim against Rubenstein.[2] *See* Rubenstein MTD at 18. The defamation claim should

---

[2] Black argues in a footnote that the amended complaint "details that Rubenstein used his long-standing relationship with Kosman to arrange for an interview with Ganieva to publicize her allegations." Opp. at 55 n.5. But there is no actual allegation, and barely even an insinuation, that Rubenstein personally arranged any interview. *See supra* Part I;

be dismissed on this ground alone.

Black also cannot justify his conclusory invocation of "sham pleadings" in an effort to evade the undisputed privilege for fair and true reports of judicial proceedings. *See id.* at 18-19. Literally every defendant could assert a defamation claim in response to being sued if such conclusory allegations of "sham pleadings" were sufficient to circumvent the privilege. That is not and cannot be the law. Black also has no answer to the inherent implausibility of the notion that Ganieva's lawsuit against Black was instituted merely to conjure the reporting privilege. *See id.* at 19. Nor does Black's opposition even address, let alone overcome, the fatal lack of any allegations connecting Rubenstein to Ganieva's supposed sham pleading—because, simply put, no such connection exists. *See id.* at 20.

Black does not deny that he is a public figure and, as a result, the actual malice standard applies to his allegations against Rubenstein. But Black can point to no allegations in the complaint permitting the inference that Rubenstein himself acted with a "high degree of awareness" of the falsity of any statements. *Contra* Opp. at 53; *see* Rubenstein MTD at 19-20. Other than the conclusory allegation that Rubenstein was "[a]ware of Ms. Ganieva's lies," Opp. at 54, there are no *facts* alleged to plausibly support the inference that Rubenstein had information that created a high degree of awareness of probable falsity. Even assuming Rubenstein had some role in spreading Ganieva's allegedly false accusations about Black (again, he did not), what information did Rubenstein supposedly have that made him aware of the falsehoods, when, and what did he do with it? The amended complaint lacks any basic factual allegations that could potentially support actual malice. Black's defamation claim against Rubenstein fails as a matter of law and should be

---

*see also* Rubenstein MTD at 15-16. In any event, even an allegation that Rubenstein was involved in setting up an interview for Ganieva provides no basis for maintaining a defamation claim against him. *See* Rubenstein MTD at 20.

dismissed with prejudice.[3]

## VII.   Black's Claims Should Be Dismissed With Prejudice

Black does not address Defendants' request that his claims be dismissed with prejudice. Black already had the opportunity to amend, on notice of myriad deficiencies in his pleading. *See* Rubenstein MTD at 23. Prior to opposing the pending motions, Black provided no indication of what additional facts he could allege to cure his pleading failures. He does not deserve a third try.

While the Court rightly rejected Black's procedural gamesmanship in moving to amend *after* opposing the pending motions, Dkt. 108, Black's proposed second amended complaint, Dkt. 105-1, confirms that any amendment would be futile. The supposedly "new" allegations about Rubenstein's prior work for Apollo appear to have no legal significance. And, in any event, they do nothing to cure the deficiencies in Black's claims. There is still no plausible RICO enterprise. Rubenstein is still alleged to have done nothing rising to the level of directing the affairs of that enterprise. There is no racketeering activity whatsoever, let alone a continuing risk of any such activity. There are still allegations about spreading false information about Black—which do not even amount to a viable defamation claim—improperly dressed up as a civil RICO claim. The Court should have no reservations about dismissing the amended complaint with prejudice.

For the foregoing reasons, and the reasons stated in Rubenstein's opening brief, Rubenstein respectfully requests that this Court dismiss Black's claims against him with prejudice.

---

[3] Alternatively, this Court should decline to exercise supplemental jurisdiction. *See* Rubenstein MTD at 22-23. Contrary to Black's suggestion, Opp. at 62, this Court routinely declines to exercise supplemental jurisdiction even when the state law claims at issue are not statutory. *E.g.*, *Tsinberg v. City of New York*, No. 20 Civ. 749, 2021 WL 1146942, at *11 (S.D.N.Y. Mar. 25, 2021) (declining supplemental jurisdiction over claims for conversion, trespass to chattels, and defamation); *Hello I Am Elliot, Inc. v. Sine*, No. 19 Civ. 6905, 2020 WL 3619505, at *12 (S.D.N.Y. July 2, 2020) (declining supplemental jurisdiction over defamation and tortious-interference claims).

Dated: New York, New York
May 5, 2022

Respectfully submitted,

SUSMAN GODFREY L.L.P.


/s/ Jacob W. Buchdahl
Jacob W. Buchdahl
Mark Musico
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
jbuchdahl@susmangodfrey.com
mmusico@susmangodfrey.com

*Attorneys for Defendant Steven Rubenstein*